Peter Strojnik, Esq., Arizona State Bar No. 006464
**STROJNIK, P.C.**
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: strojnik@aol.com

Peter K. Strojnik, Esq.,
Arizona State Bar No: 026082
California State Bar No: 242728
**THE STROJNIK FIRM, LLC**
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: 602-510-9409
Facsimile: 602-296-0135
E-mail: strojnik@skplaw.com

*Attorneys for Plaintiff*

Melanie V. Pate, State Bar No. 017424
Alastair Gamble, State Bar No. 025488
**LEWIS AND ROCA LLP**
40 North Central Avenue
Phoenix, Arizona  85004-4429
Telephone:  602.262.5370
Facsimile:   602.734.3787
E-mail: mpate@lrlaw.com; agamble@lrlaw.com

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **STACY D. FORD-KELLY,** ) | NO.  3:12-cv-08085-NVW |
| ) | |
| Plaintiff, ) | **JOINT REPORT OF CONFERENCE** |
| ) | **OF PARTIES and PROPOSED** |
| vs. ) | **DISCOVERY PLAN; [FED. R. CIV.** |
| ) | **PRO. 16; 26(F)]** |
| AMEC EARTH & ) | |
| ENVIRONMENTAL, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

Counsel for Plaintiff Stacy D. Ford-Kelly ("Plaintiff") and Defendant AMEC Environment and Infrastructure met telephonically on August 28, 2012 pursuant to FRCP 26(f) to discuss the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; to make or arrange for the disclosures required by Rule 26(a) (1); to discuss any issues about preserving discoverable information; and to develop a proposed discovery plan.

Prior to July 6, 2012, Plaintiff represented herself in this matter. On July 6, 2012, current counsel for Plaintiff made their appearance.  See Docket items 12, 13. On August 21, 2012, counsel for the parties exchanged their Initial Disclosure Statements. On August 16, 2012, Plaintiff's new counsel submitted to Defendant's counsel Interrogatories 1-14, Requests for Production of Documents 1-11 and Request for

Admissions 1-31.   Defendant served its First Sets of Requests for Production and Interrogatories on August 28, 2012.

Upon review of the Complaint and the Order of this Court dated June 18, 2012, in which the Court dismissed certain causes of action and granted Plaintiff leave to amend others, and upon review of available documentation, Plaintiff's new counsel determined that it would streamline the litigation process and refocus the issues if Plaintiff amended her Complaint.   Consequently, Plaintiff filed a Motion to Amend Complaint on August 27, 2012.  See Motion to Amend the Complaint, Docket items 18 to 18-7.

The [Proposed] First Amended Complaint is verified by Plaintiff. It removes whistleblower, theft, defamation, blacklisting and bribery counts, and presents the remaining counts in a format more familiar to the Court and counsel.  The [Proposed Verified] First Amended Complaint realleges causes of action for breach of the employment contract (Count 1), civil extortion (Count 3) and violation of FMLA (Count 4).   It adds a cause of action for breach of implied covenant of good faith and fair dealing (Count 2), a cause of action for breach of the settlement agreement (Count 5) and alternative claims for promissory estoppel (Count 6) and fraud (Count 7).

Plaintiff believes that the verification of the [Proposed Verified] First Amended Complaint was necessary in order to highlight the fact that the Employment Contract attached thereto is the actual, fully executed and the only applicable Employment Contract between the Parties, and that a later created "Employment Contract" produced

by Defendant is fraudulent. Plaintiff further believes that the verification is necessary in order to highlight the settlement agreement between the Parties and the authenticity of IRS Form 1099 and the envelope it which it arrived from Defendant's Washington State Office. Plaintiff further posits that the verification is necessary in order to allay Defendant's continuing threats to file a Motion for Rule 11 Sanctions in the event Plaintiff asserts the genuineness of the actual subsisting Employment Contract, the IRS Form 1099 and the envelope in which it arrived.

