Peter Strojnik, Esq.
Arizona State Bar No. 006464
**STROJNIK, P.C.**
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: ps@strojnik.com

Peter K. Strojnik, Esq.,
Arizona State Bar No: 026082
California State Bar No: 242728
**THE STROJNIK FIRM, LLC**
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: 602-510-9409
Facsimile: 602-296-0135
E-mail: strojnik@skplaw.com

*Attorneys for Plaintiff*

Melanie V. Pate
State Bar No. 017424
**LEWIS AND ROCA LLP**
40 North Central Avenue
Phoenix, Arizona 85004-4429
Telephone: 602.262.5370
Facsimile: 602.734.3787
E-mail: mpate@lrlaw.com

Alastair Gamble
State Bar No. 025488
**LEWIS AND ROCA LLP**
40 North Central Avenue
Phoenix, Arizona 85004-4429
Telephone: 602.262.5370
Facsimile: 602.734.3787
E-mail: agamble@lrlaw.com

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| STACY D. FORD-KELLY, | ) | NO. 3:12-cv-08085-NVW |
| | ) | |
| Plaintiff, | ) | **AMENDED JOINT REPORT OF** |
| | ) | **CONFERENCE OF PARTIES and** |
| vs. | ) | **PROPOSED DISCOVERY PLAN; [FED.** |
| | ) | **R. CIV. P. 16; 26(F)]** |
| AMEC EARTH & ENVIRONMENTAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Counsel for Plaintiff Stacy D. Ford-Kelly ("Plaintiff") and Defendant AMEC Environment and Infrastructure met telephonically pursuant to FRCP 26(f).

**1. Parties Who Attended Rule 26(f) Meeting and Assisted in Developing the Plan**

 a. Peter Strojnik, Strojnik, P.C. and Peter K. Strojnik, The Strojnik Firm, LLC (Attorneys for Plaintiff)

 b. Melanie Pate and Alastair Gamble, Lewis and Roca LLP (Attorneys for Defendant)

**2. Short Statement of the Nature of the Case Including Description of Each Claim and Defense**

As a preliminary matter, Plaintiff intends on filing a new Motion to Amend that (i) adds several counts due to facts that have developed very recently (ii) and omits Plaintiff's

-1-

whistleblower, theft and blacklisting counts.  The Parties only address the current counts before the Court.

      a.    **Breach of Employment Contract (Count 1)**

          i.    **Plaintiff's Position**

Plaintiff alleges that she executed a six year employment contract with Defendant to work as a design engineer for Defendant from January 28, 2008 until December 31, 2013, and that the terms of the employment contract state that if Defendant terminated the employment due to no fault of Plaintiff after the three-month probationary period, then Plaintiff is due the balance on the remaining term of the contract.  Plaintiff further alleges that Defendant terminated Plaintiff's employment prior to the end of the six year term for reasons other than for cause, but that Defendant did not tender to Plaintiff the remaining balance due on the employment contract, which Plaintiff calculates at $480,702.26.  Plaintiff seeks to recover the unpaid balance, trebled pursuant to A.R.S. §§ 23-353 and 23-355, plus costs and attorneys' fees.

Plaintiff also notes that Defendant has produced to Plaintiff's counsel a different letter "agreement" bates stamped AMEC000002-3 which Plaintiff asserts is a fraudulent document created by Defendant after the fact.  Creation of documents for financial gain is a historically established business model for Defendant.  On numerous occasions, Defendant has been found guilty, liable or responsible for fraud against the United States, for presenting false and fraudulent bond claims, for creating and submitting falsified invoices, for creating and submitting false documents and false statements and for kickbacks and in various Federal Courts in the United States and in Great Britain, and has been sentenced, sanctioned or had orders entered against it in various amounts from £4.9 million to $19 million for its fraudulent creation of invoices and "irregular receipts".

