**THE STROJNIK FIRM L.L.C.**
ATTORNEYS AT LAW
ESPLANADE CENTER III SUITE 700
2415 East Camelback Road
Phoenix, Arizona 85016
(602) 510-9409

PETER K. STROJNIK, ESQ.
AZBN 026082, CABN 242728
strojnik@skplaw.com

*Attorney for Plaintiff Stacy Ford-Kelly*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| STACY D. FORD-KELLY, | ) | NO. 3:12-cv-08085-NVW |
| | ) | |
| Plaintiff, | ) | **MOTION TO AMEND COMPLAINT**[1] |
| | ) | |
| vs. | ) | |
| | ) | |
| AMEC EARTH & ENVIRONMENTAL, INC., | ) | |
| | ) | |
| Defendant. | ) | (Oral Argument Requested) |
| | ) | |

## SUMMARY OF MOTION

In her initial pro-per Complaint Plaintiff alleged in Count One that she executed a six year employment contract with Defendants to work as a design engineer for from January 28, 2008 until December 31, 2013. She alleged that Defendants breached the six year employment agreement and terminated her position in April of 2009.

---

[1] Pursuant to LRCiv 15.1, Plaintiff attaches a "dirty" copy of the amended pleading to the best of her ability. As the Court is aware, Plaintiff filed the original complaint pro se. Plaintiff cannot completely follow the local rule here because (i) she does not have the MS Word version of the original complaint, and (ii) the amended complaint vastly differs from the original complaint. Infra. In the spirit of the local rule, Plaintiff attaches hereto the amended complaint, which underlines the counts that are to be added. This Motion further elucidates which counts will be stricken.

On August 15, 2012, Defendants produced to Plaintiff counsel a false, forged and fraudulent "letter agreement" bates stamped AMEC000002-3 which Defendants assert is the "true" employment agreement between the Parties. Plaintiff alleges that the recently produced employment is a false, forged and fraudulent document created by Defendants after the fact in order to avoid liability in this case.

Creation of documents for financial gain is a historically established business model for Defendants. On numerous occasions, Defendants have been found guilty, liable or responsible for fraud against the United States, for presenting false and fraudulent bond claims, for creating and submitting falsified invoices, for creating and submitting false documents and false statements and for kickbacks in various Federal Courts in the United States and in Great Britain, and have been sentenced, sanctioned or had orders entered against it in various amounts from £4.9 million to $19 million for its fraudulent creation of fraudulent invoices and "irregular receipts".

In addition, Defendants have violated a settlement agreement in the amount of $25 million, and therefore Plaintiff moves to add counts for Breach of Settlement Agreement and promissory estoppel and fraud as alternative counts. In summary, Plaintiff seeks to amend the Complaint to add the following counts: Count Two (breach of the implied covenant of good faith and fair dealing), Count Three (civil extortion) Count Five ( breach of the settlement agreement), Count Six ( promissory estoppel as alternative count to Count Five), Count Seven ( fraud as alternative count to Counts 5 and 6), Count Eight (extrinsic and intrinsic fraud), Count Nine (civil scheme or artifice to defraud), Count Ten (asserting false claims), Count Eleven (pattern of unlawful activity in violation of state statute A.R.S. 13-2314.04, and Count Twelve (racketeer influenced and corrupt organizations act (RICO), 18 U.S.C. §§ 1961-1968).

This Motion is more fully supported by the below Memorandum of Points and Authorities, which by this reference is incorporated herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

As originated by Sun Tzu and echoed by Mao Tze Tung and Niccolo Machiavelli, and, of course the heavyweight prizefighter Jack Dempsey, *the best defense is a good offense*. Since the filing of this action, Defendants followed this theme by creating a false and forged employment contract to avoid liability on the genuine employment contract and thereafter disgracefully threatened Ms. Ford-Kelly and counsel with sanctions if Defendants' fraud is disclosed. After investigation, creating false documents and using offense as a defense is nothing new for Defendants. Examples of Defendants' intentional and fraudulent creation of false documents include the Defendants having been found guilty of, had a judgment entered against it, or sanctioned for millions of dollars for *(1)* committing major fraud against the United States in violation of 18 U.S.C. § 1031, *(2)* presenting false invoices to the United States Government in the construction of federal courthouses in California and Missouri, *(3)* presenting false documents and making false statements to the United States, *(4)* violating the False Claims Act and Anti-Kickback Act, *(5)* providing irregular receipts to the UK government, and *(6)* overestimating material quantities, frontloading contract values, and creating false and forged documents. In this action, Defendants are merely perpetuating its disgraceful history of creating documents by creating a false employment contract and therefore Plaintiff moves to add counts relating to Defendant's forgery and fraud, including extrinsic and intrinsic fraud, civil scheme or artifice to defraud, asserting false claims, a pattern of unlawful activity in violation of state statute A.R.S. 13-2314.04, and a violation of the Racketeer Influenced And Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968).

