Peter Strojnik,
Arizona State Bar No. 006464
**STROJNIK, P.C.**
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: ps@strojnik.com

*Attorneys for Plaintiff*

Peter K. Strojnik, Esq.,
Arizona State Bar No: 026082
California State Bar No: 242728
**THE STROJNIK FIRM, LLC**
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: 602-510-9409
Facsimile: 602-532-7572
E-mail: strojnik@skplaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STACY D. FORD-KELLY, | NO.  3:12-CV-08085-NVW |
| Plaintiff, | **MOTION FOR SANCTIONS** |
| vs. | **(Spoliation)** |
| AMEC ENVIRONMENT & INFRASTRUCTURE, INC., a Nevada corporation *fka* AMEC EARTH & ENVIRONMENTAL, INC. *fka* AMEC INFRASTRUCTURE, INC.; AMEC PLC, a British Company, | **(Duplicity)** |
| | (Oral Argument Requested) |
| Defendants. | |

Plaintiff Stacy Ford-Kelly, by and through undersigned counsel, hereby moves for sanctions against Defendants on the grounds that Defendants destroyed the original of the principal piece of evidence in this lawsuit – the employment agreement.  Defendant's destruction of the original employment agreement while litigation was pending on the

very issue of breach of contract amounts to spoliation and precludes Plaintiff from scientifically determining the authenticity of the agreement. Accordingly, the Court should sanction Defendants by striking the Answer and entering judgment by default in favor of Plaintiff in the amount of $1,442,108.28 because Defendant's destruction of the original precludes Plaintiff from determining the authenticity of the employment agreement.

Plaintiff further moves for a finding that the IRS Form 1099, which Defendants now concede is a genuine document, represents an offer of settlement and that Plaintiff accepted that offer.

WHEREFORE, Plaintiff respectfully requests an Order striking the Answer and entering default judgment in favor of Plaintiff and for a finding the 1099 represents an offer. This Motion is more fully supported by the below Memorandum of Points and Authorities, which by this reference is incorporated herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION AND FACTUAL BACKGROUND

As the Court is aware, Plaintiff is suing Defendant AMEC, a notorious creator of false documents, for breach of a six-year guaranteed employment agreement. Defendant has withheld $480,702.76 in unpaid wages, which is trebled to $1,442,108.28 pursuant to A.R.S. §§ 23-355. In support of this lawsuit, Plaintiff presented the actual employment agreement. Exhibit 1. Plaintiff also claims that Defendant sent her an IRS

Form 1099-MISC in the amount of $25 million and the entire amount was withheld. After Plaintiff filed her tax return, she was sanctioned by the Internal Revenue Service because Defendant never tendered the withheld funds to the IRS.

Defendant AMEC alleges that Plaintiff's copy of the Employment Agreement, Exhibit 1, is fraudulent.  AMEC offers a substantially different copy of the Employment Agreement, Exhibit 2, claiming that its version is a true copy of the original. It is undisputed that the original of the Employment Agreement was retained by AMEC and that *AMEC subsequently destroyed it while the removed state court litigation was pending*.

Unfortunately, it is impossible to determine which of the two versions of the employment agreement is a copy of the true original without the examination of the original. See Exhibit 3 (Expert Opinion of William Flynn).

AMEC also alleges that the IRS Form 1099, Exhibit 4, is a "fraudulent Form 1099 that [Plaintiff] knows to be fraudulent because the IRS sanctioned her for filing it with the IRS back in November of 2011". See Exhibit 5 at 4:11-13 (Transcript of Scheduling Conference).

There are two questions, then: (1) *when* did AMEC destroy the original Employment Agreement, and (2) did Plaintiff really create the 1099 as Defendants so aggressively and disparagingly claimed?

## A.     AMEC'S DESTRUCTION OF THE ORIGINAL EMPLOYMENT AGREEMENT AND ITS SUBSEQUENT MISREPRESENTATIONS TO THE COURT

At a hearing on September 28, 2012, AMEC's attorneys disclosed AMEC's (alleged) documents destruction policy:

> MS. PATE: We do not have an inked original. **The company does not keep original personnel files for terminated employees in their original form.** They are .pdf copies made of all those personnel files and they are stored electronically.(Emphasis supplied)

Exhibit 5 at 17:19-22.

