1        **UNITED STATES DISTRICT COURT**

2          **FOR THE DISTRICT OF ARIZONA**

3                 _____

4

5   **Stacy D. Ford-Kelly,**          )
                                       )   No. **CV 12-8085-PCT-NVW**
            Plaintiff,                 )

6                                      )
            vs.                        )   Phoenix, Arizona

7                                      )   September 28, 2012
    **AMEC Earth & Environmental**     )   2:02 p.m.

8   **Incorporated,**                  )
                                       )

9               Defendant.             )
    _____   )

10

11       **BEFORE:  THE HONORABLE NEIL V. WAKE, JUDGE**

12          <u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

13              (*Scheduling Conference*)

14  **APPEARANCES:**
    For the Plaintiff:

15          STROJNIK FIRM LLC
            By:  **Peter Strojnik**, Esq.

16          By:  **Peter Kristofer Strojnik**, Esq.
            2415 East Camelback Road, Suite 700

17          Phoenix, Arizona 85016

18  For the Defendant:
            LEWIS & ROCA LLP-Phoenix

19          By:  **Melanie V. Pate**, Esq.
            By:  **Alastair J. Gamble**, Esq.

20          40 N. Central Avenue, Suite 1900
            Phoenix, AZ 85004-4429

21
    Official Court Reporter:

22  Laurie A. Adams, RMR, CRR
    Sandra Day O'Connor U.S. Courthouse, Suite 312

23  401 West Washington Street, Spc 43
    Phoenix, Arizona 85003-2151

24  (602) 322-7256
    Proceedings Reported by Stenographic Court Reporter

25  Transcript Prepared by Computer-Aided Transcription

```
 1                    P R O C E E D I N G S

 2              THE COURTROOM DEPUTY:  This is Civil Action 12-8085,

 3      Ford-Kelly versus AMEC Earth and Environmental Incorporated.

 4              This is the time set for a scheduling conference.

 5      Counsel, please enter your appearances.

 6              MR. PETER STROJNIK:  Good morning, Your Honor.  My

 7      name is Peter Strojnik, Bar Number 6464.

 8              MR. PETER K. STROJNIK:  Peter Kristofer Strojnik for

 9      the plaintiff.

10              MS. PATE:  Good afternoon, Your Honor.  Melanie Pate

11      for the defendant, AMEC Earth and Environmental Incorporated.

12              MR. GAMBLE:  Your Honor, also Alastair Gamble for

13      AMEC.

14              THE COURT:  Good afternoon, counsel.

15              Initial disclosures have been exchanged, so we'll fill

16      that in as having been done.  For the pending motion to amend,

17      when is the response due to that, Ms. Pate?

18              MS. PATE:  It's due October 15th, Your Honor.

19              THE COURT:  So they just filed that.

20              MS. PATE:  Yes.

21              THE COURT:  Reply will be due October 25.

22              And counsel, I really am not contemplating any

23      continuances on that.  I want that briefed.  I want to rule on

24      it.

25              MS. PATE:  Absolutely.
```

September 28, 2012 - Scheduling Conference

1          THE COURT:  All right.  You know, just as a mechanical

2    thing, Ms. Pate, you say here you are going to file a Rule 11

3    motion.  I actually made a ruling about a month ago, a month

4    and-a-half ago, on an issue on that.  It was a Rule 11 motion

5    filed to challenge a complaint.  And in that case, I denied the

6    motion to dismiss, proceeded to -- I granted the summary

7    judgment, and then they served the motion.  I think there was a

8    bit of a fight over -- I think the plaintiff argued that the

9    Rule 11 motion was untimely because it wasn't filed in the 21

10   days.  I ruled, consistent with other cases, that you have to

11   serve the motion 21 days before you can file it, but in light

12   of the fact I denied the motion to dismiss, they didn't have to

13   file the motion.  They saved up the Rule 11 motion.  They filed

14   it after I granted summary judgment a year later.

15          So I -- you know, I don't know what you have in mind,

16   but I don't know what I'm going to do with that motion to

17   amend.  But you just need to think carefully about what you do

18   depending on what my rulings are.  Of course, that's up on

19   appeal.

20          And also Ms. Pate, you have got this -- you say here

21   you want to have some kind of an evidentiary hearing on the

22   alleged falsity of that contract.  I don't know how that would

23   work.  It sounds like a summary judgment motion on the merits

24   of the case.

