

1  Stacy D. Ford-Kelly
   1561 Mohican Dr
2  Lake Havasu City, AZ 86406
   928-505-4963
3  Plaintiff Pro Per

FILED
BY: _____

2011 JAN 14  PM 4: 36

VIRLYNN TINNELL
SUPERIOR COURT CLERK

4              **SUPERIOR COURT OF THE STATE OF ARIZONA**

5                        **COUNTY OF MOHAVE**

6
                                        | **Case No: CV-2010-07063**
7
8           **STACY D. FORD-KELLY,**
                    Plaintiff              **FIRST AMENDED CIVIL COMPLAINT in re:**
9                                          Violation of AEPA, Breach of Employment Contract,
                      v.                   Violation of AZ Drug Testing Law, Violation of the
                                           Whistle Blowing Act, Theft, Attempted Bribery, FLMA
10   **AMEC EARTH & ENVIRONMENTAL, INC.,**   Violation, Defamation of Character/Libel, Blacklisting,
                    Defendant              Privacy Act Violation, Sexual Harassment, Racial
11                                         Discrimination, Religious Discrimination, Punitive
                                           Damages for Financial, Emotional, Physical & Mental
12                                         Distress/Damages

13  COMES NOW, Stacy D. Ford-Kelly, in pro per for her complaint against the above named Defendant, alleges and states

14  as follows:

15
16      1.   Plaintiff, Stacy D. Ford-Kelly, resides at 1561 Mohican Drive, Lake Havasu City, AZ 86406.

17      2.   Defendant AMEC Earth & Environmental, Inc., a division of the International Corporation AMEC Holdings, is a

18           licensed Arizona Corporation located at 94 Acoma Blvd. S. #100, Lake Havasu City, AZ 86403. Defendant is a

19           corporation with a business office in Mohave County, State of Arizona, and that all matters and the obligation

20           hereinafter set forth incurred and is payable in Mohave County, State of Arizona.

21      3.   Original Civil Complaint was filed by the Plaintiff on April 15, 2010. On December 20, 2010, the Honorable

22           Randolph A. Bartlett ordered granting the Plaintiff's Motion to Amend Civil Complaint.

23      4.   That the amount of Plaintiff's claim is within the jurisdictional limits of this Court, the venue is proper, and

24           that the Defendant is liable for and/or has contractual obligations to Plaintiff which are to be carried out and

25           fulfilled in this jurisdiction.

26

L8015CV201007063

1

### FIRST CAUSE OF ACTION- BREACH OF CONTRACT

2

3

4

5

6

7

5. Plaintiff alleges that on or about January 21, 2008, the Defendant, AMEC Infrastructure, Inc. now known as AMEC Earth & Environmental, Inc., made and delivered to the Plaintiff an Employment Contract that was executed by both parties and that was effective January 28, 2008 and expires December 31, 2013 which is in the form and figures as set forth in Exhibit 1 attached hereto and by reference made a part hereof. Defendant violated Arizona Employment Protection Act of 1996 and breached the employment contract when they laid her off on April 21, 2009.

8

9

10

11

12

6. Employment contract became due and payable in full on April 24, 2009, which is three days after Plaintiff was involuntarily laid off and is eligible for rehire as set forth in Exhibit 2 attached hereto and by reference and made a part hereof. Balance due for remainder of employment contract is $455,672.93, which includes unpaid wages, bonuses, vacation, and sick pay for the remaining period of the employment contract; plus the eighteen months of Cobra in the amount of $24,830.28 for a total of $480,503.21.

13

14

15

16

17

7. Pursuant to A.R.S. 23-353(A), Payment of wages as stated in paragraph 6 for the period of the Employment Contract is due and payable in the amount of $480,503.21 is enforceable pursuant to A.R.S §23-1501(2) and A.R.S. § 23-1501(3)(a). Amount of recovery in accordance with ARS §23-255(A) of the amount owed is treble the unpaid wages, etc, ($455,672.93 x 3=$1,367,028.18) as set forth in Exhibit 3 & Exhibit 4 attached hereto and reference made a part hereof. Treble wages $1,367,018.78 plus Cobra $24,830.28 = $1,391,849.06.

18

### SECOND CAUSE OF ACTION- VIOLATION OF ARIZONA DRUG TESTING LAW

19

20

21

22

23

24

8. Plaintiff alleges that the Defendant violated A.R.S. § 23-493.04(D) by instituting a mandatory drug testing policy on January 01, 2008 as AMEC Infrastructure, Inc., was merging with AMEC Earth & Environmental, Inc. AMEC Earth & Environmental, Inc. does Homeland Security and other US Government projects. Plaintiff was subjected to pre-employment drug testing on 1/23/2008 as set forth in Exhibit 5 attached hereto and reference made a part hereof . All the other compensated employees, including officers, directors and supervisors admitted to Plaintiff they were not required to undergo drug testing or sign the Employee

25

26

Substance Abuse Policy Acknowledgment or participate in Supplemental Training for Employees Involved in U.S. Government Work as set forth in Exhibit 6 attached hereto and reference made a part hereof.

9. Plaintiff seeks relief for punitive damages in the amount of $70,000.00

### THIRD CAUSE OF ACTION- VIOLATION OF WHISTLE BLOWING ACT

10. Plaintiff alleges that her involuntary layoff on April 21, 2009 was in retaliation for two incidents of "Whistle Blowing". On April 16, 2009 Plaintiff's immediate supervisors discovered that Plaintiff had lodged formal complaints about the incidents involving overpriced construction costs/bid rigging by AMEC Earth & Environmental that is funded with Federal and State public funds to the Criminal Division of the Environmental Protection Agency as set forth in Exhibit 7 attached hereto and reference made a part hereof, Arizona Department of Environmental Quality (ADEQ) and the Arizona Board of Professional Registrants because AMEC did nothing to correct the matters that they are legally liable for as described below. Plaintiff's complaints of design errors that led to overpriced construction costs/bid rigging are backed up by the former oversight engineer Todd Connelly from RCI, Inc. as set forth in Exhibit 8 attached hereto and reference made a part hereof.

11. The first incident was notifying superior Nick Bokaie via telephone and then reiterated in an email dated August 28, 2008, as set forth in Exhibit 9 attached hereto and reference made a part hereof, that Plaintiff had discovered AMEC inspectors approved serious errors in the plans during construction of the Hillside Area of Lake Havasu City Wastewater Expansion Project that had already been completed. When Plaintiff brought her findings to her immediate supervisor, Darin Miller, he just said "Not good" and that there wasn't much we could do about it. The design errors were in violation of ADEQ minimum slope design requirements/standards.

12. The second incident occurred October 6, 2008 when Plaintiff had notified superior Nick Bokaie, whose PE stamp was on all documents and construction plans, via email as set forth in Exhibit 10 attached hereto and reference made a part hereof, that her immediate supervisor, Darin Miller, was insisting that the Engineering Report she was preparing for the Neptune Area of the Lake Havasu City Wastewater Sewer Expansion Project be submitted to ADEQ with construction material quantities that were known by Darin Miller and Plaintiff to be

incorrect. Plaintiff refused to submit the Engineering Report because it was unethical and illegal. Plaintiff also notified Nick Bokaie in the same email (Exhibit 10) that the Issue for Bid (IFB) plans and quantities in the Bid Package, which were to be included in the ADEQ submittal with the Engineering Report, had already been submitted to the Lake Havasu City Public Works Department and were currently being advertised for bid.

13. Both incidents are in violation of the Arizona Employment Protection Act of 1996, Whistleblower Protection Act of 1989, 40 C.F.R. 7.100(b), A.R.S. § 23-1501(3)(c)(i) and A.R.S. § 23-1501(3)(c)(ii). Plaintiff asks for punitive relief for damages in the amount of $5,000,000.00 for her termination being "malicious, willful, reckless, wanton, fraudulent, and/or in bad faith."

## FOURTH CAUSE OF ACTION -THEFT OF ORIGINAL CREDENTIALS

14. Plaintiff alleges that her work area was illegally searched on April 20, 2009 and resulted in the theft of Plaintiff's original BSCE Degree, original Engineering Certification License, official transcripts, and computer. The Plaintiff also alleges that her former supervisor, Darin Miller and former City Manager, Richard Kaffenberger, took part in the search looking for documentation that could prove the illicit activities. Kaffenberger has a history of unwarranted searches as set forth in Exhibit 11 attached hereto and reference made a part hereof.

15. These actions by Defendant are in violation of A.R.S. § 12-542.04. Plaintiff cannot get employment within the Civil Engineering field or finish her Master's Degree in Civil Engineering without all of the original professional credentials that were stolen and seeks punitive damages in the amount of $3,000,000.00

## FIFTH CAUSE OF ACTION-EXTORTION AND ATTEMPTED BRIBERY

16. Plaintiff alleges that Defendant committed extortion and attempted to bribe her by asking her to sign a Separation Agreement as set forth in Exhibit 12 attached hereto and reference made a part hereof and would in return receive her professional credentials consisting of Plaintiff's original BSCE degree, original Engineering Certification License and official transcripts that were stolen from her work area and an undisclosed amount of cash that were in an envelope on the desk in front of her.

