1

```
 1        IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
 2                    FOR THE COUNTY OF MOHAVE
 3
 4
 5
 6
    STACY D. FORD-KELLY,
 7
 8          Plaintiff,
 9   vs.                              CV-2010-07063
10
    AMEC EARTH & ENVIRONMENTAL, INC.,
11
12          Defendant.
     _____
13
14
15
16                 TRANSCRIPT OF PROCEEDINGS
17
18                      AUGUST 26, 2011
19
20                   BULLHEAD CITY, ARIZONA
21
22   BEFORE THE HONORABLE CHARLES W. GURTLER, JR., JUDGE
23
24   COURT REPORTER:  STEVE L. GARWOOD, CR #50172
25                      928-758-0736
```

1  APPEARANCES:

2

    FOR THE PLAINTIFF:

3

        Stacy Ford-Kelly, Pro Per

4

5  FOR THE DEFENDANT:

6      Robert Schaffer, Esquire

7

8

9              BE IT REMEMBERED that the foregoing

10  captioned case came on for hearing before the Honorable

11  Charles W. Gurtler, Jr., Judge, Mohave County Superior

12  Court, on August 26, 2011, beginning at the hour of

13  2:00 a.m., on said day at the Mohave County Superior

14  Court, Division 1, 2225 Trane Road, in Bullhead City,

15  State of Arizona, and the following proceedings were

16  had:

17                        * * * * * * *

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2

 3             THE COURT:  Thank you.  Please be seated.

 4             This is CV-2010-7063, matter of Stacy

 5   Ford-Kelly versus AMEC Earth & Environmental, Inc., time

 6   set on oral argument for motion to dismiss, the plaintiff

 7   appearing in propria persona.

 8             And are you Mr. Schaffer?

 9             MR. SCHAFFER:  I am, Your Honor.

10             THE COURT:  Mr. Schaffer appearing on

11   behalf of the defendant.  The court has read the

12   documents that have been filed with respect to the

13   motion.  The court has reread the documentation.

14             And Mr. Schaffer, this was your motion.

15             MS. FORD-KELLY:  Well, Your Honor, before

16   we start with the proceedings, I must present to you, you

17   are required by law to recuse yourself.

18             THE COURT:  On what basis, ma'am?

19             MS. FORD-KELLY:  I don't think you were

20   aware of it.  You were the presiding judge on my custody

21   cases, which is part of my complaint, is actually cause

22   of action, my 13th cause of action.

