Peter Strojnik,
Arizona State Bar No. 006464
**STROJNIK, P.C.**
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
E-mail: ps@strojnik.com

Peter K. Strojnik, Esq.,
Arizona State Bar No: 026082
California State Bar No: 242728
**THE STROJNIK FIRM, LLC**
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
Telephone: 602-510-9409
Facsimile: 602-532-7572
E-mail: strojnik@skplaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STACY D. FORD-KELLY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>AMEC ENVIRONMENT & )<br>INFRASTRUCTURE, INC., *et al*. )<br>)<br>Defendants. )<br>_____ ) | NO.  3:12-CV-08085-NVW<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS** |

        Plaintiff Stacy Ford-Kelly, by and through undersigned counsel, hereby responds in opposition to Defendant's Motion to Dismiss.

### I.    INTRODUCTION

        Defendant characterizes Plaintiff's First Amended Complaint as authored by the Mad Hatter - a Batman villain who uses mind-controlling devices to manipulate the minds of his enemies.  According to *Gotham Central #20*, authored by Ed Brubaker, the Mad Hatter is "obsessive compulsive, and highly delusional."  As the Court will review, name-calling (and

fraudulently creating and destroying documents) appears to be the only argument in Defendant's corner. Plaintiff hereby respectfully outlines and summarizes why each of Defendant's arguments fails for reasons that range from absurd application of the wrong law to a complete misreading of the amended pleading.

*First*, Defendant argues that Ms. Ford-Kelly's Count Two, which alleges a breach of the covenant of good faith and fair dealing, is untimely. Defendant's argument fails because it applies the wrong two-year statute that applies to the covenant of good faith that *sounds in tort*. As the Court is aware, Ms. Ford-Kelly alleges a breach of the covenant of good faith that *sounds in contract*, and therefore the six-year limitations period that is found in ARS 12-548 applies. *Conlon Group*, infra, *Reidhead*, infra.

*Second*, Defendant argues the Breach of Settlement Agreement count fails because the 1099-MISC should be considered a "gratuitous payment" from a large engineering company to an aggrieved former employee who was currently suing it. The 1099-MISC was an offer of settlement because it offered to pay Ms. Ford-Kelly the sum of $25 million in consideration of "SETTLEMENT" of case number "AZ CV-201007063". The terms of the 1099 are clear – Defendant will pay Ms. Ford-Kelly $25 million to settle the removed State court litigation. As the Court and any litigant or lawyer knows, the term "settlement" means "an agreement between two or more persons to settle matters in dispute between them." Infra. Since a settlement agreement is properly alleged, Ms. Ford-Kelly's breach of covenant of good faith and fair dealing must also stand.

*Third*, Defendant argues that Ms. Ford-Kelly's alternative count of Promissory Estoppel should fail because she did not dismiss the removed State court lawsuit. Ms. Ford-Kelly

properly alleges promissory estoppel.  She received the 1099-MISC and reasonably filed her

tax return claiming $25 million in income.  Moreover, Ms. Ford-Kelly filed a Notice of

Settlement of the case in furtherance of her agreement, but Defendant unlawfully breached and

filed a Motion to Dismiss.

*Finally*, Defendant argues that Ms. Ford-Kelly has not pled counts 3, 7, 8, 10, 11 and 12

with requisite particularity**.** To the contrary; Plaintiffs Verified First Amended Complaint

consisting of 34 pages and 138 individually numbered paragraphs is a meticulously crafted

document with manifest precision and exactitude.

## II.    ARGUMENT AND SUPPORTING LAW

### A.    Defendants' Statute of Limitations Argument Confuses the Covenant of Good Faith and Fair Dealing that Sounds in Tort with the Covenant That Sounds in Contract

Enthusiastically, Defendant's very first argument claims that Ms. Ford-Kelly's Breach

of Covenant of Good Faith and Fair Dealing count (Count Two) is untimely because Defendant

(erroneously) applies a two-year statute of limitations found at A.R.S. § 12-542.  Doc. 50 at

2:14-3:8.  Defendant applies the wrong law because it confuses the covenant of good faith that

*sounds in tort* with the presently alleged covenant of good faith that *sounds in contract*.  Ms.

