**LEWIS AND ROCA LLP LAWYERS**

40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Robert G. Schaffer, State Bar No. 017475
Direct Dial: (602) 262-0271
Direct Fax: (602) 734-3777
EMail: BSchaffer@LRLaw.com

Melanie V. Pate, State Bar No. 017424
Direct Dial: (602) 262-5318
Direct Fax: (602) 734-3785
EMail: MPate@LRLaw.com

Alastair Gamble, State Bar No. 025488
Direct Dial: (602) 262-5370
Direct Fax: (602) 262-3787
EMail: AGamble@LRLaw.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| STACY D. FORD-KELLY, | )<br>) |
| Plaintiff, | ) No. 3:12-cv-08085-NVW<br>) |
| vs. | ) **REPLY IN SUPPORT OF AMEC'S**<br>) **PARTIAL MOTION TO DISMISS** |
| AMEC EARTH & ENVIRONMENTAL, INC., | )<br>) |
| Defendant. | )<br>) |

Early in the opening brief supporting its Partial Motion to Dismiss ("Motion"), AMEC writes that Plaintiff's First Amended Complaint ("FAC") "attempt[s] to convert what is at most a dispute over the authenticity of her alleged employment contract and the circumstances of her termination into a thirteen-count lawsuit that could have been scripted by the Mad Hatter." (Motion, at p. 2.) In Plaintiff's Response in Opposition to AMEC's Motion ("Opposition"), Plaintiff complains that AMEC's reference to the Mad Hatter amounts to "name-calling." (Opposition, at p. 2.) Plaintiff misinterprets both the allusion[1] and AMEC's intent in using it.

The FAC alleges very few actual facts, certainly fewer than what is necessary to support the overwhelming majority of the claims asserted. Plaintiff attempts to disguise the dearth of factual allegations by asserting that "AMEC's business model permits, encourages and authorizes creation of documents and assertion of false claims based on created documents for financial

---

[1] The artistic legitimacy of graphic novels notwithstanding, AMEC drew its inspiration from Lewis Carroll, not Ed Brubaker. (Opposition, at p. 1.)

3197316.2



benefit," a claim based apparently on other litigation involving AMEC. (FAC, at ¶ 11.) From this red herring allegation, Plaintiff justifies her remarkable thirteen claims against AMEC: they are, she says, part of an "intuitive [sic] evil but artful strategy" to harm her. (Opposition, at p. 14.) Certainly, then, it was not unreasonable for AMEC to have been reminded of the topsy-turvy world of Wonderland in response to these "curiouser and curiouser" allegations.

Regardless, the significant and systemic defects in the pleading of the FAC makes the arguments Plaintiff advances against dismissal of her claims—arguments that are oftentimes punctuated with apparent exasperation regarding AMEC's alleged "confus[ion]" about and "absurd applications" of "simple" legal concepts—completely untenable. For the reasons stated below, and those advanced in its Motion, AMEC requests that its Partial Motion to Dismiss be granted, and that Claims 2-3 and 5-13 be dismissed with prejudice.

**I.     Claim 2 for Breach of Covenant of Fair Dealing is Untimely**

In its Motion, AMEC argues that Plaintiff's breach of the covenant of good faith and fair dealing claim (as it relates to the alleged employment contract) is untimely based on a two-year statute of limitations established by A.R.S. § 12-542. Plaintiff counters that the two-year limitations period does not apply because the claim sounds in contract, not tort. (Opposition, at p. 3.) AMEC's alleged confusion about this "simple concept" is due to Plaintiff's complaint, which treats this claim as a tort by pleading it separately from the breach of contract claims (1 & 5).[2]

Plaintiff's assertion that she intended Claim 2 to sound in contract does change the timeliness analysis, but not in Plaintiff's favor. Plaintiff asserts that the six-year period prescribed by A.R.S. § 12-548 applies. (Opposition, at p. 3.) This is not correct. Insofar as Claim 2 relates to the alleged employment agreement, the claim for breach of any express or implied term

