IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy D. Ford-Kelly,<br><br>Plaintiff,<br><br>vs.<br><br>AMEC Environment & Infrastructure, Inc., a Nevada corporation; AMEC PLC, a British company,<br><br>Defendants. | No. CV-12-08085-PCT-NVW<br><br>**ORDER** |

Before the Court is Defendant AMEC Environment & Infrastructure, Inc.'s Partial Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 50), the Response, and the Reply. AMEC Environment & Infrastructure, Inc. ("AMEC" or "Defendant") seeks to have eleven of Plaintiff's thirteen claims in her First Amended Complaint (Doc. 39) dismissed.

**I.    BACKGROUND**

Plaintiff Stacy Ford filed suit in Mohave County Superior Court for claims arising out of her employment with and termination by Defendant AMEC. Plaintiff alleges that she entered into a six-year employment contract with Defendant to work as a design engineer for the Lake Havasu City Wastewater Treatment Plant starting on January 28, 2008. (Doc. 39 ¶¶ 2, 13.) After commencing her work for Defendant, Plaintiff alleges that she learned that Defendant had intentionally overestimated the quantities of materials used and had miscalculated drainage slopes for the project. She further alleges that, despite her efforts to notify her supervisors, Defendant took no action to correct its errors;

Plaintiff then reported Defendant's activities to authorities, including the Arizona Department of Environmental Quality, the Arizona Board of Professional Registrants, and the Criminal Division of the Environmental Protection Agency. (*Id.* ¶¶ 19-20.) Plaintiff indicates that her supervisors learned that she had made formal complaints to authorities on April 16, 2009. (*Id.* ¶ 21.)

In the intervening period, Plaintiff allegedly began experiencing migraines and dizzy spells. She was approved for short-term disability leave until March 6, 2009, after which she qualified for disability leave under the Family Medical Leave Act ("FMLA"). (*Id.* ¶¶ 22-24.) Plaintiff alleges that she completed a request for a non-FMLA leave of absence that specified that she would return to the same position at the same rate of pay. (*Id.* ¶¶ 25-26.) However, Plaintiff alleges, her supervisors made the decision to fire her while she was on leave, (*id.* ¶¶ 40-44), and she was fired immediately upon her return to work on April 20, 2009, (*id.* ¶¶ 29-30). She further asserts that she was offered two severance weeks' pay and an envelope stuffed with cash in exchange for her release of all claims and that she was told she would not get her credentials back until she accepted the release. (*Id.* ¶¶ 30-31, 33.) Plaintiff allegedly unsuccessfully sought to recover the balance on her employment contract. (*Id.* ¶¶ 38.) According to the employment contract proffered by Plaintiff, she was due the balance of the employment contract if she was fired "due to no fault of [her] own" as "initiated by AMEC after the three-month probationary period." (*Id.* ¶ 14.)

After her termination, Plaintiff brought suit in Mojave County Superior Court seeking $25 million in damages. (*Id.* ¶ 45.) She asserts that Defendant mailed her an IRS Form 1099 listing $25 million in federal income tax withheld,[1] that this form

---

[1] While Defendant does acknowledge that its employee produced the IRS form in question, Defendant asserts that the employee did so at Plaintiff's request, without the knowledge or authorization of anyone else at AMEC. (Doc. 37 at 2.) That noted, all allegations of material fact are assumed to be true on a motion to dismiss under Rule 12(b)(6). *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

constituted an offer to settle, and that she accepted the settlement offer and filed a Notice of Settlement in Mojave County Superior Court on April 4, 2011. (*Id.* ¶¶ 49-50, 53.) She does not, however, allege that $25 million or any other amount transferred hands between her, Defendant, or the IRS in the name of a settlement. The Superior Court dismissed Plaintiff's complaint with leave to refile, and when Plaintiff refiled her complaint Defendant removed the case to federal court. (*Id.* ¶¶ 56-57.) During the proceedings in federal court, Defendant filed an employment agreement that Plaintiff contends was fabricated. Plaintiff asserts that such conduct follows from Defendant's history of falsifying documents for financial gain, as reflected in several criminal convictions against Defendant in the United States and the United Kingdom. (*Id.* ¶¶ 3, 11.)

