**LEWIS AND ROCA LLP — LAWYERS**

40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Robert G. Schaffer, State Bar No. 017475
Direct Dial: (602) 262-0271
Direct Fax: (602) 734-3777
EMail: BSchaffer@LRLaw.com

Cindy Villanuev, State Bar No. 028163
Direct Dial: (602) 262-5789
Direct Fax: (602) 734-3904
EMail: BSchaffer@LRLaw.com

Attorneys for Defendant
AMEC Earth & Environmental, Inc.

FILED
2011 MAR 22 PM 12:32
VIRLYNN TINNELL
SUPERIOR COURT CLERK

## SUPERIOR COURT OF ARIZONA
## COUNTY OF MOHAVE

| | |
|---|---|
| Stacy D. Ford-Kelly, <br><br> Plaintiff, <br><br> vs. <br><br> AMEC Earth & Environmental, Inc., <br><br> Defendant. | No. CV-2010-07063 <br><br> **AMEC EARTH & ENVIRONMENTAL, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH PREJUDICE FOR FRAUD UPON THE COURT AND OTHER GROUNDS** <br><br> (Assigned to the Honorable Randolph A. Bartlett) |

Defendant AMEC Earth & Environmental, Inc. ("AMEC") has been forced to bring this motion because Plaintiff Stacy D. Ford-Kelly, a disgruntled former employee, has engaged in a misguided and brazen scheme to use the U.S. Mails to obtain signatures on return receipts, which she then filed with the Court along with false Affidavits of Service, all in an apparent effort to fraudulently obtain a default judgment against AMEC. Accordingly, AMEC moves to dismiss Plaintiff's First Amended Complaint <u>with prejudice</u> on the basis that: (1) Plaintiff has committed fraud upon the court by falsely claiming to have served AMEC with both her original Complaint and First Amended Complaint; (2) for failure to comply with Arizona's Rules of Civil Procedure pursuant to Ariz. R. Civ. P. 41(b); and (3) for improper service of process pursuant to Ariz. R. Civ. P. 12(b)(5).



L8015CV20100706

2337018.2

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **BACKGROUND**

### A. Plaintiff's Initial Complaint, Affidavits of Service, and Application For Default

Plaintiff Stacy D. Ford-Kelly is a former employee of AMEC. On April 15, 2010, Plaintiff filed a *pro se* complaint against AMEC in superior court seeking a judgment of $25,000,000 based on a laundry list of causes of action. (Compl. p. 1-2.)

On June 16, 2010, Plaintiff filed three Affidavits of Service By Certified Mail with the Court, claiming to have served copies of her Complaint on Roger Jinks, President of AMEC; David Ott, Vice President of AMEC; and CT Corporation System ("CT"), statutory agent of AMEC. Copies of the three Affidavits of Service by Certified Mail are attached hereto as Exhibits 1, 2, and 3, respectively.

Also on June 16, 2010, Plaintiff filed an Application for Default, Affidavit of Default, and Entry of Default against AMEC. (*See* 6/16/10 Application for Default). On October 27, 2010, Plaintiff filed a motion to schedule a default judgment hearing and a separate Proof of Notice claiming to have served Roger Jinks, David Ott and CT with the Application for Default, Affidavit of Default, and Entry of Default on June 16, 2010. (*See* 10/27/10 Proofs of Notice).

This Court held a default hearing on December 20, 2010, and advised Plaintiff that her complaint did not comply with Ariz. R. Civ. P. 8. The Court granted Plaintiff's request to amend her complaint. (*See* 10/20/10 Min. Entry from Default Hearing).

### B. Plaintiff's First Amended Complaint, Affidavits of Service, and Application for Default

On January 14, 2011, Plaintiff filed a First Amended Complaint which again alleges a hodgepodge of claims against AMEC. (First Am. Compl. ¶¶ 5-32).

On March 8, 2011, Plaintiff filed with the Court three additional Affidavits of Service by Certified Mail alleging to have served her First Amended Complaint and Summons on Roger Jinks, David Ott, and CT. Copies of the three Affidavits of Service by Certified Mail are attached hereto as Exhibits 4, 5, and 6, respectively. Plaintiff also filed

2337018.2

Case 3:12-cv-08085-NVW   Document 73-1   Filed 01/21/13   Page 3 of 12

LEWIS
AND
ROCA
——LLP——
LAWYERS

1  an Application for Default with the Court on March 8, 2011, in which she avers that she
2  served the Application upon CT. (*See* 3/8/11 Application for Default).

