Peter K. Strojnik, State Bar No. 026082
**THE STROJNIK FIRM L.L.C.**
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Telephone:  (602) 510-9409
Facsimile:   (602) 532-7572
Strojnik@skplaw.com

Peter Strojnik, State Bar No. 006464
**STROJNIK P.C.**
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Telephone:  (602) 524-6602
Facsimile:   (602) 296-0135
PS@strojnik.com

Attorneys for Plaintiff
Stacy Ford-Kelly

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy D. Ford-Kelly,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>AMEC Environment & Infrastructure, Inc., a Nevada Corporation; AMEC PLC, a British company,<br><br>　　　　　Defendants. | Case No: 3:12-cv-08085-NVW<br><br>**STATEMENT OF FACTS** |

Plaintiff submits her Statement of Facts in support of her Motion for Summary Judgment.

**Plaintiff's Employment and Termination**

　　**1.**　　Stacy Ford-Kelly is a married woman with three children residing in Lake Havasu City, Arizona. She resides in Lake Havasu because she accepted employment with Defendant AMEC Environment & Infrastructure, Inc. *fka* AMEC Earth & Environemntal in January 2008. Prior to her acceptance of a position with Defendant,

1  Plaintiff was a long time resident of Idaho where she lived with her children. *See*,
2  Exhibit 1 (Declaration of Stacy Ford).

3  **2.**  Plaintiff was raised in Boise, Idaho. In 2006, she obtained her
4  undergraduate degree in civil engineering from Boise State University. Ultimately,
5  Plaintiff sat for and passed the Fundamentals of Engineering examination for
6  certification as an Engineer in Training before she graduated from Boise State. In the
7  Fall of 2006, Plaintiff began her Masters education in civil engineering at Boise State.
8  During this education, she focused her studies on wastewater and water treatment
9  facilities design with an emphasis in hydrology and hydrogeology encompassing the
10 environmental aspects of civil engineering, e.g. the application of civil engineering to
11 well design and sewer and water treatment design. In January of 2008, Plaintiff
12 completed over half of the requirements, but she put her Masters education on hold to
13 relocate to Havasu to work for Defendant. *Id*. at ¶2.

14 **3.**  Plaintiff is a design engineer, which is synonymous with EIT. A design
15 engineer distinguishes him/herself from a drafter because a design engineer designs the
16 entire system, writes the appropriate engineering reports, applies for the required
17 construction and environmental permits, approves the materials the contractor is using,
18 and performs inspection of work completed during all phases of construction. An
19 example would be a sewer system, as well as the engineering and design in order to
20 develop the conceptual, preliminary and detail design, e.g. the slope, gravity, and
21 keeping the flow vis-à-vis accommodation of large objects within the sewer system. In
22 simpler terms, a design engineer creates the construction drawings and three-
23 dimensional computer modeling requisite for a prototype and production of the
24 applicable project and ensures the proper reports, permits, materials and construction
25 are in compliance with environmental regulations and within the required specifications
26 for that particular project. *Id*. at ¶3.

27 **4.**  In early January 2008 (either Jan. 3 or 4), Chris Hassert telephoned
28 Plaintiff. Mr. Hassert was the Unit Manager at Defendant's Lake Havasu office. Mr.

Hassert invited Plaintiff to Lake Havasu for an interview for the open design engineer job to work on the new contract Defendant signed to develop a new sewer system in Havasu. The Havasu sewer project was a six-year project. *Id*. at ¶4.

5. The interview was scheduled for on or about January 14, 2008 with all expenses paid by Defendant. Plaintiff flew into Las Vegas via Southwest Airlines on the evening of January 13, 2008 and thereafter rented a vehicle to drive to Lake Havasu that evening. She spent the night at a local Havasu hotel. *Id*. at ¶5.

6. On the following morning, Plaintiff's interview took place at Defendant's Havasu office and continued over lunch at the golf course country club. After returning to the office, Plaintiff advised Mr. Hassert that she was looking for a starting salary between $60,000 and $65,000 per year and that she wanted some term guarantee because she would be relocating her and her children. Plaintiff requested the employment include a salary increase to $85,000 upon her passing the Professional Engineer examination to obtain her license as a PE. *Id*. at ¶6.

7. During the interview, Mr. Hassert also advised Plaintiff that Defendant's contract with Havasu extended through the end of 2013 and was scheduled to be completed by the end of 2013. Mr. Hassert advised that they would require Plaintiff's services through the end of the Havasu contract. *Id*. at ¶7.

8. The sole purpose of hiring Plaintiff was for her to work on the Havasu sewer project. In fact, the Defendant's Havasu office was opened for the sole purpose of working on the Havasu contract. *Id*. at ¶8.

9. On or about January 16, 2008, Mr. Hassert telephoned Plaintiff and advised her she was selected for the position. He further advised that a contract would be delivered to her from Defendant's Bothell, Washington office. That same day, Plainitff filled out the application for employment that Mr. Hassert had given her at the interview, which was a mere formality. *Id*. at ¶9.

10. On January 21, 2008, Plaintiff received the contract via express mail. She signed it, called Mr. Hassert and advised him that she would be driving to Havasu

shortly. Mr. Hassert advised that when she arrived, she should deliver the signed contract to Renee Lair in the Havasu office and arrange with her the drug testing and background checks. *Id*. at ¶10.

11. The contract Plaintiff signed and her signature on the signed contract has been the same contract she has presented during this litigation. *Id*. at ¶11.

