## CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE

AMEC Earth & Environmental ("AMEC") and **Stacy Ford**, Employee's heirs, executors, administrators, successors, and assigns (collectively referred to throughout this Confidential Separation Agreement and General Release ("Agreement") as "Employee"), agree that:

1. **Last Day of Employment.** Employee's last day of employment with AMEC is April 21, 2009.

2. **Consideration.** In consideration for signing this Agreement, and complying with its terms, AMEC agrees:

   a. to pay to Employee, Stacy Ford, $3,818.66, representing two (2) weeks of salary at Employee's base rate of pay, less lawful deductions, and one (1) month of COBRA costs (grossed up) within fourteen business days after AMEC receives a signed original of this Agreement.

3. **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in paragraph "2" above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4. **General Release of All Claims.** Employee knowingly and voluntarily releases and forever discharges AMEC, its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries (collectively referred to throughout the remainder of this Agreement as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

   - Title VII of the Civil Rights Act of 1964;

   - Sections 1981 through 1988 of Title 42 of the United States Code;

   - The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);

   - The Immigration Reform and Control Act;

   - The Americans with Disabilities Act of 1990;

   - The Workers Adjustment and Retraining Notification Act;

   - The Fair Credit Reporting Act;

FORD 00121

- Arizona Civil Rights Act – Ariz. Rev. Stat. §41-1401 et seq.
- Arizona AIDS Testing and Confidentiality Act – Ariz. Rev. Stat. Art. 4, Tit. 36, §36-661, 664-668
- Arizona Equal Pay Law – Ariz. Rev. Stat. Art. 6.1, Ch. 2, Tit. 23, §23-340 et seq.
- Arizona Genetic Testing Laws – Title 12, Ch. 19, Art. 1, Ariz. Rev. Stat. §12-2801 and Title 20, Art. 6, Ariz. Rev. Stat. §20-448.02
- Arizona Employment Protections Act – Title 23, Ch. 9, Art. 1, Ariz. Rev. Stat. §23-1501
- Arizona Constructive Discharge Law – Title 23, Ch. 9, Art. 1, Ariz. Rev. Stat. §23-1502
- Arizona Wage Payment and Work Hour Laws
- Arizona Occupational Safety and Health Act, as amended
- Arizona Political Activities of Employees Law – Ariz. Rev. Stat. §16-1012 et seq.
- Arizona Drug Testing Law – Ariz. Rev. Stat. §23-493
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

5. **Acknowledgments and Affirmations.**

Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against AMEC, except _____.

Employee also affirms that Employee has been paid and/or has received all compensation, wages, bonuses, commissions, and/or benefits to which Employee may be entitled. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

Employee further affirms that Employee has no known workplace injuries or occupational diseases.

FORD 00122

Employee also affirms that Employee has not divulged any proprietary or confidential information of AMEC and will continue to maintain the confidentiality of such information consistent with AMEC's policies and Employee's agreement(s) with AMEC and/or common law.

Employee further affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by AMEC or its officers, including any allegations of corporate fraud. Both Parties acknowledge that this Agreement does not limit either party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency. To the extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

6. **Confidentiality and Return of Property.** Employee agrees not to disclose any information regarding the underlying facts leading up to or the existence or substance of this Agreement, except to Employee's spouse, tax advisor, and/or an attorney with whom Employee chooses to consult regarding Employee's consideration of this Agreement.

Employee affirms that Employee has returned all of AMEC's property, documents, and/or any confidential information in Employee's possession or control. Employee also affirms that Employee is in possession of all of Employee's property that Employee had at AMEC's premises and that AMEC is not in possession of any of Employee's property.

7. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the state in which Employee worked at the time of Employee's last day of employment without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8. **Nonadmission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

FORD 00123

9. **Amendment.** This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE 21 DAYS TO CONSIDER THIS AGREEMENT.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

By:_____
  Stacy Ford

Date:_____

AMEC EARTH & ENVIRONMENTAL

By:_____
  Mike Lywood
  Unit Manager—Lake Havasu, AZ

Date: April 21, 2009

FORD 00124