The parties disagree whether this Joint Report should address only the claims remaining in the current complaint (i.e., after the Court's Order on Defendant's Partial Motion to Dismiss and after Plaintiff voluntarily deletes the whistleblower, theft, defamation, blacklisting and bribery claims in the [Proposed Verified] First Amended Complaint). Plaintiff believes that the discussion of the proposed new claims is necessary for reasons stated above. Defendant disagrees on the grounds that: (1) the claims in the [Proposed] First Amended Complaint are not currently part of this litigation, (2) Defendant intends to oppose the pending motion for leave to amend, and therefore believes that discussion of the new claims is premature and inappropriate at this time, and (3) Defendant maintains that the alleged "settlement agreement" that serves as the basis for three new claims in the [Proposed ] First Amended Complaint does not exist, that the tax document on which the alleged settlement is supposedly

based is fraudulent, that Plaintiff knows that it is fraudulent, and that any asserted claim based on that document would violate Fed. R. Civ. Pro. 11.

Plaintiff believes that the question which of the documents is fraudulent is a matter for expert opinion by a document examiner and that the threat of filing a Rule 11 Motion is inappropriate.  Plaintiff further believes that the threat of sanctions is merely an attempt to disguise Defendant's creation of new documents, which is their sole defense in this action based on the genuine, verified documents attached to the Complaint.

Defendant responds that it believes that the employment contract and Form 1099 on which Plaintiff bases her claims are so clearly fraudulent that to permit litigation to proceed without first resolving the issue of the competing documents' authenticity would prejudice Defendant given that if the Court concludes that Plaintiff has attempted to defraud the Court, the case would need to go no further.  *See Greenburg v. Roberts Properties, Ltd.*, 2005 WL 3536114, at *2 (D. Ariz. 2005) (holding that submitting fraudulent documents to the court and asserting claims based on those documents "constitutes an affront to the administration of justice, and could result, *at a minimum*, in the dismissal of this action with prejudice, the entry of default judgment in Defendants' favor, an award of all fees and costs to Defendants, and even a referral to the United States Attorney's Office for criminal investigation") (emphasis added).

**1.  Parties Who Attended Rule 26(f) Meeting and Assisted in Developing the Plan**

a.  Peter Strojnik, Strojnik, P.C. and Peter K. Strojnik, The Strojnik Firm, LLC (Attorneys for Plaintiff)

b.  Melanie Pate and Alastair Gamble, Lewis & Roca LLP (Attorneys for Defendant)

## 2.  Short Statement of the Nature of the Case Including Description of Each Claim and Defense[1]

Plaintiff asserts that this case can be divided into three primary categories. (1) Breach by Defendant of its written employment contract with Plaintiff, (2) violation of the FMLA and (3) breach of the settlement agreement by Defendant.

Defendant asserts that the contract and FMLA claims entirely comprise the "nature" of this litigation, and it objects to Plaintiff's discussion of any claims in this Joint Report that are not part of the operative complaint.

### a.  Breach of Employment Contract (Count 1[2])

---

[1] The Parties apologize to the Court that Section 2 exceeds the page limit imposed by the July 2, 2012 Order setting the scheduling conference.  This was done over Defendant's repeated objections and stated concerns that Plaintiff's assertion of several proposed new claims would violate Rule 11, and it is due to Plaintiff's insistence that Section 2 include a discussion of claims asserted in the [Proposed Verified] First Amended Complaint, which Defendant understood should have been limited to Section 6 of this Joint Report, per the Court's directive. Defendant notes that Plaintiff's discussion of her seven current and proposed claims totals nearly ten pages, and Defendant has made every effort to shorten its sections as much as possible.

[2] References in all "Plaintiff's Position" sections are to the claims alleged in the [Proposed] First Amended Complaint. Plaintiff notes that the references include current claims of breach of contract, civil extortion and FMLA. Defendant objects to this on the grounds that the [Proposed] First Amended Complaint is not the operative complaint in this action, and that therefore

### i. Plaintiff's Position

Plaintiff alleges that she executed a six year employment contract with Defendant to work as a design engineer for Defendant from January 28, 2008 until December 31, 2013, and that the terms of the employment contract state that if Defendant terminated the employment due to no fault of Plaintiff after the three-month probationary period, then Plaintiff is due the balance on the remaining term of the contract.