Plaintiff knows that Defendants' threats of Rule 11 Sanctions (infra) is simply an attempt to mislead and cast false doubt in the mind of the Court and eventually the Jury.  Defendant's presentation of the fraudulent employment contract to Plaintiff (which will be subject to a forthcoming Motion to Amend pending final draft) is not only fraudulent but also facially shady in three respects: *First*, Defendant's fraudulent employment contract does not have Amec's

-2-

3097653.1

letterhead even though all other employment documents contain the letterhead.  *Second*, Defendant's fraudulent employment contract blackens out an address line for Plaintiff that reads "Address Line 1" and "Address Line 2".  *Third*, Defendant, without provocation, provided an unusual explanation as to why there is no letterhead and why "Address Line 1" and "Address Line 2" was blackened out.

### ii.   Defendant's Position

Defendant alleges that the "employment contract" that is attached as Exhibit 1 to Plaintiff's Complaint is fraudulent, and that the terms of Plaintiff's employment actual offer letter provided for no set term and expressly for at-will employment, and provided no promises for guaranteed payment upon termination.  Defendant further alleges that no employment contract existed between Plaintiff and Defendant upon which a breach of contract claim may be brought.  Defendant alleges that Plaintiff's assertion of this claim violates Fed. R. Civ. P. 11, and Defendant will soon serve Plaintiff with a motion for sanctions under Rule 11 if this claim is not either withdrawn or omitted by Plaintiff in its proposed Motion to Amend.

Defendant notes that it provided an informal explanation regarding the missing address on Plaintiff's actual offer letter in an attempt to anticipate Plaintiff's counsel's likely question about it.  Defendant further asserts that Plaintiff's address was inadvertently omitted because Plaintiff asked Defendant to provide the offer letter to her via email, and that the majority of the offer letters sent by AMEC Infrastructure during that period of time do not have AMEC's logo on them.  Finally, Defendant objects to Plaintiff's inflammatory, unsupported and irrelevant statements regarding Defendant's alleged "business model."

### b.   FMLA Violation (Count 6)
### i.   Plaintiff's Position

Plaintiff alleges that she took a short-term disability leave while employed with Defendant because at the time of her leave, she did not yet qualify for FMLA leave.  Plaintiff further alleges that her short-term leave was converted to FMLA leave.  Plaintiff then alleges that she received physician permission to return to work on April 21, 2009 which she did.  Upon her return, she was immediately terminated.  Finally, Plaintiff alleges that Defendant planned

-3-

3097653.1

and executed Plaintiff's termination coincidental with her return to work. Plaintiff seeks back pay damages (which may overlap with her breach of contract damages) and front pay damages (which may exceed her contract claim damages).

### ii. Defendant's Position

Defendant alleges that Plaintiff's employment was terminated for a legitimate business reason unrelated to any leave she may have taken during her employment, including FMLA leave. Defendant further alleges that it took no action during Plaintiff's employment that could constitute a violation of the FMLA.

### c. Defamation (Count 7)

#### i. Plaintiff's Position

Following Plaintiff's disclosure of Defendant's intentional overestimating of material quantities and reckless miscalculations of drainage slopes, Defendant engaged in false publications that impeached Plaintiff's honesty, integrity, virtue, or reputation and brought Plaintiff into disrepute, contempt, and/or ridicule. Defendant knowingly or recklessly gave publicity to a matter that placed Plaintiff in a false light that a reasonable person would find highly offensive. Among other acts of defamation, Defendant revealed private information, a list of Plaintiff's former employers, without her consent, to Charlie Cassens, LHC Interim City Manager and Cassens took it upon himself to contact Plaintiff's former employers as stated in a memo from Mr. Cassens and publicized in the Today-News Herald newspaper article dated November 19, 2009.

#### ii. Defendant's Position

Defendant has never knowingly or recklessly made false statements about the Plaintiff, and her defamation claim is entirely without merit. Defendant further asserts that the act of providing accurate information regarding Plaintiff's former employers, even if it did occur, is not an "act of defamation."

### d. Blacklisting, Whistleblower and Theft (Counts 3,4, 9)

Plaintiff proposes to omit these counts from this action in her forthcoming Motion to Amend. Defendant does not object to Plaintiff's withdrawal of these claims.