In addition, one day after Defendants' miraculously[2] became aware of the underlying State Court lawsuit that was removed to this Honorable Court, Defendants issued Ms. Ford-Kelly an IRS form 1099-MISC that indicated on the very face of the document itself that it represents "OTHER INCOME" in the amount of "$25,000,000.000" for "AZ CV-201007063 SETTLEMENT". Ms. Ford-Kelly accepted this settlement, but Defendants reneged. Accordingly, Ms. Ford-Kelly moves to add a count for Breach of Settlement Agreement, in the alternative promissory estoppel, in the alternative fraud.

Ms. Ford-Kelly also moves to clarify her Civil Extortion count that was previously dismissed by this Honorable Court with leave to amend. At the time Defendants' Motion to Dismiss this claim was granted, Ms. Ford-Kelly was representing herself and therefore did not present the *MacCollum* decision, infra, which permits a civil cause of action for any predicate offense to Arizona's racketeering statute. Extortion is a predicate offense.

With the remainder of this Motion, Ms. Ford-Kelly moves to strike her whistleblower and theft counts pending further discovery and add current Defendant's parent company AMEC PLC due to its involvement in the acts giving rise to this action.

## II. FACTUAL AND PROCEDURAL BACKGROUND

AMEC PLC is a British company that conducts engineering and design business across the world. One of PLC's businesses was once known as AMEC Infrastructure, Inc., a Nevada company. During the employment term at issue in this case, AMEC Infrastructure changed its name to AMEC Earth & Environmental, Inc. During the pendency of this action, AMEC Earth & Environmental once again changed its name to AMEC Environment & Infrastructure, Inc. Because AMEC has changed its

---

[2] This was a "miraculous" discovery because Defendants claimed they were served with blank documents in the State court action. In what amounts to "miraculous" forethought, a Defendant employee claims she looked on the Mohave County Superior Court website and allegedly found the lawsuit.

names so many times in such a short period of time, a visual is produced as follows for the sake of clarity:

**AMEC PLC (British company)**



**AMEC Environment & Infrastructure (Nevada company)**
*fka*



**AMEC Earth & Environmental (Nevada company)**
*fka*

↓

**AMEC Infrastructure (Nevada company)**

On January 21, 2008, AMEC PLC, by and through AMEC Infrastructure, Inc., offered Plaintiff Stacy Ford-Kelly a position at AMEC Infrastructure's Lake Havasu City office. *See* Exhibit 1 ("*I am pleased to offer you the position of Design Engineer, reporting to me in the Lake Havasu, AZ office, effective January 28, 2008*") (emphasis supplied). The material terms of the employment contract called for a six-year guaranteed employment term with AMEC during which Plaintiff's employment and salary were guaranteed, to wit:

**Compensation Agreement**

- Status – Exempt; Contracted and salaried full-time employee.
- Contract of employment beginning January 28, 2008 and expires December 31, 2013.
- Starting salary is $2,384.62 payable on a bi-weekly basis, which annualizes to $62,000.12.
- Salary to increase to $85,000.00 beginning January 1, 2010, ending December 31, 2013 with a 2.25% annual minimum cost of living increase beginning January 1, 2011.
- The balance of monetary compensation of this contract due to you shall be paid in full within three business days if employment with AMEC ceases due to no fault of your own and is initiated by AMEC after the three-month probationary period. Balance of compensation is to include any accrued and future benefits ending December 31, 2013 for both vacation time and sick leave as outlined below. If such action takes place by AMEC you will also receive payment equivalent to 18 months of COBRA costs which will be included with the balance of this contract compensation due to you. If the remainder of contract is less than 18 months COBRA costs to be paid will be adjusted accordingly.
- You will receive a relocation allowance in the amount of $4,500.00 – the terms of this allowance are attached. Please sign and return with this employment agreement.