The representation that the original was destroyed at the time of Plaintiff's termination (on April 20, 2009) is problematic. The suggestion that the destruction of the original Employment Agreement occurred on April 20, 2009 in compliance with AMEC's (alleged) document destruction policy would greatly benefit AMEC because on April 20, 2009, the question of authenticity of the Employment Agreement had not yet surfaced. AMEC could easily argue that it first became aware of Plaintiff's copy sometime after it reviewed Plaintiff's First Amended Complaint filed with the Mojave County Superior Court to avoid future spoliation claims.

We now know, however, that AMEC had no documents destruction policy that would place the date of destruction to April 20, 2009. See October 9, 2012 letter from Ms. Pate, Exhibit 6. Defendant also confirmed that **the original of the Employment Agreement was not destroyed on April 20, 2009**. Id. AMEC's lawyers admitted that much:

First, AMEC did not have a written "documents retention/destruction policy" in effect when your client's original personnel file was destroyed. Due to a merger with another company (MACTEC) that occurred in June 2011, the Human Resources function of AMEC was moved from Bothell, Washington to Alpharetta, Georgia. As part of that transition and integration plan, AMEC's Vice President of Human Resources, Jayne Dinan, directed Melinda Knott in the Bothell office to scan the personnel files of all terminated employees and destroy the hard copy files due to the high cost of shipping and storing the physical files.

Id. at 2. AMEC's attorneys also admit that the **actual destruction of the original Employment Agreement occurred on October 27, 2011:**

The hard copy original of Ms. Ford-Kelly's fully executed offer letter was kept in her AMEC personnel file in Bothell, Washington. Natasha Vu and Mandy Whittler are the former AMEC employees who were tasked with canning the personnel files of all terminated employees and destroying the physical files. Melinda Knott oversaw this process. **Ms. Ford-Kelly's scanned personnel file was saved on AMEC's computer system on October 27, 2011 at 1:24 p.m.**

Id. (emphasis supplied).  We also know that AMEC's lawyers reviewed the First Amended Complaint in the removed State court action, Exhibit 7, sometime **prior to March 22, 2011.**   It was on this date that AMEC's attorneys filed their Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice for Fraud Upon the Court and Other Grounds. Exhibit 8[1].   Thus, it is clear that **AMEC destroyed the original employment agreement at least 7 months after AMEC and its lawyers reviewed Ms. Ford's copy of the Employment Agreement.**

---

[1] Notably, in their Motion to Dismiss, AMEC's attorneys allege all types of fraudulent activity on the part of Ms. Ford, but curiously fail to allege that the crux of Ms. Ford's claim, the employment agreement, is false.

There is a reason why AMEC now claims that the original inked copy of the Employment Agreement was destroyed. <u>See</u> Report of Forensic Examination by William J. Flynn, Exhibit 3, where Mr. Flynn noted:

> One universal commonality with electronic cut-and-paste forgeries is that the "original" document is always "lost." This allegation must be made, because there is never an original ink-signed signed document to begin with. If an original "ink-signed" version *did* still exist and one or more of the signatures on it are forgeries they would have to be of the classic type, where a forger makes an effort to mimic the likeness of the victim's signature using pen and ink.

**B.    <u>AMEC's Misrepresentations Regarding Form 1099</u>**

On September 28, 2012, AMEC's attorney made the following false statement to the Court:

> MS. PATE: Because [Plaintiff] should not be allowed to amend [her] complaint based on fraudulent -- the majority of the new claims they propose to amend their complaint with are based on a fraudulent Form 1099 that their client knows to be fraudulent because the IRS sanctioned her for filing it with the IRS back in November of 2011.

Exhibit 5 at 4:8-17. This is not true. In its <u>Notice of Non-opposition in Response to Plaintiff's Motion to Amend Complaint and Notice to Court</u>, [doc. 37], AMEC admits that just the opposite is true:

> AMEC's previous deadline to file its response to Plaintiff's Motion to Amend Complaint was October 15, 2012. On that day, just before filing, AMEC's counsel was contacted by an AMEC employee who stated for the first time that she had prepared the Form 1099-MISC on or around January 28, 2011. According to the employee, she created the form outside of the usual procedures for generating tax forms and mailed it to Plaintiff, after Plaintiff called her and asked her to do so. Undersigned counsel, despite substantial investigation, had no information prior to this

disclosure that the form had been created by an AMEC employee. Counsel also is unaware of any information indicating that anyone at AMEC had knowledge of this employee's unauthorized acts prior to her October 15, 2012 statements.