25          MS. PATE:  Your Honor, this is a very unique case.

1  This is not a typical case where you have got, you know, a

2  dispute of facts.  This is an attempted fraud on this court.

3          THE COURT:  I know, but the point is, what you say is

4  the fraud is the whole basis of their lawsuit.  And I'm just

5  thinking through how could I decide that without and until

6  after dispositive ruling on the lawsuit on the merits of the

7  case?

8          MS. PATE:  Because they should not be allowed to amend

9  their complaint based on fraudulent -- the majority of the new

10  claims they propose to amend their complaint with are based on

11  a fraudulent Form 1099 that their client knows to be fraudulent

12  because the IRS sanctioned her for filing it with the IRS back

13  in November of 2011.

14          In addition to that, Your Honor, she did not, when she

15  was represented by herself, alone, she did not include

16  anything, not one word, about this Form 1099 or the alleged

17  settlement agreement.

18          THE COURT:  You know, I'm not getting to whether

19  that's true or not.  What -- I'm thinking through the

20  procedural context of this.  You are going to have to come up

21  with some authority for the Court to have an evidentiary

22  hearing and resolved disputed evidence on the Rule 11 motion.

23  We don't need to resolve it now, but when you get to it you are

24  going to have to demonstrate that the Court has authority to do

25  that.  Because it looks like it's the substance of their

─────────── September 28, 2012 - Scheduling Conference ───────────

1   lawsuit.  So anyway.

2           MR. GAMBLE:  Your Honor, in response to that, the case

3   cited in the joint management -- case management report on Page

4   8, *Greenberg v. Roberts*, another decision by the District of

5   Arizona, in that case they determined that the only way to

6   resolve, because it was, in fact, about fraudulent documents,

7   the best course to follow was to stay the litigation and have

8   an ad hoc evidentiary hearing on the veracity of the documents

9   before proceeding.  Otherwise, the defendant, in having to

10  defend themselves against the fraudulent claims would --

11          THE COURT:  On the other hand, isn't that exactly what

12  the jury trial would be about at the back end of the case?

13          MS. PATE:  No, because this case is unique because

14  we're talking about not one but two proposed documents that

15  are -- they are made up.  The plaintiff created them herself

16  and she knows that.  So to cause our client to go through

17  expensive litigation --

18          THE COURT:  I don't know what she knows, but it would

19  seem that most of the time one can determine on empirical

20  scientific basis whether documents are forged.  Not all the

21  time, but a lot of the times.

22          I was the victim of a forgery of my signature once

23  that led me to file a lawsuit.  And the problem, among others,

24  is they misspelled my name.  Now, that one was easy.  But --

25  well, we don't have to resolve that now.  But if you are going

———— September 28, 2012 - Scheduling Conference ————

1   to do that you need to demonstrate why the Court, how it is the

2   Court has the authority to, in effect, decide what looks like

3   the merits of the case as opposed to going the distance.

4          And by the way, I haven't heard from Mr. Strojnik, but

5   I assume what he's going to say is that your people are

6   perpetrating a fraud and it sure looks -- I don't have any idea

7   who is perpetrating the fraud, but it sure looks like somebody

8   is.  This is probably a case that would need to be referred to

9   the United States Attorney when it's over.  And I have no idea

10  who that would cut against.

11         MS. PATE:  We agree with you on that, Your Honor.

12         THE COURT:  So --

13         MS. PATE:  And we would hope that would be the case.

14         THE COURT:  You know, if there is, you know, you heard

15  what I said.  So that's what you need to demonstrate if you are

16  going to file that motion.

17         MS. PATE:  Absolutely.

18         THE COURT:  So I would expect to have that, if motion

19  is fully briefed by October 25, I would expect to have that

20  ruled upon within a couple of weeks, the variable being whether

21  I need to set an evidentiary hearing which would -- I could --

22  I would do that as quickly as I could if I conclude that that

23  is the right thing to do.  So even if I do that, it is going to

24  move fast.

25         So we'll plan on having -- we will have that motion

1    decided.  We will have, assuming it goes forward, we'll have an

2    answer to that amended complaint filed, you know, sometime in

3    December and then we're ready to go.

4         Now, what expert testimony is contemplated?  Let me

5    start with the plaintiffs.  I guess I would suppose depending

6    on whether it's at the trial at the back end or earlier on, we

7    would probably have some experts on questioned documents.  So

8    anything else?