17. Plaintiff refused to sign the agreement and seeks punitive damages in the amount of $3,000,000.00.

## SIXTH CAUSE OF ACTION- VIOLATION OF FMLA

18. Plaintiff alleges that the Defendant was laying her off due to the fact that she had exhausted all employment protected Family Medical Leave as set forth in Exhibit 13 attached hereto and reference made a part hereof. Defendant was mistaken, Plaintiff was on Non-FML Short Term Disability from December 22, 2008 through March 6, 2009, as set forth in Exhibit 14 attached hereto and reference made a part hereof, because she did not qualify for FML until January 28, 2009 and was informed of this in a letter from Defendant, as set forth in Exhibit 15 attached hereto and reference made a part hereof. Plaintiff was never offered FML by defendant, but if taken there would have been six weeks used out of twenty four weeks available, according to company policy, leaving an available balance of employment protected leave of 18 weeks.

19. Defendant's admitted reason for Plaintiff's involuntary layoff was a violation of FMLA governed by 29 U.S.C. 2615(a)(1). Plaintiff seeks statutory liquidated damages in the amount $43,905.60, which is two times eighteen weeks of salary at the time (2 x 18 x $1219.60 = $43,905.60)

   A.  Plaintiff cites *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001). The Ninth Circuit emphasized that Bachelder's lawsuit was governed by 29 U.S.C. 2615(a)(1), which prohibits an employer from "interfer[ing] with" an employee's FMLA rights. The court declared that an employer violates this provision any time it uses an employee's protected leave as "*a negative factor*" in an adverse employment action. The "negative factor" language comes from a DOL regulation which the court found worthy of deference. 29 C.F.R. 825.220(c). *Bachelder* is the first published appellate decision to expressly apply DOL's "negative factor" standard. America West's termination of Bachelder violated FMLA as a matter of law and she could recover statutory liquidated damages.

## SEVENTH CAUSE OF ACTION-DEFAMATION OF CHARACTER & LIBEL

20. Plaintiff alleges that Defendant publicized the Plaintiff in the Lake Havasu City Today's-News Herald newspaper article dated November 19, 2009 in such a way that it made her appear to be incompetent and a liar about the design errors, twisting her allegations around to make it sound as if Plaintiff had accused Defendant of corruption and misconduct. Plaintiff had actually turned the Defendant in for violation of design standards and

1    knowingly submitting false information to Local and State agencies. See Lake Havasu City Today's-News Herald

2    newspaper article dated November 19, 2009 as set forth in Exhibit 16 attached hereto and reference made a

3    part hereof.

4    21. Plaintiff seeks punitive damages for invasion of privacy false light tort claim for violation of the Privacy Act of

5    1974 in the amount of $3,000,000.00.

6
                        **EIGHTH CAUSE OF ACTION-VIOLATION OF THE PRIVACY ACT OF 1974**

7    22. Plaintiff alleges that Defendant revealed private information, without her consent a list of Plaintiff's former

8    employers to Charlie Cassens, LHC Interim City Manager and Cassens took it upon himself to contact Plaintiff's

9    former employers as stated in a memo from Mr. Cassens and publicized in the Lake Havasu City Today's-News

10   Herald newspaper article dated November 19, 2009 as set forth in Exhibit 16 attached hereto and reference

11   made a part hereof.

12
13   23. Plaintiff seeks punitive damages for invasion of privacy public release of private information tort claim for

     violation of the Privacy Act of 1974 in the amount of $3,000,000.00

14
15                              **NINTH CAUSE OF ACTION-BLACKLISTING**

16   24. Plaintiff alleges that Defendant took part in blacklisting Plaintiff by means of communication or transmittal

17   between two or more employers of labor, or their bosses, foremen, superintendents, managers, officers or

18   other agents, whether verbal or written, whereby the Plaintiff is being prevented or prohibited from engaging

19   in a useful occupation. Defendant and, including but not limited to, the LHC Public Works Department, whom

20   employ engineers, had communications about Plaintiff admittedly beginning May of 2009 in the Lake Havasu

21   City Today's-News Herald newspaper article dated November 19, 2009 as set forth in Exhibit 16 attached

22   hereto and reference made a part hereof.

23   25. Plaintiff seeks punitive damages in the amount of $3,000,000.00 for Defendant's violation of A.R.S. § 23-

24   1361(A).

25
26
                                                                          Page 6 of 11

## TENTH CAUSE OF ACTION-KNOWLEDGE OF SEXUAL HARRASSMENT

26. Plaintiff alleges that Defendant knew of sexual harassment in the workplace due to the fact that on two separate occasions Plaintiff immediately made a verbal complaint after each incident directly to her supervisor, Darin Miller, who was also present during the harassment and witnessed the harassment, both instances were involving Jim Satterwhite, a co-worker, who made sexual comments directly to Plaintiff and another time about Plaintiff to Darin Miller in the Plaintiff's presence. No actions were taken to correct or end Jim Satterwhite's unwanted sexual comments/advancements towards the Plaintiff, which is a violation of EEOC Laws/Regulations and AMEC's Code of Business Conduct as set forth in Exhibit 17 attached hereto and reference made a part hereof. Plaintiff filed an EEOC Complaint in September of 2009 and was given the right to sue by the EEOC in April of 2009 as set forth in Exhibit 18 attached hereto and reference made a part hereof.

27. Defendant violated Arizona Employment Protection Act of 1996, EEOC Laws/Regulations and AMEC's Code of Business Conduct. Plaintiff seeks relief for hostile work environment claim in the amount of $100,000.00 ($50,000.00 per incident), plus relief for Defendant acting with malice and reckless indifference in the amount of $200,000.00 ($100,000.00 per incident) and punitive damages in the amount of $5,000,000.00 ($2,500,000.00 per incident).

    A.   Plaintiff cites *Swenson v. Potter*, 2001 Daily Journal D.A.R. 12653 (9th Cir., November 30, 2001). The Court noted that notice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is "reasonably calculated to end the harassment." The employer failed to take prompt corrective action and awarded punitive damages.

    B.   Plaintiff cites *Miller v. Kenworth of Dothan*, 7 D.L.R. A-3to A-4 (11th Cir., January 10, 2002). The jury found in favor of Miller's claims of hostile work environment and that Kenworth acted with malice and reckless indifference awarding Miller monetarily for both claims. The Court readily admitted that Kenworth did have actual knowledge of harassment. Therefore, there was sufficient evidence to support the additional punitive damages award.

1

## ELEVENTH CAUSE OF ACTION- KNOWLEDGE OF RACIAL DISCRIMINATION

2

28. Plaintiff, of Native American decent, alleges that Defendant knew of a hostile work environment in the

3

workplace due to the fact that Plaintiff immediately made a verbal complaint directly to her supervisor, Darin

4

Miller, who was also present during the harassment and witnessed the harassment involving Sean Anderson, a

5

co-worker, who made racial slurs/comments to Plaintiff in the presence supervisor Darin Miller. No actions

6

were taken to correct Sean Anderson's unwanted racial slurs/comments towards the Plaintiff and no corrective

7

actions were taken by the Defendant to end the harassment, which is a violation of EEOC Laws/Regulations and

8

AMEC's Code of Business Conduct as set forth in Exhibit 17 attached hereto and reference made a part hereof.

9

Plaintiff filed an EEOC Complaint in September of 2009 and was given the right to sue by the EEOC in April of

10

2009 as set forth in Exhibit 18 attached hereto and reference made a part hereof.

11

29. Defendant violated EEOC Laws/Regulations and AMEC's Code of Business Conduct. Plaintiff seeks relief for

12

hostile work environment claim in the amount of $50,000.00, plus relief for Defendant acting with malice and

13

reckless indifference in the amount of $100,000.00 and punitive damages in the amount of $2,500,000.00.

14

A. Plaintiff cites *Miller v. Kenworth of Dothan*, 7 D.L.R. A-3to A-4 (11th Cir., January 10, 2002). The jury

15

found in favor of Miller's claims of hostile work environment and that Kenworth acted with malice and

16

reckless indifference awarding Miller monetarily for both claims. The Court readily admitted that

17

Kenworth did have actual knowledge of harassment. Therefore, there was sufficient evidence to

18

support the additional punitive damages award.

19

## TWELFTH CAUSE OF ACTION – KNOWLEDGE OF RELIGIOUS DISCRIMINATION

20

30. Plaintiff, a Christian, alleges that Defendant knew of a hostile work environment in the workplace due to the

21

fact that Plaintiff immediately made a verbal complaint directly to her supervisor, Darin Miller, who was also

22

present during the harassment and witnessed the harassment involving Jim Satterwhite, a co-worker, who

23

made negative religious slurs/comments about Plaintiffs religious preference in the presence of supervisor

24

Darin Miller. No actions were taken to correct Jim Satterwhite's unwanted negative religious slurs/comments

25

towards the Plaintiff and no corrective actions were taken by the Defendant to end the harassment, which is in

26

1    violation of EEOC Laws/Regulations and AMEC's Code of Business Conduct as set forth in Exhibit 17 attached

2    hereto and reference made a part hereof. Plaintiff filed an EEOC Complaint in September of 2009 and was given

3    the right to sue by the EEOC in April of 2009 as set forth in Exhibit 18 attached hereto and reference made a

4    part hereof.