23             THE COURT:  I'm sorry.  What is the fact

24   that you have a custody matter before this court, how

25   does that conflict this —
```

1       MS. FORD-KELLY:  You were the judge, and

2  you ruled not in accordance with the law.

3       THE COURT:  I don't have to recuse on that

4  basis.  I wouldn't even contact the Judicial Commission

5  for an opinion with respect to that.

6       MS. FORD-KELLY:  Okay.  I make a motion to

7  the court for a disqualification of judge here.

8       THE COURT:  Ma'am, you have already filed

9  your motion.  It has been ruled on.  And the mere fact

10  that the court sat on another matter that it may have

11  ruled adversely to you is not a conflict and is not a

12  basis by which this court would recuse itself.

13       MS. FORD-KELLY:  Even though documentation

14  with your signature is part of —

15       THE COURT:  Ma'am, if I issued an order and

16  signed an order or signed a degree, it was done to the

17  best of the court's ability with respect to making a

18  determination —

19       MS. FORD-KELLY:  Okay.

20       THE WITNESS:  — to the facts of that case.

21       MS. FORD-KELLY:  I meant no disrespect.  It

22  was something that I just wanted to bring to your

23  attention.

24       THE COURT:  Ma'am, the fact that you have

25  been in another case in front of this court is not a

1    conflict.  It is not a conflict.

2              And further, I would point out that if the

3    court's ruling is a final judgment and there is no

4    appeal, then there is no incorrect decision.  Okay?

5              MS. FORD-KELLY:  Okay.

6              THE COURT:  Mr. Schaffer

7              MR. SCHAFFER:  Thank you, Your Honor.  It's

8    a pleasure to be with you this afternoon.

9              I represent the defendant in this case,

10   AMEC Earth & Environmental, Inc.  You have our motion.

11   The circumstances that led to the filing of the motion

12   are quite unusual but nonetheless represent a serious

13   abuse of the court's procedures and processings.  And we

14   believe the only appropriate relief in this case is

15   dismissal of the lawsuit with prejudice.

16             First of all, the plaintiff filed not once

17   but twice sworn affidavits with the court indicating that

18   she had served both her initial complaint and her amended

19   complaint on the defendant.

20             The defendants have investigated, once they

21   learned about this lawsuit, investigated the

22   circumstances of the plaintiff's filing of her

23   affidavits.  They have submitted incontroverted,

24   incontrovertible evidence to the court, including a sworn

25   declaration from an official at the statutory agent for

1  the defendant CT Corp. that that official received on or
2  about July, January of this year a package of
3  information.
4              And I have a package very similar to the
5  package that was sent to CT Corp. This package was sent
6  to my client in Pennsylvania, and they then forward it on
7  to me.
8              But three of these packages were sent, Your
9  Honor, after the amended complaint was filed. And they
10 all contained blank sheets of paper. We have submitted
11 sworn affidavits to that effect. CT Corp. has submitted
12 sworn affidavits to that effect.
13             And to erase any iota of doubt, Your Honor,
14 we compared the certified mail receipts that are affixed
15 to all of these envelopes. And they match the certified
16 mail receipts that were attached by the plaintiff when
17 she filed her notice of service and her affidavit of
18 service.
19             So my client has never been served with a
20 complaint. But that's not why we're asking Your Honor to
21 dismiss the case.
22             We're asking Your Honor to dismiss the case
23 to maintain the integrity of the court and to deter
24 people from doing this kind of thing in the future. And
25 I'll let Your Honor hear from the plaintiff unless you

1    have any questions.

2                    THE COURT:  No.  Thank you, Mr. Schaffer.

3                    Ms. Ford-Kelly.

4                    MS. FORD-KELLY:  Yes, Your Honor.  As I

5    said in my response to the motion to dismiss for

6    disqualification, they say that I didn't answer them.

7    And I did answer them.  And there was served —

8                    THE COURT:  You filed an affidavit.

9                    MS. FORD-KELLY:  Pardon?

10                   THE COURT:  You filed an affidavit.

11                   MS. FORD-KELLY:  I filed a response, yes.

12                   THE COURT:  Right.  And it was filed with a