Ford-Kelly is perplexed how Defendant would confuse such a simple concept.  As the Court

will review, Defendant consistently applies the wrong law in its Doc. 50 Motion.[1]

As is clear by the First Amended Complaint [doc. 39], Ms. Ford-Kelly's Count Two is a

claim that is based on the breach of two contractual agreements – the employment contract and

---

[1] In another instance, for example, Defendant unusually applies *securities fraud law* instead of common law fraud.

the settlement agreement. *See*, Doc. 39 at ¶¶68-71 (*Ford-Kelly alleging breach of covenant of good faith and fair dealing relates to "the contracts between Plaintiff and Defendant"*) (emphasis supplied). Accordingly, the <u>correct limitations period is six years</u> and is found in A.R.S. § 12-548. See e.g., *Conlon Group Arizona, LLC v. CNL Resort Biltmore Real Estate, Inc.*, No. CV-08-0956-PHX-FJM (D.Ariz. 07/27/2009) ("*Conlon's claim for breach of the implied covenant of good faith and fair dealing sounds in contract and the six-year statute of limitations applies to this claim as well*") (emphasis supplied); *Reidhead v. Meyers*, No. CV-07-8027-PHX-MHM (D.Ariz. 12/10/2008) ("*Specifically…breach of duty of good faith and fair dealing (A.R.S. § 12-548) has a statute of limitations of six years*") (emphasis supplied). Accordingly, Count Two was timely pled.

It should also be noted that assuming a two-year statute was the correct law, which it is <u>not</u>, Ms. Ford-Kelly filed within two years in the removed State court litigation by alleging the facts necessary to establish a breach of the covenant of good faith and fair dealing. Doc. 39 at ¶¶45, 52. Pursuant to *Twombly*, the plaintiff is only required to plead "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). The plaintiff is <u>not</u> required to specifically name the cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

**B.**  <u>**Defendant and Ford-Kelly Agreed to Settle the Removed State Court Action**</u>

"The enforcement of a settlement agreement is governed by general contract principles." *Emmons v. Sup. Ct. in and for Cty. Of Maricopa*, 192 Ariz. 509, 512, 968 P.2d 582, 85 (Ct. App. 1998). "An enforceable contract requires an offer, an acceptance,

consideration and sufficient specification of terms so that obligations involved can be ascertained."  *Richard E. Lambert, Ltd. v. Houston Const. Co., Inc*., 2009 WL 2031920, 2 (Az.Ct.App. 2009).  "The ultimate element of contract formation is the question whether the parties manifested assent or intent to be bound."  *Schade v. Diethrich*, 158 Ariz. 1, 9, 760 P.2d 100, 1058 (1988).

### i.    The 1099-MISC Was An Offer of Settlement of Pending Litigation

Defendant argues the 1099-MISC represented a "gratuitous payment".  *See*, Doc. 50 at 5:13-14 ("the Form 1099 could only be understood as some sort of gratuitous payment…").  The term "gratuitous" is defined as "not involving a return benefit, compensation, or consideration."  Merriam Webster's Dictionary.   Accordingly, Defendants ask the Court to believe that the 1099 was a gift to a previously fired employee. This is completely and utterly inconsistent with the facts alleged in the First Amended Complaint. *See*, Doc. 39 at ¶¶ 49-55 (describing the issuance of the 1099, Plaintiff's acceptance of the offer and subsequent reliance on the 1099); *Id*. at ¶¶ 84-87 (describing the breach of the 1099); *Id*. at ¶¶ 88-94 (describing and alleging the elements of Promissory Estoppel under Arizona law); *Id*. at ¶¶ 96-101(describing the falsity of the statement on the 1099, detrimental reliance and damages); *Id*. at ¶ 133 (describing damaes).