---

[2] The implied covenant of good faith and fair dealing is implied in all contracts, and an action for breach is pled as a breach of contract claim. *Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 355 (1991) ("the remedy for breach of this implied covenant is ordinarily by action *on the contract*") (emphasis added). "[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327 (2000). By pleading Claim 2 separately, Plaintiff indicated that this claim sounded in tort. Accordingly, AMEC applied the two-year limitation period set in A.R.S. § 12-542. *See also Sierra-Sonora Enterprises, Inc. v. Domino's Pizza, LLC*, 2010 WL 4575694, at *3 (D. Ariz. 2010); *Karlson Group, Inc. v. Langley Farm Investments, LLC*, 2008 WL 4183025, at *6 (D. Ariz. 2008); *Stratton v. American Medical Sec., Inc.*, 2008 WL 2039313, at *3 (D. Ariz. 2008).

3197316.2



sounding in contract would be subject to a <u>one-year</u> limitations period.  A.R.S. § 12-541(3); *see also Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, 218 Ariz. 293, 295 (App. 2008).[3]  The claim therefore remains untimely even under Plaintiff's pleading theory.

Plaintiff argues in the alternative that she preserved her claim by having pled "facts necessary to establish a breach of the covenant of good faith and fair dealing" in previous litigation.  (Opposition, at p. 4.)  In lone support of this otherwise naked assertion, Plaintiff cites to paragraphs 45 and 52 of the FAC.  However, neither of these paragraphs (or any other in the FAC) address what facts were alleged previously that would entitle Plaintiff to such a generous inference.[4]  Accordingly, Claim 2, as it relates to the alleged employment agreement, should be dismissed with prejudice.

**II.     Claim 5 for Breach of Settlement Agreement Fails Because There is No Contract**

Plaintiff argues that her claim for breach of settlement agreement (Claim 5, and also Claim 2, to the extent it sounds in contract) is properly pled because the Form 1099 constituted a legal "offer," which Plaintiff "accepted" by the act of filing a Notice of Settlement in previous litigation.  These assertions do not withstand scrutiny.

As discussed in the Motion, a tax form reflecting that a payment has *already been made* to the IRS cannot reasonably be understood as an offer.  (Motion, at p. 4-5.)  Plaintiff argues that the Form 1099 did constitute an offer because it "requested a return promise of settling the removed State court litigation." (Opposition, at p. 5.)  To arrive at this conclusion, Plaintiff turns contract law on its head.  Though she concedes that the Form 1099 reflects that a payment had already been made to the IRS for settlement of her claims (*see* FAC, at ¶ 55; Opposition, at pp. 10-11), she argues that because she has alleged AMEC never actually paid the IRS, then the Form 1099

---

[3] Incidentally, insofar as Claim 2 relates to the alleged settlement agreement—which Plaintiff argues was formed by her *act* of filing a Notice of Settlement (Opposition, at p. 6)—it would be subject to the <u>three-year</u> limitations period for non-written contracts.  A.R.S. § 12-543(1); *see also Biddle v. Mountain States Tel. & Tel. Co.*, 629 F.2d 571, 572 (9th Cir. 1980).

[4] Paragraph 45 of the FAC reads: "On April 15, 2010, Plaintiff filed a pro-per complaint in the Mojave County Superior Court under cause number CV 2010-07063 seeking $25 million in damages."  Paragraph 52 reads: "Despite having an affirmative opportunity to do so, Defendant made no claim that the employment contract on which Plaintiff's claims are based was 'fraudulent'."

3197316.2



must therefore have really been a "promise to pay" (Opposition at p. 6). This analysis contradicts both the facts alleged in the FAC and fundamental principals of contract law. First, the basis of several of Plaintiff's other claims is that the Form 1099 was "clear and unambiguous" that AMEC had already made payment to the IRS. (FAC, ¶¶ 55; 91.) Second, whether something constitutes an offer is evaluated based on what a reasonable person would have understood at the time the alleged offer was made, not what a person might wish to retroactively interpret in subsequent litigation.