In her First Amended Complaint, Plaintiff alleges the following counts: (1) breach of employment contract, (2) breach of the covenant of good faith and fair dealing with respect to the employment contract and the settlement agreement, (3) civil extortion, (4) violation of the FMLA, (5) breach of settlement agreement, (6) promissory estoppel, (7) fraud with respect to the IRS Form 1099, (8) extrinsic and instrinsic fraud, (9) civil scheme or artifice to defraud, (10) assertion of false claims, (11) pattern of unlawful activity in violation of A.R.S. 13-2314.04, (12) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, and (13) defamation, invasion of privacy, and false light. AMEC seeks to dismiss all of Plaintiff's claims, save two claims: those of breach of contract and violation of the FMLA. (Doc. 50.)

## II.  LEGAL STANDARD

When considering a motion to dismiss, a court evaluates the legal sufficiency of the plaintiff's pleadings. Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need include "only enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Still, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Rather, the plaintiff must at least "allege sufficient facts to state the elements of [the relevant] claim." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

On a motion to dismiss under Rule 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The principle that a court accepts as true all of the allegations in a complaint, however, does not apply to legal conclusions or conclusory factual allegations. *Iqbal*, 566 U.S. at 678. To survive, a claim must have "facial plausibility"—the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, then, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.* If the plaintiff's pleadings fall short of this standard, dismissal is appropriate.

Finally, courts generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. One exception, however, is that a court may take judicial notice of matters of public record under Federal Rule of Evidence 201. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Courts do not have to accept alleged facts as true when they contradict those matters subject to judicial notice. *Sears, Roebuck & Co. v. Metro. Engraver, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956).

### III.  ANALYSIS OF CLAIMS

#### A.  Breach of settlement agreement (Count Five)

To establish a breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) a breach of the contract, and (3) damages. *Graham v. Asbury*, 112 Ariz. 184, 185, 540 P.2d 656, 657 (1975). Further, "for an enforceable contract to exist there must be an offer, an acceptance, consideration, and *sufficient specification of terms so*

*that the obligations involved can be ascertained." Leflet v. Redwood Fire & Cas. Ins. Co.*, 226 Ariz. 297, 302, 247 P.3d 180, 185 (Ct. App. 2011) (quoting *Regal Homes, Inc. v. CNA Ins.,* 217 Ariz. 159, 166, 171 P.3d 610, 617 (Ct. App. 2007)). "If the terms are ambiguous and uncertain there is no contract unless by the performance of the parties it is shown and indicated that there was a . . . mutual understanding of agreement." *Malcoff v. Coyier*, 14 Ariz. App. 524, 526, 484 P.2d 1053, 1055 (Ct. App. 1971).

Plaintiff's pleadings fall exceedingly short of the plausibility standard for her breach-of-settlement claim. First, Plaintiff alleges that Defendant mailed an IRS Form 1099 with an account number of "AZ CV-201007063 SETTLEMENT" and "Other income" and "Federal income tax withheld" sections reading "25000000.00." (Doc. 39 ¶¶ 49-50.) According to Plaintiff, this action constituted an offer of settlement. Whether an offer has been made is judged using an objective standard—it hinges on "whether a reasonable person would understand that an offer has been made and that, upon acceptance, the offeror would be bound." *Ballesteros v. Amer. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 348, 248 P.3d 193, 197 (Ariz. 2011). No reasonable person would understand the mailing of an IRS form listing a seemingly arbitrary amount of money, without explanation or further instruction, as an offer to form a contract. Second, even if Plaintiff did unreasonably interpret her alleged receipt of the IRS Form 1099 as an offer of settlement, she did not accept it. Plaintiff allegedly received the IRS form on January 29, 2011, and accepted the purported offer by filing a Notice of Settlement on April 4, 2011. (Doc. 39 ¶¶ 50, 53.) However, judicially-noticeable public records indicate that on March 8, 2011—after the receipt of the IRS form and before the Notice of Settlement—Plaintiff applied for the entry of a default judgment against Defendant, (Doc. 51-1 at 2), which is inconsistent with the notion that she accepted any offer of settlement. Thus, even if there was an offer, there was no acceptance. Lastly, none of the terms of the alleged offer are clear, save the amount of settlement. Since there is no evidence of the "mutual understanding or agreement" required in the absence of unambiguous contract terms, there is no contract. *See Malcoff*, 14 Ariz. App. at 526, 484 P.2d at 1055.