### C. AMEC's Discovery of Plaintiff's Lawsuit

Contrary to Plaintiff's Affidavits of Service, AMEC has never been served with either the Complaint or the First Amended Complaint. In fact, AMEC was entirely unaware of this lawsuit until it began to investigate a suspicious package received by AMEC's Senior Vice President David Ott, on January 26, 2011. The package in question was delivered with a return receipt requested from an unknown party located in Lake Havasu City, Arizona. When the package was opened, it contained only blank paper. (Ex. 7, Declaration of David Ott ("Ott Decl.") ¶ 2.)

Concerned about receiving this suspicious package, AMEC immediately commenced an investigation. (Ex. 8, Declaration of Debbie Keyes ("Keyes Decl.") ¶ 2-3.) AMEC discovered that the address on the package was a mailbox rental facility located in Lake Havasu City. (Ex. 8, Keyes Decl. ¶ 5). Further inquiry led AMEC to conclude that the handwriting on the package was the same as the handwriting on a form that Plaintiff had filled out as an employee of the company. (*Id.* ¶ 8 & Exs. A & C).

Curious about why Plaintiff would pay for a return receipt for a package containing blank paper, an AMEC employee decided to check the Mohave County Superior Court website and discovered that Plaintiff had filed a complaint against AMEC in May 2010. (Ex. 8, Keyes Dec. ¶ 9). After additional investigation by AMEC, it was discovered that the Certified Mail tracking number on the package sent to David Ott — the one that contained only blank paper — matches the tracking number on the return receipt attached to one of the Affidavits of Service filed by Plaintiff on March 8, 2011. (*See* Ex. 5, Affidavit of Service–Ott; Ex. 7, Ott Decl., Ex. A).

### D. The Jinks Package — More Blank Paper

AMEC also discovered that Plaintiff sent a second package to AMEC on January 26, 2011, addressed to its former President Roger Jinks. Because Mr. Jinks had recently retired and moved to Nanaimo, British Columbia, the package was forwarded to AMEC's

Nanaimo office and was not immediately opened. (Ex. 9, Declaration of Roger Jinks ("Jinks Decl.") ¶ 3). When the package was eventually opened, as witnessed by three AMEC employees, it also contained blank paper. (Ex. 9, Jinks Decl. ¶ 4; Ex. 10, Declaration of Allan Morrison ¶ 3; Ex. 11, Declaration of Darcey Kaluza ¶ 3).

As with the package sent to David Ott, the tracking number on the package sent to Roger Jinks matches the tracking number on the return receipt attached to a second Affidavit of Service filed by Plaintiff on March 8, 2011. (*See* Ex. 4, Affidavit of Service–Jinks; Ex. 9, Jinks Decl., Ex. A)

### E. CT's Investigation

At the request of AMEC, CT conducted its own investigation into the packages sent by Plaintiff. Attached hereto as Exhibit 12 is a Declaration from CT's Senior Corporate Operations Specialist, Amelia Martinez ("Martinez Decl."), further confirming Plaintiff's false affidavits.

CT confirmed that, on January 26, 2011, it received a Priority Mail/Certified Mail package with a return receipt requested from an unknown party located at 1990 McCulloch Blvd. N, Lake Havasu City, AZ 86403. (Ex. 12, Martinez Decl. ¶ 2). When opened, the package contained blank pages with no identifying information as to the party upon whom service was sought. (*Id.* ¶ 2). On January 26, 2011, CT sent a letter by Federal Express returning the package to the sender and advising the sender that it contained only blank pages. (Ex. 12, Martinez Decl. ¶ 3 & Ex. B).

Again, the tracking number on the package sent to CT matches the tracking number on a return receipt attached to the third Affidavit of Service filed by Plaintiff on March 8, 2011. (*See* Ex. 6, Affidavit of Service–CT; Ex. 12, Martinez Decl. ¶ 2 & Ex. A).

CT has performed a thorough search of its records for the period January 1, 2010 to the present. At no time did CT receive notice of Mohave County Superior Court case CV2010-07063 styled *Stacy D. Ford-Kelly v. AMEC Earth & Environmental, Inc.* (Ex. 12, Martinez Decl. ¶ 6).

4

LEWIS
AND
ROCA
——LLP——
LAWYERS

### F. The Original Complaint Was Not Served Either

AMEC's investigation has confirmed that this is not the first time Plaintiff has engaged in this type of misconduct. Plaintiff pulled a similar stunt in filing sworn Affidavits of Service in June 2010 in connection with her original Complaint.