12. On Janaury 23, 2008, Plaintiff arrived in Havasu and immediately delivered the signed original contract to Renee Lair in Defendant's Havasu office. *Id*. at ¶12.

13. A true and correct copy of the employment contract and Plaintiff's business card showing her employment as a design engineer with Defendant is attached as Exhibit 2.

14. Plaintiff took a FMLA medical leave and was set to return on April 21, 2009. However, she was terminated on the day she was scheduled to return. *See*, Exhibit 3 (Employee Action Form showing Plaintiff's scheduled termination upon return from FMLA leave).

15. At 7:30 a.m. on April 21, 2009, Plaintiff arrived at Defendant's Havasu office medically cleared to return to work. Mr. Miller called her into his office and asked Mr. Lywood to join them. Mr. Lywood advised Plaintiff that Defendant was "letting you go" due to the "economic downfall" and presented her with a letter confirming the termination and a Separation and Release Agreement. Ex. 1 at ¶14.

16. A true and correct copy of the letter and Release agreement are attached as Exhibits 4 and 5, respectively.

17. Plaintiff requested whether she would be paid the balance of her contract. Mr. Lywood advised that she speak with David Bennion about that. Mr. Bennion is the HR manager for Defendant. Ex. 1 at ¶15.

18. Plaintiff called Mr. Bennion to request the balance of the monies due on the contract. Mr. Bennion advised Plaintiff that Defendant was not obligated to fulfill their obligation under the employment contract because "we don't need you anymore."

4

*Id*. at ¶16. She was really being fired because of the reports and complaints she made about Defendant's unethical business practices and over-estimation of material quantities with respect to the Havasu sewer project. *Id*.

**19.** Defendant terminated Plaintiff's employment. Despite weekly efforts, Plaintiff has not been able to find gainful employment since the termination. *Id*. at ¶17.

**20.** Defendant did not tender the balance of the employment contract following termination. *Id*. at ¶18.

**Plaintiff Files 2010 Suit in Mohave County and Defendant Destroys Original**

**21.** On April 15, 2010, pro se Plaintiff filed a multi-count handwritten lawsuit against Defendant alleging breach of contract vis-à-vis the Arizona Employment Protection Act in case number CV2010-07063. *See*, Exhibit 6 (relevant Mohave County docket)[1].

**22.** On January 14, 2011, Plaintiff filed an amended Complaint that was typewritten and factually expanded on the several different counts in the original Complaint. Plaintiff attached the employment contract as Exhibit 1 to the amended Complaint. *Id*.

**23.** On March 22, 2011, Defendant, by and through Robert Schaffer of the Lewis and Roca law firm, filed a Motion to Dismiss the amended Complaint. The basis for the Motion was that Defendant claimed Plaintiff committed a fraud upon the Court. *Id*.

**24.** On August 29, 2011, the Mohave Court denied Defendant's Motion to Dismiss. *Id*.

**25.** On September 20, 2011, Defendant filed a new Motion to Dismiss, or in the alternative an evidentiary hearing. *Id*.

**26.** On October 27, 2011, Defendant destroys the original version of the employment contract. Exhibit 7.

---

[1] Plaintiff respectfully requests that the Court take judicial notice of the Mohave County docket.

27. On December 8, 2011, the Court granted Defendant's Motion to Dismiss but also gave Plaintiff to re-file the action within 90 days pursuant to Arizona's Savings Statute. Ex. 6.

28. On December 22, 2011, Defendant filed a Motion for Reconsideration of granting Plaintiff's right to refile. *Id*.

29. On January 5, 2012, the Court denies Defendant's Motion for Reconsideration. *Id*.

**Plaintiff Refiles in Mohave County and Defendant Removes To This Court**

30. On April 18, 2012, Plaintiff refiles in Mohave County court case number CV2012-07021 alleging, inter alia, breach of written employment contract. Exhibit 1 to the Complaint is the employment contract. Doc. 1-1.

31. On May 1, 2012, Defendant, by and through the Lewis and Roca law firm, removed the lawsuit to this Court. Doc. 1.

32. At the Scheduling Conference, Defendant, by and through the Lewis and Roca law firm, advised the Court that there never was an original version of the employment contract. Exhibit 8 at 17:19-22.

33. In private correspondence, however, Defendant conceded that the original of Plaintiff's employment contract was destroyed on October 27, 2011. *See*, Exhibit 7 at Page 2 (10-9-12 correspondence from Melanie Pate).

**Defendant's Destruction of Original Precludes Plaintiff From Proving the Contract is Genuine**

34. It is impossible to authenticate Plaintiff's employment contract because the original was destroyed. In fact, "one universal commonality with electronic cut-and-past forgeries is that the 'original' document is always 'lost'". Exhibit 9.

RESPECTFULLY SUBMITTED this 11th day of February, 2013.

THE STROJNIK FIRM LLC

By s/ Peter K. Strojnik

6

Peter K. Strojnik (026082)
Peter Strojnik (006464)
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on February 11, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Melanie Pate
Robert Schaffer
Alastair Gamble
Lewis & Roca LLP
40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004
Attorneys for Defendant

s/ Peter K. Strojnik

A courtesy paper copy of the Motion was also provided via hand delivery on February 11, 2013 to:

The Honorable Neil V. Wake
Judge of the United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 524
400 West Washington Street, SPC 52
Phoenix, Arizona

7

s/ Peter K. Strojnik

8