Plaintiff further alleges that Defendant terminated Plaintiff's employment prior to the end of the six year term for reasons other than for cause, but that Defendant did not tender to Plaintiff the remaining balance due on the employment contract, which Plaintiff calculates at $480,702.26. Plaintiff seeks to recover the unpaid balance, trebled pursuant to A.R.S. §§ 23-353 and 23-355. Accordingly, Plaintiff seeks total damages of $1,442,108.28. Plaintiff also seeks attorneys' fees pursuant to A.R.S. § 12-341.01.

Plaintiff also notes that Defendant has produced to Plaintiff's counsel a different letter "agreement" bates stamped AMEC000002-3 which Plaintiff asserts was created by Defendant after the fact and is facially fraudulent. Clear evidence of the Defendant's creation of their supposed "employment contract" is demonstrated by many factors, the most clear of which is that the redacted address in Defendant's created document (which should be Plaintiff's address) reads "Address Line 1" and "Address Line 2".

---

discussion of any allegations in that document should be limited to Section 6, per the Court's directive.

### ii.  Defendant's Position

Defendant alleges that the "employment contract" that is attached as Exhibit 1 to Plaintiff's Complaint is fraudulent, and that the terms of Plaintiff's employment actual offer letter provided for no set term and expressly for at-will employment, and provided no promises for guaranteed payment upon termination.  Defendant adds that Plaintiff's address was inadvertently omitted from her actual offer letter because it was sent to her via email at her request.  Defendant further alleges that no employment contract existed between Plaintiff and Defendant upon which a breach of contract claim may be brought. Defendant maintains that Plaintiff's assertion of this claim violates Fed. R. Civ. Pro. 11.

### b.  <u>Breach of Covenant of Good Faith and Fair Dealing (Count 2)</u>

### i.  Plaintiff's Position

Plaintiff claims that her employment contract with Defendant contained the implied covenant of good faith and fair dealing as a matter of law, which covenant provides that neither party would do anything to impede the benefits of the contract to the other. Plaintiff alleges that she left her home in Boise, Idaho and moved to Lake Havasu City to accept the employment offer from Defendant. She alleges that she left Boise without the companionship of her husband and children and that she postponed her completion of Master's program at Boise State.  She further alleges that her treatment at Lake Havasu and the treatment of her employment contract evidences a

breach of the implied covenant of good faith and fair dealing. Plaintiff seeks direct damages, consequential damages and attorney's fees pursuant to A.R.S. § 12-341.01.

### ii.  Defendant's Position

Defendant objects to the discussion of this claim in this section of the Joint Report as it is not part of the litigation.  In addition, Defendant will object to Plaintiff being allowed to amend her complaint to assert this claim.  Further, Defendant maintains that Plaintiff's attempted assertion of this claim violates Fed. R. Civ. Pro. 11.

### c.  Civil Extortion (Count 3)

### i.  Plaintiff's Position

Plaintiff alleges that in Arizona, extortion or attempted extortion is a predicate offense to a civil racketeering. Accordingly, it provides a private cause of action. *MacCollum v. Perkinson*, 185 Ariz. 179, 913 P.2d 1097, 211 Ariz. Adv. Rep. 44 (App.1996)

Plaintiff alleges that at 7:30 a.m. on Tuesday, April 21, 2009, Plaintiff arrived at Defendant's offices ready to resume her work duties at her same rate of pay.  Plaintiff immediately went to Mr. Anderson's workspace and unsuccessfully attempted to log into the computer system.  After the IT department advised that she was locked out of the system, she went to Mr. Miller's office to report this.  Mr. Miller then asked Mr. Lywood to join them in the former's office.

Mr. Lywood immediately advised Plaintiff that Defendant was "letting you go" due to the "economic downfall" and presented her with duplicate originals of the following two documents:

a.  4-21-09 Correspondence from Mr. Lywood to Plaintiff "confirm[ing] our conversation in which you were informed that effective April 21, 2009, your employment with AMEC Earth & Environmental will cease".

b.  4-21-09 Separation and Release Agreement executed by Mr. Lywood offering Plaintiff two weeks' severance pay in exchange for her release of any and all claims.