**3.     Jurisdictional Basis for the Case**

The District Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, 1332 and pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**4.     Parties That Have Not Been Served**

All parties currently before the Court have been served.

**5.     Statement of Whether Any Party Expects to Add Additional Parties to the Case or Otherwise Amend Pleadings**

    **a.     Plaintiff's Position**

Subsequent to Plaintiff's termination from employment, Defendant created a fraudulent "employment agreement" in defense to Plaintiff's demand for payment on the remainder of her contract. Creation of documents for financial gain is a historically established business model for Defendant. As indicated above, Defendant has been found guilty, liable or responsible for fraud against the United States, for presenting false and fraudulent bond claims, for creating and submitting falsified invoices, for creating and submitting false documents and false statements and for kickbacks and in various Federal Courts in the United States and in Great Britain. As Plaintiff's forthcoming Motion to Amend and amended pleading will note, Defendant's presentation of a fraudulent and forged employment contract in this action is merely a perpetuation of Defendant's long history of creating false documents for financial gain.

Subsequent to termination, Defendant issued an IRS form 1099 indicating that its dispute with Plaintiff had been settled for $25,000,000.00. Plaintiff accepted the settlement, but the settlement was never paid. Defendant's position regarding this forthcoming count (infra) that it never sent this 1099 once again confirms its perpetuation of the business model discussed herein.

Plaintiff's Motion to Amend will request leave to bring the following additional or amended claims: (1) Civil Extortion, (2) breach of the implied covenant of good faith and fair dealing, (3) Breach of the Settlement Agreement, (4) Promissory Estoppel, (5) Common Law Fraud (6) Extrinsic and Intrinsic Fraud, (7) Civil Scheme or Artifice to Defraud, (8) Asserting

False Claims, (9) Pattern of Unlawful Activity in Violation of State Statute A.R.S. 13-2314.04, and (10) Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968.

Plaintiff's [Proposed] First Amended Complaint will note that AMEC PLC is a British company that conducts engineering and design business across the world.  One of PLC's businesses was once known as AMEC Infrastructure, Inc., a Nevada company.  During the employment term at issue in this case, AMEC Infrastructure changed its name to AMEC Earth & Environmental, Inc.  During the pendency of this action, AMEC Earth & Environmental once again changed its name to AMEC Environment & Infrastructure, Inc.  Because AMEC has changed its names so many times in such a short period of time, a visual is produced as follows for the sake of clarity:

AMEC PLC (British Company)
↓
AMEC Environment & Infrastructure (Nevada Company)
*fka*
↓
AMEC Earth & Environmental (Nevada Company)
*fka*
↓
AMEC Infrastructure (Nevada company)

### b. Defendant's Position

Defendant will object to Plaintiff being allowed to amend her complaint to add the claims and new party identified above.  Defendant's opposition will be based on the following: (1) many of the proposed claims are being brought in bad faith and/or will prejudice Defendant because Plaintiff knows that the documents on which she bases most of her proposed claims are fraudulent, (2) many of the proposed claims are not cognizable under established law or under the facts alleged, making such amendment futile, and (3) Plaintiff has had multiple previous chances to amend and correct her complaint and, therefore, no further leave should be given.

3097653.1

Defendant further asserts that the "IRS form 1099" upon which Plaintiff will apparently rely to allege her proposed new claims, and the "employment agreement" on which she bases her current and proposed contract claims, are demonstrably fraudulent documents, and that Plaintiff's filing of the proposed Motion to Amend, as it is described above, will violate Fed. R. Civ. Pro. 11. Defendant asserts that it was contacted by the IRS about the fraudulent Form 1099 after Plaintiff apparently attached it to her 2010 tax return in an attempt to obtain a "refund" of $25,000,000.00, and that it informed the IRS that it had never issued any such tax document to Plaintiff. Further, based on statements made in Plaintiff's first Proposed Amended Complaint (which has since been withdrawn), it is Defendant's understanding that Plaintiff was heavily sanctioned by the IRS for filing the fraudulent tax document with her tax return. Finally, Defendant asserts that it never negotiated or entered into a settlement agreement of any kind with Plaintiff. Defendant notes that it has repeatedly informed Plaintiff's counsel that the two documents in question are fraudulent, and that it has reminded Plaintiff's counsel of their obligations under Fed. R. Civ. Pro. 11.