*Id*. During Ms. Ford-Kelly's first year of employment, she excelled and was rewarded with a pay-raise. Unfortunately, she was plagued with a debilitating medical condition that required her to take a brief disability leave pursuant to the Family and Medical Leave Act. On the same day Ms. Ford-Kelly returned to work after her FMLA leave, she was terminated coincidental with her return thereby depriving her of the ability to return to her same position or equivalent position. See e.g. Exhibit 2 ("*She will be returning to work tomorrow, and we want to do the layoff coincidental with her return to work. Stacy's work has been redistributed to several other people*") (emphasis supplied).

On the day of her termination (and her return from FMLA leave), AMEC employees Mike Lywood and Darin Miller met with Ms. Ford-Kelly in Mr. Miller's office. While in Mr. Miller's office, Ms. Ford-Kelly noticed that her original engineering credentials and certificates were on Mr. Miller's desk alongside an envelope filled with cash. Mr. Lywood immediately advised Ms. Ford-Kelly that AMEC was "letting you go" due to the "economic downfall" and presented her with a Confidential Separation and Release Agreement. Mr. Lywood also advised that she would receive her credentials and certificates back as well as the envelope containing an unspecified amount of cash if she signed the Separation Agreement. Ms. Ford-Kelly refused and demanded the return of her credentials, but Mr. Lywood refused.

Ms. Ford-Kelly alleges that she was terminated in part because she reported AMEC's overestimation of material quantities, bid-rigging and grossly negligent rise-over-run calculations for the Lake Havasu Sewer project that AMEC was responsible for designing. This was not the first time (or even the second, third or fourth time) that AMEC has been charged with deceitful, fraudulent and false business practices. On December 12, 2000, AMEC pled guilty to presenting false bond claims and falsified invoices to the United States government in AMEC's construction of a federal courthouse in St. Louis, Missouri. On December 4, 2001, AMEC pled guilty to presenting falsified invoices to the

United States government in AMEC's construction of a federal courthouse in California. On March 27, 2002, a criminal judgment was entered against AMEC for its violation of 18 U.S.C. § 1031 (*major fraud against the United States*). On October 31, 2007, summary judgment was entered against AMEC pursuant to the False Claims Act and Anti-Kickback Act for a sum of $7.2 million. On February 2, 2009, the United States Department of Justice recovered $19 million from AMEC due to fraud, false claims and kickbacks relating to AMEC's remodeling of four federal courthouses, one of which may have been the Sandra Day O'Connor courthouse. On October 26, 2009, the United Kingdom's Serious Fraud Office settled with AMEC for 4.9 million Pounds for AMEC's "irregular receipts" relating to the construction of a bridge. ***On the other hand, Ms. Ford-Kelly is a married woman with three children and no criminal history***.

Following her unlawful termination, Ms. Ford-Kelly initiated the underlying State court litigation in Mohave Superior Court cause no. CV2010-07063. In the State court lawsuit, Plaintiff demanded $25 million in damages. One day after Defendant discovered the lawsuit, it sent Plaintiff an IRS form 1099 in which AMEC advises Plaintiff of a settlement of the case in the amount of $25 million (same amount as demanded in lawsuit). The Form 1099 also advises that the entire $25 million settlement amount was withheld by AMEC, to wit:

[Form 1099-MISC image: PAYER AMEC Earth & Environmental Inc, 11810 North Creek Pkwy, Bothell, WA 98011; 2010 Miscellaneous Income; Other income $25,000,000.00; Federal income tax withheld $25,000,000.00; PAYER's federal identification number 91-1641772; RECIPIENT's identification number 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; RECIPIENT Stacy D. Ford-Kelly, 1561 Mohican Dr, Lake Havasu City, AZ 86406; Account number AZ CV-201007063 SETTLEMENT]

Exhibit 3. This form 1099 was sent to Ms. Ford-Kelly's home address from AMEC's Washington State office as follows:



Exhibit 4. At the time the 1099 was sent, nearly two years had passed since Ms. Ford-Kelly's termination and therefore Defendant had no cause to send the 1099 other than relating to the lawsuit. Accordingly, the box "Other Income" was filled in. Ms. Ford-Kelly understood the form 1099 to represent a confirmation of a settlement or, at a minimum, an offer of settlement. She therefore advised the Mohave Superior Court of the Settlement:

> COMES NOW, Stacy D. Ford-Kelly, in pro per to give the Court Notice of Partial Settlement received by her on January 31, 2011 in the form of IRS 1099-MISC (Exhibit 1). This Settlement has not been paid by the IRS to Plaintiff and her taxes were filed on February 26, 2011(Exhibit 2).
>
> Respectfully submitted this ___ day of April 2011.
>
> Stacy D. Ford-Kelly, Plaintiff

Exhibit 5. Ms. Ford-Kelly subsequently affirmed the acceptance of the settlement amount. AMEC has refused to honor the settlement agreement and failed to tender the $25 million to the

Internal Revenue Service. Consequently, the IRS penalized Ms. Ford-Kelly for reporting this income while Defendant never tendered.