AMEC's counsel also misrepresented additional facts regarding the 1099:

[MS. PATE]: In addition to that, Your Honor, she did not, when she was represented by herself, alone, she did not include anything, not one word, about this Form 1099 or the alleged settlement agreement.

This, too, is untrue. During oral arguments on AMEC's Motion to Dismiss on August 26, 2011 before the Honorable Charles W. Gurtler, Jr., Judge of the Mojave County Superior Court, the 1099 was front and center of the discussion:



```
1          MS. FORD-KELLY: Concerning the amended
2   complaint, I received a 1099 miscellaneous for
3   25,000,000. Now, that has not been paid by AMEC. It
4   was, you know, I was —
```

See Exhibit 9 at 18:1-4 (Transcript of August 26, 2011 Proceedings before the honorable Charles W. Gurtler, Jr.). The 1099 was mentioned no less than 8 times during that hearing. In fact, Honorable Charles W. Gurtler, Jr. found the 1099 crucial in his decision to deny AMEC's Motion to Dismiss:

4          However, the 1099 I think comes into play

5    for two different reasons.  Number one, if AMEC had

6    issued the 1099, they certainly were then aware that you

7    were requesting 25,000,000.  And it would seem to the

8    court that there was some indication such as information

9    contained in the complaint that would give them notice

10   that you're seeking 25,000,000.

11         The flip side of the coin is that if AMEC

12   establishes that they didn't turn around and prepare that

13   1099, then in that event, it would tend to lead the court

14   to believe that maybe this is a charade.  So I think the

15   1099 can cut either way.  Can cut either way.

Id. at 21:4-15.

**In addition** on April 6, 2011, Plaintiff **specifically** accepted the offer of settlement represented by the 1099 and filed it with the Mojave County Superior Court. Exhibit 10:

///

///

///

///

///

///

Based on these misrepresentations and the destruction of the original Employment Agreement well after AMEC and its lawyers saw the copy Plaintiff claims is the copy of the actual original, Plaintiff, for reasons more fully stated in the Legal Argument below, prays for fairness and punitive sanctions as follows:

1. For the entry of judgment by default against AMEC on the breach of contract claim in the amount of $1,442,108.28; and

2. For a finding that the 1099 represented an offer of settlement which was accepted by Plaintiff.

## II. <u>LEGAL ARGUMENT</u>

In *Veolia Transp. Servs. Inc. v. Evanson* (D. Ariz., 2011) this Court noted:

A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence.

### A.    AMEC WAS UNDER OBLIGATION TO PRESERVE THE ORIGINAL OF THE EMPLOYMENT AGREEMENT

It is well established that the "duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d. 997, 1005 (D. Ariz. 2011). Here, AMEC knew that litigation – breach of employment agreement litigation - was pending 7 months prior to the destruction of the original Employment Agreement.  Knowledge of the litigation and Exhibit 1 occurred at some point prior to March 22, 2011, and the original was destroyed seven months later on October 27, 2011.

### B.    AMEC'S ATTORNEYS WERE UNDER OBLIGATION TO IMPOSE A LITIGATION HOLD, BUT FAILED TO DO SO

More importantly, AMEC and their attorneys knew that Ms. Ford was claiming that Exhibit 1 to her January 14, 2011 Mojave County Complaint was the true and accurate copy of the original Employment Agreement. **The duty to preserve was**

**triggered, at the very latest, on March 22, 2011.** The duty ran not only to AMEC, but also to its counsel. "The preservation obligation runs first to counsel, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'" *Surowiec* 790 F. Supp. 2d at 1006. (citations omitted).