9         MR. PETER STROJNIK:  Your Honor, obviously we would

10   have a document examiner who will look at both documents that

11   would claim to be fraudulent.  We claim the document --

12        THE COURT:  Speak into microphone, please.

13        MR. PETER STROJNIK:  I'm so sorry.  May I step up?

14        THE COURT:  Yes.

15        MR. PETER STROJNIK:  Again, Your Honor, the first and

16   the most important task which would be the document examiner

17   expert who both parties would have to hire to review the

18   documents that are allegedly fraudulent.  There is a secondary

19   issue that we don't know whether or not expert testimony would

20   be necessary, and that testimony would relate both to my

21   client's background and AMEC's background and relating to

22   similar kinds of issues that are arising in this case.

23        And if the Court will indulge me for just a minute, I

24   will give you a brief historical background on this.  This

25   case, when we first came in, appeared to be a relatively

1    straightforward case, a breach of contract case.  Damages are

2    pretty clear, judgment, execution, the case is done.

3         This case comes from Mohave County where it was

4    originally filed.  In Mohave County, AMEC also filed a motion

5    for sanctions of the type that is being contemplated here.  But

6    in that motion, nothing was said about anything fraudulent or

7    false documents because that wasn't on the radar yet at that

8    time.

9         When we became involved, we looked at the answer to

10   see whether or not fraud was an affirmative defense to the

11   claims by our client.  It was not asserted in the answer so we

12   did not have anything on the radar that this claim of

13   fraudulent documents was going to be raised.  And as the Court

14   knows, fraud is one of those affirmative defenses that have to

15   be filed.

16        On August 15, we received a letter from Ms. Pate, and

17   she said your client is a fraud, your Exhibit A is a fraud,

18   we're filing motions against you and your client, Rule 11

19   motion and all the rest.

20        Obviously, these are serious charges.  So as any

21   lawyer would have done, what we did was cross-examined our

22   client, and not in a nice way, cross-examined like she was the

23   other side to make sure that she understood, number one, the

24   severity of this issue; and number two, that we satisfied

25   ourselves that the document that she produced to us is the

1    correct document.

2              But that's not all that counsel has to do.  Counsel

3    also has to look at the other side to see whether or not there

4    are some issues on the other side where this sort of a pattern

5    had emerged in the past.  And we found six cases in which AMEC

6    has been convicted, judgment entered against, or a consent

7    agreement signed by AMEC for fraudulent documents.

8              THE COURT:  I doubt we're going to have a trial over

9    six other cases.

10             MR. PETER STROJNIK:  I understand.

11             THE COURT:  It should be about these documents here.

12   So my question is, what experts are contemplated other than

13   what you have already said?

14             MR. PETER STROJNIK:  We believe, Your Honor, that this

15   is -- that it is corporate culture of AMEC to do this when

16   adversity arises.  I do not know whether in a corporate culture

17   it calls for an expert at this point.  I have, frankly, never

18   been on this sort of a serious issue before any court in the 32

19   years I have been practicing.  But I believe that expert

20   testimony on that may be necessary.  And expert testimony on

21   corporate ethics would also become necessary.

22             THE COURT:  You know, Mr. Strojnik, gosh, what do I

23   run through, 400 civil cases a year.  We have trials all the

24   time.  The chances of the Court allowing you to do that are

25   pretty remote.  I don't have to judge that now, but that

1   doesn't sound like expert testimony material at all.  But this

2   sounds like a lawsuit over a contract and a document and with

3   the other things you have alleged.

4        So the reason I'm asking is I want to set a schedule

5   for expert disclosures.

6        MR. PETER STROJNIK:  There is one more issue, if I

7   may, Your Honor.  And that is we need an expert to look into

8   AMEC's computers to determine when the document they claim was

9   created was actually created.

10       THE COURT:  That can be done promptly.

11       MR. PETER STROJNIK:  Secondarily -- and I agree.

12   Secondarily, there has been a claim made that the contract

13   which they now claim is the correct document was e-mailed to my

14   client.  We will need an expert to determine if that is true.

15   And to do that, we need to get into AMEC's server.  We have

16   asked, obviously, for a copy of the e-mail.  We have not

17   received it.