5    31. Defendant violated EEOC Laws/Regulations and AMEC's Code of Business Conduct. Plaintiff seeks relief for a

6        hostile work environment claim in the amount of $50,000.00, plus relief for Defendant acting with malice and

7        reckless indifference in the amount of $100,000.00 and punitive damages in the amount of $2,500,000.00.

8        A.  Plaintiff cites *Miller v. Kenworth of Dothan*, 7 D.L.R. A-3to A-4 (11th Cir., January 10, 2002). The jury

9            found in favor of Miller's claims of hostile work environment and that Kenworth acted with malice and

10           reckless indifference awarding Miller monetarily for both claims. The Court readily admitted that

11           Kenworth did have actual knowledge of harassment. Therefore, there was sufficient evidence to

12           support the additional punitive damages award.

13

14   **THIRTEENTH CAUSE OF ACTION-FINANCIAL, PHYSICAL, EMOTIONAL & MENTAL DISTRESS/DAMAGES**

     32. Plaintiff alleges that Defendant's actions have caused irreversible financial, physical, emotional, mental

15       distress/damages to the Plaintiff as a result of losing her employment with Defendant. Defendant has two

16       daughters ages 11 and 15 at the time of her discharge. Plaintiff had 100% physical custody of her oldest

17       daughter and was unable to pay for an attorney when the father filed for a modification requesting full custody

18       along with the Plaintiff forgiving over $11,000.00 in back child support and $20,000.00 in back medical owed to

19       her. Plaintiff had 50% physical custody of and of her youngest daughter and was unable to pay for an attorney

20       when the father filed for a modification requesting full custody and support. Plaintiff lost any and all custody of

21       both of her daughters because she could not afford an attorney or travel to Idaho several times and the Idaho

22       courts denied her telephonic appearance and she now pays child support in the amount of $357.00 per month.

23       Plaintiff is convinced that these losses would have never happened if Defendant had not breached Plaintiff's

24       employment contract.

25

26

33. Plaintiff seeks relief of punitive damages for irreversible financial, mental, physical and emotional distress/damages in the amount of $4,250,000.00.

WHEREFORE, Plaintiff prays for Judgment against the Defendant(s) and on behalf of Plaintiff as follows:

   A.  Breach of Contract-Treble wages $1,367,018.78 plus COBRA $24,830.28 = $1,391,849.06

   B.  Punitive damages in the amount of $34,320,000.00

   C.  Statutory liquidated damages of $43,905.60

   D.  Relief for hostile work environment claim in the amount of $200,000.00

   E.  Malice and reckless indifference in the amount of $400,000.00

   F.  Total Principal Balance in the amount of **$36,355,754.66** plus interest at the legal rate of 10% per annum.

   G.  Pursuant to A.R.S. § 12-341.01, for Plaintiff's costs of suit incurred herein of court filing fee of $256.00 and any other costs associated in bringing this action to court.

   H.  For such other relief as the Court may deem just and proper.


Respectfully submitted this _14th_ day of January 2011.

_Stacy D. Ford-Kelly_
Stacy D. Ford-Kelly, Plaintiff

**OATH OR AFFIRMATION**

STATE OF ARIZONA    )
                    )ss.
County of Mohave    )

I, Stacy D. Ford-Kelly, declare under penalty of perjury that the information contained herein is true and correct to the best of my knowledge and belief.

_Stacy D. Ford-Kelly_                                    _01/14/2011_
Stacy D. Ford-Kelly, Plaintiff                          Date

Subscribed, sworn to (or affirmed) before me on this _14_ day of January 2011.

By: _Stacy Deann Ford Kelly_

My commission Expires:_____                   _____
                                                        Deputy Clerk / Notary Public

Copy sent via Certified Mail to each of the following:

      Statutory Agent for
      AMEC Earth & Environmental, Inc.
      CT Corporation System
      2394 E. Camelback Rd.
      Phoenix, AZ 85016

      Roger Jinks, President
      AMEC Earth & Environmental, Inc.
      502 W. Germantown Pike, STE 850
      Plymouth Meeting, PA 19462

      David Ott, Vice President
      AMEC Earth & Environmental, Inc.
      Midwest Plaza Building #1200
      800 Marquette Ave.
      Minneapolis, MN 55402

# PLAINTIFF'S

# EXHIBIT 1



January 21, 2008                                                    *Private & Confidential*

Stacy Ford
1720 Dearborn St. #4
Caldwell, ID 83605

Dear Ms. Ford,

On behalf of AMEC Infrastructure (AMEC), I am pleased to offer you the position of Design Engineer, reporting to me in the Lake Havasu, AZ office, effective January 28, 2008. If you need to change the date, we will be pleased to discuss one that is mutually acceptable.

The following will outline the terms and conditions of employment:

**Compensation Agreement**

- Status – Exempt; Contracted and salaried full-time employee.
- Contract of employment beginning January 28, 2008 and expires December 31, 2013.
- Starting salary is $2,384.62 payable on a bi-weekly basis, which annualizes to $62,000.12.
- Salary to increase to $85,000.00 beginning January 1, 2010, ending December 31, 2013 with a 2.25% annual minimum cost of living increase beginning January 1, 2011.
- The balance of monetary compensation of this contract due to you shall be paid in full within three business days if employment with AMEC ceases due to no fault of your own and is initiated by AMEC after the three-month probationary period. Balance of compensation is to include any accrued and future benefits ending December 31, 2013 for both vacation time and sick leave as outlined below. If such action takes place by AMEC you will also receive payment equivalent to 18 months of COBRA costs which will be included with the balance of this contract compensation due to you. If the remainder of contract is less than 18 months COBRA costs to be paid will be adjusted accordingly.
- You will receive a relocation allowance in the amount of $4,500.00 – the terms of this allowance are attached. Please sign and return with this employment agreement.

**Benefits**

Enclosed, please find the *Choices* Benefits Package that explains the benefits currently offered to AMEC regular, full-time employees. Upon your employment you will be immediately eligible for:
- Health insurance coverage, including medical, vision, dental and prescription drug.
- Participation in AMEC's 401(k) program.
- Flexible Spending Account.
- Employee Assistance Plan.
- Short Term Disability, Long Term Disability, Life Insurance, Accidental Death & Dismemberment Insurance.
- You will accrue annual vacation leave at a rate of 15 days per year or 4.62 hours bi-weekly.
- Holidays – AMEC observes 7 holidays per year plus 3 floating holidays throughout the year, the details of which are provided in the Employee Handbook.

**Background Screening and Employment Documentation**

It is AMEC's policy to provide a safe and secure work environment for both our employees and our clients. To that end it is the policy of AMEC that all offers of employment are contingent upon the successful completion of a background screening, drug screening and educational credentials

AMEC Infrastructure
94 Acoma Blvd South # 100
Lake Havasu City, AZ 86403
Phone: 928-854-8030
Fax: 928-854-8036                              www.amec.com

confirmation (where applicable). If any of the screenings returned are found to be in conflict with AMEC's policy we will discuss the results with you and determine if employment will continue. All screenings will be conducted within the guidelines of all state and federal legislation.

Employees are required to complete the Employment Eligibility Verification Form (I-9) attesting to their employment eligibility and must provide documentation to support their statement. Examples of acceptable proof of employment eligibility include a U.S. Passport, or both a valid State Driver's License and Social Security Card. Please bring these documents with you on the first day of your employment. If you do not have the documents mentioned you may contact the Human Resources Department for further information.

### Probationary Period and Employment Termination

AMEC has a three-month probationary period for all newly hired contracted and non-contracted regular, full-time and part-time employees during which time an employee's work performance and/or general suitability for AMEC employment will be evaluated. While we are confident that your employment with us will be a positive and mutually rewarding experience please understand that your employment, both during and after the probationary period, is not guaranteed for any specific amount of time and is terminable at will, which means that either you or AMEC may end the employment relationship at any time for any reason. Your employment relationship with AMEC is not terminable at will after the three-month probationary period if a contract of employment is outlined within the Compensation Agreement section on the first page of this offer of employment and will be in accordance with the Compensation Agreement.

### Severability

If any part of this offer of employment is held to be invalid, illegal, or unenforceable, the remaining provisions of this agreement will be enforced.

Further information regarding AMEC, its policies and programs will be provided during your orientation. Upon acceptance of the above and enclosed, please sign and return the enclosed copy of this letter, a completed application for employment and any other enclosed documents within seven business days to the Lake Havasu, AZ location. Please feel free to contact me should you have any questions.

We look forward to having you join us and wish you much success in your new position.

Sincerely,
**AMEC Infrastructure, Inc.**

**Chris Hassert**
**Unit Manager – Lake Havasu, AZ**

I have read and accept the offer of employment contained in this letter, including the referenced attachments.