13   verification as to the factual allegations in it.  So the

14   court — so the court considers the response to the

15   extent that there were factual statements in it as being

16   an affidavit or being under oath because of the

17   verification.

18                   MS. FORD-KELLY:  Yes.  And one of the, just

19   for an example, the declaration of Debbie Keys, Exhibit

20   8, page two, number six, and this is on their filing of

21   their motion to dismiss, states that this particular

22   Debbie went to the post office and verified that the

23   return receipt was in fact being sent to the mail box

24   return address in Lake Havasu City.

25                   Well, that is absolutely not true.  There

1   is no way for the postal service to tell what is the
2   return address.  As you know, it's affixed with this
3   portion of it facing outwards on the envelope.
4           THE COURT:  Now, now, wait a minute,
5   ma'am.
6           MS. FORD-KELLY:  It was mailed to my house.
7           THE COURT:  But —
8           MS. FORD-KELLY:  And I had a —
9           THE COURT:  Let me make a statement here.
10  You know, when you have a return receipt because you have
11  done a certified mailing, there has to be a return
12  address.
13          MS. FORD-KELLY:  Yes.
14          THE COURT:  Because the post office, once
15  it's signed, has to return it to the person that sent it
16  at an address that the person is to receive it.
17          MS. FORD-KELLY:  You can — you can
18  write — I mean, I could have wrote the court's address.
19  And it would have came back to the court.  So —
20          THE COURT:  No, no, no, ma'am.
21          MS. FORD-KELLY:  I mean, I wrote it to my
22  home address.
23          THE COURT:  Right.
24          MS. FORD-KELLY:  I wanted it to come back
25  to my home address rather than my rented P.O. Box of 1990

1   McCulloch Boulevard North.

2              THE COURT:  So the certified mailings came

3   back where?

4              MS. FORD—KELLY:  They came to my home.

5              THE COURT:  Okay.

6              MS. FORD—KELLY:  The return receipts.

7              THE COURT:  Well, what address did you have

8   on the —

9              MS. FORD—KELLY:  They're claiming that I

10  couldn't even —

11             THE COURT:  What address did you have on

12  the return receipt for it to be sent to?

13             MS. FORD—KELLY:  My home address.

14             THE COURT:  Okay.  So you got the return

15  receipt with your home address?

16             MS. FORD—KELLY:  Yes.  And this is on all

17  three of them.

18                      (Handed to court)

19             THE COURT:  Okay.

20             MR. SCHAFFER:  May I see them, Your Honor?

21             THE COURT:  Sure.  Mr. Schaffer, you're

22  entitled to see those.

23             MR. SCHAFFER:  Thank you, Your Honor.

24             MS. FORD—KELLY:  I did that.  I had sent

25  the first one using my home address as a return address.

1  And I sent the amended complaint using on the actual

2  envelope, itself, of my mailbox address the second time

3  around because I didn't want them to refuse service,

4  recognizing the address.

5          THE COURT:  Okay.  So there was a second

6  certified mailing?

7          MS. FORD-KELLY:  Correct.

8          THE COURT:  And then that was utilizing —

9          MS. FORD-KELLY:  That's what you just

10  looked at.  That's what they are saying I couldn't even

11  send it to myself.

12          THE COURT:  Well, but what you're telling

13  me is the second mailing, was that then sent to the home

14  address, or was that sent to the P.O. Box?

15          MS. FORD-KELLY:  Everything has gone to the

16  home address.

17          THE COURT:  Everything has gone to the home

18  address.

19          MS. FORD-KELLY:  The P.O. Box was only used

20  as a return address on the United States Postal Service

21  envelope that he has there.

22          THE COURT:  Well, so couldn't the post

23  office have put in that address?

24          MS. FORD-KELLY:  No.  They mail it back to

25  the address on the back of the card.

1   THE COURT:  Right.  But they don't have —
2   they don't keep that as much as they would look at the
3   address on the envelope.
4   MS. FORD-KELLY:  Correct.
5   THE COURT:  So do you see how if I
6   contacted the post office, like Mr. Schaffer could, and I
7   have this particular tracking number for the certified
8   mail receipt, so they could pull up the envelope.
9   And if the envelope had your P.O. Box but