The Form 1099 represented an offer because a return benefit, or consideration, was required in return − settlement of the removed State court litigation.  Had the offer been gratuitous, the language "SETTLEMENT" and "AZ CV201007063" would <u>not</u> be included in the offer.  Indeed, the offer of $25 million requested a return promise of settling the removed State court litigation.   The term settlement, or compromise, as defined by Black's Law

Dictionary is "an agreement between two or more persons to settle matters in dispute between them."  Compromise, Black's Law Dictionary (9th ed. 2009).

### ii.    Promise of $25 Million in Exchange for Settlement of the Pending Litigation

As for consideration, Defendant made a promise to Ms. Ford-Kelly to pay her $25 million so long as she settled the removed State court litigation.  The promise of payment is sufficient to act as consideration and survive a motion to dismiss.  See, e.g., *Hisun Motors Corp, U.S.A. v. Automotive Testing and Development Srvcs., Inc.*, No. CV11-1918-PHX-DGC (D.Ariz. 03/02/2012) ("*an alleged promise of payment is a sufficient factual allegation of consideration to survive a motion to dismiss*") (emphasis supplied); *Glitsos v. Kadish*, 4 Ariz. App. 134, 138, 418 P.2d 129, 133 (Ct. App. 1966).

Defendant then states that the "Form 1099 also indicates that AMEC's purported obligation was performed prior to AMEC's making of the alleged offer" [doc. 50 at 5:13-18] in an effort to argue the Form 1099 is past consideration.  Defendant unfortunately misunderstands the clear allegations of the First Amended Complaint because Ms. Ford-Kelly clearly alleged Defendant never paid her or the IRS – it was a promise to pay.  As alleged, the promise of payment was made because Defendant never tendered payment to Ms. Ford-Kelly or to the Internal Revenue Service.  Doc. 39 at ¶55.

### iii.    Ford-Kelly Accepted Defendant's Promise to Pay By Filing a Notice of Settlement

Ms. Ford-Kelly was prepared to perform her end of the bargain when she filed a Notice of Settlement in the State court litigation.  *Id*. at ¶53.  In addition, Ms. Ford-Kelly reaffirmed her acceptance of the promise to pay $25 million through counsel.  *Id*.

### iv.    There Was Mutual Assent

Of course, Ms. Ford-Kelly demonstrated her intent to be bound and resolve the State court litigation because she filed a Notice of Settlement.  *Id.*  Defendant likewise demonstrated its intent to be bound because it sent Ms. Ford-Kelly a writing promising to pay her $25 million so long as she agreed to settlement of the removed State court litigation.

### v.    The Parties Obligations Are Easily Ascertained

Defendant had an obligation to pay Ms. Ford-Kelly $25 million, and the latter had an obligation to settle the removed State court litigation in consideration.  These material terms are clear in the duties they impose.  Accordingly, the formation of a settlement agreement was properly alleged.

### vi.    Since a Contract Is Properly Alleged, Ford-Kelly's Breach of Covenant of Good Faith and Fair Dealing Must Also Stand

Defendant impeded the benefit of the settlement by reneging on its promise to pay $25 million.  Accordingly, Defendant breached the covenant of good faith and fair dealing.  See, *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, 46 P.3d 431, 435 (Ct. App. 2002).

## C.    <u>Ford-Kelly Counts Three and Seven Through Twelve Are Sufficiently and Particularly Pled</u>

Defendant's business model is well documented in Ms. Ford-Kelly's verified First Amended Complaint.  On at least six (6) different occasions, Defendant's strategy of creating false documents in its business dealings has been made public.  *See*, Doc. 39 at ¶¶ 10-11(a)-(f) (Defendant sanctioned and found guilty for creating false documents for financial gain).  Defendant's business strategy calls for creation of false documents, submitting false documents to the District Court and/or the United States Government and then making a demand based on

the false and fraudulent documents.  If the strategy is successful, Defendant absconds with millions of dollars.  If the deceitful strategy is not successful, Defendant assumes the risk of paying a penalty.  The strategy must be profitable because the same schemes are being implemented in this lawsuit.