Further, even if we accept Plaintiff's "promise to pay" theory, Plaintiff demonstrably did not "accept" the alleged offer of settlement. Rather, after receiving the Form 1099 (but *before* filing a Notice of Partial Settlement), Plaintiff filed a Motion for Default Judgment against AMEC in the original state court action. (Motion, at p. 5-6 (fn.5).) Because this act was unquestionably inconsistent with an agreement to settle the lawsuit, it effectively cancelled any alleged offer to do so and Plaintiff's power to accept the alleged offer. Plaintiff does not address this inconsistent conduct anywhere in her Opposition.[5]

Because Plaintiff has failed to alleged facts that plausibly establish either that there was a valid legal offer to settle her claims or that she accepted any such offer, she has failed to allege facts sufficient to establish that a settlement contract existed between the parties. Therefore, Claim 5 (and Claim 2, insofar as it relates the alleged settlement agreement) should be dismissed.

### III. Plaintiffs Fraud Claim Fails

Plaintiff alleges a fraud claim (Claim 7) as an "alternative" to her breach of settlement agreement claim (Claim 5), but falls significantly short of the heightened pleading requirement of Rule 9(b) that is applicable to such claims. Specifically:

> [T]o state a claim for common law fraud under Arizona law, a plaintiff must plead nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon

---

[5] Moreover, in addition to the inconsistent action of filing a motion for default judgment, Plaintiff also did not mention the alleged settlement in the complaint filed in March 2012, which forms the basis of the instant action. The mere fact that she re-filed the lawsuit and did not include a claim regarding the alleged settlement agreement (or any mention of it at all) in itself demonstrates that she did not believe that a settlement in fact existed, or that she had "accepted" any alleged settlement offer represented by the Form 1099.

3197316.2

>by the recipient in the manner reasonably contemplated; (6) the
>hearer's ignorance of its falsity; (7) the hearer's reliance on its truth;
>(8) the hearer's right to rely on it; and (9) the hearer's consequent
>and proximate injury.

*Gilbert Unified Sch. Dist. No. 41 v. CrossPointe*, LLC, 2012 WL 1564660, at *3 (D. Ariz. 2012) (internal quotations and citations omitted).

With regard to Claim 7, Plaintiff fails to allege facts related to nearly all of the nine elements of this cause of action, stating *in toto*:

>Form 1099 contained material statements of fact, to wit, that the
>dispute between the parties has been settled for $25,000,000.00 and
>that the settlement amount of $25,000,000.00 has been withheld by
>Defendant. Defendant's statements on Form 1099 were false when
>made. Defendant's statements on Form 1099 were knowingly false
>when made. Defendant made the false statements on Form 1099 for
>the express purpose of having Plaintiff rely thereon. Plaintiff
>justifiably relied on Defendant's false statements, all to her damage.
>[FAC, at ¶¶ 97-101.]

These conclusory statements merely recite some--but importantly not all--of the "threadbare" elements of the cause of action and are decidedly insufficient on their face to satisfy the normal pleading standard of Rule 8, much less the heightened standard of Rule 9(b). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff argues that she has alleged, impliedly, that AMEC "obtained [Plaintiff's] reliance by making a false statement that the Mohave County lawsuit was settled for $25 million." (Opposition, at p. 11.) But Plaintiff has completely failed to allege specific facts establishing that AMEC knew that this representation was false or that she was ignorant of its falsity[6] or any of the other critical elements of this claim. Therefore, there are no facts in the FAC from which Plaintiff can plausibly assert a viable fraud claim, and it should therefore be dismissed.

---

[6] Nor could she. To allege that she did not know that the Form 1099 did not accurately reflect reality would be folly, as she would have had to have been a willing party to any such settlement.

3197316.2



1  **IV.  Plaintiffs State RICO Claim(s) Fail**

2      **A.  Plaintiff Does Not Plead Facts Establishing a Civil Racketeering Claim**

3          As discussed in the Motion (Motion, at p. 9 - 10), to the extent Plaintiff intended her RICO-related claims (Claims 3 and 8-11) to represent one civil racketeering claim, the FAC cannot sustain such a cause of action: specifically, she has not pled facts to plausibly establish the unnamed civil racketeering claim *or any of the underlying predicate offenses*.[7]  Plaintiff's Opposition argues in support of this and the other predicate act "claims" in an unusual, scatter-shot manner that makes it unclear precisely what her arguments in favor of these claims are.  Therefore, for clarity, AMEC will reiterate the fundamentals of this claim.