Plaintiff has failed to plead sufficient facts to establish that she had a contract for settlement with Defendant. Accordingly, she has not sufficiently pled that Defendant breached a settlement contract, and the breach-of-settlement claim will be dismissed.

### B.     Breach of covenant of good faith and fair dealing (Count Two)

Plaintiff's claim that Defendant breached the covenant of good faith and fair dealing, with respect to both the settlement agreement and the employment contract, also does not survive. Arizona "law implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). First, as Plaintiff has not properly pled that a settlement contract existed, there can be no breach of the covenant of good faith and fair dealing with respect to the settlement. *See, e.g.*, *Knutson v. Providian Fin. Corp., Inc.*, 131 Fed. Appx. 87, 88 (9th Cir. 2005) (district court properly dismissed claims under Arizona law for breach of contract and breach of covenant of good faith and fair dealing because no contract existed); *Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, 473-74, 967 P.2d 607, 614-15 (Ct. App. 1998) (complaint does not state a claim of breach of covenant of good faith and fair dealing when no contract exists). Second, Plaintiff's claim with regard to the employment contract is untimely. The statute of limitations for claims arising out of the "breach of an oral or written employment contract" is one year. A.R.S. § 12-541(3). Plaintiff's claim of a breach of the covenant of good faith and fair dealing derives from an employment contract, and therefore the claim is one that falls under section 12-541(3). *See Strand v. John C. Lincoln Health Network, Inc.*, No. CV-10-02112-PHX-NVW, 2011 WL 1253408 (D. Ariz. Mar. 31, 2011) (dismissing employment-contract-based claims, including breach of covenant of good faith and fair dealing, for failure to sue within one-year limitations period). Defendant terminated Plaintiff's employment on April 20, 2009, (Doc. 39 ¶ 44), and Plaintiff appears not to have raised this claim by name or in substance until filing her First Amended Complaint in federal court on October 22, 2012, over three years later. As Plaintiff's breach of the covenant of good faith is time-barred with respect

to the employment contract and cannot derive from an insufficiently-pled settlement agreement, Count Two will be dismissed.

### C. Promissory estoppel (Count Six)

Plaintiff's alternative argument regarding the insufficiently-pled settlement agreement is that she should recover under a theory of promissory estoppel. Arizona has adopted Section 90 of the Restatement (Second) of Contracts (1981), which provides as follows: "A promise which the promissor should reasonably expect to induce action or forbearance on the part of the promissee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Chewning v. Palmer*, 133 Ariz. 136, 138, 650 P.2d 438, 440 (1982) (quoting Restatement (Second) of Contracts, § 90 (1981)). Accordingly, for promissory estoppel to apply, the action that the promissor seeks to induce must be the action that the promissee in fact takes—the promissor must "induce such action" as the promissor expected to induce. Further, the promissee must have a "justifiable right to rely" on the alleged promise. *Higginbottom v. State*, 203 Ariz. 139, 144, 51 P.3d 972, 977 (Ct. App. 2002) (quoting *Trollope v. Koerner*, 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970)). In other words, a plaintiff can only recover if his reliance on the alleged promise was reasonable. *Carondelet Health Serv. v. Ariz. Health Care Cost Containment Sys. Admin.*, 187 Ariz. 467, 470, 930 P.2d 544, 547 (Ct. App. 1996).