As noted above, Plaintiff filed three sworn Affidavits of Service on June 16, 2010, claiming that she served her original Complaint on AMEC and CT. (*See* Exs. 1, 2 and 3) CT's records show that it received a package from Plaintiff on May 6, 2010, and transmitted the contents of the package to Jackie Wasyluk, Legal Assistant, AMEC Legal Services. (Ex. 12, Martinez Decl. ¶ 5). However, as indicated on CT's Service of Process Transmittal, the package did not contain a copy of the Complaint and Summons but instead contained a rambling diatribe that gave AMEC no indication that a lawsuit had been filed against it. (*See* Ex. 12, Martinez Decl., ¶ 5 & Ex. D). The certified mail tracking number on the package sent to CT on May 6, 2010, matches the tracking number on the return receipt that was filed by Plaintiff as proof of service on June 16, 2010. (Ex. 3, Affidavit of Service–CT; Ex. 12, Martinez Decl. ¶ 5 & Ex. D).

After looking at the document that was mailed to CT in May 2010, both Roger Jinks and David Ott believe that they may have received a similar letter in early 2010, and it appears that at least Roger Jinks saw a copy of the letter that had been forwarded to AMEC by CT. (Ex. 7, Ott Decl. ¶ 5; Ex. 9, Jinks Decl. ¶ 5). At no time prior to AMEC's investigation, however, did Roger Jinks or David Ott, or anyone else at AMEC, receive a copy of Plaintiff's Complaint or Amended Complaint, or any other document that would have put them on notice that Plaintiff had filed a lawsuit against AMEC. (Ex. 7, Ott Decl. ¶ 6; Ex. 9, Jinks Decl. ¶ 6). As noted above, AMEC only became aware of this lawsuit through its own investigation and by obtaining copies of the Complaint and First Amended Complaint from the court's central file. (Ex. 8, Keyes Decl. ¶ 9.)

2337018.2

## II. THE COMPLAINT SHOULD BE DISMISSED UNDER THE COURT'S INHERENT POWER TO PREVENT FRAUD UPON THE COURT AND PURSUANT TO ARIZONA'S CIVIL CONTEMPT STATUTE

### A. The Court Has the Inherit Authority to Dismiss the Case

Courts possess inherent power to sanction an individual for committing a fraud on the court. *See Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 211 P.3d 16 (Ariz. Ct. App. 2009); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123 (1991); *Perna v. Elec. Data Sys. Corp.*, 916 F. Supp. 388, 397(D.N.J. 1995); *Ramey v. Haverty Furniture Companies, Inc.*, 993 So. 2d 1014, 1018 (Fla. Dist. Ct. App. 2008); *Lett v. Providence Journal Co.*, 798 A.2d 355, 364 (R.I. 2002). Moreover, under A.R.S. Sec. 12-864, a court may hold a party in contempt for "obstruct[ing] the administration of justice" and issue an appropriate punishment including dismissal with prejudice "in conformity to the practice and usage of the common law." *See* A.R.S. § 12-864; *see also Green*, 221 Ariz. at 149-50, 211 P.3d at 27-28 (recognizing court's authority to sanction party by terminating claims). Thus, by statute, Arizona has codified a court's inherent power to dismiss a case for contempt under common law principles.

A court's inherit authority to dismiss a case and protect the sanctity of the judicial process is never more compelling than in a situation where an individual is engaged in fraud upon the court. *Perna*, 916 F. Supp. at 397. A fraud on the court occurs "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989); *see also Cox v. Burke*, 706 So.2d 43, 46 (Fla. Ct. App. 1998) (utilizing the *Aoude* test to determine whether particular conduct was sufficient to justify dismissal for fraud on the court); *Lett*, 798 A.2d at 364 (same). Although, dismissal is the most severe sanction a court can levy against a party, dismissal is justified under a court's inherent power in extreme circumstances, in response to abusive litigation

practices, and to insure the orderly administration of justice and the integrity of the court's order. *See, e.g. Halaco Engineering Co. v. Costle*, 843 F.2d 376 (9th Cir. 1988); *U.S. v. Schaffer Equip. Co.*, 11 F.3d 450 (4th Cir. 1993).

Plaintiff has clearly engaged in fraud upon the court that merits the dismissal of her complaint with prejudice. Plaintiff falsely claimed to have served AMEC with the Amended Complaint and Summons in sworn affidavits filed with the court. Under oath, Plaintiff stated that she mailed the Amended Complaint and Summons to representatives of AMEC. The truth, however, is that Plaintiff did not serve anything but blank pages. Plaintiff's actions were clearly designed to keep AMEC in the dark about the claims against it.

Moreover, instead of using her own name and address, Plaintiff used a mailbox rental facility for a return address. This was intended to ensure that AMEC would have a difficult time discovering who sent the envelopes and for what reasons. It was only through extensive investigation that AMEC was able to connect the dots and determine that Plaintiff was behind the packages and was attempting to fraudulently obtain a default judgment against AMEC.