In addition to presenting Plaintiff with the two aforementioned documents, Mr. Lywood showed Plaintiff all of her original credentials on his desk and presented her with an unmarked envelope stuffed with cash.  Mr. Lywood advised that she would get "that back" (meaning her credentials) if she signed the Separation Agreement and accepted the undisclosed cash bribe on top of the two-week severance payment called for in the Agreement.  Mr. Lywood promised to return Plaintiff's credentials only if she signed the Separation Agreement and accepted the cash bribe. Strangely, Mr. Lywood further advised that Plaintiff was eligible for rehire.

Plaintiff claims that Defendant's demand that she sign the Separation Agreement under a threat of not returning to Plaintiff her property amounts to extortion.

**ii.  Defendant's Position**

Defendant objects to the discussion of this claim in this section of the Joint Report as it is not part of the litigation.  Further, Defendant will object to Plaintiff being allowed to amend her complaint to assert this claim.  Defendant also maintains that the *MacCollum* case does not support a claim for civil extortion under the facts alleged.

### d.  **FMLA Violation (Count 4)**

#### i.  **Plaintiff's Position**

Plaintiff alleges that she took a short-term disability leave while employed with Defendant because at the time of her leave, she did not yet qualify for FMLA leave. Plaintiff further alleges that her short-term leave was converted to FMLA leave. Plaintiff then alleges that she received physician permission to return to work on April 21, 2009 which she did.  Upon her return, she was immediately terminated.  Finally, Plaintiff alleges that Defendant planned and executed Plaintiff's termination coincidental with her return to work.  Plaintiff seeks back pay damages (which may overlap with her breach of contract damages) and front pay damages (which may exceed her contract claim damages).

#### ii.  **Defendant's Position**

Defendant alleges that Plaintiff's employment was terminated for a legitimate business reason unrelated to any leave she may have taken during her employment, including FMLA leave.  Defendant further alleges that it took no action during Plaintiff's employment that could constitute a violation of the FMLA.

### e. **Breach of Settlement Agreement (Count 5)**

### i. **Plaintiff's Position**

Following her unlawful termination, Plaintiff initiated State court litigation in Mohave Superior Court cause no. CV2010-07063. In the State court lawsuit, Plaintiff demanded $25 million in damages. During the pendency of that lawsuit, AMEC sent Plaintiff an IRS form 1099 in which AMEC advises Plaintiff of a settlement of the case in the amount of $25 million (same amount as demanded in lawsuit). The Form 1099 also advises that the entire $25 million settlement amount was withheld by AMEC, to wit:



This form 1099 was sent to Plaintiff's home address from AMEC's Washington State office as follows:

Plaintiff alleges that she understood Form 1099 to represent a confirmation of a settlement or, at a minimum, an offer of settlement.    Plaintiff advised the Mohave Superior Court of the Settlement:



Plaintiff incorporated Form 1099 into her IRS Tax Return.

Plaintiff submits that in Arizona, an offer may be made by conduct, if the offeror has intentionally or negligently engaged in the conduct and the offeror knows or has reason to know that the conduct will be understood by the offeree as an offer to contract. J. Murray, Contracts, § 26 (2nd ed. 1974). *Lininger v. Dine Out Corp.*, 639 P.2d 350, 131 Ariz. 160 (Ariz. App., 1981) Since Defendant has "intentionally or negligently" issued the 1099 either "know[ing] or [having] reason to know that the issuance of the 1099

[would] be understood by [Plaintiff] as an offer to contract", the 1099 represents an offer of settlement which was accepted by Plaintiff, and he acceptance was communicated to Defendant and its counsel.

Plaintiff further alleges that Defendant has refused to honor the settlement agreement and failed to tender the $25 million to the Internal Revenue Service. Consequently, the IRS penalized Plaintiff for reporting this income while Defendant never tendered. Plaintiff claims damages in the amount of $25 million plus costs and attorney's fees pursuant to A.R.S. § 12-341.01.