**6.     List of Contemplated Motions and Statement of Issues to be Decided By Motions**

Plaintiff filed a Motion to Amend and a [Lodged] First Amended Complaint which clarified the claims asserted by Plaintiff based on the currently available information. However, Plaintiff withdrew this Motion because new facts developed, including Plaintiff's dissection and investigation of Defendant's recently created fraudulent contract, with the intent to file a new Motion to Amend to address these new facts.

Defendant intends to oppose the motion for leave to amend on the grounds discussed above; in its opposition, Defendant will request that the Court stay this litigation until an evidentiary hearing may be held to determine the veracity of the documents that Defendant knows to be fraudulent. Defendant notes that it sent Plaintiff's actual offer letter (signed by both AMEC and Plaintiff) to Plaintiff's counsel on August 15, 2012, twelve days *before* the filing of Plaintiff's first Motion to Amend on August 27, 2012, and that therefore the offer letter could not be one of the "new facts" that allegedly caused Plaintiff to withdraw the motion on September 11, 2012. Defendant further notes that Plaintiff allowed her first Motion to Amend

1  to remain pending with the Court for a full two weeks before she abruptly withdrew it just two
2  days before Defendant's response was due to be filed with the Court.

3  In addition, if Plaintiff proceeds to file the proposed Motion to Amend as it is described
4  in Section 5, and if Plaintiff does not seek to withdraw or omit Count 1 of her Complaint,
5  Defendant will serve a motion for sanctions upon Plaintiff pursuant to Fed. R. Civ. Pro.
6  11(c)(2), based on Plaintiff's knowing submission of fraudulent documents to the Court and her
7  assertion of frivolous claims based upon those documents.  After the 21-day safe-harbor period
8  provided by the Rule, and assuming the documents and related claims are not withdrawn,
9  Defendant will file the motion with the Court for decision.  *See Greenburg v. Roberts*
10 *Properties, Ltd.*, 2005 WL 3536114, at *2 (D. Ariz. 2005) (holding that submitting fraudulent
11 documents to the court and asserting claims based on those documents "constitutes an affront to
12 the administration of justice, and could result, *at a minimum*, in the dismissal of this action with
13 prejudice, the entry of default judgment in Defendants' favor, an award of all fees and costs to
14 Defendants, and even a referral to the United States Attorney's Office for criminal
15 investigation") (emphasis added).

16 Plaintiff views Defendant's repeated threats of Rule 11 Sanctions as counterproductive
17 and a waste of time.  As stated above, Defendant is merely attempting to mislead and cast doubt
18 in the mind of the Court and eventually the Jury with their production of a forged employment
19 contract.

20 Alternatively, if Plaintiff is given leave to file an amended Complaint, Defendant may
21 also file a motion to dismiss some or all of the new claims alleged on the grounds that the facts
22 alleged fail to state a claim for relief, pursuant to Fed. R. Civ. Pro. 12(b)(6).

23 If the facts and law support it, both Parties may file a Motion for Summary Judgment or a
24 Motion for Partial Summary Judgment pursuant to Fed. R. Civ. Pro. 56 and the applicable local
25 rules.

26 At the time of trial, the Parties may also file standard pre-trial motions, e.g. Motions in
27 Limine.  Furthermore, in the event a discovery dispute arises and cannot be informally resolved
28 by the Parties, it is anticipated the propounding Party will request Court intervention.

**7.  Whether the Case Is Suitable For Reference to Arbitration or a United States Magistrate Judge for Trial**

The parties believe that this case is not suitable for either at the current time.