Ultimately, the State court lawsuit was removed to this honorable Court. Immediately preceding the filing of Ms. Ford-Kelly's Doc. 18 Motion, Defendant presented Ms. Ford-Kelly with a false document that Defendant claimed was the "real" employment contract. This fraudulent employment contract is partially reproduced as follows (Exhibit 6 for full forged document):

January 21, 2008                                                                Private & Confidential

Stacy Ford


Dear Ms. Ford:

On behalf of AMEC Infrastructure (AMEC), I am pleased to offer you the position of Engineer in Training, reporting to me in the Lake Havasu, AZ office, effective January 28, 2008. If you need to change the date, we will be pleased to discuss one that is mutually acceptable.

The following will outline the terms and conditions of employment:

**Compensation**

- Status – exempt.
- Salary is $2,384.62 payable on a bi-weekly basis which annualizes to $62,000.12. Direct Deposit is available if preferred.
- Extra compensation for additional hours worked *may be available* subject to manager approval. Extra compensation is paid at straight time unless otherwise legislated.
- You will receive a relocation allowance in the amount of $4,500.00 – the terms of this allowance are attached. Please sign and return a copy along with your signed copy of this letter.

**Benefits**

Enclosed, please find the *Choices Benefits Package* that explains the benefits currently offered to AMEC regular, full-time employees. Upon your employment you will be immediately eligible for:

- Health insurance coverage, including medical, vision, dental and prescription drug.
- Participation in AMEC's 401(k) program.
- Flexible Spending Account.
- Employee Assistance Plan.
- Short Term Disability, Long Term Disability, Life Insurance, Accidental Death & Dismemberment Insurance.
- You will accrue annual vacation leave at a rate of 15 days per year or 4.62 hours bi-weekly.
- Holidays – AMEC observes 7 holidays per year plus 3 floating holidays throughout the year, the details of which are provided in the Employee Handbook.
- Sick day accrual.
- Tuition Reimbursement (with prior management approval).
- Health Club Membership Reimbursement.
- Company provided training including Code of Business Conduct (COBC), Safety Health & Environment (SHE) and more. Your Manager will determine with you what training is appropriate. Please be advised that successful completion of the COBC program is a condition of employment and you will be required to undergo an annual refresher. Please complete the online training (available after hire), within the first week of employment.

**Background Screening/Employment Documentation**

It is AMEC's policy to provide a safe and secure work environment for both our employees and our clients. To that end it is the policy of AMEC that all offers of employment are contingent upon the successful completion of a background screening, drug screening and educational credentials

AMEC Infrastructure
94 Acoma Blvd South #100
Lake Havasu City, AZ 86403
Phone: 928-854-8030
Fax: 928-854-8036                                        www.amec.com

This fraudulent document is facially shady.  *First*, AMEC's letterhead is not included on the fraudulent document despite the fact AMEC's letterhead is on all other employment documents.  *Second*, the blackened portion in the address line redacts "Address Line 1" and "Address Line 2".  *Third*, there is no conceivable reason to redact "Address Line 1" or "Address Line 2".  Defendant was simply sloppy when creating this fraudulent document.

When questioned about these facial contradictions, Defendant responded as follows:  "***You will notice that the actual offer letter does not contain Ms. Ford-Kelly's address and is not printed on AMEC letterhead.  This is because the letter was hurriedly emailed to Ms. Ford-Kelly at her insistence, and the errors were inadvertent***."  Ms. Ford-Kelly never requested this explanation, and Defendant has declined to produce the e-mail by which the fraudulent "employment agreement" was ostensibly transmitted to Ms. Ford-Kelly.  In actuality, the employment contract produced at Exhibit 1 was sent via express mail to Ms. Ford-Kelly's Boise home.

### III. ARGUMENT AND SUPPORTING LAW

#### A.     Leave to Amend Standard

Leave to amend a complaint "shall be freely given when justice requires."  Fed.R.Civ.P. 15(a).  In deciding whether justice requires granting leave to amend, factors to be considered include the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment.  *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 536 (9th Cir. 1989); *Forman v. Davis*, 371 U.S. 178, 182 (1962).