## C.   AMEC DESTROYED THE ORIGINAL EMPLOYMENT AGREEMENT KNOWING THAT ITS AUTHENTICITY WAS IN DISPUTE

Courts in this Circuit have suggested that a "finding of fault or simple negligence is a sufficient basis on which a [c]ourt can impose sanctions against a party that has destroyed documents." *Melendres v. Arpaio*, No. CV–07–2513–PHX–GMS, 2010 WL 582189, at *5 (D.Ariz. Feb. 12, 2010) (citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfr'g Corp.*, 982 F.2d 363, 369 n. 2 (9th Cir.1992)) (cited with approval in *Surowiec* 790 F. Supp. 2d at 1008. Where the litigation is known to the spoliating party, that party's failure to suspend destruction of relevant documents constitutes gross negligence as a matter of law. *Surowiec,* supra.  That is what happened here.  AMEC knew breach of employment agreement litigation was pending, knew the Exhibit 1 employment agreement was the agreement claimed to have been breached, and AMEC destroyed the evidence seven months later.

## D.   RELEVANCY OF EVIDENCE

The original of the Employment Agreement is not only relevant, it is dispositive.

## E.  PREJUDICE

The prejudice inquiry "looks to whether the [spoliating party's] actions impaired [the non-spoliating party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Wiltec Guam, Inc. v. Kahaluu Constr. Co.,* 857 F.2d 600, 604 (9th Cir.1988) Here, the entire case hinges on which of the two competing employment agreements is a true copy of the original. With the original destroyed by AMEC, the prejudice to Plaintiff is immeasurable and irremediable.

## F.  APPROPRIATE SANCTION

"[A] proper spoliation sanction should serve both fairness and punitive functions." *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). See also *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995) (observing that a proper sanction will serve the "purpose[s] of leveling the evidentiary playing field and ... sanctioning the improper conduct").

A terminating sanction is available when "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir. 1995); see also *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). A finding of "willfulness, fault, or bad faith" is required for [terminating sanction] to be proper.

*Anheuser-Busch,* 69 F.3d at 348 (citation omitted) A party's destruction of evidence qualifies as willful spoliation if the party has "some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir.2002). Unequivocally, AMEC's destruction of the original at the time when AMEC knew that there were competing copies was both willful and in bad faith.

The 9th Circuit has established a five-part test to determine whether a terminating sanction is just: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir.1998) (citation omitted)

The first two factors favor a default judgment. Because the Court and the public have a strong interest in judicial efficiency and the prompt resolution of litigation, AMEC's failure to preserve evidence, and the resulting delay caused by the instant motion for sanctions, weigh in favor of default judgment. See *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 n. 5 (9th Cir.2006); *Surowiec*, supra.

The third factor—prejudice—"'looks to whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial or threatened to interfere with the rightful decision of the case.'" *Leon*, 464 F.3d at 959 (citation and brackets omitted).

Here, AMEC's destruction of the original document impaired Ms. Fords ability to go to trial AND threatens to interfere with the rightful decision of the case.

The fourth factor, as always, weighs against a terminating sanction.

The fifth factor also weighs in favor of a case-dispositive sanction since there are no lesser available sanctions. Here, the destruction of the original will force Plaintiff to rely on "incomplete and spotty" evidence at trial. *Leon*, 464 F.3d at 959 (quoting Anheuser–Busch, 69 F.3d at 354).

No less drastic sanctions can be useful because a ruling excluding evidence would be futile, and fashioning a jury instruction that creates a presumption in favor of Ms. Ford would leave Ms. Ford equally helpless to rebut any material that Plaintiff might use to overcome the presumption. *See Leon*, 464 F.3d at 960. Here, the destruction of the one original document upon which the entire case rests eclipses "'entirely the possibility of a just result.'" *In re Napster, Inc. Copyright Litig*., 462 F. Supp. 2d 1060, 1071 (N.D. Cal. 2006), citation omitted.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests entry of judgment by default in Plaintiff's favor for the sum of $1,442,108.28 and for a finding that the 1099 represents an offer, which Plaintiff accepted. For the Court's convenience, a proposed form of Order is attached.

RESPECTFULLY SUBMITTED this 23rd day of October, 2012.


**STROJNIK, P.C.**

_____
Peter Strojnik
Peter Kristofer Strojnik
Attorneys for Plaintiff