18        The reason why I bring all of this up, Your Honor, is

19   also we are currently running into, as early in this case as

20   this is, into discovery issues.  We have requested information

21   about these alleged fraudulent documents and the responses we

22   received are simply, you are not entitled to that evidence.

23        THE COURT:  Well, you know, this is not a discovery

24   motion, but obviously, relevant that's directly probative of

25   these allegations of document creation, that's all the core of

─── September 28, 2012 - Scheduling Conference ───

1   this case.  The appropriate discovery needs to be done on that.

2        MR. PETER STROJNIK:  We can bring that up at a

3   different time unless, obviously, we can make arrangements.

4   That's our position on the matter.

5        THE COURT:  Ms. Pate.

6        MS. PATE:  Your Honor, just quickly in response to his

7   last point, we provided plaintiff, just this week, we have

8   provided over 500 pages of responsive documents.  With our

9   responses we have made every effort to be cooperative and

10  comply with this Court's orders and the Rules of Civil

11  Procedure.  Our firm would not bring up Rule 11 issues if we

12  did not believe it appropriate in this particular case.

13       THE COURT:  All right.  I understand.  But with

14  respect to planning for experts, and obviously, experts on

15  questioned documents and related computer experts and discovery

16  needs to be done promptly, there's no reason to delay any of

17  that.  That even goes to your Rule 11 motion.

18       MS. PATE:  Absolutely.

19       THE COURT:  Well, I suppose, Mr. Strojnik, I think

20  they are going to have a big fight with you about having a

21  lawsuit about all the other trouble this international company

22  has gotten into over the years.  And as you know, under the

23  rules, the Court is charged with determining the appropriate

24  scope of evidence and discovery in relation to the nature of

25  the case.  So I'm going to leave that to you all.

September 28, 2012 - Scheduling Conference

1        But you already heard my skepticism, Mr. Strojnik.

2   This is a -- this is actually a big case and the amount of

3   money that's claimed, contract for many years.  But the scope

4   of the case in terms of your probative discovery looks pretty

5   direct.  So if you all can't work that out, look at my

6   discovery procedure in my case management order.  But I will

7   deal with that when it comes up.  But I, frankly, don't see

8   this turning into a lawsuit about all the previous bad deeds of

9   AMEC.

10       So it would be enormously burdensome and costly of

11  little or no probative value to the direct issues in this case

12  that ought to be provable with direct evidence to scientific

13  evidence or -- I can't remember what case it was, but I had

14  this recollection of having a case before about -- it was all

15  about the timing of documents and it was all there in the

16  computer forensics.  It was great.  So simple lawsuit.

17       Anyway, I will set the more generous date, the

18  defendant's date, of February 15th for the initial expert

19  disclosures.  Frankly, we'll make that -- I sequence the

20  disclosures, so we'll put plaintiff's expert disclosures first

21  on February 15; defendant's by March 15; any purely rebuttal

22  expert disclosures by the plaintiff by March 29th.  And I

23  consider legitimate purely rebuttal expert disclosures to be

24  rare.  It's not an opportunity to beef up your initial

25  disclosures.  It's just to deal with things that you get from

September 28, 2012 - Scheduling Conference

1   the other side that could not have been fairly anticipated.

2   And -- actually, wait a minute.  I'm wrong.  I have got this

3   wrong.

4           We need to set two sequences of experts.  And what I'm

5   going to do now is going to be for all of the experts and we'll

6   set April 26 as the close of that expert discovery.

7           However, with respect to these allegedly forged

8   documents, there's no reason to delay that going forward.  And

9   all that discovery should be in hand, whatever -- the

10  defendants have already given the discovery.  Any documents you

11  have requested from the plaintiff?

12          MS. PATE:  Yes.  They just yesterday provided us with

13  documents that we requested from them.  I haven't made sure

14  they are entirely complete.  We just got them yesterday.

15          THE COURT:  Do you all have all the documents

16  exchanged with respect to the alleged forged document?

17          MR. PETER CHRISTOPHER STROJNIK:  No, Your Honor, we

18  don't.  Defendants are claiming in this action that this

19  alleged real contract that they have produced and created was

20  sent via e-mail.  We have asked for the e-mail.  But defendants

21  said, you didn't request it.  And I would think if they are

22  threatening Rule 11 sanctions, that they should provide every

23  evidence possible that would back up their claim that their

24  fraudulent document is allegedly correct.  Because that would

25  help everybody in determining.  It would help, it would not

September 28, 2012 - Scheduling Conference

1  conclude.