Date _January 21, 2008_

Employee Signature _Stacy D. Ford_

2

# PLAINTIFF'S

# EXHIBIT 2

# Earth & Environmental



## Employee Action Form

| DATE 04-21-09 | EFFECTIVE DATE 04-21-09B | UNIT 6712D | EMPLOYEE NO. 506536 |
|---|---|---|---|

NAME OF THE EMPLOYEE Stacy Ford
EMAIL ADDRESS stacy.ford@amec.com          New Hire ☐ Rehire ☐ -enter 1st day worked ☒ Term)

## New Hires/Offer Proposal Information (Mark off all applicable boxes)

Level Title _____                     Work Location _____
Job Title _____                       Hours/week _____
☐ Regular, Full-Time (24 - 40 hr/wk)                     ☐ Exempt (salaried)        ☐ Nonexempt (hourly)
☐ Temporary, Full-Time (24 - 40 hrs/wk – Max. 6 mo.)*    Pay $_____ (biweekly if exempt / hourly if nonexempt)
☐ Regular, Part-Time (Max. 23 hr/wk)*                    Unit Billable (average 70% unit pricing work) ☐ Yes  ☐ No
☐ Temporary, Part-Time (Max. 23 hr/wk – Max. 6 mo.)*     Timesheet Approver /Supervisor _____
☐ On-Call (no set schedule or hours / no benefits) *not eligible for Choices benefits    Participation in: ☐ Driving Program ☐ Medical Surv. Program
Vacation Exception: ☐ 3 weeks ☐ 4 weeks                  ☐ Signing Bonus: $_____  ☐ Moving Allowance: $_____
*Please attach applicant resume or application

## Changes (Mark off all applicable boxes)

☐ New Level Title _____          ☐ New Job Title _____
☐ New Location _____             ☐ New Supervisor/Manager _____
☐ New Unit _____                 ☐ New Timesheet Approver _____
☐ Regular  or  ☐ Temporary                  ☐ Exempt to Nonexempt
☐ PT to FT (24 - 40 hr/wk) _____ hrs/wk    ☐ Nonexempt to Exempt (attach job description; prior HR approval)
☐ FT to PT (Max. 23 hr/wk / no benefits) _____ hrs/wk   ☐ New Hours per Week _____
☐ FT/PT to On-Call (no set schedule or hours / no benefits)   ☐ On-Call to FT or PT (circle one) _____ hrs/wk
☐. Employee requested  or  ☐ Employer requested, if due to lack of work contact HR

☐ Base Pay Change   Current Pay $_____     New Pay $_____ (biweekly if exempt / hourly if nonexempt)
  Reason for Change**   ☐ Merit Increase   ☐ Promotion   ☐ Market Adjustment _____ % Increase
  ** Attach appropriate documentation (i.e., market data if this is a adjustment) or use explanation area below

## Leave of Absence (Start- use first day not working. Return - use first day back. Attach appropriate documentation)

☐ Start Leave of Absence   Date: _____      Type: ☒ FMLA        ☐ Military
☒ Return from Leave of Absence   Date: 04-21-09          ☐ Personal   ☐ Lack of Work (Temporary Layoff)

## Terminations (Attach resignation letter/form. For separations attach documentation and final timesheets.)

☐ Resignation                              Separation Code [0]         (reference leave codes)
☐ Involuntary Separation – Term with cause   Eligible for rehire? ☒ Yes or ☐ No (If No is checked, please attach
☒ Involuntary Separation – Layoff                                              or provide explanation)

2 weeks sev. / 1 mo COBRA 1379.46*

**Explanations/Notes:** Ms. Ford has been on an extended FMLA leave beginning on 12-16-08. She has medical approval
to return to work tomorrow, 04-21-09. Since Ms Ford has been absent, her duties have been redistributed to other
personnel, and there is no need to reinstate her subsequent to her leave. She is being laid off coincidental with her return
✗ Dental F/F 120.82, ✗ OAP IN E/F 1240.93 ✗ Vision E/F ___ 7H

| AUTHORIZATIONS | WHEN REQUIRED | SIGNATURE | DATE |
|---|---|---|---|
| Unit Manager | All Changes | *signed* attached | April 20, 2009 |
| Area Manager | See Limits of Authority | | |
| Regional Manager | See Limits of Authority | | |
| Human Resources | Reviews All Changes; Concurrence per Limits of Authority | attached | |
| Exec. Vice- President | See Limits of Authority | | |

For Office Use Only: revised March 2006  ENTERED BY HR       Billing Class Code _____   EEO Code _____
☐ New Hire   ☐ Promotion                   254 Title _____   Headcount Title _____
☐ Rehire   ☐ Other          APR 1 7 2009   Accrual Rate _____ %   Continued Service date _____

| HR/Payroll Use Only | HR initial AC | ADP initial | RGT initial |
|---|---|---|---|

# PLAINTIFF'S

# EXHIBIT 3

|  | 2009 | 2010 | 2011 | 2012 | 2013 | TOTAL | TOTAL x 3 |
|---|---|---|---|---|---|---|---|
| UNPAID WAGES | $63,419.20 - $12,075.98 = $51,343.22 | $85,000.00 | $86,912.50 | $88,868.03 | $90,867.56 | $402,991.31 | $1,208,973.93 |
| UNPAID BONUS (6% OF GROSS WAGES) | $3,170.96 | $4,250.00 | $4,345.63 | $4,443.40 | $4,543.38 | $20,753.36 | $62,260.09 |
| HOURLY WAGE RATE | $30.49 | $40.87 | $41.78 | $42.73 | $43.69 | | |
| UNPAID VACATION (120 HOURS/YEAR) | $3,658.80 | $4,903.85 | $5,014.18 | $5,127.00 | $5,242.36 | $23,946.19 | $71,838.57 |
| UNPAID SICK LEAVE (40 HOURS/YEAR) | $1,219.60 | $1,634.62 | $1,671.39 | $1,709.00 | $1,747.45 | $7,982.06 | $23,946.19 |
| GRAND TOTAL | | | | | | $455,672.93 | $1,367,018.78 |

| UNPAID COBRA | # MONTHS | $/MONTH | TOTAL |
|---|---|---|---|
| | 18 | $1,379.46 | $24,830.28 |

# PLAINTIFF'S

# EXHIBIT 4



January 5, 2009

**PRIVATE & CONFIDENTIAL**

Stacy D Ford

Dear Stacy D Ford:

I am pleased to formally provide you with your employment changes for 2009.
Effective 12/27/08 your salary will be increased to $63,418.20. This will be
reflected on your 1/16/09 paycheck.

We thank you for being a significant part of our success in 2008 and look forward
to our continued collaboration as we move into 2009.

Sincerely,

**AMEC Earth & Environmental**

Mike Lywood

cc: Human Resources

James&Stacy Kelly <kelly.jamesstacy@gmail.com>

# AMEC paycheck

1 message

**Bennion, David B <David.Bennion@amec.com>**
To: kelly.jamesstacy@gmail.com

Fri, Apr 24, 2009 at 3:33 PM

Stacy:

Regarding your final check. The amounts you see on the pay statement for COBRA and Severance, are there because the checks for those amounts have already been cut. This is done so that in the event that you signed the agreement, the checks would be sent to you more quickly because they have already been produced.

There is a defined deadline established in the separation agreement during which you can execute the document and receive the severance pay and COBRA payment. In the event that you do not sign the separation agreement by that deadline, the checks will be voided and the amounts for COBRA and severance payments that appear on the pay statement received with your check will be backed out of the payroll system, and will not appear as part of your annual gross income.

Dave Bennion
SW Region HR Manager
Mesa, AZ
480-648-5331

The information contained in this e-mail is intended only for the individual or entity to whom it is addressed.
Its contents (including any attachments) may contain confidential and/or privileged information.
If you are not an intended recipient you must not use, disclose, disseminate, copy or print its contents.
If you receive this e-mail in error, please notify the sender by reply e-mail and delete and destroy the message.

**McKay, Lisa**

From:           Halladay, Mary
Sent:           Wednesday, August 19, 2009 4:08 PM
To:             Bell, Victoria; Driscoll, Kathy; McKay, Lisa
Subject:        Stop Pays

Case Number: 005273714
Co. Code: BFC
Co. Name: AMEC EARTH & ENVIRON

We have submitted the ADPCheck Stop Payment request(s) for:

~~~~~~~~~~~~~~~~~ 415.42 04/22/2009
506536 FORD,STACY D 1,379.46 04/22/2009
506536 FORD,STACY D 1,526.94 04/22/2009
~~~~~~~~~~~~~~~~ 862.08 03/11/2009

This case will be considered closed, but can be re-opened at any time if
further action is needed.

The following conditions apply to requests for ADPCheck stop payments:
() Payment can only be stopped on uncashed ADPChecks.
() The net amounts of ADPCheck stop payments are generally refunded within
three business days.
() The fee for ADPCheck stop payments is $25 per transaction.
Note: Placing a stop payment on an ADPCheck may not always protect you
against liability for the net amount of that check.

ADP is obligated to pay the net amount of a stopped check if:
() The check is cashed in good faith by a third party.
() The party cashing the check does not have visibility or knowledge that
the check is no longer valid.
If ADP must honor a stopped ADPCheck under these circumstances, ADP will
re-debit your account for the net amount.