10  the return receipt that's sent to you has your home
11  address, the post office would probably tell me the P.O.
12  Box number.  Do you see what I mean, because you're the
13  one that's getting the return receipt.  But what the post
14  office delivered and puts into their system is the
15  address on the envelope.  Does that make sense?
16  MS. FORD-KELLY:  If you — yeah, if you're
17  trying to request records, they can't tell you where it
18  went back to.
19  THE COURT:  Right.  So —
20  MS. FORD-KELLY:  Can't tell you.
21  THE COURT:  Right.  So the P.O. Box is
22  going to be given as the address of record based upon
23  what you put on the envelope.
24  MS. FORD-KELLY:  Okay.  And —
25  THE COURT:  Does that make sense?

1    MR. SCHAFFER: Yes. Well, it's also my
2  belief that none of these dispositions are even
3  admissible. And I say that because they involve the fact
4  that they are trying to use them as a testimony of the
5  individual.
6         The court was not given notice. I was not
7  given an opportunity to cross-examine. And under 28-
8  what is it, B I want to say, disqualification due to
9  interest, it cannot be taken by their attorney, nor is it
10  notarized, any of them.
11         And they are all referring to
12  documentation. I mean, there is an e-mail that says a
13  FedEx to this suspicious package and flew it to Canada.
14  There is no way that they would do that. They never
15  provided me with a tracking number.
16         All they are trying to do is discredit me.
17  What they said that I received on my, as the first
18  complaint, they are saying that they received something
19  different.
20         And what they included was this cover
21  page. They skipped the recipients. They put complaint
22  letter and blacked out a bunch of stuff and included my
23  complaint letter. And it was confusing to me, but it
24  would make sense that — because I never sent them this.
25         But I did in fact turn them in to the Board

1  of Technical Registration; Benjamin Grumbles, the

2  Director of ADEQ; the IRS, the whistle blower office; the

3  Deputy Assistant Inspector General; and Ella Barnes,

4  Division Director, U.S. Environmental Protection Agency.

5          And I've also got within my complaint the

6  fact that there's a letter, actually, I have the original

7  hand-signed by Ella Barnes about the criminal

8  investigation going on.  And that has to do with the WWSE

9  project.

10          THE COURT:  Well, what does that have to do

11  with whether you sent copies of your complaint and

12  summons to CT Corp. and to the two representatives of the

13  defendant?

14          MS. FORD-KELLY:  Well, I'm trying to say

15  that, I mean, it's impossible to prove a negative.  They

16  are saying they got blank papers.

17          Well, I can tell you right now, he opened

18  that envelope, well, when I sent it, it was in a manila

19  envelope and then in that envelope.  It wasn't just loose

20  like that.

21          And it was only 90 pages, not a quarter of

22  a ream.  35 pages more is, you know, is making it a third

23  bigger than it actually was.  And I just feel that they

24  are —

25          I mean, my claim does have merit.  I was

1  given the right to sue by EEOC. I have a contract.

2         If this is dismissed with prejudice or

3  dismissed in any way, my contract, the statute of

4  limitations would run out. And just to pay me out on

5  that, not including treble, the amount is almost — it's

6  400, 391,000, something like that.

7         So I mean, I looked for an attorney. I

8  mean, I've tried everything. And I've just been told

9  that they are going to try to make me look as bad as

10  possible.

11         And I have absolutely no reason — I put a

12  lot of work into all of this stuff. And I have

13  absolutely no reason to send them false or blank

14  documents when I have a contract, when I have a

15  legitimate claim, when I have original letters. You

16  know, I'm not lying about anything in the complaint.

17         So to me, my complaint has merit. And as

18  you know, an involuntary dismissal is adjudicated by the

19  merits of a case. And I feel that I'm entitled to a

20  settlement conference. And if that doesn't work out,

21  then a jury trial.

22         I would just like my right to due process.

23  It's been two and a half years, April of 2009. That's

24  all I have to say, Your Honor.

25         THE COURT: Thank you. Mr. Schaffer.

1    MR. SCHAFFER:  Your Honor, if the plaintiff
2    felt she had meritorious claims, she very easily could