Defendant's fraudulent schemes are the type of misbehavior that the Arizona Supreme Court found to be a product of "boundless human ingenuity" in *State v. Haas*, 675 P.2d 673, 682-83 (Ariz. 1983):

> The "fraudulent aspect of the scheme to 'defraud' is measured by a nontechnical standard" [citation]. The statute proscribes conduct lacking in "fundamental honesty [and] fair play ... in the general and business life of members of society.". … The definition of "fraud" must be broad enough to cover all of the varieties made possible by boundless human ingenuity.

Ms. Ford-Kelly's FAC discloses that in this case, as in many others before it, Defendant created a fraudulent document and, during litigation, created the IRS Form 1099 purporting to settle it.  As in the cases before this one, Defendant initially attempted to turn the tables by claiming that *Ms. Ford-Kelly's* documents are fraudulent, and vehemently denying any wrongful conduct on its part.  Doc 42-5[2].

Despite its earlier protestation to the contrary, Defendant now *admits* that it destroyed the original of the employment agreement *seven months after it learned that it was the crucial piece of evidence in this case*!   We also know that contrary to its vehement and accusatory protestations to the contrary, Defendant now admits that it actually created and issued the 1099.

---

[2] Transcript of the September 28, 2012 proceeding.

Doc 37.    <u>It is in this context that Defendant now seeks dismissal of various fraud counts</u> <u>against it</u>.  This, too, is part of Defendant's strategy.  Defendant's Motion must fail.

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  However, "*[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally*." *Id. (*emphasis supplied*).

"In order to allege fraud with particularity, the complaint must both identify the allegedly fraudulent statement and explain why it was false when made."  *In re Metropolitan Sec. Litig*., 532 F.Supp.2d 1260 (E.D.Wash.2007) (quoted with approval in *Teamsters Local 617 Pension v. Apollo Group*, 633 F.Supp.2d 763 (D. Ariz., 2009)).   A complaint which "specif[ies] such facts as the times, dates, places, and benefits received, and other benefits of the alleged fraudulent activity[]" provides the notice which Rule 9(b) requires. *Id*. at 672 (citations omitted).  The purpose of Rule 9(b)'s heightened pleading requirements is "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.1993) (internal quotations and citation omitted).

i.    **Count 3:  Civil Extortion is not a Fraud Count; Even If It Were, the Extortion is Pled With Particularity**

As a preliminary matter, the heightened pleading standards found in Rule 9(b) do <u>not</u> apply to Count 3 because civil extortion does not allege "fraud or mistake" or a "condition of

the mind". It alleges extortion[3]. Accordingly, Ms. Ford-Kelly's civil extortion count obviously must stand.

Assuming extortion did fall within Rule 9(b), which it does <u>not</u>, this count is still alleged with detailed specificity, to wit:

> 31) In addition to presenting Plaintiff with the two aforementioned documents, Mr. Lywood showed Plaintiff all of her original credentials on his desk and presented her with an unmarked envelope stuffed with cash. Mr. Lywood advised that she would get "that back" (meaning her credentials) if she signed the Confidential Separation Agreement and Mutual Release and if she accepted an undisclosed cash bribe on top of the two-week severance payment called for in the Confidential Separation Agreement and Mutual Release.
>
> 32) Plaintiff refused to sign the Confidential Separation Agreement and General Release or accept the cash bribe.
>
> 33) Mr. Lywood promised to return Plaintiff's credentials only if she signed the Confidential Separation Agreement and Mutual Release and accepted the cash bribe.

Doc. 39 at ¶¶31-33. The extortion count is sufficiently pled.