        The Arizona RICO statute establishes a private civil claim where a plaintiff can prove that she sustained a "reasonably foreseeable" injury from "at least two acts of racketeering" that are "continuous" and "related" (i.e., they have "the same or similar purposes").  A.R.S. § 13-2314.04(T); *ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.*, 2011 WL 6296833, at *3 (D. Ariz. 2011).  To be "continuous," the related predicate acts must extend "'over a substantial period of time,' i.e., over more than 'a few weeks or months,'" and the acts must by their nature project into the future with a threat of repetition.  *Lifeflite Medical Air Transport, Inc. v. Native American Air Services, Inc.*, 198 Ariz. 149, 152, 153 (App. 2000) (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989)).  Plaintiff does not allege facts to plausibly establish the "reasonably foreseeable," "continuous," or "related" elements of this cause of action.  Therefore, this claim must be dismissed.

        AMEC does not deny that Plaintiff alleges that AMEC committed several predicate acts that "are related in that they have the same or similar purposes, results, participants, victims or methods of commission and are otherwise interrelated by distinguishing characteristics as more fully described above." (FAC, at ¶ 118.)  Plaintiff also admittedly alleges that the predicate acts

---

[7] AMEC maintains that, since the alleged aim of nearly all the activity alleged in the FAC was to defraud Plaintiff, all the predicate acts sound in fraud and therefore the civil racketeering claim must be pled according to the heightened pleading standard of Rule 9(b).  *See ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.*, 2011 WL 6296833, at *3 (D. Ariz. 2011).  Yet, Plaintiff fails to allege facts to satisfy even the standard pleading requirements of Rule 8, and therefore in this instance, the distinction is immaterial.

3197316.2

"involving the Plaintiffs [sic] and others similarly situated extending over a substantial period of time that by their very nature project into the future with a threat of repetition" and that these acts caused Plaintiff to sustain a "reasonably foreseeable injury to her person." (FAC, at ¶¶ 119-120.) However, these "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555.

Plaintiff attempts to reference other allegations "scattered" throughout her complaint to force AMEC to guess at which allegations go with which claims, but this is insufficient. *ThermoLife*, 2011 WL 6296833, at *3 ("While there are allegations related to specific allegedly false statements scattered throughout the complaint, Plaintiff has not sufficiently linked those allegations specifically to the RICO count in order to make clear which statements support Plaintiff's RICO claim and which statements support Plaintiff's other state law . . . claims.").

Plaintiff has simply not alleged facts necessary to establish her state RICO claim. It should accordingly be dismissed.

### B.  Predicate Acts Are Not Separate Causes of Action

For purposes of its Motion, AMEC attempted to treat the FAC in as generous a manner as it could, and therefore it interpreted the separately pled claims of extortion, extrinsic and intrinsic fraud, civil scheme or artifice to defraud, and asserting false claims (Claims 3, and 8-10) as predicate acts on which a state civil racketeering claim (i.e., Claim 11, identified in the FAC as "pattern of unlawful activity") is based. *See* A.R.S. §§ 13-2314.04(A); 13-2301(D) (listing predicate offenses). At several points, however, Plaintiff's FAC and her Opposition seem to treat these acts as independent claims. This is improper.

AMEC concedes that Arizona's racketeering statutes create a private right of action for *racketeering*. A.R.S. § 13-2314.04(A). The statute does not, however, create a civil right of action for criminal acts independent of a civil racketeering claim. *See Large v. Hilton*, 2012 WL 1344356, at *4 (D. Ariz. 2012) (rejecting a private civil claim for "theft of services" pled independently of racketeering claim). If Plaintiff intended these separately pled "claims" to be independent causes of action, all of these claims fail as a matter of law.

3197316.2



**C.     Plaintiff's "Predicate Acts" Are Also Not Sufficiently Pled**

Because of the failings in the pleading of Plaintiff's overriding state racketeering claim (Claim 11), the predicate acts fail along with that claim. However, for independent reasons, Plaintiff has failed to plead facts sufficient to establish the predicate acts, and this provides an alternative grounds for dismissing the state RICO claim.