Plaintiff's promissory estoppel claim fails. First, she alleges that the IRS Form 1099 from Defendant constituted a promise to pay; the action Defendant must have sought to induce would have been for Plaintiff to dismiss her suit. However, public records demonstrate that on March 8, 2011, well after she received the alleged promise to pay on January 29, 2011, Plaintiff sought the entry of default judgment against Defendant in Superior Court. (Doc. 51-1 at 2.) Even though she later filed a Notice of Settlement, Plaintiff's immediate actions cannot be reconciled with her alleged belief that Defendant had made a promise to pay in the interest of settling her claims. Second, Plaintiff's assertion that an IRS Form 1099 is a promise to pay is unreasonable when the form is

devoid of information or explication, save the word "settlement" and the amount "25000000.00." Plaintiff could not have reasonably relied on Defendant's alleged promise to pay, and the alleged promise did not induce her to act, so Plaintiff has not stated a claim for promissory estoppel.

### D. Defamation, invasion of privacy, and false light (Count Thirteen)

Plaintiff alleges that Defendant's actions after she disclosed the company's overestimating of material quantities and miscalculations of drainage slopes constituted defamation, false light invasion of privacy, and an invasion of privacy. Under Arizona defamation law, "[t]o be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Turner v. Devlin*, 174 Ariz. 201, 203-04, 848 P.2d 286, 288-89 (1993) (citation omitted). Arizona has also recognized the four types of invasion of privacy claims laid out in the Restatement (Second) of Torts section 652A and the following sections, among them false light invasion of privacy and publicity given to private life. *Hart v. Seven Resorts, Inc.*, 190 Ariz. 272, 279, 947 P.2d 846, 853 (Ct. App. 1997). False light invasion of privacy occurs when one who publicizes a matter involving another places the other in a false light if "the false light . . . would be highly offensive to a reasonable person" and "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter . . . ." *Godbehere v. Phx. Newspapers, Inc.*, 162 Ariz. 335, 338, 783 P.2d 781, 784 (1989) (quoting Restatement (Second) of Torts § 652E (1977)). Publicity given to private life, the only other invasion-of-privacy tort Plaintiff may possibly be alleging, occurs when one publicizes a matter involving the private life of another if the matter "would be highly offensive to a reasonable person" and "is not of legitimate concern to the public." Restatement (Second) of Torts § 652D (1977).

Plaintiff's claims of defamation, publicity given to private life, and false light invasion of privacy stem from, "among other acts of defamation," Defendant's alleged revealing of a list of Plaintiff's former employees to a third party that publicized it in a

newspaper. (Doc. 39 ¶ 127.) The pleading includes no other facts that could support any of the alleged torts. Plaintiff has thus failed to plead any fact that could arguably suggest that the only publication she alleges brought her into disrepute or contempt, impeached her honesty or integrity, or harmed her in any way. The pleading also flatly lacks any fact that could suggest that the publication might be highly offensive to a reasonable person. Absent factual allegations addressing these aspects of defamation, false light invasion of privacy, and publicity given to private life, these tort claims cannot survive.

### E. Civil extortion (Count Three)

Plaintiff claims that Defendant's alleged offer of a severance package and cash in exchange for a release from the employment contract and the return of her credentials constitutes civil extortion. (Doc. 39 ¶¶ 31-33, 73-78.) However, there is no private cause of action for civil extortion. First, Plaintiff further asserts that there is such a cause of action, as extortion is a predicate offense to racketeering, which is privately enforceable. (Doc. 39 ¶ 73; Doc. 53 at 10 n.3.) While the cases cited by Plaintiff acknowledge a statutory private cause of action for racketeering, they do not mention, let alone recognize, a private cause of action for civil extortion. *See Hamoudeh v. Jada*, 222 Ariz. 570, 571 n.1, 218 P.3d 1027, 1028 n.1 (Ct. App. 2009); *MacCollum v. Perkinson*, 185 Ariz. 179, 185, 913 P.2d 1097, 1103 (Ct. App. 1996) (recognizing private right of action for racketeering predicate offense of violations of securities-registration statute but not considering civil extortion). Second, whether a statute provides a private right of action hinges on "the context of the statutes, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law." *Large v. Hilton*, No. CV-11-1127-PHX-GMS, 2012 WL 1344356, at *4 (D. Ariz. Apr. 18, 2012) (quoting *Transamerica Fin. Corp. v. Superior Court,* 158 Ariz. 115, 117, 761 P.2d 1019, 1021 (1988)). Nothing in the language or context of Arizona's criminal extortion statute, Arizona Revised Statutes § 13-1804, suggests that the legislature intended for it to be privately enforceable, and Plaintiff has provided no case or legislative material indicating otherwise. Lastly, this Court has previously determined that predicate offenses to