Plaintiff's recent filing of false affidavits after serving only blank paper is not the first time that Plaintiff has perjured herself in this case. As discussed above, Plaintiff did not serve AMEC with the Complaint and Summons but instead served a rambling diatribe that gave AMEC no notice that a complaint had been filed against it or that it needed to respond. Yet Plaintiff filed false affidavits attesting that she served her original complaint on AMEC

Plaintiff's fraud was calculated to mislead the Court and interfere with the Court's ability to impartially adjudicate this matter by seeking to prevent AMEC from defending itself. Had it not been for the investigation conducted by AMEC employees, AMEC never would have become aware of this claim. Plaintiff's actions clearly constitute fraud upon the court.

### B. Dismissal Complies with Plaintiff's Due Process Rights

The United States Supreme Court has recognized that where due process is satisfied even the harsh sanction of dismissal may be warranted. *See Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S. Ct. 370 (1909). A court's authority to "hold any person in contempt, whether a party to a case before that court or a non-party, is subject to constitutional and statutory restraints regarding the process due to any person so accused." *Chen v. Stewart*, 123 P.3d 416, 428 (Utah 2005) (upholding case-terminating sanctions).

Merits-terminating sanctions comply with due process if "one may reasonably infer from the suppression of relevant evidence that the defendant's case is lacking in merit." *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir.1982); *see also Green*, 221 Ariz. at 151, 211 P.3d at 28. If the sanctioned conduct invites a negative inference about the merits of the party's claims or defenses, due process is met, and merits-terminating sanctions are constitutionally appropriate. *Green*, 221 Ariz. at 151, 211 P.3d at 28. Thus, due process is satisfied when a court terminates a party's case as a sanction for a planned fraud on the court. *See id.*; *Chen*, 123 P.3d at 428-29.

Due process is clearly met in this case. As in *Chen*, Plaintiff had planned a fraud upon the court that invites a negative inference about the merits of her claims. Plaintiff has engaged in conduct that was designed to improperly influence the court's decision on the merits of the case. Therefore, the court may dismiss the Plaintiff's claims with prejudice consistent with due process.

### C. Dismissal is Warranted under Applicable Factors

Before exercising the inherent power to dismiss a case, a court should consider the following factors: (1) prejudice to the other party, both in terms of its ability to litigate its claims and other harms caused by the disobedient party's actions; (2) whether the violations were committed by the party or by counsel; (3) whether the conduct was willful or in bad faith and whether the violations were repeated or continuous; (4) the public interest in the integrity of the judicial system and compliance with court orders; (5) prejudice to the judicial system, including delays and the burden placed on the trial court;

2337018.2

prejudice to the judicial system, including delays and the burden placed on the trial court; (6) efficacy of lesser sanctions; (7) whether the party was warned that violations would be sanctioned; and (8) public policy favoring the resolution of claims on their merits. This list is not exclusive; a trial court may identify and address any other relevant circumstances. *Green*, 221 Ariz. at 154-155, 211 P.3d at 31-32.

In this case, these factors weigh strongly in favor of dismissal with prejudice. Plaintiff has chosen to represent herself and she, alone, repeatedly and willfully violated Arizona's Rules of Civil Procedure and attempted to mislead the Court through demonstrably false affidavits. Plaintiff's violations clearly were designed to interfere with AMEC's ability to litigate the case. In fact, Plaintiff's actions were meant to completely deprive AMEC of its right to defend against her baseless claims. Plaintiff's goal was obviously to obtain a large default judgment against AMEC without giving AMEC notice of the complaint.

These violations were willful and in bad faith. It is not an accident to send out envelopes with blank paper. A mistake might be believable if only one envelope contained blank pages, but three envelopes show that Plaintiff's actions were willful. Moreover, Plaintiff's fraudulent service of the Amended Complaint was not Plaintiff's first violation. Plaintiff also willfully failed to serve the original Complaint on AMEC. Even though public policy generally favors the resolution of claims on the merits, the public interest in the integrity of the judicial system calls for Plaintiff's claim to be dismissed with prejudice. Plaintiff's actions show a complete disregard for the judicial process.

### III. ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE FOR FAILURE TO COMPLY WITH ARIZONA'S RULES OF CIVIL PROCEDURE.