Plaintiff has in her possession the IRS Form 1099 *and* the envelope in which it arrived. Plaintiff asserts that Defendant's current denial of the issuance of Form 1099, and the mailing of Form 1099 from Defendant's Washington State offices to Plaintiff's Lake Havasu City address is in bad faith. At the time the 1099 was issued, there was no reason for Defendant to send Plaintiff tax documents other than relating to the underlying State court litigation.

### ii.  Defendant's Position

Defendant objects to the discussion of this claim in this section of the Joint Report as it is not part of this litigation. Further, Defendant will object to Plaintiff being allowed to amend her complaint to assert this claim. Defendant is certain that the Form 1099 on which Plaintiff bases her proposed breach of settlement and alternative claims is fraudulent. By the signing and submission of this Joint Report, Defendant in no way

ratifies or validates the authenticity of this document.  Plaintiff's inclusion of a copy of the fraudulent Form 1099 in the body of this Joint Report is done over Defendant's express objection.

### f.  **Promissory Estoppel (Count 6)**

#### i.  **Plaintiff's Position**

Plaintiff alleges that Defendant's statement in its Form 1099 represents a promise which Defendant should have reasonably expected to induce action or forbearance on the part of the Plaintiff. She further alleges that Form 1099 induced Plaintiff to rely on the Form 1099 and reported the Form 1099 to the IRS in her tax filings.

She alleges that Form 1099 is clear and unambiguous in its terms; that Plaintiff actually relied on Form 1099; that Plaintiff's reliance was both reasonable and foreseeable; and that Plaintiff has been damaged by her reliance. Plaintiff claims, in the alternative to the breach of settlement agreement cause of action, that Defendant is estopped from denying the existence of the settlement agreement on this basis.  On this count, Plaintiff seeks damages in the amount of $25 million plus costs and attorney's fees pursuant to A.R.S. § 12-341.01.

#### ii.  **Defendant's Position**

Defendant objects to the discussion of this claim in this section of the Joint Report as it is not part of the litigation.  Further, Defendant will object to Plaintiff being allowed to amend her complaint to assert this claim for the reasons stated above.

### g.  **Common Law Fraud (Count 7)**

#### i.  **Plaintiff's Position**

In order to maintain an action for fraud under Arizona law, a plaintiff must sufficiently plead: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, and (8) the right to rely on it, and (9) a consequent and proximate injury. *Neilson v. Flashberg*, 101 Ariz. 335, 338-39, 419 P.2d 514, 517-18 (1966).

Plaintiff alleges that Defendant made false, material representations in Form 1099 because it communicated to Plaintiff that it settled the case with her for $25 million but withheld the entire amount.  Defendant knew its representation was false because it never tendered the $25 million to the Internal Revenue Service and never paid the settlement.  It was Defendant's intent that Plaintiff act upon the IRS Form 1099 because it is Plaintiff's duty to file a return advising the federal government of the withheld income.  Consequently, Plaintiff was penalized by the IRS.

Plaintiff seeks direct and consequential damages in connection with this count.

### ii. Defendant's Position

Defendant objects to the discussion of this claim in this section of the Joint Report as it is not part of the litigation. Further, Defendant will object to Plaintiff being allowed to amend her complaint to assert this claim for the reasons stated above.

## 3. Description of Factual and Legal Disputes in the Case

All known, material disputes are discussed in detail in section 2 above (including those which Defendant continues to assert are not part of this litigation). In sum:

- Plaintiff and Defendant disagree as to the terms of Plaintiff's employment; most significantly, whether those terms included a period of guaranteed employment or employment that was merely at-will.

- Plaintiff and Defendant disagree as to whether the document attached to Plaintiff's Complaint as Exhibit 1 is fraudulent.

- Plaintiff and Defendant disagree as to whether Defendant's reasons for terminating Plaintiff's employment were legitimate and whether her termination constituted a violation of the FMLA.