**8.  Status of Related Cases Pending Before Other Courts or Other Judges of This Court**

There are no related cases.

**9.  Statement of When the Parties Exchanged Federal Rule of Civil Procedure 26(a) Initial Disclosures**

a.  Plaintiff served her Initial Disclosure Statement on August 21, 2012.

b.  Defendant served its Initial Disclosure Statement on August 21, 2012.

**10. Discussion of Necessary Discovery, including:**

**a.  Extent, nature and location of discovery anticipated by the parties**

On August 16, 2012, Plaintiff's new counsel submitted to Defendant's counsel Interrogatories 1-14, Requests for Production of Documents 1-11 and Request for Admissions 1-31. Plaintiff contemplates taking Defendants' Rule 30(b)(6) depositions once written responses to discovery have been fully completed. Plaintiff also contemplates taking depositions of individuals involved with Plaintiff's hiring, firing, the issuance of Form 1099 and FMLA decisions. Lastly, Plaintiff contemplates deposing Defendant's documents examiner in relation to the employment contract and the Form 1099.

Defendant expects that any and all relevant documents Plaintiff has in her possession will be produced in response to Defendant's discovery requests, the first sets of which were served on Plaintiff on August 28, 2012. Defendant also intends to take Plaintiff's deposition. Defendant objects to the inclusion in this section of any discussion of the alleged "issuance of Form 1099" on which Plaintiff states she will seek discovery because it is not relevant or related to any of the claims currently pending in this litigation.

**b.  Suggested Changes to Discovery Limitations Imposed By Federal Rules of Civil Procedure**

The Parties have no suggestions.

**c.  Number of Hours Permitted for Each Deposition**

Seven hours per deposition pursuant to F.R.C.P. 30(d)(1).

**11.  Proposed Specific Dates for Each of the Following:**

    **a.  Deadline for Completion of Fact Discovery and Disclosure Pursuant to Rule 26(a)(3)**

April 12, 2013.

    **b.  Dates for Complete Disclosures of Expert Testimony Under Rule 26(a)(2)(C) and (D)**

Plaintiff:     January 18, 2013.

Defendant:     February 15, 2013.

Rebuttal:     March 1, 2013

    **c.  Deadline for Completion of All Expert Depositions**

April 12, 2013.

    **d.  Deadline for Filing Dispositive Motions**

May 3, 2013.

    **e.  Date By Which the Parties Shall Have Engaged in Good Faith Settlement Talks**

February 15, 2013.

**12.  Whether a Jury Trial Has Been Requested and Whether the Request for a Jury Trial is Contested**

Plaintiff has not yet requested a jury trial, but plans to do so in an amended complaint. Defendant takes no position at this time.

**13.  Estimated Length of Trial and Any Suggestions for Shortening Trial**

Based on the currently effective Complaint, Plaintiff estimates the length of trial to be approximately seven (7) days.  Defendant believes it may be less, but is willing to agree to an estimate of 5-7 days.

**14.  Prospects for Settlement, Including Any Request of the Court for Assistance in Settlement Efforts**

Plaintiff believes that the parties cannot engage in meaningful settlement discussions in light of Defendant's insistence on presenting fraudulent documents in this action.  Defendant asserts that it has not presented any fraudulent documents to either Plaintiff's counsel or this

-10-

3097653.1

Court, and further believes that the prospects for settlement will be slim until the Court determines the veracity of the documents on which Plaintiff bases the majority of her current and proposed claims.

**15. Any Other Matters That Will Aid the Court and Parties in Resolving This Case in a Just, Speedy and Inexpensive Manner as Required by FRCP 1**

None.

RESPECTFULLY SUBMITTED this 18th day of September, 2012.

**THE STROJNIK FIRM LLC**

 /s/ Peter Kristofer Strojnik
Peter Kristofer Strojnik
Attorney for Plaintiff

**LEWIS AND ROCA LLP**

 /s/ Alastair Gamble
Melanie V. Pate
Alastair Gamble
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal.

                                  */s/ Debbie Robbins*