Several factors can be disposed of because of their inapplicability to the instant motion.  ***First***, there has been no undue delay in bringing this Motion because this action is at its infancy.  ***Second***, Plaintiff has no bad faith or dilatory motive in filing this Motion.  In fact, Plaintiff is showing good

faith by striking several causes of action, including the whistleblower and theft counts. **Third**, there have been no prior amendments in this action and therefore there has been no failure to cure deficiencies by prior amendments. **Fourth**, AMEC will not suffer prejudice if the amended pleading is filed because discovery has only just commenced and therefore Defendant will have a full opportunity to discover the facts underlying the proposed amendments.

**B.     Plaintiff's Proposed Amendments Would Not Be Futile**

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Forman*, 317 U.S. at 182.

**i.   Breach of Covenant of Good Faith and Fair Dealing**

"All contracts as a matter of law include the implied duties of good faith and fair dealing, and contract damages are available for their breach." *United Dairymen of Arizona v. Schugg*, 212 Ariz. 133, 137, 128 P.2d 756, 760 (Ct. App. 2006); *Rawlings v. Apodaca*, 151 Ariz. 149, 153-54, 726 P.2d 565, 569-70 (1986). A breach of this implied covenant occurs where the offending party acts in ways that "bear adversely on the other party's reasonably expected benefits of the bargain." *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, 46 P.3d 431, 435 (Ct. App. 2002).

Here, Defendant violated this implied duty when it denied Plaintiff the expected benefit of continued employment and the payment of the entire balance of the contract within three days of layoff due to the "economic downfall". Plaintiff expected that if employment ceased with AMEC after the three-month probationary period due to no fault of her own (Exhibit 1), she would be paid the balance. She was <u>not</u> paid and therefore was denied her reasonable and expected benefits under the terms of the employment contract.

### ii. Civil Extortion

Arizona courts recognize a private cause of action for a violation of any predicate offense to a civil racketeering claim. *MacCollum v. Perkinson*, 185 Ariz. 179, 183, 913 P.2d 1097, 1101 (Ct. App. 1996); *Hammoudeh v. Jada*, 222 Ariz. 570, 573, 218 P.3d 1027, 1030 (Ct. App. 2009). Extortion is a predicate offense to a civil racketeering claim. A.R.S. § 13-2301(D)(4)(b)(iv), (vi). "A person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a threat to … cause anyone to part with any property." A.R.S. § 13-804(A)(8).

Here, AMEC attempted to extort Plaintiff when it offered her a cash bribe (in addition to the severance in the Separation Agreement) if she signed the Separation Agreement. AMEC also extorted Plaintiff by only agreeing to return Plaintiff's credentials and certificates if she accepted the bribe and signed the Confidential Separation Agreement. Furthermore, AMEC forged Ms. Ford-Kelly's signature when it created the fraudulent employment contract to avoid liability on the breach of contract count.

### iii. Pattern of Unlawful Activity and Federal RICO

In her [Lodged] First Amended Complaint Plaintiff alleges that Defendant committed predicate acts described in A.R.S. §13-2301(D)(4)(b) including (iv) (Forgery both as to Plaintiff and as described in Defendant's history of criminal convictions, civil judgments and regulatory actions described above) (ix) (attempted) extortion, (xiii) participation in a criminal syndicate, (xv) asserting false claims though the creation of forged letter and IRS Form 1099, and (xx) a scheme or artifice to defraud. Defendant's acts were committed for financial gain. These acts violated U.S.C. §18-1341 relating to mail fraud; U.S.C. §18-1343 relating to wire fraud.

Plaintiff also alleges that Defendants' *modus operandi* as set forth above discloses a course of illegal conduct with the common external organizing principle including the affairs of the entire

-12-

Defendant enterprise, to wit: Defendants create documents, including invoices and letters in order to gain financial benefits. These illegal acts committed by Defendants with respect to Plaintiff and others similarly situated are related in that they have the same or similar purposes, results, participants, victims or methods of commission and are otherwise interrelated by distinguishing characteristics as more fully described above. Plaintiff sustained a reasonably foreseeable injury to her person by a pattern of Defendant's racketeering activity, and/or by a violation of section 13-2312 involving a pattern of racketeering activity. Defendant's misconduct demonstrates a series of related predicates involving the Plaintiffs and others similarly situated extending over a substantial period of time that by their very nature project into the future with a threat of repetition. The last predicate act of racketeering occurred within 5 years of the acts complained of herein.