2      THE COURT:  Why not give them the e-mail in which you

3  sent the true contract to them?

4      MS. PATE:  Well, we have sent him several e-mails that

5  contain the true contract that were sent internally.  Because

6  that contract was sent by an administrative assistant over four

7  and-a-half years ago, we're still having to search for some of

8  these e-mails.  Some of them no longer exist, quite frankly.

9  But we are continuing to diligently and in good faith look for

10  them.

11      However, I just want to add I have provided him --

12  provided them with her -- a copy of her official personnel

13  file, a copy of the e-mail sending her actual employment offer

14  letter to another HR person four and-a-half years ago.  We have

15  provided them with ample evidence.  Not only that, but we have

16  also provided them with nine additional offer letters that were

17  sent to other employees around that period of time.

18      THE COURT:  So you are working on it?

19      MS. PATE:  Yes.  We are providing them everything we

20  can.

21      THE COURT:  And, of course, this issue about the

22  allegedly forged 1099 sent to the IRS, that wouldn't be your

23  documents, that would be their documents, right?

24      MS. PATE:  They are alleging that our company sent

25  that document to her.  We did not.  The IRS contacted AMEC,

─── September 28, 2012 - Scheduling Conference ───

1    like I said, in 2011, and they were asked whether that Form

2    1099 was issued by our company.  Of course, our company said no

3    and she was later sanctioned in November of last year, heavily.

4           THE COURT:  Right.  Anyway, I'm not going to be

5    judging what disclosure might be needed about that, but I

6    direct you both to move expeditiously with that.  And I want to

7    set a separate schedule for expert disclosures with respect to

8    these two allegedly forged documents so that we can get this

9    done promptly.  Because it might turn out that I have an

10   evidentiary hearing as you request on that.

11          So I don't know whether that's warranted or not.  So

12   why can't we -- well, Mr. Strojnik, I mean, this is the key to

13   your case.  Have you already consulted with an expert?  Do you

14   have an expert available?

15          MR. PETER STROJNIK:  We don't, Your Honor.  We

16   obviously need to get the original of the contract that the

17   other side claims to have.  We would like to see that.

18          THE COURT:  I don't think I can do this in time for

19   the motion.  I will have to have this motion briefed, and I

20   will decide after it's briefed what to do with it.

21          So if we move as quickly as possible on these alleged

22   forgeries, Mr. Strojnik, when would you suggest is the earliest

23   time I should require you to present your initial disclosure on

24   that?

25          MR. PETER STROJNIK:  That issue?  February of 2013.

UNITED STATES DISTRICT COURT

─── September 28, 2012 - Scheduling Conference ───

1        THE COURT:  Oh, I don't plan on waiting that long.

2        MR. PETER STROJNIK:  What is the Court's suggestion?

3        THE COURT:  Well, here we are at the end of September.

4   You know, I would think the end of November would be plenty of

5   time.  That's more than two months.  You are going to get

6   prompt disclosure of whatever it is from the defendants.  You

7   have already gotten some of it.  You get your guy on board, get

8   them on board tomorrow, or Monday, soon, next week.  And you

9   have them retained, you have the stuff to them promptly and you

10  could have a report.

11       MR. PETER STROJNIK:  May I suggest 60 days after the

12  disclosure has been made by defendants?

13       MS. PATE:  Your Honor, we have disclosed the original

14  offer letter in multiple forms.  The personnel file is kept

15  electronically in AMEC's Georgia human resources department.

16  We have sent them the .pdf of that entire personnel file.  They

17  have what they need to retain an expert.

18       THE COURT:  Here's what I'm thinking, counsel.  I will

19  give you both a chance to object, setting the plaintiff's

20  expert -- initial expert disclosures on the forgeries issue for

21  November 16 and defendant's by December 14.  Because I don't

22  make anybody do anything in the second half of the month of

23  December.

24       MS. PATE:  Thank you, Your Honor.

25       THE COURT:  So it will be done before that.  Any

UNITED STATES DISTRICT COURT

1   objection?

2        MR. PETER STROJNIK:  Your Honor, I'm not sure if I

3   understood counsel to say that the original has been disclosed.