If you do not intend to reissue the same net amount to the employee, a
reversal of the payroll transaction using manual check entries is
necessary.
() Reversing the check amounts via manual check entries will ensure the
accuracy of year-to-date amounts for employees.
() Accurate accounting for both employee and employer paid taxes is also
ensured.

If you need further assistance, select the applicable tab on the Support
Center and click Contact Us Online, or call your ADP Service Team.

Thank you,

ADP Client Services

1

Manual Checks - BFC 506536 Stacy D Ford

Hours/Earnings | Taxes | Deductions | Memos

OK

Cancel

Help

Pay #: A

Check #: 29438730

Transaction Type: Reversal of an existing check

Tax Frequency: B    Spread taxes over 2 weeks

Temp Dept: 006722

Regular Hours:              Regular Earnings:

Overtime Hours:             Overtime Earnings:

Other Hours/Earnings

| Code | Description | Hours | Earnings | Field # |
|------|-------------|-------|----------|---------|
| T | Severance | | -2,439.20 | 5 |
| ☑ | | | | |
| | | | | |
| | | | | |

Gross Pay:        -2,439.20
Taxes:              -912.26
Deductions:            0.00
Calculated Net:    -1,526.94

Net Pay:    -1,526.94

POSTED
AUG 18 2009

| CO. | FILE | DEPT. | CLK | NUMBER | 076 |
|-----|------|-------|-----|--------|-----|
| BFC | 506536 | 006722 | 1 | 0029438730 | 2 |

**Earnings Statement**

ADP

AMEC EARTH & ENVIRONMENTAL, INC.
11810 NORTH CREEK PKWY NORTH
BOTHELL, WASHINGTON 98011

Period Beginning:      04/04/2009
Period Ending:         04/17/2009
Pay Date:              04/24/2009

Taxable Marital Status:
Federal:        Married

Exemptions/Allowances:
Federal:        0,Tax Blocked

Social Security Number: XXX-XX-6402

STACY D FORD
1561 MOHICAN DR
LAKE HAVASU CITY AZ 86406

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Severance | | | 2,439.20 | 2,439.20 |
| Cobra | | | | 2,203.58 |
| **Gross Pay** | | | **$2,439.20** | 14,497.15 |

| Other Benefits and Information | this period | total to date |
|--------------------------------|-------------|---------------|
| G.T.L. | | 19.20 |
| Vacation Hours | | 0.00 |

**Additional Tax Withholding Information**
Taxable Marital Status:
AZ:        Single
Exemptions/Allowances:
AZ:        Tax is 19% of Federal

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Income Tax | -609.80 | 2,232.81 |
| | Social Security Tax | -151.23 | 858.87 |
| | Medicare Tax | -35.37 | 200.87 |
| | AZ State Income Tax | -115.86 | 424.24 |
| | **Other** | | |
| | Checking | | 910.72 |
| | Dental-Ppo | | 60.51 |
| | Dependent Life | | 1.56 |
| | Med-Oapin | | 579.03 |
| | Optional Life | | 31.65 |
| | Spouse Life | | 18.74 |
| | United Healthcr | | 24.03 |
| | **Net Pay** | | **$1,526.94** |

Your federal taxable wages this period are
$2,439.20

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

AMEC EARTH & ENVIRONMENTAL, INC.
11810 NORTH CREEK PKWY NORTH
BOTHELL, WASHINGTON 98011

BFC                            90-4182/1211
Payroll check number:  0029438730
Pay date:              04/24/2009

Pay to the
order of:    STACY D FORD
This amount:  ONE THOUSAND FIVE HUNDRED TWENTY-SIX AND 94/100 DOLLARS          $1526.94

ASSISTANCE WITH VERIFICATION AVAILABLE AT 877-423-7243

VOID AFTER 180 DAYS

Bank of America
Community Development Bank
1500 Newell Avenue, Suite 200,
Walnut Creek, CA 94596

ADP AUTHORIZED SIGNATURE

⑈29438730⑈ ⑆121141822⑆ 73135⑈10073⑈

**2009 W-2 and EARNINGS SUMMARY**

Visit the IRS Web site
at www.irs.gov/efile.

Employee Reference Copy

**W-2** Wage and Tax Statement **2009**
OMB No. 1545-0008

or C for employer's records

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 06536 74/BFC | 006722 | | T | 644 |

Employer's name, address, and ZIP code

AMEC EARTH &
ENVIRONMENTAL INC
11810 NORTH CREEK PRKWY
BOTHELL WA 98011

Batch #01698

Employee's name, address, and ZIP code

STACY D FORD
1561 MOHICAN DR
LAKE HAVASU CITY AZ 86406

| Employer's FED ID number 91-1641772 | Employee's SSA number 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 |
|---|---|
| 1 Wages, tips, other comp. 12075.98 | 2 Federal income tax withheld 1072.13 |
| 3 Social security wages 12075.98 | 4 Social security tax withheld 748.71 |
| 5 Medicare wages and tips 12075.98 | 6 Medicare tax withheld 175.10 |
| 7 Social security tips | 8 Allocated tips |
| 9 Advance EIC payment | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12 C| 24.00 |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp | Ret. plan | 3rd party sick pay |

| 15 State | Employer's state ID no. AZ 91-1641772 | 16 State wages, tips, etc. 12075.98 |
|---|---|---|
| 17 State income tax 203.71 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

---

This blue Earnings Summary section is included with your W-2 to help describe portions in more detail.
The reverse side includes general information that you may also find helpful.

**1. The following information reflects your final 2009 pay stub plus any adjustments submitted by your employer.**

| | | | | | |
|---|---|---|---|---|---|
| Gross Pay | 12715.55 | Social Security Tax Withheld Box 4 of W-2 | 748.71 | AZ State Income Tax Box 17 of W-2 | 203.71 |
| | | | | SUI/SDI Box 14 of W-2 | |
| Fed. Income Tax Withheld Box 2 of W-2 | 1072.13 | Medicare Tax Withheld Box 6 of W-2 | 175.10 | | |

**2. Your Gross Pay was adjusted as follows to produce your W-2 Statement.**

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | AZ State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | 12,715.55 | 12,715.55 | 12,715.55 | 12,715.55 |
| Plus GTL (C-Box 12) | 24.00 | 24.00 | 24.00 | 24.00 |
| Less Other Cafe 125 | 663.57 | 663.57 | 663.57 | 663.57 |
| Reported W-2 Wages | 12,075.98 | 12,075.98 | 12,075.98 | 12,075.98 |

**3. Employee W-4 Profile.** To change your Employee W-4 Profile Information, file a new W-4 with your payroll dept.

STACY D FORD
1561 MOHICAN DR
LAKE HAVASU CITY AZ 86406

Social Security Number: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
Taxable Marital Status: MARRIED

Exemptions/Allowances:
FEDERAL: 0    Tax Blocked
STATE:    Tax is 11.5% of Federal

© 2009 ADP, INC.

---

| 1 Wages, tips, other comp. 12075.98 | 2 Federal income tax withheld 1072.13 |
|---|---|
| 3 Social security wages 12075.98 | 4 Social security tax withheld 748.71 |
| 5 Medicare wages and tips 12075.98 | 6 Medicare tax withheld 175.10 |

| Control number 06536 74/BFC | Dept. 006722 | Corp. | Employer use only T | 644 |

Employer's name, address, and ZIP code

AMEC EARTH &
ENVIRONMENTAL INC
11810 NORTH CREEK PRKWY
BOTHELL WA 98011

| Employer's FED ID number 91-1641772 | Employee's SSA number 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 |

Social security tips | 8 Allocated tips
Advance EIC payment | 10 Dependent care benefits
Nonqualified plans | 12a See instructions for box 12 C| 24.00
Other | 12b / 12c / 12d | 13 Stat emp | Ret. plan | 3rd party sick pay

Employee's name, address and ZIP code

STACY D FORD
1561 MOHICAN DR
LAKE HAVASU CITY AZ 86406

| 15 State | Employer's state ID no. AZ 91-1641772 | 16 State wages, tips, etc. 12075.98 |
| State income tax 203.71 | 18 Local wages, tips, etc. |
| Local income tax | 20 Locality name |

**W-2** Wage and Tax Statement **2009**
Federal Filing Copy
OMB No. 1545-0008

---

| 1 Wages, tips, other comp. 12075.98 | 2 Federal income tax withheld 1072.13 |
|---|---|
| 3 Social security wages 12075.98 | 4 Social security tax withheld 748.71 |
| 5 Medicare wages and tips 12075.98 | 6 Medicare tax withheld 175.10 |

| d Control number 506536 74/BFC | Dept. 006722 | Corp. | Employer use only T | 644 |

c Employer's name, address, and ZIP code

AMEC EARTH &
ENVIRONMENTAL INC
11810 NORTH CREEK PRKWY
BOTHELL WA 98011

| b Employer's FED ID number 91-1641772 | a Employee's SSA number 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 |