3    have served her initial complaint.  And once your
4    colleague had required an amended complaint, she could
5    have served her amended complaint.
6         For whatever reason, I don't know why, she
7    didn't.  The initial filing, the initial mailing that was
8    sent out after the first complaint was filed was a letter
9    dated December 22nd, 2009, I believe.
10        That document was sent to CT Corp.  If you
11   take a look at the declaration that we submitted —
12   declarations are perfectly appropriate under Rule 81 of
13   the Rules of Civil Procedure, they don't need to be
14   signed by a notary — if you take a look at that
15   declaration, CT Corp. received a mailing from the
16   plaintiff in May of 2010.
17        That mailing is attached as an exhibit to
18   the declaration.  It is the letter that the plaintiff
19   prepared.  It's not the complaint.
20        My clients had no idea that a lawsuit had
21   been filed.  They did not respond when they received that
22   letter.
23        The plaintiff was then required to amend
24   her complaint.  She did file an amended complaint.  And
25   she had a decision to make and apparently decided that

1    rather than serve the actual complaint, she would use
2    something that she apparently learned the first time
3    around, which is if you get a return receipt back from
4    the defendant and they don't show up in court, you might
5    get a default judgment.
6              And so rather than serving her amended
7    complaint, she served blank paper.  There is just no
8    dispute about that.  It's exceedingly strange.  But that
9    is what happened in this case.
10             We submitted declarations under oath
11   subject to the penalty of perjury from many individuals,
12   five employees of AMEC.  One person who is completely
13   independent, the representative of CT Corp, she reviewed
14   the company's records, discovered that there was a
15   package sent in January of 2011.
16             It was at this return address of this P.O.
17   Box.  It contained blank pieces of paper.  We submitted
18   the letter that she sent documenting the fact that she
19   had received a package with blank sheets of paper.
20             So what this means — and plaintiff is
21   absolutely right.  She is entitled to due process.  But
22   when she files perjurious affidavits with the court, the
23   court can conclude that this is not the type of lawsuit
24   that has any merit and it's not the type of lawsuit
25   that's entitled to go forward.

1    And in fact, the Green case that we brought
2  to Your Honor's attention in our motion, Green versus
3  Lisa Frank King, Court of Appeals of Arizona, January 20
4  of 2009, refers to a party's conduct in that case as
5  having attempted to deceive the court.
6    And the court concluded that his conduct
7  committed the court to infer that his claims and defenses
8  were meritless and thus finds he had constructively
9  waived a hearing on their merits.
10    The same thing is true in this case, Your
11  Honor.  The plaintiff by her conduct has shown that she
12  doesn't believe her claims have merit.  Otherwise, she
13  wouldn't have done this.  She attempted to gain an unfair
14  advantage against my client by misleading this court.
15    The only appropriate remedy in this
16  situation is dismissal with prejudice.  Thank you, Your
17  Honor.
18    THE COURT:  Thank you.  Okay.
19    MS. FORD-KELLY:  Your Honor.
20    THE COURT:  Usually it's only —
21    MS. FORD-KELLY:  Well, I do have —
22    THE COURT:  Motion, response, rebuttal.
23  But I'll — go ahead.
24    MS. FORD-KELLY:  I do have a response.
25    THE COURT:  Usually you don't get a sur —

1          MS. FORD-KELLY:  Concerning the amended
2    complaint, I received a 1099 miscellaneous for
3    25,000,000.  Now, that has not been paid by AMEC.  It
4    was, you know, I was —
5          THE COURT:  Well, actually —
6          MS. FORD-KELLY:  Amended the notice.
7          THE COURT:  Actually, I read that.
8          MS. FORD-KELLY:  You can see it's a little
9    fishy.  But I was required to file it on my taxes.  And I
10   have nowhere claimed that they paid me that money.  I
11   just want to let the courts know what was going on.
12          They in their response to me said that I
13   claimed AMEC had paid me 25,000,000.
14          THE COURT:  No.  I understood that —
15          MS. FORD-KELLY:  I did not.
16          THE COURT:  I understood from your filing
17   that they —
18          MS. FORD-KELLY:  And to me, I know that's
19   not something that is a matter before the court at the