**ii.     Count 7:  Fraud – 1099 – Alternative Claim to Counts 5 and 6**

Count 7 alleges that the "Form 1099 contained material statements of fact, to wit, that the dispute between the parties has been settled for $25 million and that the settlement amount of $25 million was withheld by Defendant." Doc. 39 at ¶97. Obviously, the statement on the 1099 that Ms. Ford-Kelly earned $25 million in settlement was false. *Id*. at ¶98. Defendant

---

[3] Arizona courts <u>do</u> recognize a cause of action for civil extortion. *See*, Doc. 27 at 12:1-14 (pointing to several Arizona cases in support); *MacCollum v. Perkinson*, 185 Ariz. 179, 913 P.2 1097 (Ct. App. 1996); *Hammoudeh v. Jada*, 222 Ariz. 570, 218 P.3d 1027 (Ct. App. 2009).

knew that the statement was false. *Id*. at ¶99. Defendant issued the 1099 with the intent that Ms. Ford-Kelly rely thereon. *Id*. at ¶100. Ms. Ford-Kelly justifiably relied on Defendant's false statement. *Id*. at ¶101.

Confronted with these allegations, Defendant complains that the allegations fail to allege "*how* AMEC obtained her reliance…" Doc. 50 at 9. Obviously, Defendant obtained Ms. Ford-Kelly's reliance by making a false statement that the Mohave County lawsuit was settled for $25 million. Doc. 39 at ¶¶4, 49, 50, 53-55, 89-95, 96-101, 109, 114-120, 121-123. By asking for the method of reliance, Defendant is confusing common law fraud cases with securities fraud cases. See e.g., *Teamsters Local 617 Pension*, supra. Thus, its entire reliance argument is based on a wholly different and inapplicable area of law.

To summarize, Defendant obtained Ms. Ford-Kelly's reliance by issuing a false and fraudulent 1099 which they had no intent of performing. Defendant's "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally". FRCP 9(b). Count 7 is pled in overwhelmingly strict compliance with Rule 9(b).

### iii. Count 8 and 10: Extrinsic and Intrinsic Fraud, and Asserting False Claim

Ms. Ford-Kelly alleges that Defendant engaged in intrinsic and extrinsic fraud by creating the false employment agreement. Defendant complains that "Counts Eight and Ten appear to be Plaintiff's attempt to attach liability to AMEC for providing the evidence necessary to defend itself in this litigation." Doc. 50 at 10. Defendant concludes that this allegation is "nonsensical on its face" and it fails to allege "*how* [Plaintiff] was damaged by the mere introduction of Exhibit 2". (Emphasis in original). Once again, Defendant's argument sadly fails because Rule 9(g) only requires that special – but <u>not</u> general – damages be pled

with specificity[4]. Defendant's entire argument is once again completely off base.  There is no requirement of pleading general damages with specificity.  *See also*, Doc. 39 at ¶¶ 134-138 (on the damages issue).

Second, to the extent that Defendant's Motion can be read as a motion for a more definite statement, Ms. Ford-Kelly has been damaged by Defendant fraudulently denying the validity of the true and effective employment agreement and the denial of the authenticity of 1099 by all of the following:

- Defendant's failure to pay pursuant to the true and valid employment agreement; and

- Defendant's insistence that its own created and fraudulent employment agreement governs the relationship between the parties; and

- Defendant's strategy of forcing Ms. Ford-Kelly to litigate a clearly false and fraudulent employment agreement in the Mohave County Superior Court; and

- Defendant's strategy of forcing Ms. Ford-Kelly to litigate a clearly false and fraudulent employment agreement in the U.S. District Court; and

- Delay in payment under the true and correct employment agreement; and

- Incursion of costs and attorney's fees by knowingly creating a false document; and

- In the destruction of the original employment agreement to assure that expert determination of the validity of the employment agreement would become unavailing; and

- In denying the issuance of the 1099 when Defendant did in fact issue the 1099.

---

[4] (g) SPECIAL DAMAGES. If an item of special damage is claimed, it must be specifically stated.

Counts 8 and 10 are sufficiently pled.  As for Count Thirteen, Ms. Ford-Kelly again sufficiently pleads defamation since she alleged Defendant made false statements that impeached her reputation and honesty and consequently caused her harm.  The harm is her inability to obtain a position in the Lake Havasu area, a position for which she relocated and left her children in Idaho in reliance on the six-year guaranteed employment contract.  Doc. 39 at ¶¶124-129.