- Claims 8 & 10 (extrinsic and intrinsic fraud and "asserting false claims"): Plaintiff bases these predicate acts on AMEC's assertion in this litigation that her proffered "employment agreement" is false and that AMEC's employment offer letter represents the true terms and conditions of her employment. She does not allege facts related to almost all of the nine elements of fraud, which is the legal underpinning of these acts-- most glaringly, she does not allege how this allegedly false offer letter induced her into some reliance to her detriment. *Gilbert Unified Sch. Dist.*, 2012 WL 1564660, at *3.

- Claim 9 (civil scheme or artifice to defraud): Again, Plaintiff fails to plead with particularity any of the elements of fraud, which underlies this predicate act, basing it instead on three conclusory sentences. This is facially insufficient.

- Plaintiff attempts to isolate the predicate act of extortion (Claim 3) from her other RICO claims. (Opposition, at 9-10.) Again, however, no claim for "civil extortion" exists except as a predicate act on which a civil racketeering claim may be asserted. A.R.S. § 13-2314.04(A); *Large*, 2012 WL 1344356, at *4.[8] Therefore, this claim fails.

---

[8] Plaintiff cites to *MacCollum v. Perkinson*, 185 Ariz. 179 (App. 1996) and *Hommoudeh v. Jada*, 222 Ariz. 570 (App. 2009), as holding that a civil right of action exists for extortion in its own right (i.e., independent of the requirements of A.R.S. section 13-2314.04(A)). (Opposition, at p. 10, fn. 3.) For several reasons, Plaintiff misuses this authority. First, neither case deals with allegations of extortion. Second, *Hommoudeh* acknowledges in passing that A.R.S. section 13-2314(A) "authorizes a private cause of action for *racketeering*"--which AMEC does not dispute-- but it does not at all suggest that a private right of action exists for extortion. *Hommoudeh*, 222 Ariz. at 571 n.1 (emphasis added). (Importantly, the issue in that case was the appropriateness of terminating sanctions against a Plaintiff who had failed to comply with several discovery orders, not whether a cause of action exists. *Id.* at 572.) Third, the *MacCollum* case involved allegations of two or more related predicate acts in aid of an alleged securities fraud, and therefore a racketeering claim was plead per the requirements of A.R.S. section 13-2314.04(A). *MacCollum*, 185 Ariz. at 182. Accordingly, these cases are inapposite to the impermissible independent extortion claim asserted here.

3197316.2



Consequently, Plaintiff's state RICO and related predicate acts are all invalid and should be dismissed.

### V. **Plaintiff's Federal RICO Claim Fails**

For the same reasons discussed above regarding the viability of the state RICO claim, the federal RICO claim fails. *See Lifeflite Medical Air Transport, Inc. v. Native American Air Services, Inc.*, 198 Ariz. 149, 152-153 (App. 2000) (interpreting state RICO statute in tandem with federal RICO); *see also Rosier v. First Fin. Capital Corp.*, 181 Ariz. 218, 221 n.5 (1994).

### VI. **Plaintiff Has Abandoned Her Promissory Estoppel and Defamation Claims**

Plaintiff does not address AMEC's Motion as it regards her promissory estoppel claim (Claim 6) or her defamation claim (Claim 13). Therefore, Plaintiff should be deemed to have abandoned both claims. *See* L.R. Civ. 7.2(i); *see also Das v. J.P. Morgan Chase Bank, N.A.*, 2012 WL 1658718, at *3 (D. Ariz. 1012). Regardless, for the reasons advanced in the Motion, these claims are insufficiently pled and should also be dismissed on the merits.

### VII. **Conclusion**

For the foregoing reasons, Claims 2-3 and 5-13 should be dismissed with prejudice.

RESPECTFULLY SUBMITTED this 3rd day of December, 2012.

LEWIS AND ROCA LLP


By */s/ Melanie V. Pate*
Robert G. Schaffer
Melanie V. Pate
Alastair Gamble
Attorneys for Defendant

3197316.2


**CERTIFICATE OF SERVICE**

    I hereby certify that on December 3, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter K. Strojnik, Esq.
The Strojnik Firm L.L.C.
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, AZ 85016
strojnik@skplaw.com

Peter Strojnik, Esq.
Strojnik, P.C.
2415 East Camelback Road, Suite 700
Phoenix, AZ 85016
strojnik@aol.com

                                                /s/ Susan J. Durkee

3197316.2