racketeering are not automatically privately enforceable, *see Large*, 2012 WL 1344356, at *4 (holding that no private cause of action for predicate offense of theft of services exists). As there is no private cause of action for civil extortion, Count Three will be dismissed.

### F. Civil scheme or artifice to defraud (Count Nine) and assertion of false claims (Count Ten)

In Count Nine, Plaintiff asserts that all of Defendant's alleged actions having to do with the fraud in its Lake Havasu project, and the creation of a false employment agreement, the creation and mailing of the IRS Form 1099 together establish that Defendant had a civil scheme or artifice to defraud. Plaintiff's count of assertion of false claims derives from her allegations that Defendant created a false employment agreement between it and Plaintiff and disclaimed the true employment agreement. (Doc. 39 ¶ 111-13.) She does not specify whether her she brings her false-claims count pursuant to a particular statute or to common law. *Id.* As with civil extortion, Plaintiff provides no support for her position that there is a private right of action for either civil scheme or artifice to defraud or assertion of false claims. Since there is no recognized private right of action for these counts as independent claims, Counts Nine and Ten cannot survive. Count Nine, furthermore, is expressly repetitive of other claims by Plaintiff, none of which is sufficient to state a claim for relief.

### G. Fraud with respect to the IRS Form 1099 (Count Seven)

Federal Rule of Civil Procedure 9(b) imposes a particularity requirement when a plaintiff alleges fraud. Fed. R. Civ. P. 9(b). This particularity requirement applies to pleadings of state-law causes of action. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Under Arizona law, "fraud requires (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury." *Echols v.*

*Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 647 P.2d 629 (citing *Nielson v. Flashberg*, 101 Ariz. 335, 419 P.2d 514 (1966)). Further, the reliance on the allegedly false representation must be reasonable, and "conclusory allegations are insufficient to show that [a plaintiff's] reliance was reasonable." *Parks v. Macro-Dynamics, Inc.*, 121 Ariz. 517, 520, 591 P.2d 1005, 1008 (Ct. App. 1979) (addressing whether complaint alleging fraud satisfied pleading standards). While the reasonableness of reliance may often be a jury question, *see Lerner v. BMD Realty, LLC*, No.1 CA-CV 11-0339, 2012 WL 5910800, at *4 (Ariz. Ct. App. Nov. 27, 2012) (noting that "questions about materiality and reasonable reliance . . . usually are for the jury), courts have dismissed claims that fail to sufficiently plead reasonable reliance in the fraud context, *see, e.g.*, *Parks*, 121 Ariz. at 520, 591 P.2d at 1008 (noting that complaint was defective when plaintiff did not plead reasonableness of reliance in claim of fraud).

Plaintiff's First Amended Complaint touches upon most of the elements of fraud. For example, Plaintiff alleges that Defendant mailed her an IRS Form 1099 indicating that Defendant had withheld $25 million from her in federal taxes and that the form was false, (Doc. 39 ¶¶ 97-98); she thereby alleged that Defendant had made a false and material representation. However, Plaintiff's allegations as to at least one of the remaining elements of fraud are conclusory at best and unsupported by the facts she has pled. Plaintiff's attempt to plead with particularity that she had "the right to rely" on the alleged representation is merely a statement that she "justifiably relied on Defendant's false statements . . . ." (*Id.* ¶ 101; *see also* Doc. 53 at 11.) She offers no facts that could support this naked assertion, rendering her claim inadequate under the pleading standards of both Rules 8 and 9(b) of the Federal Rules of Civil Procedure. Consequently, this claim will be dismissed.