The court also has authority to dismiss the complaint with prejudice pursuant to Ariz. R. Civ. P. 41(b) for Plaintiff's deliberate violation of Arizona's Rules of Civil Procedure. Rule 41(b) provides that a party can seek an involuntary dismissal of a

9

2337018.2

complaint if the other party fails to comply with "these rules or any order of the court." *See Hells Canyon Preservation Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005) (stating that courts may dismiss an action pursuant to Federal Rule of Civil Procedure 41(b) sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or the court's orders); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ("Failure to follow a district court's local rules is a proper ground for dismissal"). Accordingly, this case should be dismissed with prejudice because Plaintiff has failed to comply with Ariz. R. Civ. P. 4.1, which requires that a plaintiff serve the summons and pleading within the time allowed for service and provide sworn proof of service prior to seeking entry of default.

This case is similar to *C.B.H. Resources, Inc. v. Mars Forging Co.*, 98 F.R.D. 564 (W.D. Pa. 1983), where the court held that the president and owner of the plaintiff corporation abused the process of the court in violation of Fed. R. Civ. P. 45 and Fed. R. Civ. P. 30 by securing a witness's presence and sworn testimony by means of false threats and a bogus subpoena. The court stated that the scheme was "totally at odds with the Federal Rules of Civil Procedure and the notions of fairness central to our system of litigation." *Id.* at 569. The court concluded that it "cannot allow a party which has demonstrated such a flagrant disregard for our rules simply to receive a small penalty and then go forward with its claim." *Id.* Similarly, where the violations of the rules are as serious as they are here, dismissal with prejudice is the only appropriate sanction.

Plaintiff's scheme to obtain proof of service by certified mail by sending envelopes that contained nothing but blank paper is completely at odds with Arizona's Rules of Civil Procedure. Proper service is essential for the administration of justice. The court relies on a plaintiff's declaration that they have informed the defendant of the complaint in order to proceed with subsequent court actions. By filing fraudulent proofs of service, Plaintiff has committed serious violations of Arizona's Rules of Civil Procedure. Plaintiff has repeatedly perjured herself before this Court in an attempt to obtain a monetary judgment against AMEC without actually giving AMEC an opportunity to defend itself. Dismissal

with prejudice is the only proper sanction against Plaintiff given Plaintiff's complete disregard for the Rules of Civil Procedure.

Moreover, Plaintiff has disregarded her obligations under the Rules of Civil Procedure to provide proper service not once, but twice. These violations were not accidental or insignificant technical violations but instead deliberate and calculated violations that were meant to deprive AMEC of its ability to defend itself. As such, the Court should dismiss this case with prejudice because Plaintiff has shown a flagrant disregard for Arizona's Rules of Civil Procedure.

## IV. ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS.

Plaintiff purported to effect service of process on AMEC via certified mail, pursuant to Arizona Rule of Civil Procedure 4.2(c). Rule 12(b)(5) of the Arizona Rules of Civil Procedure requires dismissal for failure to properly serve the Complaint on the defendant. As discussed above, Plaintiff has never properly served the Summons and First Amended Complaint upon AMEC. Instead, Plaintiff sent envelopes which contained nothing but blank sheets of paper. This failure to properly serve was not for "good cause" but instead was willful. *See Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996) (court did not abuse its discretion by dismissing case, even though statute of limitations had run, because plaintiff's failure to effect valid service on correct party after obtaining necessary information was "willful, not inadvertent."). Accordingly, the complaint should be dismissed pursuant to Rule 12(b)(5).

## V. CONCLUSION

Plaintiff's First Amended Complaint should be dismissed with prejudice under the Court's inherit authority. Plaintiff has clearly committed multiple instances of fraud upon the Court in an attempt to circumvent the court's rules and obtain a default judgment against AMEC. Alternatively, the Court should dismiss the complaint pursuant to Ariz. R. Civ. P. 41(b) for flagrantly disregarding Arizona's Rules of Civil Procedure or pursuant to Ariz. R. Civ. P. 12(b)(5) for insufficient service of process.

LEWIS AND ROCA LLP
LAWYERS

RESPECTFULLY SUBMITTED this 22nd day of March, 2011.

**LEWIS AND ROCA LLP**

By _____
Robert G. Schaffer
Cindy Villanueva
*Attorneys for AMEC Earth & Environmental, Inc.*

ORIGINAL of the foregoing was sent for filing by FedEx Next Day Delivery with the Mohave County Superior Court this ___ day of March, 2011, and a COPY provided for:

Honorable Randolph A. Bartlett
Mohave County Superior Court
401 E. Spring Street
Kingman, AZ 86401

COPY of the foregoing was mailed this ___ day of March, 2011, to:

Stacy D. Ford-Kelly
1561 Mohican Dr.
Lake Havasu City, AZ 86406
*Pro Se*

_____

12

2337018.2