- Plaintiff asserts that Plaintiff's claims have been settled. Defendant does not agree that there is a current factual or legal dispute regarding settlement because the operative complaint does not refer to a settlement agreement of any kind.

## 4. Jurisdictional Basis for the Case

The District Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, 1332 and pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## 5.  Parties That Have Not Been Served

### a.  Plaintiff's Position

[Proposed] First Amended Complaint notes that AMEC PLC is a British company that conducts engineering and design business across the world.  One of PLC's businesses was once known as AMEC Infrastructure, Inc., a Nevada company.  During the employment term at issue in this case, AMEC Infrastructure changed its name to AMEC Earth & Environmental, Inc.  During the pendency of this action, AMEC Earth & Environmental once again changed its name to AMEC Environment & Infrastructure, Inc.  Because AMEC has changed its names so many times in such a short period of time, a visual is produced as follows for the sake of clarity:

**AMEC PLC (British Company)**

↓

**AMEC Environment & Infrastructure (Nevada Company)**
*fka*

↓

**AMEC Earth & Environmental (Nevada Company)**
*fka*

↓

**AMEC Infrastructure (Nevada company)**

On January 21, 2008, AMEC PLC, by and through AMEC Infrastructure, Inc., offered Plaintiff Stacy Ford-Kelly a position at AMEC Infrastructure's Lake Havasu

City office. The offer was made on AMEC PLC Stationary, it listed AMEC PLC's website, and it contained AMEC PLC's logo.

### b. Defendant's Position

Defendant objects to the discussion of this party in this section of the Joint Report as it is not part of the litigation. Further, Defendant will object to Plaintiff being allowed to amend her complaint to assert claims against this party.

## 6. Statement of Whether Any Party Expects to Add Additional Parties to the Case or Otherwise Amend Pleadings

### a. Plaintiff's Position

Please see above.

In addition, the discovery may disclose that Defendant acted with sufficient mental intent to warrant allegations for punitive damages. As of the current writing, Plaintiff does not feel that the evidence is sufficient to allege punitive damages, but may seek leave to amend when (and if) the discovery discloses otherwise.

Plaintiff also notes that initial discovery discloses common law fraud. However, should the evidence show mere negligent misrepresentation, Plaintiff shall seek leave to amend.

### b. Defendant's Position

Defendant asserts that the Form 1099 on which Plaintiff relies to allege her proposed breach of settlement, promissory estoppel and fraud claims is facially

fraudulent and that Plaintiff's filing of the Motion to Amend Complaint, insofar as it seeks to allege claims based on this document, violates Fed. R. Civ. Pro. 11.

## 7. List of Contemplated Motions and Statement of Issues to be Decided By Motions

Defendant will soon serve a motion for sanctions upon Plaintiff pursuant to Fed. R. Civ. Pro. 11(c)(2), based on Plaintiff's knowing submission of fraudulent documents to the Court and her assertion of claims based upon those documents.  After the 21-day safe-harbor period provided by the Rule, assuming the documents and related claims are not withdrawn, Defendant will file the motion with the Court for decision.  If Defendant is forced to file a Rule 11 motion, it is likely to request that the Court stay discovery in order to hold an evidentiary hearing regarding the authenticity of the fraudulent documents. Plaintiff views Defendant's repeated threats of Rule 11 Sanctions as counterproductive and a waste of time.

Alternatively, if Plaintiff is given leave to file an amended Complaint, Defendant may also file a motion to dismiss some or all of the new claims alleged on the grounds that the facts alleged fail to state a claim for relief, pursuant to Fed. R. Civ. Pro. 12(b)(6).

If the facts and law support it, both Parties may file a Motion for Summary Judgment or a Motion for Partial Summary Judgment pursuant to Fed. R. Civ. Pro. 56 and the applicable local rules.

At the time of trial, the Parties may also file standard pre-trial motions, e.g. Motions in Limine.  Furthermore, in the event a discovery dispute arises and cannot be informally resolved by the Parties, it is anticipated the propounding Party will request Court intervention.