    **iv. Breach of Settlement Agreement**

The construction and enforcement of settlement agreements are governed by general contract principles. *Emmons v. Superior Court*, 192 Ariz. 509, 512, ¶14, 968 P.2d 582, 585 (Ct. App. 1998). An enforceable contract requires an offer, acceptance, consideration and sufficiently specified terms so the parties' obligations can be understood. *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (Ct. App. 1983).

Here, Defendant offered Plaintiff $25 million to settle the State court action. Plaintiff accepted the settlement offer when she filed a Notice of Settlement with the Court, which was also sent to Defendant. However, Defendant never paid the settlement figure to Plaintiff or the Internal Revenue Service. Accordingly, Defendant breached the settlement agreement.

    **v. *In the Alternative*, Promissory Estoppel**

Promissory estoppel is a proper claim for relief as an alternative to a contract claim. *AROK Const. Co. v. Indian Const. Servs.,* 848 P.2d 870, 878 (Ariz. App. 1993). To state a claim for

promissory estoppel, the plaintiff must demonstrate a clear and unambiguous promise, plaintiff's reliance on the offer, and the reliance is reasonable and foreseeable. *Contempo Const. Co. v. Mountain States Tel. & Tel. Co.,* 736 P.2d 13, 16 (Ariz. App. 1987).

Here, Plaintiff reasonably and foreseeably relied on Defendant's 1099 Offer because as a taxpaying citizen, Plaintiff was expected and was required to file her own tax return claiming the funds Defendant deceitfully claimed it sent to the Internal Revenue Service. As a direct consequence, Plaintiff was penalized by the IRS for the tax filing.

### vi. *In the Alternative*, Fraud

In order to maintain an action for fraud under Arizona law, a plaintiff must sufficiently plead: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, and (8) the right to rely on it, and (9) a consequent and proximate injury. *Neilson v. Flashberg*, 101 Ariz. 335, 338-39, 419 P.2d 514, 517-18 (1966).

Here, Defendant made a false, material representation because it communicated to Plaintiff that it settled the case with her for $25 million but withheld the entire amount. Defendant knew its representation was false because it never tendered the $25 million to the Internal Revenue Service and never paid the settlement. It was Defendant's intent that Plaintiff act upon the IRS form because it is Plaintiff's duty to file a return advising the federal government of the withheld income. Consequently, Plaintiff was penalized by the IRS.

### vii. Extrinsic and Intrinsic Fraud

Defendants created the false, fraudulent employment contract in an attempt to avoid liability on the breach of contract count. Accordingly, Defendants committed fraud.

### viii. Civil Scheme and Artifice to Defraud

By creating a false, forged and fraudulent "employment agreement, Defendants committed extrinsic fraud, that is, they created the documents outside the current litigation, and intrinsic fraud by offering the false, forged and fraudulent document as defense to the current litigation.

### ix. Asserting False Claims

By creating a false, forged and fraudulent "employment agreement, Defendants asserted a false claim both extrinsically to the current litigation and intrinsically in the current litigation, and threatened Plaintiff and her counsel with court sanctions if the matter of the false, forged and fraudulent "employment agreement" is brought up to the attention of this Court.

### x. Adding AMEC PLC and Defendant's Name Changes

AMEC PLC conducts its business in Arizona through its divisions one of which is the current Defendant. AMEC PLC's website and logo were stated on the employment offer to Plaintiff and therefore it is liable for the breach. AMEC PLC's Washington State office sent to the IRS 1099 and therefore it is liable for the breach of the settlement agreement. Moreover, the decision to terminate Plaintiff's employment was made by and between HR managers for AMEC PLC and current Defendant. Accordingly, AMEC PLC is equally liable for current Defendant's conduct in this action.

During this litigation, the current Defendant AMEC Earth & Environmental changed its name to AMEC Environment and Infrastructure, Inc., which is a company organized under the laws of Nevada.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests her Motion is granted. For the Court's convenience, a proposed form of Order is attached.

RESPECTFULLY SUBMITTED this 26th day of September, 2012.

*/s/ Peter Kristofer Strojnik*
Peter Kristofer Strojnik (026082)
strojnik@skplaw.com
THE STROJNIK FIRM L.L.C.
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
602 510 9409 (tel)
602 532 7572 (fax)

***Attorney for Plaintiff Stacy Ford-Kelly***