4   For an expert to determine whether or not a signature on a

5   document is a valid signature, it is always best to have the

6   original because the original tells you how hard the person

7   pressed at the particular points of the signature.  And am I to

8   understand there is no original?

9        THE COURT:  The answer is there is what there is.  And

10  you are going to have to go with what there is.  And I'm

11  expecting both sides to move diligently and promptly on this

12  forgery issue.  And that means, Ms. Pate, that you are going to

13  have to be at the point where you said you have done everything

14  reasonable and this is all there is.  So if he wants to fight

15  over that he can.

16       MS. PATE:  We have done that, Your Honor.  We have

17  provided to them what they have asked.

18       THE COURT:  You don't have an inked original?

19       MS. PATE:  We do not have an inked original.  The

20  company does not keep original personnel files for terminated

21  employees in their original form.  They are .pdf copies made of

22  all those personnel files and they are stored electronically.

23       THE COURT:  All right.  I understand.  So it sounds

24  like if you don't quite have everything yet, Mr. Strojnik, you

25  might, and you are awfully close to it.  So I'm going to stand

─────────── September 28, 2012 - Scheduling Conference ───────────

1    by that schedule.

2           Now, with respect -- again, remember -- well, I am

3    really -- I'm not really seeing any other experts here other

4    than this.

5           MS. PATE:  I might add as well, they have not provided

6    an original of what the plaintiff purports to be her employment

7    contract.  There is a copy of this created document attached to

8    her complaint.  And that's the copy that we have.  So I don't

9    know that there is an original that she created.

10          THE COURT:  Mr. Strojnik, you have to do for her

11   everything you want her to do for you.

12          MR. PETER STROJNIK:  Of course.

13          THE COURT:  If you don't have originals, you have

14   to --

15          MR. PETER STROJNIK:  Your Honor, the reason we don't

16   have the original is because AMEC has them.  So to say I have

17   to come up with the original of the contract --

18          THE COURT:  If your client claims she had this value

19   contract and doesn't have a copy --

20          MR. PETER STROJNIK:  Of course she kept a copy.  We

21   have the copy.

22          MS. PATE:  And we don't have an original of that

23   because we did not create that document.

24          THE COURT:  You all need to do that.  And let me warn

25   you, with respect to discovery, this is true of every case for

1    everybody, you are obligated to proceed diligently and in good

2    faith.  If you have disputes you can bring them to the Court.

3    I have an accelerated process in my case management order that

4    tells you how to do that.  And I remind you all that under Rule

5    37 the Court is obligated to assess fees and will assess fees

6    in any discovery dispute against the party whose position is

7    not substantially justified.  I warn you all I want to see

8    diligence and good faith.  If there's an honest dispute there,

9    it's my job to decide it and you are not penalized from

10   bringing it to the Court.  But bear in mind it needs to meet

11   those criteria.

12           All right.  We'll accept your date of May 3rd.  No,

13   actually, I have to move it a little further because I gave you

14   until April 27th to close expert discovery on any other

15   experts?  I think that -- is that -- I think that's the date I

16   set.  So we'll give you until May 25 to file dispositive

17   motions.

18           MS. PATE:  Your Honor, just to clarify, is the

19   deadline for completion of all expert discovery, is that also

20   the completion of all fact discovery, final discovery?

21           THE COURT:  Actually, I'm looking in your proposed

22   schedule.  You don't have that in your --

23           MS. PATE:  We have a deadline of April 12 for

24   completion of fact discovery.

25           THE COURT:  Oh, indeed you do.

─ September 28, 2012 - Scheduling Conference ─

```
 1          I will make that April 27th, again, for the completion
 2   of fact discovery.  And, you know, I can't think of another
 3   case in the eight years I have been here like this, but it's
 4   hard for me to see how the parties could have a good faith
 5   settlement conference when both sides are accusing the other of
 6   a fraud that ought to result in criminal prosecution if not
 7   other sanctions.  So I'm wondering -- tell you what.  I'm going
 8   to wait until I rule on the motions to dismiss before
 9   considering again whether to impose this requirement of good
10   faith settlement conference.  All right.
11          THE COURTROOM DEPUTY:  Your Honor --
12          THE COURT:  Yes.
13          THE COURTROOM DEPUTY:  March 27th is a Saturday.
14          THE COURT:  I was looking at the wrong year on my
15   calendar.  We'll make that -- what date had I set?
16          THE COURTROOM DEPUTY:  Fact discovery.
17          THE COURT:  It was April 26 is the date I set for the
18   close of fact discovery and expert discovery, of 2013.  Thank
19   you for catching that.
20          Yes.
21          MR. PETER STROJNIK:  Your Honor, an issue just popped
22   up in my head.  You had indicated that we have to exchange all
23   documents relevant to this forgery issue.  Obviously, one of
24   the sets of documents would be the destruction policy by AMEC,
25   the destruction of documents.  What I would like to do is
```