7 Social security tips | 8 Allocated tips
9 Advance EIC payment | 10 Dependent care benefits
11 Nonqualified plans | 12a C| 24.00
14 Other | 12b / 12c / 12d | 13 Stat emp | Ret. plan | 3rd party sick pay

e/f Employee's name, address and ZIP code

STACY D FORD
1561 MOHICAN DR
LAKE HAVASU CITY AZ 86406

| 15 State | Employer's state ID no. AZ 91-1641772 | 16 State wages, tips, etc. 12075.98 |
| 17 State income tax 203.71 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

**W-2** Wage and Tax Statement **2009**
AZ State Reference Copy
OMB No. 1545-0008

---

| 1 Wages, tips, other comp. 12075.98 | 2 Federal income tax withheld 1072.13 |
|---|---|
| 3 Social security wages 12075.98 | 4 Social security tax withheld 748.71 |
| 5 Medicare wages and tips 12075.98 | 6 Medicare tax withheld 175.10 |

| d Control number 506536 74/BFC | Dept. 006722 | Corp. | Employer use only T | 644 |

c Employer's name, address, and ZIP code

AMEC EARTH &
ENVIRONMENTAL INC
11810 NORTH CREEK PRKWY
BOTHELL WA 98011

| b Employer's FED ID number 91-1641772 | a Employee's SSA number 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 |

7 Social security tips | 8 Allocated tips
9 Advance EIC payment | 10 Dependent care benefits
11 Nonqualified plans | 12a C| 24.00
14 Other | 12b / 12c / 12d | 13 Stat emp | Ret. plan | 3rd party sick pay

e/f Employee's name, address and ZIP code

STACY D FORD
1561 MOHICAN DR
LAKE HAVASU CITY AZ 86406

| 15 State | Employer's state ID no. AZ 91-1641772 | 16 State wages, tips, etc. 12075.98 |
| 17 State income tax 203.71 | 18 Local wages, tips, etc. |
| 19 Local income tax | 20 Locality name |

**W-2** Wage and Tax Statement **2009**
AZ State Filing Copy
OMB No. 1545-0008

CIGNA HealthCare, HII    Unit, C1MIG
900 Cottage Grove Rd.
Hartford, CT 06152



**CIGNA HealthCare**

JUNE 19, 2009

STACY FORD
84 ACOMA BLVD N # 100-34
LAKE HAVASU CITY, AZ  86403-6096

RE: Certificate of Group Health Plan Coverage

Dear STACY FORD:

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) is a federal act requiring employers and health insurance carriers to provide documentation of coverage when an individual loses health coverage or reaches a lifetime maximum applicable to all benefits under the plan. This letter will serve as your certification of prior coverage with CIGNA HealthCare. If you have just changed coverage to another CIGNA HealthCare product, you may disregard this certificate.

1.  Identification number of participant: 499613961356146
2.  Group health plan ID:  14649
3.  Name of group health plan: AMEC HOLDINGS, INC.
4.  Name of individual to whom this certificate applies: The participant named above to whom this certificate is addressed.
5.  If the individual to whom this certificate is addressed has at least 18 months of creditable coverage (disregarding periods of coverage before a 63 day break), check here ( ) and skip lines 6 and 7.
6.  Date waiting period or affiliation period (if any) began: This is generally your date of hire with your former employer (the group health plan named above). If you need to know what that date is, please call the number shown on line 9 below.
7.  Date coverage began:  01-28-2008
8.  Date coverage ended (or if coverage has not ended, enter con tinuing ):  04-30-2009
9.  For further information, call Member services at 1-800-244-6224.
10.  Name, address, and telephone number of plan administrator or issuer responsible for providing this certificate: The CIGNA HealthCare company listed at the top of this certificate.

This certification of coverage is based on information reasonably available to the administrator as of the date of this certificate of coverage. The administrator reserves the right to modify the information contained herein based on facts which are identified subsequent to the date of this notice. In all events, however, this certificate of coverage is evidence of prior health coverage and should not be used by any benefits providers, hospitals or other medical care providers for purposes of verifying any individual s coverage under the plan.

CIGNA HealthCare would like to thank you for giving us the opportunity to serve your health care needs and we hope to serve you again in the near future.

Sincerely,

ELIGIBILITY SERVICES

**All questions concerning this certificate should be directed to Member Services at 1-800-244-6224.**

A23291  03-05-2008

CIGNA HealthCare, H.  A Unit, C1MIG
900 Cottage Grove Rd.
Hartford, CT 06152

**CIGNA** HealthCare

JUNE 19, 2009

JAMES KELLY
84 ACOMA BLVD N # 100-34
LAKE HAVASU CITY, AZ  86403-6096

RE: Certificate of Group Health Plan Coverage

Dear JAMES KELLY:

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) is a federal act requiring employers and health insurance carriers to provide documentation of coverage when an individual loses health coverage or reaches a lifetime maximum applicable to all benefits under the plan. This letter will serve as your certification of prior coverage with CIGNA HealthCare. If you have just changed coverage to another CIGNA HealthCare product, you may disregard this certificate.

1.  Identification number of participant: 499613961356201
2.  Group health plan ID:  14649
3.  Name of group health plan: AMEC HOLDINGS, INC.
4.  Name of individual to whom this certificate applies: The participant named above to whom this certificate is addressed.
5.  If the individual to whom this certificate is addressed has at least 18 months of creditable coverage (disregarding periods of coverage before a 63 day break), check here ( ) and skip lines 6 and 7.
6.  Date waiting period or affiliation period (if any) began: This is generally your date of hire with your former employer (the group health plan named above). If you need to know what that date is, please call the number shown on line 9 below.
7.  Date coverage began:  11-03-2008
8.  Date coverage ended (or if coverage has not ended, enter con tinuing ): 04-30-2009
9.  For further information, call Member services at 1-800-244-6224.
10. Name, address, and telephone number of plan administrator or issuer responsible for providing this certificate: The CIGNA HealthCare company listed at the top of this certificate.

This certification of coverage is based on information reasonably available to the administrator as of the date of this certificate of coverage. The administrator reserves the right to modify the information contained herein based on facts which are identified subsequent to the date of this notice. In all events, however, this certificate of coverage is evidence of prior health coverage and should not be used by any benefits providers, hospitals or other medical care providers for purposes of verifying any individual s coverage under the plan.

CIGNA HealthCare would like to thank you for giving us the opportunity to serve your health care needs and we hope to serve you again in the near future.

Sincerely,

ELIGIBILITY SERVICES

**All questions concerning this certificate should be directed to  Member Services at 1-800-244-6224.**

A23291 03-05-2008

CIGNA HealthCare, Hl   . Unit, CIMIG
900 Cottage Grove Rd.
Hartford, CT 06152



**CIGNA HealthCare**

JUNE 19, 2009

BRITTANY FORD
84 ACOMA BLVD N # 100-34
LAKE HAVASU CITY, AZ  86403-6096

RE: Certificate of Group Health Plan Coverage

Dear BRITTANY FORD:

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) is a federal act requiring employers and health insurance carriers to provide documentation of coverage when an individual loses health coverage or reaches a lifetime maximum applicable to all benefits under the plan. This letter will serve as your certification of prior coverage with CIGNA HealthCare. If you have just changed coverage to another CIGNA HealthCare product, you may disregard this certificate.

1. Identification number of participant: 499613961356171.
2. Group health plan ID:   14649
3. Name of group health plan: AMEC HOLDINGS, INC.
4. Name of individual to whom this certificate applies: The participant named above to whom this certificate is addressed.
5. If the individual to whom this certificate is addressed has at least 18 months of creditable coverage (disregarding periods of coverage before a 63 day break), check here ( ) and skip lines 6 and 7.
6. Date waiting period or affiliation period (if any) began: This is generally your date of hire with your former employer (the group health plan named above). If you need to know what that date is, please call the number shown on line 9 below.
7. Date coverage began: 07-19-2008
8. Date coverage ended (or if coverage has not ended, enter con tinuing ): 04-30-2009
9. For further information, call Member services at 1-800-244-6224.
10. Name, address, and telephone number of plan administrator or issuer responsible for providing this certificate: The CIGNA HealthCare company listed at the top of this certificate.

This certification of coverage is based on information reasonably available to the administrator as of the date of this certificate of coverage. The administrator reserves the right to modify the information contained herein based on facts which are identified subsequent to the date of this notice. In all events, however, this certificate of coverage is evidence of prior health coverage and should not be used by any benefits providers, hospitals or other medical care providers for purposes of verifying any individual s coverage under the plan.

CIGNA HealthCare would like to thank you for giving us the opportunity to serve your health care needs and we hope to serve you again in the near future.

Sincerely,

ELIGIBILITY SERVICES

**All questions concerning this certificate should be directed to Member Services at 1-800-244-6224.**

A23291  03-05-2008

CIGNA HealthCare, H.   . Unit, C1MIG
900 Cottage Grove Rd.
Hartford, CT 06152

**CIGNA HealthCare**

JUNE 19, 2009

ARIANNE KELLY
84 ACOMA BLVD N # 100-34
LAKE HAVASU CITY, AZ 86403-6096

RE: Certificate of Group Health Plan Coverage

Dear ARIANNE KELLY:

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) is a federal act requiring employers and health insurance carriers to provide documentation of coverage when an individual loses health coverage or reaches a lifetime maximum applicable to all benefits under the plan. This letter will serve as your certification of prior coverage with CIGNA HealthCare. If you have just changed coverage to another CIGNA HealthCare product, you may disregard this certificate.