20   moment.  It's just, it's something that I would say gives
21   my end of, you know, they were served the first amended
22   complaint.  They were served the original complaint.
23          I have no reason to deceive them.  I
24   just — I just want them to pay me my — you know, my
25   contract.  And they are just trying to get out of it.

1        THE COURT:  Well, Ms. Ford—Kelly, you can
2   be seated.  I disagree with you to the extent of saying
3   that the 1099 isn't before the court.  It certainly is
4   before the court because, you know, you filed it there.
5        And —
6        MS. FORD—KELLY:  Well, I meant decision as
7   to whether or not that should be paid or not.
8        THE COURT:  If you hear me out.
9        MS. FORD—KELLY:  Please.
10       THE COURT:  Please hear me out.
11       MS. FORD—KELLY:  Okay.
12       THE COURT:  I think the 1099 is a
13  significant issue with respect to the court's ruling
14  here.  And the reason for that is the court is going to
15  deny the motion.  And the court is going to deny the
16  motion on several different basis.
17       Number one, there is always a preference
18  for a trial on the merits.
19       Number two, neither party requested an
20  evidentiary hearing.  It is therefore deemed submitted
21  based upon the briefing and the oral argument.
22       Number three, I have conflicting
23  affidavits.  Without there being an actual evidentiary
24  hearing, the court cannot discern the veracity or
25  credibility of the parties.

1    And intent is always a fact issue.  Because
2  it could have been Ms. Ford-Kelly that you certainly
3  intended to send the amended complaint and you copied the
4  stuff off and you put it in the envelope and you shipped
5  it out.
6    But I'll tell you what, I don't think it's
7  unreasonable to have turned around and maybe made a copy
8  and found out that you didn't get anything copied at all
9  and missed it.  Because to be blunt with you, I can
10  remember being in private practice and throwing something
11  in the copier and pushing the button and coming back and
12  finding out guess what, I copied the wrong side and got
13  blank pages.
14    So that is a plausible explanation.  As I
15  say, intent is always a fact issue.  And the court cannot
16  make a determination of a fact issue without there being
17  an evidentiary hearing.
18    Another reason, the court would not have
19  proceeded to a default judgment in any event because the
20  court would not have found that there was appropriate
21  service at least as to the AMEC representative.
22    However, that's not to say that AMEC, that
23  there might not have been good service as to CT Corp.
24  But that would have led to a motion under Rule 60(c) to
25  vacate the judgment for improper service.  And if the

1    court found that there wasn't good service, we would be
2    back at square one in any event.  So folks, we're back at
3    square one.
4           However, the 1099 I think comes into play
5    for two different reasons.  Number one, if AMEC had
6    issued the 1099, they certainly were then aware that you
7    were requesting 25,000,000.  And it would seem to the
8    court that there was some indication such as information
9    contained in the complaint that would give them notice
10   that you're seeking 25,000,000.
11          The flip side of the coin is that if AMEC
12   establishes that they didn't turn around and prepare that
13   1099, then in that event, it would tend to lead the court
14   to believe that maybe this is a charade.  So I think the
15   1099 can cut either way.  Can cut either way.
16          So the court is going to deny the motion
17   but is going to do so without prejudice because I think
18   that for all intents and purposes, you know, there may be
19   some discovery with respect to this 1099.
20          And if there is more than just a pattern,
21   if there is an outright intent and that's established to
22   mislead or commit a fraud upon the court, then the court
23   would dismiss the case.
24          But as we sit here today, I have competing
25   affidavits.  I have not had an evidentiary hearing.  And

1 the court is not going to make a fact determination

2 without an evidentiary hearing.

3           So it is ordered denying the motion to

4 dismiss.

5           Mr. Schaffer.

6           MR. SCHAFFER:  Your Honor, we would request

7 that you schedule this case for an evidentiary hearing.

8 We obviously did not send, my client did not send —

9           THE COURT:  I'm going to let you folks —