### iv.    Counts 9 and 11-12:  Civil Scheme or Artifice to Defraud, Pattern of Unlawful Activity, and Federal RICO

Defendant initially complains that "Plaintiff has failed to specifically allege *how* these various events are connected such that they rise to the level of a scheme or artifice to defraud or otherwise satisfy the elements of a claim under either the federal or state RICO laws". Doc. 50 at 10.  Defendant correctly notes that "[t]o establish "racketeering activity" under these statutes, a plaintiff must plead one of several specific categories of criminal conduct, referred to as "predicate acts" citing to 18 U.S.C. § 1961(1); Ariz. Rev. Stat. Ann. § 13-2301(D)(4).

Defendant admits that Ms. Ford-Kelly alleges the predicate acts of  (1) forgery in preparing a false employment offer letter, (2) extortion, (3) asserting false claims (through the aforementioned false offer letter), (4) participation in a criminal syndicate, and (5) scheme or artifice to defraud. However, Defendant then erroneously concludes that "FAC is utterly devoid of factual allegations to support any of these alleged predicate acts."

In particular, Defendant asserts that Ms. Ford-Kelly has alleged no facts amounting to the criminal acts of "forgery," "extortion," or "false claims". This is completely incorrect. In ¶ 115, the FAC states:

115) Defendant committed acts involving acts described in A.R.S. §13-2301(D)(4)(b) including (iv) (Forgery of Defendant-created letter dated January 21, 2008, Exhibit 2) (ix) (attempted) extortion as more fully alleged below, (xiii) participation in a criminal syndicate, (xv) asserting false claims though the creation of forged letter (Exhibit 2) and IRS Form 1099 reproduced above, an (xx) (scheme or artifice to defraud). Defendant's acts were committed for financial gain.

In addition, "extortion" is the basis of the entire Count 3, false claim is pled as a separate count 10 and "scheme or artifice to defraud" is subject of Count 9.

In *State v. Haas*, supra, the Arizona Supreme Court explained the crime of fraudulent scheme or artifice:

> We hold, instead, that a defendant may be found guilty of knowingly and intentionally participating in a scheme or artifice to defraud "by means of" either "fraudulent pretenses" or "fraudulent representations" when that defendant has knowingly led the adverse party to believe a state of facts which is not true and when this has been accomplished either by active misrepresentations, or omitting material facts which defendant knew were being misunderstood, or by stating half-truths, or by any combination of these methods. …
>
> ***
>
> A "scheme" is a "plan," while an "artifice" is an "evil or artful strategy." Thus, a "scheme or artifice" is some "plan, device, or trick" to perpetrate a fraud. Something is fraudulent when it is "reasonably calculated to deceive persons of ordinary prudence and comprehension." (Internal quotations and citations omitted.) Id.  675 P.2d 673 at 682-83

This is precisely what is pled in the FAC and this is precisely what Defendant fraudulently did:  It followed its intuitive evil but artful strategy of creating the employment agreement and then stating that the original of the employment agreement was "destroyed". But there never was an "original" version of Defendant's employment agreement.  Defendant then denied issuing the 1099, denied making the statements in the 1099 but, finally, Defendant was forced to admit that it did in fact issue the 1099 and did in fact make the statements in the

1099 as alleged in Doc 39. This case is not or should not be any surprise to Defendant, as it has travelled this road before. Ms. Ford-Kelly is confident Defendant will continue travelling this road until its fraudulent schemes are deterred in a credible manner. Thus far, they have not been deterred from creating false and fraudulent documents by a $17M penalty by the USDOJ, the ±£5M penalty by the British Government, by criminal convictions in the US or by judgments in the US District Courts.

### III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.


RESPECTFULLY SUBMITTED this 21st day of November, 2012.



                                        STROJNIK, P.C.

                                        _____
                                        Peter Strojnik
                                        Peter Kristofer Strojnik
                                        Attorneys for Plaintiff