### H. Extrinsic and intrinsic fraud (Count Eight)

In her First Amended Complaint, Plaintiff alleges that Defendant fabricated an employment agreement and submitted it "extrinsically and intrinsically" to this case. (Doc. 39 ¶¶ 103-05.) Plaintiff asserts that Defendant's conduct constitutes both extrinsic

and intrinsic fraud.  (*Id.* ¶ 106.)

Plaintiff's extrinsic-fraud and intrinsic-fraud claims both fail.  First, "extrinsic fraud . . . prevents the party claiming to be injured from having a trial or presenting all his case to the court, and . . . it does not apply to 'any matter which was actually presented and considered in the judgment assailed.'"  *Dockery v. Cent. Ariz. Light & Power Co.*, 45 Ariz. 434, 454, 45 P.2d 656, 664 (1935) (citing *U.S. v. Throckmorton*, 98 U. S. 61, 66 (1878)), *superseded by statute on other grounds as discussed in In re Milliman's Estate*, 101 Ariz. 54, 61, 415 P.2d 877, 884 (1966); *see also Bates v. Bates*, 1 Ariz. App. 165, 169, 400 P.2d 593, 598 (Ct. App. 1965) (noting that relief for extrinsic fraud is setting aside judgment obtained through the fraud).[2]  Intrinsic fraud likewise requires that a plaintiff be challenging the judgment rendered in a prior proceeding.  *See Bailey v. I.R.S.*, 188 F.R.D. 346, 354 (D. Ariz. 1999) ("Intrinsic fraud is fraud which pertains to the issues involved in the original action . . . .  A claim of intrinsic fraud goes to the merits of the prior proceeding which the moving party should have guarded against at the time.") (citation and internal quotation marks omitted).  There has been no prior judgment in this action; it was removed from Superior Court to federal court before any judgment or decree had been rendered.  Accordingly, there is no prior judgment that could have been obtained by fraud, and there is no extrinsic or intrinsic fraud.

### I. Pattern of unlawful activity in violation of A.R.S. § 13-2314.04 (Count Eleven)

Plaintiff alleges that Defendant's actions constitute a pattern of racketeering activity violative of Arizona's civil racketeering statute, A.R.S. § 13-2314.04.  Plaintiff support this claim with allegations of forgery, attempted extortion, assertion of false claims, and a scheme or artifice to defraud; she asserts that Defendant's actions were for

---

[2] Extrinsic fraud is a broader concept when the parties are in a confidential, fiduciary, or similar relationship and a breach of the duty to deal fairly can constitute such fraud.  *Ivancovich v. Meler*, 122 Ariz. 346, 348-49, 595 P.2d 24, 26-27 (1979).  No such relationship exists between Defendant and Plaintiff in the instant action.

financial gain and fit within a larger pattern of malfeasance, such as falsifying documents, for financial benefit.

To survive a motion to dismiss, a plaintiff must allege facts showing: (1) two or more predicate acts of racketeering under A.R.S. § 13-2301(D)(4); (2) that the predicate acts establish a "pattern of racketeering activity" under A.R.S. §13-2314.04(T)(3); and (3) a reasonably-foreseeable injury to the plaintiff attributable to the racketeering. A.R.S. § 13-2314.04; *see also Fromkin v. IndyMac Bank FSB*, No. 10–CV–8014–PCT–PGR, 2010 WL 2541167, at *3 (D. Ariz. Jun. 18, 2010). To constitute a "pattern of racketeering activity," the predicate acts must be "continuous or exhibit the threat of being continuous," A.R.S. § 13-2314.04(T)(3)(a)(iii); it must be either "a closed period of repeated conduct, or [] past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241; *see also Lifeflite Med. Air Transp.*, 198 Ariz. 149, 152-53, 7 P.3d 158, 161-62 (Ct. App. 2000) (applying continuity requirement of federal racketeering statute to Arizona's analogous statute). The conduct must extend "'over a substantial period of time,' i.e., over more than 'a few weeks or months.'" *Lifeflite*, 189 Ariz. at 153, 7 P.3d at 162 (quoting *H.J. Inc.*, 492 U.S. at 242). Further, predicate acts must be related to one another to form a "pattern of racketeering activity." *Id.*, 189 Ariz. at 152, 7 P.3d at 161. Further, as discussed earlier, allegations sounding in fraud are subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. Defendants contend that Plaintiff has not sufficiently pled facts supporting her assertion that Defendant's actions were continuous and related—that they formed a "pattern of racketeering activity"—and that her alleged injury was reasonably foreseeable.