## 8. Whether the Case Is Suitable For Reference to Arbitration or a United States Magistrate Judge for Trial

The parties believe that this case is not suitable for either at the current time.

## 9. Status of Related Cases Pending Before Other Courts or Other Judges of This Court

There are no related cases.

## 10. Statement of When the Parties Exchanged Federal Rule of Civil Procedure 26(a) Initial Disclosures

a.  Plaintiff served her Initial Disclosure Statement on August 21, 2012.

b.  Defendant served its Initial Disclosure Statement on August 21, 2012.

## 11. Discussion of Necessary Discovery, including:

### a.  Extent, nature and location of discovery anticipated by the parties

On August 16, 2012, Plaintiff's new counsel submitted to Defendant's counsel Interrogatories 1-14, Requests for Production of Documents 1-11 and Request for Admissions 1-31. Plaintiff contemplates taking Defendants' Rule 30(b)(6) depositions once written responses to discovery have been fully completed.  Plaintiff also contemplates taking depositions of individuals involved with Plaintiff's hiring, firing,

the issuance of Form 1099 and FMLA decisions. Lastly, Plaintiff contemplates deposing Defendant's documents examiner in relation to the employment contract the Form 1099.

Defendant expects that any and all relevant documents Plaintiff has in her possession will be produced in response to Defendant's discovery requests, the first sets of which were served on Plaintiff on August 28, 2012.  Defendant also intends to take Plaintiff's deposition.  Defendant continues to object, however, to the inclusion in this section of any discussion of the alleged "settlement agreement" (i.e., the Form 1099) on which Plaintiff states she will seek discovery because it is not part of this litigation.

### b. Suggested Changes to Discovery Limitations Imposed By Federal Rules of Civil Procedure

The Parties have no suggestions.

### c. Number of Hours Permitted for Each Deposition

Seven hours per deposition pursuant to F.R.C.P. 30(d)(1).

## 12. Proposed Specific Dates for Each of the Following:

### a. Deadline for Completion of Fact Discovery and Disclosure Pursuant to Rule 26(a)(3)

April 12, 2013.

### b. Dates for Complete Disclosures of Expert Testimony Under Rule 26(a)(2)(C) and (D)

Plaintiff:      January 18, 2013.

Defendant:   February 15, 2013.

Rebuttal:     March 1, 2013

### c. Deadline for Completion of All Expert Depositions

April 12, 2013.

### d. Deadline for Filing Dispositive Motions

May 3, 2013.

### e. Date By Which the Parties Shall Have Engaged in Good Faith Settlement Talks

February 15, 2013.

## 13. Whether a Jury Trial Has Been Requested and Whether the Request for a Jury Trial is Contested

Plaintiff has not yet requested a jury trial, but plans to do so in an amended complaint.  Defendant takes no position at this time.

## 14. Estimated Length of Trial and Any Suggestions for Shortening Trial

Plaintiff estimates the length of trial to be approximately seven (7) days. Defendant believes it may be less, but is willing to agree to an estimate of 5-7 days.

## 15. Prospects for Settlement, Including Any Request of the Court for Assistance in Settlement Efforts

The Parties believe that they cannot engage in meaningful settlement discussions until more discovery has been conducted.   If the Parties believe that a Court-led Settlement Conference would be productive, they will advise the Court and respectfully request its assistance.

## 16. Any Other Matters That Will Aid the Court and Parties in Resolving This Case in a Just, Speedy and Inexpensive Manner as Required by FRCP 1

Plaintiff proposes that the issues relating to the alleged settlement agreement (Counts 5-7) be bifurcated because a resolution of the settlement issue resolves the entire case. Should the Court adopt this proposal, the discovery time limitations should be extended accordingly.

Defendant objects to this proposal as the "settlement" claims are not part of this litigation.

RESPECTFULLY SUBMITTED this 4th day of September, 2012.

**PETER STROJNIK, P.C.**

_____

Peter Strojnik
Attorney for Plaintiff

_____/s/ Melanie V. Pate_____

Melanie V. Pate
Alastair Gamble
Lewis and Roca
Attorney for Defendant