─────── September 28, 2012 - Scheduling Conference ───────

1  simply write e-mails or letters and say could you please

2  provide --

3          THE COURT:  You know, counsel, I'm going to direct you

4  all to deal with that.  You can bring those issues to me if you

5  have disputes.  I'm expecting reasonable conduct from both

6  sides.

7          MR. PETER STROJNIK:  Thank you.

8          Again, what day did I set for the dispositive motion

9  deadline?

10          THE COURTROOM DEPUTY:  May 24.

11          THE COURT:  All right.  I will set a contingent date

12  of June 14th to submit a proposed joint final pretrial

13  statement, but that date will drop out if any dispositive

14  motions are filed to be reset if necessary after ruling on the

15  dispositive motions.

16          Now, I think that's everything on my list, isn't it?

17          Counsel, is there anything else either of you would

18  like to bring up that would assist us in processing the case?

19          MR. PETER STROJNIK:  No, sir.

20          MS. PATE:  Yes, sir.  We do have a question.  The

21  motion to amend that was filed on Wednesday night only has --

22  and I'm sorry, they both have the same name so I will refer to

23  them as Junior and Senior.  Mr. Strojnik, Jr., is the only one

24  on the caption and the only one who signed the pleading.  We

25  understand they are both counsel of record and so we would like

————— September 28, 2012 - Scheduling Conference —————

 1   some clarification as to why --

 2        THE COURT:  I think what you are asking for is for Mr.

 3   Strojnik, the elder, to file a notice of appearance and put his

 4   name on the pleadings.  Is that what you are asking for?

 5        MS. PATE:  He has filed a notice of appearance.  He

 6   did that in July.  But he is not on the motion to amend that

 7   was filed on Wednesday evening.  And our understanding is that

 8   all counsel of record are supposed to have --

 9        THE COURT:  Yes.  Mr. Strojnik, what about that?  Your

10   name should be on the pleading, correct?

11        MR. PETER STROJNIK:  Certainly, Your Honor.  May I

12   orally amend the motion to add my name to that particular

13   pleading?

14        THE COURT:  The record will show that Mr. Peter

15   Strojnik, the elder, orally has endorsed his signature upon the

16   motion and the proposed amended complaint.

17        MS. PATE:  Thank you, Your Honor.

18        THE COURT:  All right, counsel.  If there's nothing

19   else -- is there something else?

20        THE COURTROOM DEPUTY:  Good faith settlement?

21        THE COURT:  I have deferred setting that date.  I will

22   set it later after ruling on the motion to amend and dealing,

23   if I get a Rule 11 motion, which I may not get for the reasons

24   at least yet.  So we'll fill that date in as deferred to a

25   later time.

September 28, 2012 - Scheduling Conference

1          All right.  Thank you, counsel.

2          The clerk will please call the next case.

3          MS. PATE:  Thank you.

4          MR. PETER STROJNIK:  Thank you, Your Honor.

5          (Proceeding concluded at 2:37 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1

2

3

4

5                        C E R T I F I C A T E

6

7          I, LAURIE A. ADAMS, do hereby certify that I am duly

8   appointed and qualified to act as Official Court Reporter for

9   the United States District Court for the District of Arizona.

10          I FURTHER CERTIFY that the foregoing pages constitute

11  a full, true, and accurate transcript of all of that portion of

12  the proceedings contained herein, had in the above-entitled

13  cause on the date specified therein, and that said transcript

14  was prepared under my direction and control.

15          DATED at Phoenix, Arizona, this 22nd day of October,

16  2012.

17

18                              s/Laurie A. Adams

19                              _____
                                Laurie A. Adams, RMR, CRR

20

21

22

23

24

25