1. Identification number of participant: 499613961356191
2. Group health plan ID:  14649
3. Name of group health plan: AMEC HOLDINGS, INC.
4. Name of individual to whom this certificate applies: The participant named above to whom this certificate is addressed.
5. If the individual to whom this certificate is addressed has at least 18 months of creditable coverage (disregarding periods of coverage before a 63 day break), check here ( ) and skip lines 6 and 7.
6. Date waiting period or affiliation period (if any) began: This is generally your date of hire with your former employer (the group health plan named above). If you need to know what that date is, please call the number shown on line 9 below.
7. Date coverage began:  11-03-2008
8. Date coverage ended (or if coverage has not ended, enter con tinuing ):  04-30-2009
9. For further information, call Member services at 1-800-244-6224.
10. Name, address, and telephone number of plan administrator or issuer responsible for providing this certificate: The CIGNA HealthCare company listed at the top of this certificate.

This certification of coverage is based on information reasonably available to the administrator as of the date of this certificate of coverage. The administrator reserves the right to modify the information contained herein based on facts which are identified subsequent to the date of this notice. In all events, however, this certificate of coverage is evidence of prior health coverage and should not be used by any benefits providers, hospitals or other medical care providers for purposes of verifying any individual s coverage under the plan.

CIGNA HealthCare would like to thank you for giving us the opportunity to serve your health care needs and we hope to serve you again in the near future.

Sincerely,

ELIGIBILITY SERVICES

All questions concerning this certificate should be directed to Member Services at 1-800-244-6224.

A23291 03-05-2008

CIGNA HealthCare, HIPAA Unit, C1MIG
900 Cottage Grove Rd.
Hartford, CT 06152



**CIGNA HealthCare**

JUNE 19, 2009

TAYLOR KELLY
84 ACOMA BLVD N # 100-34          *(mailing address)*
LAKE HAVASU CITY, AZ  86403-6096

*home address is:*
*1561 Mohican Dr.*
*Lake Havasu, AZ.*
*86406*

RE: Certificate of Group Health Plan Coverage

Dear TAYLOR KELLY:

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) is a federal act requiring employers and health insurance carriers to provide documentation of coverage when an individual loses health coverage or reaches a lifetime maximum applicable to all benefits under the plan. This letter will serve as your certification of prior coverage with CIGNA HealthCare. If you have just changed coverage to another CIGNA HealthCare product, you may disregard this certificate.

1. Identification number of participant: 499613961356181
2. Group health plan ID:  14649
3. Name of group health plan: AMEC HOLDINGS, INC.
4. Name of individual to whom this certificate applies: The participant named above to whom this certificate is addressed.
5. If the individual to whom this certificate is addressed has at least 18 months of creditable coverage (disregarding periods of coverage before a 63 day break), check here ( ) and skip lines 6 and 7.
6. Date waiting period or affiliation period (if any) began: This is generally your date of hire with your former employer (the group health plan named above). If you need to know what that date is, please call the number shown on line 9 below.
7. Date coverage began:  11-03-2008
8. Date coverage ended (or if coverage has not ended, enter con tinuing X  04-30-2009
9. For further information, call Member services at 1-800-244-6224.
10. Name, address, and telephone number of plan administrator or issuer responsible for providing this certificate: The CIGNA HealthCare company listed at the top of this certificate.

This certification of coverage is based on information reasonably available to the administrator as of the date of this certificate of coverage. The administrator reserves the right to modify the information contained herein based on facts which are identified subsequent to the date of this notice. In all events, however, this certificate of coverage is evidence of prior health coverage and should not be used by any benefits providers, hospitals or other medical care providers for purposes of verifying any individual s coverage under the plan.

CIGNA HealthCare would like to thank you for giving us the opportunity to serve your health care needs and we hope to serve you again in the near future.

Sincerely,

ELIGIBILITY SERVICES

**All questions concerning this certificate should be directed to  Member Services at 1-800-244-6224.**

A23291  03-05-2008

# PLAINTIFF'S

# EXHIBIT 5

26Jan 2008 05:14 FROM:919-57    '30    TO:14250205634    La)    : 800-833-3904 PAGE 001

To: AMEC EARTH & ENVIRONMENTAL          From: LABCORP OTS - SAN DIEGO
    11335 NE 122ND WAY                        13112 EVENING CREEK DR. S.
    SUITE 100                                 SAN DIEGO, CA  92128
                                              800-882-7272 // 858-668-3710
    KIRKLAND          WA 98034

Laboratory Accession No.  269660436    Collected       23-JAN-08 @ 11:30
Specimen ID Number        0269660436   Received        25-JAN-08 @ 21:27
Donor's Social            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  Reported        26-JAN-08 @ 02:10
Employee ID                            Reason For Test    Pre-Employment
First Name                    STACY    Account                    903653
Last Name                     FORD     Location                  ·903653
Temperature In Range          Y        Location Phone   (425) 820-4669
Donor's Temperature                    P.O.                         OPEN
Donor's Phone #     (208) 389-8087     Collector's Phone (928) 855-4077

Client:              HRP/AMEC EARTH & ENVIRON
Coll. Site:          LABCORP - LAKE HAVASU CITY, AZ
Site ID:             S00735
Acct. Type:          Non-DOT
Location:            AMEC EARTH & ENVIRON


*********************SPECIMEN TEST RESULTS*************************

| Test(s) | Screening Cutoff | Confirm Cutoff | Confirm Quant | Unit | Result |
|---|---|---|---|---|---|
| Amphetamines | 1000 | 500 | | ng/mL | negative |
| Cocaine^ | 300 | 150 | | ng/mL | negative |
| Marijuana Metab. | 50 | 15 | | ng/mL | negative |
| Opiates | 2000 | 2000 | | ng/mL | negative |
| PCP | 25 | 25 | | ng/mL | negative |

^as Benzoylecgonine


***** End of Report *****


RT: Chris Hassert
Stacy Jovett
6712
☑ Added to spreadsheet

**Earth & Environmental**



> **Employee Acknowledgment**
> **Signature Page**

| Employee Name | *Stacy D. Ford* |
|---|---|

## EMPLOYEE HANDBOOK ACKNOWLEDGMENT

I have been assigned the AMEC Earth & Environmental, Inc. (AEE) Employee Handbook, and I understand that I am expected to read it and to become familiar with its contents. As in any organization, policies, procedures and reporting structures are changed from time to time. The handbook has been designed to accommodate those changes. Updates will be issued to all employees, with a cover letter indicating where in the handbook the new page(s) should be inserted and what page(s) it will replace. I understand that I will be responsible to keep my own handbook updated so that it will continue to be a useful document. If at any time I do not understand any of the policies or procedures outlined in this manual, or future revisions to this manual, I will seek clarification from my supervisor or human resource representative.

It has been explained to me that it may be necessary, as a condition of employment, to take and pass a physical examination to assure that I have the physical capability of performing the requirements of my position and to assure that I am not taking illegal drugs. During the course of my employment it may be required for me to take further physical exams to assure that my health is not being affected by my duties and that I remain free from illegal drug usage. Also, if I must drive on company business I understand that my driving record may be checked periodically and that my continued employment may be predicated on maintaining a good driving record. I hereby authorize AEE to be the custodian of the reports of my physical condition and driving record, and in return AEE assures me the information contained in these reports will be treated with the same regard for confidentiality that all other private matters pertaining to employees are accorded within the firm.

I understand that these policies can be changed at any time, with no prior notice being required. Also, they serve as guidelines only and AEE reserves the right to interpret any ambiguity.

| *Stacy D. Ford* | *01/28/2008* |
|---|---|
| Employee Signature | Date Signed |

## EMPLOYEE SUBSTANCE ABUSE POLICY ACKNOWLEDGMENT

I have carefully and thoroughly read AMEC Earth & Environmental, Inc. (AEE) substance abuse policy. I have received a copy of this policy, understand its requirements and intend to abide by its contents.

| *Stacy D. Ford* | *01/28/2008* |
|---|---|
| Employee Signature | Date Signed |

 

## CODE OF BUSINESS CONDUCT

## STATEMENT OF ACKNOWLEDGMENT FOR ALL EMPLOYEES

I acknowledge that I have read and understood the AMEC Americas Code of Business Conduct (current version posted on AMECnet).

I acknowledge that I have completed the mandatory training on the Code of Business Conduct. (Training is available through the web-based tutorials on AMECnet or by attending a facilitated training session.)

I have been given an opportunity to raise and discuss any ethics-related concerns with my manager (or other appropriate official) as part of this sign-off procedure. I confirm that I will abide by this Code of Business Conduct with respect to all matters related to my employment with AMEC.