10 you know, you had the opportunity to request an

11 evidentiary hearing.  The court has issued its ruling.

12           MR. SCHAFFER:  Well, we — may I request an

13 evidentiary hearing at this point?

14           THE COURT:  It's a little late now,

15 Mr. Schaffer.  Now, the long and the short of it here is

16 you had an opportunity, and the court has ruled.  That is

17 the way that it is.

18           You know, I don't see this any different,

19 as an example, if this was a motion for relief from a

20 default judgment, and the court has had these issues come

21 up before and has had the matter go up on appeal, and in

22 some instances, the court has granted the motion, in some

23 instances, the court has denied it.

24           But when no evidentiary hearing is

25 requested, you folks have the record before you, and

1   that's it.  And I think that's where you folks sit today.

2                    MR. SCHAFFER:  Well, and we didn't raise

3   this before, Your Honor, because we felt that there were

4   no contested issues because the plaintiff did not submit

5   a sworn statement contradicting any of the affidavits

6   that were filed.

7                    THE COURT:  I would tend to disagree,

8   Mr. Schaffer, because if you look at the response, there

9   was a verification.  And granted you don't tend to see

10  the verifications like you do in civil cases, but you do

11  see them much more frequently within the context of

12  domestic relations cases.

13                   And the verification essentially said that

14  everything that I have in there is true and correct to

15  the best of my knowledge and ability.  And I equate that

16  as being nothing more than an affidavit.

17                   MR. SCHAFFER:  You're absolutely right,

18  Your Honor.  I completely missed that.  And that's my

19  bad.  I apologize for doing that.  But I would just —

20                   THE COURT:  And I tend to agree with you,

21  Mr. Schaffer, the Green case says that I don't

22  necessarily need to conduct a hearing if it is that

23  compelling.  However, as I say, intent is a fact issue.

24  And if you have any question at all, you could have

25  requested an evidentiary hearing.  And you didn't.

1           MR. SCHAFFER:  And but I don't believe I'm
2   not entitled to request a hearing at this point.  I mean,
3   if this were summary proceedings and Your Honor found
4   that there were fact issues, wouldn't you proceed to a
5   trial?  I mean, shouldn't Your Honor take testimony and
6   decide —
7           THE COURT:  That's why I said that I was
8   going to deny it without prejudice.
9           MR. SCHAFFER:  All right.
10          THE COURT:  Because you folks can certainly
11  develop the facts and certainly can raise it at a later
12  time.
13          MR. SCHAFFER:  Okay.  Thank you, Your
14  Honor.
15          THE COURT:  So it's ordered denying the
16  motion without prejudice.
17          The court will set the matter for a
18  16(b)(g) conference.
19          You know, Ms. Ford-Kelly, since we're here,
20  I'm going to let you turn around and place on the record
21  what you think that the court may have done or didn't do
22  in the other case that you believe gives rise to a
23  conflict, because, you know, I think you at least need to
24  establish your record, ma'am.
25          MS. FORD-KELLY:  Well, what it was is I had

1   not received a notification from the defendant.  And it
2   was sent to me regular mail.  And when I brought that up,
3   you said that I had to prove I didn't receive it.
4           And my question was how do I prove I didn't
5   receive something that was only sent regular mail.  So it
6   was kind of an opposite of —
7           THE COURT:  And that was not in the context
8   of initial serving of the complaint, but that was in the
9   context of a — was that in the context of a discovery
10  dispute?
11          MS. FORD-KELLY:  It was evidentiary
12  hearing.
13          THE COURT:  Yeah, —
14          MS. FORD-KELLY:  And it was for
15  jurisdiction.  And we had been served with me as the
16  plaintiff, him as the defendant.  He turned around and
17  filed ex parte temporary emergency custody with him as
18  the plaintiff and me as the defendant the day after he
19  was served my papers.  And my papers were served by the
20  police, you know.  So anyhow —
21          THE COURT:  I'm not, still not seeing the
22  conflict.
23          MS. FORD-KELLY:  I brought that up that he
24  kind of pulled a fast one by going in and saying hey, I'm
25  the plaintiff, this is a new case and got temporary