Plaintiff's vague and inartful attempt to plead a state racketeering violation falls short of federal pleading requirements. First, the First Amended Complaint is unclear as to exactly which acts are alleged as predicates to the Arizona racketeering violation. While the First Amended Complaint repeatedly mentions Defendant's alleged history of fraudulent activity for financial gain, Plaintiff fails to specify whether or not she means

- 13 -

this activity to predicate her racketeering allegations. At some points it appears that the earlier cases against AMEC, most of which are presented without citation or even cause number, are offered as predicate acts (*see, e.g.*, Doc. 39 ¶¶ 11, 122); elsewhere Plaintiff appears to rely on predicate acts allegedly committed against Plaintiff (*see, e.g.*, *id.* ¶ 115; *see also* Doc. 53 at 13-14 (listing predicate acts acknowledged in Defendant's Partial Motion to Dismiss but not mentioning of cases against AMEC in other courts)). Further, Plaintiff makes no attempt to demonstrate with more than conclusory statements that the prior cases satisfy the continuity and relatedness relationship with conduct that affected Plaintiff. Second, while Plaintiff labels Defendant's allegedly fraudulent conduct against Defendant as a number of different offenses, most of what she alleges boils down to a single transaction that is insufficiently pled to constitute a pattern of racketeering activity. Finally, while Plaintiff offers a conclusory declaration that "Plaintiff sustained a reasonably foreseeable injury to her person by a pattern of Defendant's racketeering activity," (*see* Doc. 39 ¶ 118), her First Amended Complaint is unclear as to which of the various injuries alleged qualify as reasonably-foreseeable results of the alleged racketeering. Accordingly, Plaintiff's claim that Defendant violated Arizona's racketeering statute will be dismissed.

**J.     Violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 (Count Twelve)**

Plaintiff's claim under the federal RICO statute likewise fails. Plaintiff never specifies which particular RICO provision(s) she is suing under. Further, she appears to offer the prior cases against Defendant on such matters as mail fraud and wire fraud as predicate acts, but fails to plead those matters with any particularity, let alone the specificity demanded by Rule 9(b). *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (holding that RICO claim's lack of specifics with regard to the time, place, and nature of the alleged mail and wire fraud was a fatal defect). Further, she fails to discuss the notion of an "enterprise"—a critical element of 18 U.S.C. § 1962(c), the provision she most likely sues under; in particular, she fails to identify which

defendant, subset of a defendant, or group of employees or officers constituted an enterprise. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Failure to properly allege an enterprise warrants dismissal of Count Twelve. As with the state racketeering claim, this count will be dismissed.

IT IS THEREFORE ORDERED that Defendant's Partial Motion to Dismiss is granted. Plaintiff has already had an opportunity to amend her complaint and further attempts to amend would be futile; accordingly, Counts Two, Three, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen are dismissed with prejudice.

IT IS FURTHER ORDERED that, as Plaintiff has sued both Defendant AMEC Environment & Infrastructure and AMEC PLC, without any allegations clarifying the relationship between the entities or supporting the claims in question here as against AMEC PLC, Counts Two, Three, and Five through Thirteen are also dismissed with prejudice as to the second defendant, AMEC PLC.

Dated this 7th day of January, 2013.

_____
Neil V. Wake
United States District Judge