_Stacy D. Ford_
(Print Name)

_Stacy D. Ford_
(Signature)

_6712_
(Unit/Department)

_01/28/2008_
(Date)

## SUPPLEMENTAL TRAINING
## FOR PERSONNEL INVOLVED IN U.S. GOVERNMENT WORK

I have been designated, by my Manager or local Commercial Manager, as an employee who is required to sign this portion of the Code of Business Conduct. I acknowledge that I have read and understood the 'AMEC Americas Code of Business Conduct Supplement for Personnel Involved in U.S. Government Work'.

I acknowledge that I have either attended the training session on the Supplement (where required in designated AMEC work locations) or have reviewed the Supplement video.

I have been given an opportunity to raise and discuss any ethics-related concerns with my manager (or other appropriate official) as part of this sign-off procedure. I confirm that I will abide by the 'Code of Business Conduct Supplement for Personnel Involved in U.S. Government Work' with respect to all matters related to my employment with AMEC.

_Stacy D. Ford_
(Print Name)

_Stacy D. Ford_
(Signature)

_6712_
(Unit/Department)

_01/28/2008_
(Date)

# PLAINTIFF'S

# EXHIBIT 7



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

**FEB 2 4 2010**

OFFICE OF
ENFORCEMENT AND
COMPLIANCE ASSURANCE

Mrs. Stacey D. Ford-Kelly
1561 Mohican Drive
Lake Havasu City, AZ 86406

Dear Mrs. Ford-Kelly

    This letter responds to the information you provided on January 14, 2010 to the Environmental Protection Agency's Criminal Investigation Division (CID) regarding alleged criminal violations involving Lake Havasu City.  CID forwarded your information to its San Francisco Area Office for review and whatever investigative action is deemed necessary.

    Thank you for providing the information.  If you have any additional information regarding this matter, please forward it to U.S. EPA Criminal Investigation Division, San Francisco, CA  94105-3901.  If you prefer to speak to someone, please call (415) 947-8713.

    Sincerely,

*Ella R. Barnes*

Ella R. Barnes
CID Director

cc:  Nick Torres, SAC

# PLAINTIFF'S

# EXHIBIT 8

Gmail

# FW: AMEC July 2 2009 WWSE Assumptions and Methods

1 message

**Todd Connelly <todd@rci-nv.com>**
To: Stacy.deann71@gmail.com

Mon, Aug 17, 2009 at 12:23 PM

Stacy,

Attached are the comments that are the foundation to my August 11, 2009 Council presentation. As you may note, the errors and misleading statements referenced are very obvious. Nevertheless, AMEC used the revised criteria in the Final Master Plan Update - specifically Chapter 8. The incorrect data forms the conclusions and recommendations in the Master Plan Update to indicate there is adequate capacity, as designed.

Please note, my presentation was boring, but I read this information "into the record". Although the Mayor did not want to hear it, the information demonstrates that AMEC and Public Works Staff knowingly and willingly used false information, which is detrimental to the public interest. The documents cited are contained in the Final Master Plan Update - principally Chapter 8 and Appendices No. 9 and 15.

Thanks.
Todd

**From:** Todd Connelly
**Sent:** Wednesday, July 15, 2009 7:47 AM
**To:** 'nexsenm@lhcaz.gov'; 'Richard Kaffenberger'; 'dennis'; 'Martha Bennett'
**Cc:** 'Garcia, Albert (PhD, PE)'; 'Lywood, Mike'
**Subject:** AMEC July 2 2009 WWSE Assumptions and Methods

Dear All,

I apologize to contribute to an impasse in an apparent technical issue that has been ongoing for the past two-and-one-half years, but RCI's concerns for implications to the City and the ratepayers should not be dismissed by recent communications. RCI's original concerns were associated with the serial pumping system concept. The Draft Master Plan Update expands RCI's concerns to a significant portion of the gravity sewer system. Although the numbers used for modeling are changing, the implications to the sewer system, as depicted in the Draft Master Plan Update, should not be taken lightly.

It appears that the July 2, 2009 letter and the July 7, 2009 from AMEC's legal representative (attached) may be considered a response to the issues and concerns raised at the June 9, 2009 and June 16, 2009 OC meetings. The recent communications do not address or resolve the specific issues addressed to the Palm Tree Design Report, the 30% Sweetwater/Hagen Pump Station Design Report, or the Draft Master Plan Update's modeling. Although shooting the messenger may be an option; it still does not resolve the OC's recommendation to promptly address the issues presented at the June 9, 2009 OC meeting.

Attached are RCI's comments to the recommenedations for design and modeling assumptions.

If you have any questions or comments, please don't hesitate to contact me.

Thanks,
Todd

**2 attachments**

📄 **06-803.2 AMEC attorney ltr20090713090735.pdf**
62K

📄 **July 2 PF - RCI Comments.doc**
57K

WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
ATTORNEYS AT LAW

8000 Howard Hughes Parkway
Suite 400
Las Vegas, Nevada 89169

Telephone: 702-789-3100
Facsimile: 702-822-7650
www.wthf.com

JUL - 9 2009

RESOURCE CONCEPTS, INC.

July 7, 2009

Resource Concepts, Inc.
Bruce Scott, Principal
Todd Connelly, Senior Engineer
340 N. Minnesota Street
Carson City, NV 89703

Re:  Wastewater Sewer Expansion - Capital Improvement Project
     Client: AMEC

Dear Messrs Scott and Connelly:

This office represents AMEC in regards to the above-referenced project (the "Project"). We have been forwarded Resource Concepts, Inc.'s ("RCI") June 12, 2009 Status Report to Richard Kaffenberger, Lake Havasu City Manager, and must make you aware of our client's legal concerns regarding the statements and accusations contained therein.

While AMEC understands that RCI's role is to provide observations and recommendations to the Lake Havasu City (the "City"), such statements should remain factual, and should not be based on speculation or some other malicious intent. Accusations that AMEC is failing to provide accurate information and attempting to mislead the City are unprofessional, malicious, and libelous.

Further, RCI's insinuation that AMEC has been dismissive of certain technical considerations and has failed to provide professional and technically sound services is purely opinionated, and should not be asserted as fact.

We expect that in the future RCI will keep its representations factual, and will withhold speculative, willfully misleading, defaming and libelous accusations concerning AMEC from its reports. If RCI's tortuous actions continue, AMEC will seek legal recourse.

Very truly yours,

Justin L. Watkins

JW

LASVEGAS 8756.1 9889.009

Tysons, VA          McLean, VA          San Francisco, CA          Frankfurt, Germany

RCI Comments to the July 2, 2009 Letter
RE: Lake Havasu City WWSE Program Assumptions and Methods

The following represents comments and concerns related to the July 2, 2009 letter.

WWSE Boundaries

The following citations are taken from the July 2, 2009 letter regarding WWSE
boundaries and its relationship to design flow determinations.

- (p. 1 of 16) *Until recently, the WWSE program was based entirely on using the City Limits as the service boundary. Previous designs and construction efforts were based on this service boundary.*
- (p. 3 of 16) *Prior to the submission of the 2009 Draft Master Plan Update, all design was based on the area bounded by the City Limits. The 2009 Draft Master Plan Update recommends extending the service boundary to coincide with the Section 208 Plan.*
- (p. 4 of 16) *For the detailed design of the collection system, AMEC applied these design criteria assuming full build out of all contributing areas and 100 percent occupancy thereby ensuring that the gravity pipes being designed will have sufficient carrying capacity for the projected full build-out condition peak flows.*
- (p. 8 of 16) Table 1, Detailed Design Assumptions column, regarding Boundaries: *City Limits/208 Plan*
- (p. 10 of 16) Table 1A, regarding Boundaries, Footnote 3, ...*Prior to and including the Palm Tree area City limits were utilized to size the sewers in the design area under review...*
- (p. 15 of16) *Until recently, the WWSE program was based entirely on using the City Limits as the service boundary. Previous designs and construction efforts were based on the service area boundary.*

The Draft Master Plan Update, dated May 1, 2009 states on pages 4, 12, 54, and 67 that the WWSE program boundary is the Expanded Water Service Area boundary. The Draft Master Plan Update also states the source of the information as the 1998 Phase II Comprehensive Wastewater Master Plan and the 2001 Phase II Comprehensive Wastewater Master Plan Update.

In **Appendix 7** of the Draft Master Plan Update, the land use tables indicate 25,633 total acres for the City Limits, 29,483 total acres for the Expanded Water Service Area, and 36,501 total acres for the 208 Plan area. There is a 42.4% increase in land use area from the City Limits to the 208 Plan area. There is a 23.8% increase in land use area from the Expanded Water Service Area to the 208 Plan area. The July 2, 2009 boundary discrepancy offers an explanation for lower flows in previous detailed design reports. The discrepancy also overstates increased City responsibility, and possible costs, when considering expansion to the 208 Plan boundary. This "factual" information is inaccurate and untrue.

*[Note: Inaccurate depictions of important information have occurred in the past. For example, information from the 2006 CIP Update stated, on multiple occasions, that a hydraulic model was developed*

1                                    *RCI Comments to AMEC's July 2, 2009 Letter*