```
1   emergency custody ex parte.
2              Maybe you didn't understand me.  But that's
3   something -- because I was crying.  And so that's
4   something that maybe you just didn't understand.  But you
5   went like that like you didn't care.
6              THE COURT:  I think I'm starting to recall
7   the case.  Okay.  As I say, I wanted you to be able to
8   have an opportunity --
9              MS. FORD-KELLY:  I believe you're a fair
10  man.  And I don't have a problem with you --
11             THE COURT:  Ma'am, let's put it this way.
12             MS. FORD-KELLY:  But I did not --
13             THE COURT:  I learned long ago that not
14  everybody is going to agree with the court's rulings.
15             MS. FORD-KELLY:  Yes.
16             THE COURT:  Even people that, quote,
17  unquote, win don't always agree with the court's ruling.
18             MS. FORD-KELLY:  Yeah.
19             THE COURT:  But I'm not seeing where there
20  is any conflict.
21             MS. FORD-KELLY:  I believe you're a fair
22  man.  And you know, highly respected.  It was just
23  something that I wanted to bring to your attention
24  because when you look at the case, I'm protected.  It
25  doesn't show my name.
```

1          THE COURT:  See, and I think you have to
2   understand something, Ms. Ford-Kelly.  When you filed
3   your motion and it was forwarded to Judge Weiss, the
4   presiding judge, to rule on the same ——
5          MS. FORD-KELLY:  Uh-huh.
6          THE COURT:  If you read his ruling, it
7   specifies that you did not provide a basis.  So I guess
8   what I'm telling you is is that if you truly believe that
9   a conflict exists, I don't think that there is anything
10  that precludes you from filing a subsequent motion and
11  then specifying what the basis is.  Okay.
12         MS. FORD-KELLY:  I was — my intention was
13  to leave it at your discretion.  You're —
14         THE COURT:  I'm not touching a motion for
15  disqualification —
16         MS. FORD-KELLY:  No.
17         THE COURT:  — of this court.  It's
18  going —
19         MS. FORD-KELLY:  — you know —
20         THE COURT:  — to my presiding judge.
21         MS. FORD-KELLY:  You know judicial ethics
22  and conduct.  And you know what does and does not.  You
23  know more about than I do about that subject.  I just
24  wanted to bring it to your attention that if you were
25  involved in, you know, it was being brought up in the

1    complaint.

2            THE COURT:  Okay.  Sir.

3            MR. SCHAFFER:  Just one final

4    clarification.  Your Honor said it would set a Rule 16

5    conference.  Does that mean that the complaint has been

6    served; if so, my clients need to answer it?

7            THE COURT:  I assumed that, and maybe I

8    misspoke.  I thought you had also filed an answer along

9    with —

10           MR. SCHAFFER:  We have not filed an answer

11   because we have not been served.

12           THE COURT:  So the court will not turn

13   around and set a 16(b)(g) conference.

14           You understand, Ms. Ford-Kelly, what

15   Mr. Schaffer is saying?

16           MS. FORD-KELLY:  Actually, I did.  It was

17   demurring.  He referred to it as a hodge-podge and

18   meritless.

19           THE COURT:  No.  What he's saying is they

20   are not filing an answer because they haven't been

21   served.  And what I'm telling you is that if all that was

22   sent was blank sheets of paper, then in that event, you

23   don't have service.

24           MS. FORD-KELLY:  By requesting a copy from

25   the courts be mailed to them, is that service?

1          THE COURT:  No, ma'am.  It is not.

2          MS. FORD-KELLY:  It is not?

3          THE COURT:  No.

4          MS. FORD-KELLY:  Well, 120 days has expired

5  since it was filed.

6          THE COURT:  Well, you certainly can request

7  an extension.

8          MS. FORD-KELLY:  Okay.  May I request an

9  extension?

10         THE COURT:  You need —

11         MS. FORD-KELLY:  Of one week.

12         MR. SCHAFFER:  For the record, Your Honor,

13  we would oppose any extension.

14         THE COURT:  You're going to need to put the

15  motion in writing.

16         MS. FORD-KELLY:  Okay, Your Honor.

17         THE COURT:  Okay?

18         MS. FORD-KELLY:  Thank you.

19         THE COURT:  Okay.  With that, we'll stand

20  at recess.

21             (Recess 2:35 p.m.)

22              \*\*\*\*\*\*\*\*

23

24

25

```
1              C E R T I F I C A T E

2

3              BE IT REMEMBERED that the foregoing hearing

4    took place at the time and place mentioned in the caption

5    above; that I, STEVE L. GARWOOD, CR# 50172, an Arizona

6    Certified Court Reporter, took down by stenographic means

7    said hearing, that the foregoing transcript of

8    proceedings contains a true transcription of my

9    stenographic notes; and that I am not of counsel, related

10   to any party, nor otherwise interested in the outcome of

11   this action, signed this 30th day of August, 2011.

12

13                          /s/

14                 _____

15                 Steve L. Garwood, CR# 50172

16

17

18

19

20

21

22

23

24

25                          oOo
```