198

**Name of Person Filing:** Stacy D. Ford-Kelly
**Mailing Address:** 1561 Mohican Dr.
**City, State, and Zip Code:** Lake Havasu City, AZ 86406
**Daytime Phone Number:** (928) 846-2869
**Evening Phone Number:**
**ATLAS Number (if applicable):**
**State Bar Number (if applicable):**
**Representing:** ☑ Self ☐ Petitioner ☐ Respondent

For Clerk's Use Only

BY 198

2010 APR 15  PM 4: 28

VIRLYNN TANNELL
SUPERIOR COURT CLERK

## SUPERIOR COURT OF ARIZONA
## MOHAVE COUNTY

Stacy D. Ford-Kelly
**(Name of Petitioner/Plaintiff)**

**Case Number:** CV-2010-07063

CIVIL COMPLAINT
**(Title of Form)**

AND

AMEC Earth & Environmental, Inc.
**(Name of Respondent/Defendant)**

COMES NOW Stacy D. Ford-Kelly ___ In the above captioned case to request the Court to:
**(Name)**

ask for judgment against Defendant in the sum of $25,000,000.00, with interest (at the legal rate from date of judgment) until paid, plus all costs of this suit.

For the following reason(s):

Plaintiff alleges that this Court has jurisdiction over this matter and Plaintiff is suing the Defendant for violation of Arizona Employment Protections Act, Arizona Constructive Discharge Law, Arizona Equal Pay Law, Arizona Drug Testing Law, Arizona Blacklist Law. Plaintiff also seeks relief for being discharged for "whistle blowing" that is in violation of public policy, theft of original BSCE Degree, theft of original EIT certification, theft of official transcripts, attempted bribery, defamation of character/libel, public disclosure of private facts, false light laws and physical, mental and emotional distress.

10/9/2009

**Page 1 of 2**


L8015CV201007063

Case No._____

## OATH OR AFFIRMATION

STATE OF ARIZONA    )
                 ) ss.
County of Mohave    )

I declare under penalty of perjury that the information on this form is true and correct to the best of my knowledge and belief.

_Stacy D. Ford-Kelly_                    _04/15/2010_
Signature                                        Date

Subscribed and sworn to (or affirmed) before me on this ___15___ day of _April_, 20_10_.

By: _Stacy Deann Ford Kelly_

My commission Expires:_____        _____
                                              Deputy Clerk / Notary Public

                             _AMEC Earth & Environmental, Inc. Statutory Agent:_

Copy sent to:    _CT Corporation System_ (other party)

                   _2394 E. Camelback Rd._ (address)

                   _Phoenix, AZ  85016_ (city, state, zip)

                 on: _April 15, 2010_ (date)
                 _Certified mail- return receipt requested_

1 | Stacy D. Ford-Kelly
    1561 Mohican Dr
2 | Lake Havasu City, AZ 86406
    928-505-4963
3 | Plaintiff Pro Per

FILED
BY: _____

2011 JAN 14  PM 4: 36

VIRGINIA TINNELL
SUPERIOR COURT CLERK

4

## SUPERIOR COURT OF THE STATE OF ARIZONA

5

## COUNTY OF MOHAVE

6

7                                              Case No: CV-2010-07063

8        STACY D. FORD-KELLY,
             Plaintiff              FIRST AMENDED CIVIL COMPLAINT in re:
                                    Violation of AEPA, Breach of Employment Contract,
9              v.                   Violation of AZ Drug Testing Law, Violation of the
                                    Whistle Blowing Act, Theft, Attempted Bribery, FLMA
10    AMEC EARTH & ENVIRONMENTAL, INC.,   Violation, Defamation of Character/Libel, Blacklisting,
             Defendant              Privacy Act Violation, Sexual Harassment, Racial
11                                  Discrimination, Religious Discrimination, Punitive
                                    Damages for Financial, Emotional, Physical & Mental
12                                  Distress/Damages

13   COMES NOW, Stacy D. Ford-Kelly, in pro per for her complaint against the above named Defendant, alleges and states

14   as follows:

15
       1.   Plaintiff, Stacy D. Ford-Kelly, resides at 1561 Mohican Drive, Lake Havasu City, AZ 86406.
16

17     2.   Defendant AMEC Earth & Environmental, Inc., a division of the International Corporation AMEC Holdings, is a

18          licensed Arizona Corporation located at 94 Acoma Blvd. S. #100, Lake Havasu City, AZ 86403. Defendant is a

19          corporation with a business office in Mohave County, State of Arizona, and that all matters and the obligation

20          hereinafter set forth incurred and is payable in Mohave County, State of Arizona.

21     3.   Original Civil Complaint was filed by the Plaintiff on April 15, 2010. On December 20, 2010, the Honorable

22          Randolph A. Bartlett ordered granting the Plaintiff's Motion to Amend Civil Complaint.

23
       4.   That the amount of Plaintiff's claim is within the jurisdictional limits of this Court, the venue is proper, and
24
            that the Defendant is liable for and/or has contractual obligations to Plaintiff which are to be carried out and
25
            fulfilled in this jurisdiction.
26

Page 1 of 11



1

## FIRST CAUSE OF ACTION- BREACH OF CONTRACT

2    5.  Plaintiff alleges that on or about January 21, 2008, the Defendant, AMEC Infrastructure, Inc. now known as

3        AMEC Earth & Environmental, Inc., made and delivered to the Plaintiff an Employment Contract that was

4        executed by both parties and that was effective January 28, 2008 and expires December 31, 2013 which is in

5        the form and figures as set forth in Exhibit 1 attached hereto and by reference made a part hereof.

6        Defendant violated Arizona Employment Protection Act of 1996 and breached the employment contract

7        when they laid her off on April 21, 2009.

8    6.  Employment contract became due and payable in full on April 24, 2009, which is three days after Plaintiff was

9        involuntarily laid off and is eligible for rehire as set forth in Exhibit 2 attached hereto and by reference and

10       made a part hereof. Balance due for remainder of employment contract is $455,672.93, which includes

11       unpaid wages, bonuses, vacation, and sick pay for the remaining period of the employment contract; plus the

12       eighteen months of Cobra in the amount of $24,830.28 for a total of $480,503.21.

13   7.  Pursuant to A.R.S. 23-353(A), Payment of wages as stated in paragraph 6 for the period of the Employment

14       Contract is due and payable in the amount of $480,503.21 is enforceable pursuant to A.R.S §23-1501(2) and

15       A.R.S. § 23-1501(3)(a). Amount of recovery in accordance with ARS §23-255(A) of the amount owed is treble

16       the unpaid wages, etc, ($455,672.93 x 3=$1,367,028.18) as set forth in Exhibit 3 & Exhibit 4 attached hereto

17       and reference made a part hereof. Treble wages $1,367,018.78 plus Cobra $24,830.28 = $1,391,849.06.

18

## SECOND CAUSE OF ACTION- VIOLATION OF ARIZONA DRUG TESTING LAW

19   8.  Plaintiff alleges that the Defendant violated A.R.S. § 23-493.04(D) by instituting a mandatory drug testing

20       policy on January 01, 2008 as AMEC Infrastructure, Inc., was merging with AMEC Earth & Environmental, Inc.

21       AMEC Earth & Environmental, Inc. does Homeland Security and other US Government projects. Plaintiff was

22       subjected to pre-employment drug testing on 1/23/2008 as set forth in Exhibit 5 attached hereto and

23       reference made a part hereof . All the other compensated employees, including officers, directors and

24       supervisors admitted to Plaintiff they were not required to undergo drug testing or sign the Employee

25

26

1    Substance Abuse Policy Acknowledgment or participate in Supplemental Training for Employees Involved in

2    U.S. Government Work as set forth in Exhibit 6 attached hereto and reference made a part hereof.

3    9.   Plaintiff seeks relief for punitive damages in the amount of $70,000.00

4

5            <u>THIRD CAUSE OF ACTION- VIOLATION OF WHISTLE BLOWING ACT</u>

6    10.  Plaintiff alleges that her involuntary layoff on April 21, 2009 was in retaliation for two incidents of "Whistle

     Blowing". On April 16, 2009 Plaintiff's immediate supervisors discovered that Plaintiff had lodged formal

7    complaints about the incidents involving overpriced construction costs/bid rigging by AMEC Earth &

8    Environmental that is funded with Federal and State public funds to the Criminal Division of the Environmental

9    Protection Agency  as set forth in Exhibit 7 attached hereto and reference made a part hereof, Arizona

10   Department of Environmental Quality (ADEQ) and the Arizona Board of Professional Registrants because AMEC

11   did nothing to correct the matters that they are legally liable for as described below. Plaintiff's complaints of

12   design errors that led to overpriced construction costs/bid rigging are backed up by the former oversight

13   engineer Todd Connelly from RCI, Inc. as set forth in Exhibit 8 attached hereto and reference made a part

14   hereof.

15   11.  The first incident was notifying superior Nick Bokaie via telephone and then reiterated in an email dated August

16   28, 2008, as set forth in Exhibit 9 attached hereto and reference made a part hereof, that Plaintiff had

17   discovered AMEC inspectors approved serious errors in the plans during construction of the Hillside Area of

18   Lake Havasu City Wastewater Expansion Project that had already been completed. When Plaintiff brought her

19   findings to her immediate supervisor, Darin Miller, he just said "Not good" and that there wasn't much we

20   could do about it. The design errors were in violation of ADEQ minimum slope design requirements/standards.

21   12.  The second incident occurred October 6, 2008 when Plaintiff had notified superior Nick Bokaie, whose PE

22   stamp was on all documents and construction plans, via email as set forth in Exhibit 10 attached hereto and

23   reference made a part hereof, that her immediate supervisor, Darin Miller, was insisting that the Engineering

24   Report she was preparing for the Neptune Area of the Lake Havasu City Wastewater Sewer Expansion Project

25   be submitted to ADEQ with construction material quantities that were known by Darin Miller and Plaintiff to be

26

1    incorrect. Plaintiff refused to submit the Engineering Report because it was unethical and illegal. Plaintiff also

2    notified Nick Bokaie in the same email (Exhibit 10) that the Issue for Bid (IFB) plans and quantities in the Bid

3    Package, which were to be included in the ADEQ submittal with the Engineering Report, had already been

4    submitted to the Lake Havasu City Public Works Department and were currently being advertised for bid.

5    13.  Both incidents are in violation of the Arizona Employment Protection Act of 1996, Whistleblower Protection

6    Act of 1989, 40 C.F.R. 7.100(b), A.R.S. § 23-1501(3)(c)(i) and A.R.S. § 23-1501(3)(c)(ii). Plaintiff asks for punitive

7    relief for damages in the amount of $5,000,000.00 for her termination being "malicious, willful, reckless,

8    wanton, fraudulent, and/or in bad faith."

9

10                        **FOURTH CAUSE OF ACTION -THEFT OF ORIGINAL CREDENTIALS**

11    14.  Plaintiff alleges that her work area was illegally searched on April 20, 2009 and resulted in the theft of Plaintiff's

12        original BSCE Degree, original Engineering Certification License, official transcripts, and computer. The Plaintiff

13        also alleges that her former supervisor, Darin Miller and former City Manager, Richard Kaffenberger, took part

14        in the search looking for documentation that could prove the illicit activities. Kaffenberger has a history of

15        unwarranted searches as set forth in Exhibit 11 attached hereto and reference made a part hereof.

16    15.  These actions by Defendant are in violation of A.R.S. § 12-542.04. Plaintiff cannot get employment within the

17        Civil Engineering field or finish her Master's Degree in Civil Engineering without all of the original professional

18        credentials that were stolen and seeks punitive damages in the amount of $3,000,000.00

19                        **FIFTH CAUSE OF ACTION-EXTORTION AND ATTEMPTED BRIBERY**

20    16.  Plaintiff alleges that Defendant committed extortion and attempted to bribe her by asking her to sign a

21        Separation Agreement as set forth in Exhibit 12 attached hereto and reference made a part hereof and would

22        in return receive her professional credentials consisting of Plaintiff's original BSCE degree, original Engineering

23        Certification License and official transcripts that were stolen from her work area and an undisclosed amount of

24        cash that were in an envelope on the desk in front of her.

25    17.  Plaintiff refused to sign the agreement and seeks punitive damages in the amount of $3,000,000.00.

26

## SIXTH CAUSE OF ACTION- VIOLATION OF FMLA

18. Plaintiff alleges that the Defendant was laying her off due to the fact that she had exhausted all employment protected Family Medical Leave as set forth in Exhibit 13 attached hereto and reference made a part hereof. Defendant was mistaken, Plaintiff was on Non-FML Short Term Disability from December 22, 2008 through March 6, 2009, as set forth in Exhibit 14 attached hereto and reference made a part hereof, because she did not qualify for FML until January 28, 2009 and was informed of this in a letter from Defendant, as set forth in Exhibit 15 attached hereto and reference made a part hereof. Plaintiff was never offered FML by defendant, but if taken there would have been six weeks used out of twenty four weeks available, according to company policy, leaving an available balance of employment protected leave of 18 weeks.

19. Defendant's admitted reason for Plaintiff's involuntary layoff was a violation of FMLA governed by 29 U.S.C. 2615(a)(1). Plaintiff seeks statutory liquidated damages in the amount $43,905.60, which is two times eighteen weeks of salary at the time (2 x 18 x $1219.60 = $43,905.60)

    A. Plaintiff cites *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112 (9th Cir. 2001). The Ninth Circuit emphasized that Bachelder's lawsuit was governed by 29 U.S.C. 2615(a)(1), which prohibits an employer from "interfer[ing] with" an employee's FMLA rights. The court declared that an employer violates this provision any time it uses an employee's protected leave as *"a negative factor"* in an adverse employment action. The "negative factor" language comes from a DOL regulation which the court found worthy of deference. 29 C.F.R. 825.220(c). *Bachelder* is the first published appellate decision to expressly apply DOL's "negative factor" standard. America West's termination of Bachelder violated FMLA as a matter of law and she could recover statutory liquidated damages.

## SEVENTH CAUSE OF ACTION-DEFAMATION OF CHARACTER & LIBEL

20. Plaintiff alleges that Defendant publicized the Plaintiff in the Lake Havasu City Today's-News Herald newspaper article dated November 19, 2009 in such a way that it made her appear to be incompetent and a liar about the design errors, twisting her allegations around to make it sound as if Plaintiff had accused Defendant of corruption and misconduct. Plaintiff had actually turned the Defendant in for violation of design standards and

Page **5** of **11**

knowingly submitting false information to Local and State agencies. See Lake Havasu City Today's-News Herald newspaper article dated November 19, 2009 as set forth in Exhibit 16 attached hereto and reference made a part hereof.

21. Plaintiff seeks punitive damages for invasion of privacy false light tort claim for violation of the Privacy Act of 1974 in the amount of $3,000,000.00.

### EIGHTH CAUSE OF ACTION-VIOLATION OF THE PRIVACY ACT OF 1974

22. Plaintiff alleges that Defendant revealed private information, without her consent a list of Plaintiff's former employers to Charlie Cassens, LHC Interim City Manager and Cassens took it upon himself to contact Plaintiff's former employers as stated in a memo from Mr. Cassens and publicized in the Lake Havasu City Today's-News Herald newspaper article dated November 19, 2009 as set forth in Exhibit 16 attached hereto and reference made a part hereof.

23. Plaintiff seeks punitive damages for invasion of privacy public release of private information tort claim for violation of the Privacy Act of 1974 in the amount of $3,000,000.00

### NINTH CAUSE OF ACTION-BLACKLISTING

24. Plaintiff alleges that Defendant took part in blacklisting Plaintiff by means of communication or transmittal between two or more employers of labor, or their bosses, foremen, superintendents, managers, officers or other agents, whether verbal or written, whereby the Plaintiff is being prevented or prohibited from engaging in a useful occupation. Defendant and, including but not limited to, the LHC Public Works Department, whom employ engineers, had communications about Plaintiff admittedly beginning May of 2009 in the Lake Havasu City Today's-News Herald newspaper article dated November 19, 2009 as set forth in Exhibit 16 attached hereto and reference made a part hereof.

25. Plaintiff seeks punitive damages in the amount of $3,000,000.00 for Defendant's violation of A.R.S. § 23-1361(A).

**TENTH CAUSE OF ACTION-KNOWLEDGE OF SEXUAL HARRASSMENT**

26. Plaintiff alleges that Defendant knew of sexual harassment in the workplace due to the fact that on two separate occasions Plaintiff immediately made a verbal complaint after each incident directly to her supervisor, Darin Miller, who was also present during the harassment and witnessed the harassment, both instances were involving Jim Satterwhite, a co-worker, who made sexual comments directly to Plaintiff and another time about Plaintiff to Darin Miller in the Plaintiff's presence. No actions were taken to correct or end Jim Satterwhite's unwanted sexual comments/advancements towards the Plaintiff, which is a violation of EEOC Laws/Regulations and AMEC's Code of Business Conduct as set forth in Exhibit 17 attached hereto and reference made a part hereof. Plaintiff filed an EEOC Complaint in September of 2009 and was given the right to sue by the EEOC in April of 2009 as set forth in Exhibit 18 attached hereto and reference made a part hereof.

27. Defendant violated Arizona Employment Protection Act of 1996, EEOC Laws/Regulations and AMEC's Code of Business Conduct. Plaintiff seeks relief for hostile work environment claim in the amount of $100,000.00 ($50,000.00 per incident), plus relief for Defendant acting with malice and reckless indifference in the amount of $200,000.00 ($100,000.00 per incident) and punitive damages in the amount of $5,000,000.00 ($2,500,000.00 per incident).

   A. Plaintiff cites *Swenson v. Potter*, 2001 Daily Journal D.A.R. 12653 (9th Cir., November 30, 2001). The Court noted that notice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is "reasonably calculated to end the harassment." The employer failed to take prompt corrective action and awarded punitive damages.

   B. Plaintiff cites *Miller v. Kenworth of Dothan*, 7 D.L.R. A-3 to A-4 (11th Cir., January 10, 2002). The jury found in favor of Miller's claims of hostile work environment and that Kenworth acted with malice and reckless indifference awarding Miller monetarily for both claims. The Court readily admitted that Kenworth did have actual knowledge of harassment. Therefore, there was sufficient evidence to support the additional punitive damages award.

1

## ELEVENTH CAUSE OF ACTION- KNOWLEDGE OF RACIAL DISCRIMINATION

2    28. Plaintiff, of Native American decent, alleges that Defendant knew of a hostile work environment in the

3    workplace due to the fact that Plaintiff immediately made a verbal complaint directly to her supervisor, Darin

4    Miller, who was also present during the harassment and witnessed the harassment involving Sean Anderson, a

5    co-worker, who made racial slurs/comments to Plaintiff in the presence supervisor Darin Miller. No actions

6    were taken to correct Sean Anderson's unwanted racial slurs/comments towards the Plaintiff and no corrective

7    actions were taken by the Defendant to end the harassment, which is a violation of EEOC Laws/Regulations and

8    AMEC's Code of Business Conduct as set forth in Exhibit 17 attached hereto and reference made a part hereof.

9    Plaintiff filed an EEOC Complaint in September of 2009 and was given the right to sue by the EEOC in April of

10    2009 as set forth in Exhibit 18 attached hereto and reference made a part hereof.

11    29. Defendant violated EEOC Laws/Regulations and AMEC's Code of Business Conduct. Plaintiff seeks relief for

12    hostile work environment claim in the amount of $50,000.00, plus relief for Defendant acting with malice and

13    reckless indifference in the amount of $100,000.00 and punitive damages in the amount of $2,500,000.00.

14    A.    Plaintiff cites *Miller v. Kenworth of Dothan*, 7 D.L.R. A-3to A-4 (11th Cir., January 10, 2002). The jury

15    found in favor of Miller's claims of hostile work environment and that Kenworth acted with malice and

16    reckless indifference awarding Miller monetarily for both claims. The Court readily admitted that

17    Kenworth did have actual knowledge of harassment. Therefore, there was sufficient evidence to

18    support the additional punitive damages award.

19

## TWELFTH CAUSE OF ACTION – KNOWLEDGE OF RELIGIOUS DISCRIMINATION

20    30. Plaintiff, a Christian, alleges that Defendant knew of a hostile work environment in the workplace due to the

21    fact that Plaintiff immediately made a verbal complaint directly to her supervisor, Darin Miller, who was also

22    present during the harassment and witnessed the harassment involving Jim Satterwhite, a co-worker, who

23    made negative religious slurs/comments about Plaintiffs religious preference in the presence of supervisor

24    Darin Miller. No actions were taken to correct Jim Satterwhite's unwanted negative religious slurs/comments

25    towards the Plaintiff and no corrective actions were taken by the Defendant to end the harassment, which is in

26

violation of EEOC Laws/Regulations and AMEC's Code of Business Conduct as set forth in Exhibit 17 attached hereto and reference made a part hereof. Plaintiff filed an EEOC Complaint in September of 2009 and was given the right to sue by the EEOC in April of 2009 as set forth in Exhibit 18 attached hereto and reference made a part hereof.

31. Defendant violated EEOC Laws/Regulations and AMEC's Code of Business Conduct. Plaintiff seeks relief for a hostile work environment claim in the amount of $50,000.00, plus relief for Defendant acting with malice and reckless indifference in the amount of $100,000.00 and punitive damages in the amount of $2,500,000.00.

   A.   Plaintiff cites *Miller v. Kenworth of Dothan*, 7 D.L.R. A-3to A-4 (11th Cir., January 10, 2002). The jury found in favor of Miller's claims of hostile work environment and that Kenworth acted with malice and reckless indifference awarding Miller monetarily for both claims. The Court readily admitted that Kenworth did have actual knowledge of harassment. Therefore, there was sufficient evidence to support the additional punitive damages award.

### THIRTEENTH CAUSE OF ACTION-FINANCIAL, PHYSICAL, EMOTIONAL & MENTAL DISTRESS/DAMAGES

32. Plaintiff alleges that Defendant's actions have caused irreversible financial, physical, emotional, mental distress/damages to the Plaintiff as a result of losing her employment with Defendant. Defendant has two daughters ages 11 and 15 at the time of her discharge. Plaintiff had 100% physical custody of her oldest daughter and was unable to pay for an attorney when the father filed for a modification requesting full custody along with the Plaintiff forgiving over $11,000.00 in back child support and $20,000.00 in back medical owed to her. Plaintiff had 50% physical custody of and her youngest daughter and was unable to pay for an attorney when the father filed for a modification requesting full custody and support. Plaintiff lost any and all custody of both of her daughters because she could not afford an attorney or travel to Idaho several times and the Idaho courts denied her telephonic appearance and she now pays child support in the amount of $357.00 per month. Plaintiff is convinced that these losses would have never happened if Defendant had not breached Plaintiff's employment contract.

33. Plaintiff seeks relief of punitive damages for irreversible financial, mental, physical and emotional distress/damages in the amount of $4,250,000.00.

WHEREFORE, Plaintiff prays for Judgment against the Defendant(s) and on behalf of Plaintiff as follows:

    A. Breach of Contract-Treble wages $1,367,018.78 plus COBRA $24,830.28 = $1,391,849.06

    B. Punitive damages in the amount of $34,320,000.00

    C. Statutory liquidated damages of $43,905.60

    D. Relief for hostile work environment claim in the amount of $200,000.00

    E. Malice and reckless indifference in the amount of $400,000.00

    F. Total Principal Balance in the amount of **$36,355,754.66** plus interest at the legal rate of 10% per annum.

    G. Pursuant to A.R.S. § 12-341.01, for Plaintiff's costs of suit incurred herein of court filing fee of $256.00 and any other costs associated in bringing this action to court.

    H. For such other relief as the Court may deem just and proper.

Respectfully submitted this _14th_ day of January 2011.

Stacy D. Ford-Kelly, Plaintiff

1 | **OATH OR AFFIRMATION**

2 | STATE OF ARIZONA            )
                                  )ss.

3 | County of Mohave            )

4

   I, Stacy D. Ford-Kelly, declare under penalty of perjury that the information contained herein is true and correct to the

5 | best of my knowledge and belief.

6 | *Stacy D. Ford-Kelly*                                    01/14/2011
   Stacy D. Ford-Kelly, Plaintiff                           Date

7

   Subscribed, sworn to (or affirmed) before me on this ___14___ day of January 2011.

8

9 | By: *Stacy Deann Ford Kelly*

10

   My commission Expires:_____                   *(signature)*

11 |                                                         Deputy Clerk / Notary Public

12

13

14 | Copy sent via Certified Mail to each of the following:

15 |                 Statutory Agent for
                    AMEC Earth & Environmental, Inc.

16 |                 CT Corporation System
                    2394 E. Camelback Rd.
                    Phoenix, AZ 85016

17

18 |                 Roger Jinks, President
                    AMEC Earth & Environmental, Inc.
                    502 W. Germantown Pike, STE 850

19 |                 Plymouth Meeting, PA 19462

20 |                 David Ott, Vice President
                    AMEC Earth & Environmental, Inc.

21 |                 Midwest Plaza Building #1200
                    800 Marquette Ave.

22 |                 Minneapolis, MN 55402

23

24

25

26

# PLAINTIFF'S

# EXHIBIT 1



January 21, 2008

*Private & Confidential*

Stacy Ford
1720 Dearborn St. #4
Caldwell, ID 83605

Dear Ms. Ford,

On behalf of AMEC Infrastructure (AMEC), I am pleased to offer you the position of Design Engineer, reporting to me in the Lake Havasu, AZ office, effective January 28, 2008. If you need to change the date, we will be pleased to discuss one that is mutually acceptable.

The following will outline the terms and conditions of employment:

**Compensation Agreement**

- Status – Exempt; Contracted and salaried full-time employee.
- Contract of employment beginning January 28, 2008 and expires December 31, 2013.
- Starting salary is $2,384.62 payable on a bi-weekly basis, which annualizes to $62,000.12.
- Salary to increase to $85,000.00 beginning January 1, 2010, ending December 31, 2013 with a 2.25% annual minimum cost of living increase beginning January 1, 2011.
- The balance of monetary compensation of this contract due to you shall be paid in full within three business days if employment with AMEC ceases due to no fault of your own and is initiated by AMEC after the three-month probationary period. Balance of compensation is to include any accrued and future benefits ending December 31, 2013 for both vacation time and sick leave as outlined below. If such action takes place by AMEC you will also receive payment equivalent to 18 months of COBRA costs which will be included with the balance of this contract compensation due to you. If the remainder of contract is less than 18 months COBRA costs to be paid will be adjusted accordingly.
- You will receive a relocation allowance in the amount of $4,500.00 – the terms of this allowance are attached. Please sign and return with this employment agreement.

**Benefits**

Enclosed, please find the *Choices* Benefits Package that explains the benefits currently offered to AMEC regular, full-time employees. Upon your employment you will be immediately eligible for:

- Health insurance coverage, including medical, vision, dental and prescription drug.
- Participation in AMEC's 401(k) program.
- Flexible Spending Account.
- Employee Assistance Plan.
- Short Term Disability, Long Term Disability, Life Insurance, Accidental Death & Dismemberment Insurance.
- You will accrue annual vacation leave at a rate of 15 days per year or 4.62 hours bi-weekly.
- Holidays – AMEC observes 7 holidays per year plus 3 floating holidays throughout the year, the details of which are provided in the Employee Handbook.

**Background Screening and Employment Documentation**

It is AMEC's policy to provide a safe and secure work environment for both our employees and our clients. To that end it is the policy of AMEC that all offers of employment are contingent upon the successful completion of a background screening, drug screening and educational credentials

AMEC Infrastructure
94 Acoma Blvd South # 100
Lake Havasu City, AZ 86403
Phone: 928-854-8030
Fax: 928-854-8036                         www.amec.com

confirmation (where applicable). If any of the screenings returned are found to be in conflict with AMEC's policy we will discuss the results with you and determine if employment will continue. All screenings will be conducted within the guidelines of all state and federal legislation.

Employees are required to complete the Employment Eligibility Verification Form (I-9) attesting to their employment eligibility and must provide documentation to support their statement. Examples of acceptable proof of employment eligibility include a U.S. Passport, or both a valid State Driver's License and Social Security Card. Please bring these documents with you on the first day of your employment. If you do not have the documents mentioned you may contact the Human Resources Department for further information.

**Probationary Period and Employment Termination**

AMEC has a three-month probationary period for all newly hired contracted and non-contracted regular, full-time and part-time employees during which time an employee's work performance and/or general suitability for AMEC employment will be evaluated. While we are confident that your employment with us will be a positive and mutually rewarding experience please understand that your employment, both during and after the probationary period, is not guaranteed for any specific amount of time and is terminable at will, which means that either you or AMEC may end the employment relationship at any time for any reason. Your employment relationship with AMEC is not terminable at will after the three-month probationary period if a contract of employment is outlined within the Compensation Agreement section on the first page of this offer of employment and will be in accordance with the Compensation Agreement.

**Severability**

If any part of this offer of employment is held to be invalid, illegal, or unenforceable, the remaining provisions of this agreement will be enforced.

Further information regarding AMEC, its policies and programs will be provided during your orientation. Upon acceptance of the above and enclosed, please sign and return the enclosed copy of this letter, a completed application for employment and any other enclosed documents within seven business days to the Lake Havasu, AZ location. Please feel free to contact me should you have any questions.

We look forward to having you join us and wish you much success in your new position.

Sincerely,
AMEC Infrastructure, Inc.

**Chris Hassert**
Unit Manager – Lake Havasu, AZ

I have read and accept the offer of employment contained in this letter, including the referenced attachments.

January 21, 2008
Date                    Employee Signature

2

●                                    ●            **FILED**
                                                TIME
                                        FILED in Court Record
                                            AUG 2 9 2011
                                        VIRLYNN TINNELL
                                        CLERK SUPERIOR COURT
                                                                DEPUTY

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MOHAVE

| | |
|---|---|
| HONORABLE CHARLES W. GURTLER, | VIRLYNN TINNELL, CLERK |
| DIVISION: 1 | KELLY ANDREWS, DEPUTY CLERK |
| DATE: 08/26/2011 | STEVE GARWOOD, COURT REPORTER |
| TIME: 1:59 P.M. | COURTROOM: R |

| ORAL ARGUMENT |
|---|

| | |
|---|---|
| STACY D. FORD-KELLY, | CV- 2010-07063 |
| **Plaintiff,** | |
| vs. | |
| AMEC EARTH & ENVIORMENTAL, INC., | |
| **Defendant.** | |

**APPEARANCES:** Stacy Ford-Kelly Plaintiff, appearing in Pro Per; Robert Schaffer, Attorney for the Defendant.

This being the time set for Oral Argument on Defendant's Motion to Dismiss.

The Court has read the documents filed with the Court with regards to the motion.

Ms. Kelly makes statements regarding the Court's need to recuse itself due to the fact this Court heard her custody case; discussion ensues.

Oral Argument is presented by Ms. Kelly and Mr. Schaffer.

The Court is going to deny the motion on several different bases; there is always a preference for a trial on the merits and neither party requested an Evidentiary Hearing. It is therefore deemed submitted based upon the briefing and the Oral Argument. The Court has conflicting Affidavits, without there being an Evidentiary Hearing the Court cannot discern the veracity or credibility of the parties and intent is always a fact issue. The Court cannot make a determination of a fact issue without there being an Evidentiary Hearing. The Court would not have proceeded to a Default Judgment in any event because the Court would not have found that there was appropriate service.

The Court makes statements regarding the 1099.

**IT IS ORDERED** denying the Motion to Dismiss without prejudice.

Mr. Schaffer requests to set the matter for an Evidentiary Hearing; discussion ensues. The Court will set the matter for a Rule 16(b)(g) Conference.


L8015CV201007063



The Court allows Ms. Kelly to state her reasons why she thinks what the Court may have done or didn't do in the other case that she believes gives rise to a conflict. Ms. Kelly makes statements. The Court does not see where there is any conflict. Ms. Kelly states she believes the Court is a fair man and highly respected.

Mr. Schaffer states his client has not been served so they have not answered. The Court will not set a 16(b)(g) Conference; discussion ensues. Ms. Kelly requests to extend time to serve, Mr. Schaffer opposes the request. Ms. Kelly will need to file a written motion.

The Court recesses at 2:34 p.m.

cc:

Stacy D. Ford-Kelly
1561 Mohican Drive
Lake Havasu City, AZ 86406
Plaintiff

Robert G. Schaffer*
LEWIS & ROCA, LLP
Attorney for Defendant

Honorable Charles W. Gurtler, Jr.
Division 1

LEWIS
AND
ROCA
——— LLP ———
L A W Y E R S

40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Robert G. Schaffer, State Bar No. 017475
Direct Dial: (602) 262-0271
Direct Fax: (602) 734-3777
EMail: RSchaffer@LRLaw.com

Cindy Villanueva, State Bar No. 028163
Direct Dial: (602) 262-5789
Direct Fax: (602) 734-3904
EMail: CVillanueva@LRLaw.com

Attorneys for Defendant
AMEC Earth & Environmental, Inc.

FILED
BY _____
2011 SEP 20  AM 11: 19
VIRLYNN TINNELL
SUPERIOR COURT CLERK

SUPERIOR COURT OF ARIZONA
COUNTY OF MOHAVE

| | |
|---|---|
| Stacy D. Ford-Kelly, | No. CV-2010-07063 |
| Plaintiff, | **AMEC'S RESPONSE TO PLAINTIFF'S MOTION TO VACATE DISMISSAL, REINSTATE CLAIM, AND FOR ENLARGEMENT OF TIME** |
| vs. | |
| AMEC Earth & Environmental, Inc., | **AND** |
| Defendant. | **AMEC'S MOTION TO DISMISS PURSUANT TO RULE 4(i) OR, ALTERNATIVELY, FOR LIMITED DISCOVERY AND AN EVIDENTIARY HEARING** |
| | (Assigned to the Honorable Charles W. Gurtler, Jr.) |

Defendant AMEC Earth and Environmental, Inc. ("AMEC") hereby submits this Response opposing Plaintiff's Motion to Vacate Dismissal, Reinstate Claim, and for Enlargement of Time. Because the Court denied AMEC's motion to dismiss without prejudice, Plaintiff's motions regarding vacating the dismissal and reinstating the claim are not appropriate motions before this Court. Thus, AMEC's Response will be limited to Plaintiff's request for an extension of time to serve her complaint.

Plaintiff's motion should be denied, and this action should be dismissed without prejudice, because there is no basis for excusing Plaintiff's failure to properly serve AMEC within the required 120-day time period. The only excuse Plaintiff offers is that she was allegedly unaware that AMEC had not been properly served until after she



2450752.1

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1 received AMEC's motion to dismiss, insinuating that she either did serve her Amended

2 Complaint on AMEC or that she must have mailed blank paper by mistake. However, the

3 Court has already determined that Plaintiff did not serve AMEC, and, as explained below,

4 Plaintiff's service of blank paper, even if inadvertent, does not meet the "good cause"

5 standard for obtaining an extension of time as a matter of right.

6       That leaves Plaintiff to rely on the Court's discretion under Rule 4(i) to permit

7 additional time for service, which, under the circumstances, the Court should not allow.

8 This matter has been pending since April of 2010 — over 500 days — yet Plaintiff still

9 has not properly served her complaint. She first served the wrong document, and then,

10 when given a second chance, she served blank paper, allegedly by mistake. It is simply

11 not believable that Plaintiff attempted to serve a document as important as her Amended

12 Complaint without checking to see that she was serving the actual Amended Complaint.

13 And, if she did mistakenly serve blank paper instead of her complaint — not once but

14 three times — that is not the type of excusable conduct that should merit an extension of

15 time from this Court, particularly since Plaintiff was on notice that she had mailed blank

16 paper yet did nothing to correct her alleged mistake. In short, Plaintiff has not acted with

17 diligence or appropriate respect for this Court's rules, and the Court should not reward her

18 lack of diligence by allowing her to keep this abusive lawsuit alive.

19       In the alternative, if the Court does not deny Plaintiff's motion and dismiss this

20 action without prejudice, the Court should not extend the time for service without first

21 determining whether the 1099 Form that Plaintiff submitted to this Court is a fraudulent

22 document and whether Plaintiff intended to deceive the Court. The Court has already

23 stated that if it determines that Plaintiff deliberately attempted to mislead the Court, it will

24 dismiss this action with prejudice. Thus, if the Court does not dismiss this action, it

25 should defer a ruling on Plaintiff's motion and order limited discovery and an evidentiary

26 hearing to determine whether the 1099 Form is a fraudulent document and whether

27 Plaintiff is playing games with the Court.

28

2450752.1

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **BACKGROUND**

This case arises from a complaint filed with this Court by Plaintiff Stacy D. Ford-Kelly, a former employee of AMEC, seeking a judgment for $25,000,000. Compl. at 1-2. As detailed in AMEC's motion to dismiss, AMEC never received service of the initial Complaint or the Amended Complaint. Mot. to Dismiss at 2-5. Instead, AMEC had to conduct an extensive investigation after receiving certified mail packages containing blank paper to determine that Plaintiff had filed a complaint against AMEC. *Id.*

On March 22, 2011, AMEC sought to dismiss this lawsuit for fraud upon the court and insufficient service of process. Plaintiff opposed the motion and as part of her response submitted a 1099 Form to the Court. Plaintiff attempted to use the 1099 Form to argue that AMEC was aware of the complaint because the 1099 Form referenced the amount stated in Plaintiff's complaint (*i.e.*, "$25,000,000") and referred to a "Settlement" of Plaintiff's claims. *See* Notice of Partial Settlement and attached 1099 Form, filed by Plaintiff on April 6, 2011. This Court conducted a hearing on the motion to dismiss on August 26, 2011. The Court denied the motion to dismiss but did so without prejudice. *See* August 26, 2011 Minute Entry at 1. The Court stated that it was denying the motion without prejudice because there was a factual issue with respect to Plaintiff's intent in mailing blank paper to the Defendant's officers and statutory agent. *Id.*

The Court also indicated at the hearing that the 1099 Form was a "significant issue with respect to the court's ruling." *See* Ex. 1, August 26, 2011 Transcript of Hearing at 19:12-13. The Court noted that if "AMEC establishes that they didn't turn around and prepare that 1099, then in that event, it would tend to lead the court to believe that maybe this is a charade." *Id.* at 21:11-14. The Court remarked that "some discovery with respect to this 1099" may be necessary, and that if the discovery showed "an outright intent . . . to mislead or commit a fraud upon the court, then the court would dismiss the case." *Id.* at 21:16-23. The Court ultimately stated that because AMEC was never served within the

3



LEWIS
AND
ROCA
——LLP——
L A W Y E R S



1  required period, Plaintiff had to submit a motion seeking an extension to serve the

2  Amended Complaint and Summons. *Id.* at 29:12-15.

3  **II.    THE COURT SHOULD DENY PLAINTIFF'S MOTION TO EXTEND TIME**
   **OF SERVICE AND DISMISS THIS ACTION PURSUANT TO RULE 4(i).**

4

5  Under Rule 4(i) a litigant has 120 days after the filing of a complaint to accomplish

   service. The Rule states, in pertinent part:
6

7  > If service of the summons and complaint is not made upon a
   > defendant within 120 days after the filing of the complaint, the court, upon
8  > motion or on its own initiative after notice to the plaintiff, shall dismiss the
   > action without prejudice as to that defendant or direct that service be
9  > effected within a specified time; provided that if the plaintiff shows good
   > cause for the failure, the court shall extend the time for service for an
10 > appropriate period.

11
   Ariz. R. Civ. P. 4(i). Thus, a plaintiff is entitled to an extension of time to serve a
12
   defendant only if the plaintiff carries the burden of showing "good cause"; absent a
13
   showing of good cause, the plaintiff must persuade the court to exercise its discretion to
14
   allow more time for service. *Maher v. Urman*, 211 Ariz. 543, 549, 124 P.3d 770, 776
15
   (App. 2005).[1] Good cause is lacking, and discretion should not be exercised in the
16
   plaintiff's favor, without some showing of "due diligence" in trying to serve the defendant.
17
   *Id.*; *Bachenski v. Malnati*, 11 F.3d 1371, 1376-1377 (7th Cir. 1993) (good cause requires
18
   "some reasonable showing of reasonable efforts" to effect service).
19
   Generally, courts have found that factors outside a plaintiff's control, "such as
20
   sudden illness, natural catastrophe or evasion of service of process," will satisfy the
21
   requirement of good cause. *Zachery v. Thigpen*, 895 F. Supp. 1472, 1474 (M.D. Ala.
22

23 ───────────────
   [1] Although Plaintiff has sought an extension under Rule 6(b)(2), the "good cause" standard
24 is applied regardless of whether an extension is sought under Rule 6(b)(2) or Rule 4(i).
   *See Toy v. Katz*, 192 Ariz. 73, 83, 961 P.2d 1021, 1031 (App.1997) (discussing whether
25 the plaintiff showed "good cause" for an enlargement of time for service under both Ariz.
   R. Civ. P. 4(i) and 6(b)). This is because "good cause" has been defined to mean at a
26 minimum "excusable neglect," which is the standard under Rule 6(b)(2). *See Boudette v.*
   *Barnette*, 923 F.2d 754, 756 (9th Cir.1991). Thus, regardless of whether an extension of
27 time is sought under Rule 6(b)(2), as Plaintiff has styled her motion, or under Rule 4(i),
   "good cause" is the standard applied and, at a minimum, the plaintiff must show
28 "excusable neglect."

4

2450752.1

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1  1995) (citations omitted).  However, absence of prejudice alone can never constitute good

2  cause to excuse late service, *West Coast Theater Corp. v. Portland*, 897 F.2d 1519, 1528-

3  29 (9th Cir. 1990), nor will inadvertent error, *Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir.

4  1985) (delay resulting from inadvertence of counsel need not be excused); *Hart v. United*

5  *States*, 817 F.2d 78, 80-81 (9th Cir. 1987) (secretary's failure to mail summons along with

6  complaint was "inadvertent error, which is not good cause").  Likewise, mistaken service

7  of a document that was not the "filed complaint" does not constitute good cause.  *West*

8  *Coast Theater Corp.*, 897 F.2d at 1528-29 (dismissal warranted where party allegedly

9  served an incomplete draft complaint by mistake).

10      In addition, where the failure to effect valid service is due to willful conduct, there

11  is no "good cause."  *See Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882, 887

12  (8th Cir. 1996) (holding that court did not abuse its discretion by dismissing case, even

13  though statute of limitations had run, because plaintiff's failure to effect valid service on

14  correct party after obtaining necessary information was "willful, not inadvertent").

15      In this case, the Court should not allow additional time for service because Plaintiff

16  has not established — and cannot establish — "good cause" for her failure to serve the

17  complaint within the required period.  As an initial matter, there is no dispute that Plaintiff

18  failed to serve either her original Complaint or her Amended Complaint within the

19  required time period.  AMEC has shown that, in May 2010, Plaintiff did not serve her

20  original Complaint but instead served a December 22, 2009 letter that gave AMEC no

21  notice that a lawsuit had been filed against it. *See* Mot. to Dismiss, Exs. 7-12.[2]  Likewise,

22  AMEC has shown that, in January 2011, Plaintiff did not serve her Amended Complaint

23  but instead served blank paper.  *Id.*  In light of these facts, the Court ruled that Plaintiff

24  had not served AMEC within the required time period, and it advised Plaintiff that she

25  needed to file a written motion if she wanted to seek an extension of time for service. *See*

26  Aug. 26, 2011 Minute Entry at 2.

27

28  _____

[2] AMEC incorporates these declarations and supporting documents by reference.

5

2450752.1

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1    Although Plaintiff has now filed such a motion, her motion does not identify, or

2 even really attempt to identify, "good cause." As the Court recognized at the hearing, the

3 only excuse Plaintiff could conceivably offer is inadvertence or mistake. However, even if

4 Plaintiff mailed the wrong document or put blank paper in her envelopes by mistake, such

5 inadvertent error does not constitute "good cause" entitling her to an extension. *See, e.g.,*

6 *West Coast Theater Corp.*, 897 F.2d at 1528-29 (finding no "good cause" for extending

7 120-day period where plaintiff mistakenly served some other document instead of the

8 "filed complaint"); *Hart*, 817 F.2d at 80-81 (secretary's failure to mail summons was

9 "inadvertent error, which is not good cause"); *Wei*, 763 F.2d at 372 (counsel's error does

10 not constitute "good cause"). Thus, Plaintiff has not established her entitlement to an

11 extension as a matter of right.[3]

12    There also is no good reason for the Court to grant Plaintiff a discretionary

13 extension of time. Plaintiff does not dispute that she knew she had to serve her complaint

14 on AMEC and that the rules required her to do so within 120 days. Plaintiff filed her

15 original complaint on April 15, 2010. Thus, it has been 523 days since Plaintiff filed her

16 complaint. Even if the Court chooses to overlook that Plaintiff mailed the wrong

17 document in May 2010, it stretches the bounds of plausibility too far to suggest that she

18 attempted to serve her Amended Complaint — not once but <u>three</u> times — without

19 checking to make sure that she was mailing copies of her actual Amended Complaint.

20 And, if she did attempt to mail her Amended Complaint to three different addressees

21

22

23 [3] Plaintiff's argument that good cause is present because AMEC was aware of the lawsuit
24 in that "all of the USPS Certified Mail Receipts Requested were received" (Mot. at 3)
   makes no sense. The certified mail packages contained blank paper, not the Amended
25 Complaint. The fact that after receiving blank paper and extensive investigation AMEC
   was able to discover that Plaintiff had filed a complaint against AMEC is not enough to
26 show good cause for an extension of time for service. *See Riley v. Superior Court*, 116
   Ariz. 89, 91, 567 P.2d 1218, 1220 (App. 1977) (no good cause despite defendants having
27 been aware of potential lawsuit and plaintiffs having made unsuccessful attempts to serve
28 defendants).

2450752.1

LEWIS
AND
ROCA
——— LLP ———
L A W Y E R S

1    without noticing that she was sending blank paper, her lack of diligence in ensuring

2    compliance with the Court's rules does not merit this Court's discretion.

3         The Court also has before it evidence that, upon receiving one of Plaintiff's

4    certified mail packages in January 2011, a representative of CT Corp. sent the Plaintiff a

5    letter directed to her return mailbox address in Lake Havasu City, informing her that the

6    package she sent contained blank paper. The letter was delivered on January 28, 2011,

7    over a month before Plaintiff filed her affidavits of service with the Court on March 8,

8    2011. See Mot. to Dismiss, Ex. 12, Decl. of A. Martinez ¶¶ 3-4 & Exs. B-C (letter and

9    delivery confirmation). Even after receiving this letter, Plaintiff did not take steps to serve

10   her actual Amended Complaint but instead proceeded to file affidavits of service with the

11   Court. In short, Plaintiff did not take action, or even attempt to make any inquiries, when

12   notified of the deficient service. Moreover, because Plaintiff was on notice that she had

13   mailed blank paper, there is no excuse for filing an affidavit of service that she knew to be

14   false, even if she did send blank paper by mistake.

15        To be sure, requiring Plaintiff to follow the rules for service may bar her from

16   refiling some of her claims. But it is well-established that such a result does not relieve a

17   litigant of the obligation to timely serve a complaint. See Peters v. M & O Constr., Inc.,

18   119 Ariz. 34, 36, 579 P.2d 72, 74 (App. 1978) (trial court did not abuse its discretion in

19   denying extension of time where defendants had not prevented service, even though effect

20   of dismissal was prejudicial because statute of limitations had run); see also Trumaine

21   Lamar Melton v. Wiley, 2008 U.S. App. LEXIS 1069 *7-8 (11th Cir. 2008) (trial court did

22   not abuse discretion in denying discretionary extension of time for service under identical

23   federal rule even though claims would be time-barred and defendant had actual notice);

24   Wei, 763 F.2d at 372 (dismissing plaintiff's claim pursuant to Rule 4 although it would be

25   time-barred); Tuke v. United States, 76 F.3d 155, 156 (7th Cir. 1996) (same).

26        In addition, the fact that Plaintiff is unrepresented does not excuse her from her

27   burden to diligently adhere to the court's rule. Maher, 211 Ariz. at 549-550, 124 P.3d at

28   776-77; see Homecraft Corp. v. Fimbres, 119 Ariz. 299, 301, 580 P.2d 760, 762

7



LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1  (App.1978) ("When one undertakes to represent himself he is entitled to no more

2  consideration than if he had been represented by counsel"). Because Plaintiff has failed to

3  show good cause, and Plaintiff has failed to establish diligence in attempting to serve the

4  complaint, this Court should deny Plaintiff's motion for an extension of time to serve

5  AMEC and dismiss this action without prejudice pursuant to Rule 4(i).

6  **III.  IN THE ALTERNATIVE, THE COURT SHOULD DEFER RULING ON
        PLAINTIFF'S MOTION UNTIL AFTER LIMITED DISCOVERY AND AN**

7  **EVIDENTIARY HEARING.**

8      In the alternative, the Court should defer consideration of Plaintiff's motion to

9  extend the time of service until after the completion of limited discovery and an

10  evidentiary hearing regarding Plaintiff's intent to deceive the Court and, specifically, the

11  validity of the 1099 form.[4]

12      As the Court stated at the hearing on August 26, 2011, if it determines that Plaintiff

13  intended to deceive the Court, the Court will dismiss Plaintiff's claims. *See* Aug. 26, 2011

14  Transcript, at p.21:16-23. The Court should not grant Plaintiff additional time to effect

15  proper service until it determines whether Plaintiff intended to deceive the Court. Indeed,

16  Plaintiff's alleged lack of willful conduct is at the center of Plaintiff's argument for an

17  extension of time. Without a showing that Plaintiff's claim is true, *i.e.*, that she was

18  unaware of the improper service because she did not willfully send blank pages to AMEC,

19  this Court cannot consider granting Plaintiff's motion for an extension of time. If Plaintiff

20  did intend to mislead or deceive the Court, there can be no "good cause" for an extension

21  of time, nor should the Court exercise its discretion to extend time.

22      Therefore, if the Court does not deny Plaintiff's motion at this stage, the Court

23  should defer ruling on this motion until after the parties complete limited discovery and

24  the Court determines whether Plaintiff intended to deceive the Court. AMEC suggests a

25  short period of discovery (60 days at most) to be followed by an evidentiary hearing.

26  ---
    [4] An initial investigation by AMEC has shown a number of inconsistencies between the

27  1099 form submitted by Plaintiff to this Court and the 1099 forms that AMEC produces.
    AMEC believes that these inconsistencies, and further limited discovery, will prove that

28  the 1099 form is fraudulent and thus demonstrate that Plaintiff intended to deceive the
    Court.

2450752.1

 

## IV.    CONCLUSION

Plaintiff should not be allowed additional time to serve her complaint because she has not shown "good cause" for an extension of time, nor should the Court reward the Plaintiff's lack of diligence by granting a discretionary extension of time. Instead, the Court should deny Plaintiff's motion and dismiss her claims without prejudice. In the alternative, the Court should first determine whether Plaintiff intended to deceive the Court and should order limited discovery and an evidentiary hearing before ruling on Plaintiff's motion.

RESPECTFULLY SUBMITTED this 19th day of September, 2011.

LEWIS AND ROCA LLP

By _____

Robert G. Schaffer
Cindy Villanueva
*Attorneys for AMEC Earth & Environmental, Inc.*

9

2450752.1

LEWIS
AND
ROCA
——— L.L.P ———
L A W Y E R S

1   ORIGINAL of the foregoing was
    filed by FedEx Next Day Delivery
2   with the Mohave County Superior Court
    this **19** day of September 2011, and a
3   COPY provided for:

4   Honorable Charles W. Gurtler, Jr.
    Mohave County Superior Court, Division I
5   2225 Trane Road
    Bullhead City, AZ  86442
6
    COPY of the foregoing was sent by FedEx
7   this **19** day of September 2011, to:

8   Stacy D. Ford-Kelly
    1561 Mohican Dr.
9   Lake Havasu City, AZ  86406
    *Pro Se*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10



IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MOHAVE

**HONORABLE CHARLES W. GURTLER, JR., JUDGE**
**DIVISION I – BULLHEAD CITY**
**DATE:   DECEMBER 8, 2011**

| **COURT ORDER** |
| --- |

| | |
| --- | --- |
| STACY D. FORD-KELLY,<br><br>                    Plaintiff,<br><br>v.<br><br>AMEC EARTH & ENVIRONMENTAL, INC.,<br><br>                    Defendant. | NO. CV-2010-7063 |

Pending are several Motions including Plaintiff's Motion to Vacate Dismissal, Motion to Reinstate Claim, Motion for Enlargement of Time; Defendant's Motion to Dismiss Pursuant to Rule 4(i) or, Alternatively for Limited Discovery and Evidentiary Hearing, Defendant's Motion to Strike Plaintiff's Motion for Enlargement of Time, Defendant's Motion to Strike Plaintiff's Second Motion for Enlargement of Time, and Defendant's Motion for Summary Grant of Motion to Dismiss or Alternatively, for Limited Discovery and Evidentiary Hearing, and Plaintiff's Second Motion for Summary Grant of Motion to Dismiss.

Plaintiff argues in her initial Motion that there is excusable neglect warranting an extension of time with which to serve the Defendant. The Rule is premised upon Plaintiff establishing "good cause" as to why an extension of time to serve a Defendant should be granted. Rule 4(i), A.R.C.P. See also, Maher v. Urman, 211 Ariz. 543, 549, 124 P.3d 770 (App. 2005). As the Defendant points out, good cause is the standard. Good cause standard equates to excusable neglect.

There does not appear to be any case on point in Arizona. However, several Federal Courts have addressed the issue under the Federal Rules equivalent. As an example, in Hart v. United States, 817 F.2d 78, 80-81 (9th Cir. 1987) it was held that a secretary's failure to mail Summons along with a Complaint was inadvertent error, but that was not good cause. Additionally, in West Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1528-29 (9th Cir. 1990), the Ninth Circuit held that a dismissal was warranted where a party had served an incomplete draft of a complaint by mistake. Therefore, it would appear to the Court that dismissal is appropriate.

However, the Court finds that excusable neglect or good cause exists under the Savings Statute of A.R.S. § 12-504(A) to allow the Plaintiff to file a new lawsuit provided that the new action is filed within ninety (90) days of the date of the signed Order dismissing this matter. In Schwartz v. Arizona Primary Care Physicians, 192 Ariz. 290, 964 P.2d 491 (App.Div.1 1998), the Court of Appeals found the Plaintiff was entitled to, as a matter of right, to commence a new action when the basis for a dismissal was insufficiency of process rather than abatement. In this matter, the Court's prior ruling was to the nature and extent that there was insufficient service of process. Plaintiff reasonably believed that she had served copies of the documents upon the appropriate agent or agents of the Defendant. Defendant moved to dismiss based upon fraud upon the



Court.  The Court specified that it could not make a fraud determination without an evidentiary hearing.  However, the Court also found that the service was inappropriate.  Therefore, this case will not be dismissed upon abatement, but rather upon an insufficiency of service of process.

**IT IS, THEREFORE, ORDERED** granting Defendant's Motion to Dismiss.

**IT IS FURTHER ORDERED** granting to Plaintiff the right to file a new action under A.R.S. § 12-504(A) provided that the new action is commenced and filed within ninety (90) days of the date of the signed Order dismissing the case at bar.

**IT IS FURTHER ORDERED** directing the Clerk to proceed to close the file.

The Court's ruling on this particular issue abates the necessity for ruling on all the other pending Motions as the same become moot.

cc:

STACY D. FORD-KELLY
1561 MOHICAN DR
LAKE HAVASU CITY AZ  86406
Plaintiff

ROBERT G. SHAFFER*
LEWIS & ROCA, LLP
Attorney for Defendant

Honorable Charles W. Gurtler, Jr.
Division I



**LEWIS**
**AND**
**ROCA**
—— LLP ——
L A W Y E R S



BY ___ FILED

2011 DEC 22 PM 2 24

VIRLYNN TINNELL
SUPERIOR COURT CLERK

1 | 40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

2 | Robert G. Schaffer, State Bar No. 017475
Direct Dial: (602) 262-0271
3 | Direct Fax: (602) 734-3777
EMail: BSchaffer@LRLaw.com

Cindy Villanueva, State Bar No. 028163
4 | Direct Dial: (602) 262-5789
Direct Fax: (602) 734-3904
EMail: CVillanueva@LRLaw.com

5 |
Attorneys for Defendant
6 | AMEC Earth & Environmental, Inc.

7 |

        SUPERIOR COURT OF ARIZONA
8 |            COUNTY OF MOHAVE

9 | Stacy D. Ford-Kelly,       )  No. CV-2010-07063
                )
10 |                   )  **MOTION FOR**
          Plaintiff, )  **RECONSIDERATION OF**
11 |                   )  **DECEMBER 8, 2011 ORDER**
   vs.             )  **GRANTING PLAINTIFF THE**
12 |                   )  **RIGHT TO FILE NEW ACTION**
 AMEC Earth & Environmental, Inc., )
13 |                   )  (Assigned to the Honorable
         Defendant. )  Charles W. Gurtler, Jr.)
14 |                   )

15 |       Pursuant to Rule 59(a) of the Arizona Rules of Civil Procedure, AMEC Earth and

16 | Environmental, Inc. ("AMEC") hereby requests that this Court reconsider the portion of its

17 | December 8, 2011 Order which granted Plaintiff the right to file a new action within

18 | ninety days of the date of the signed order. The ruling should be reconsidered and

19 | Plaintiff should not be allowed to file a new action pursuant to the Savings Statute of

20 | A.R.S. § 12-504(A) because (1) the action was terminated due to insufficiency of *service*

21 | *of process, i.e.,* abatement; and (2) the *Flynn* factors strongly support denying Plaintiff

22 | discretionary relief to file a new action.

                 **Memorandum of Points and Authorities**

**I.**   **Dismissal Based on Insufficiency of *Service* of Process is Dismissal based on**
     **Abatement**

     The Arizona Savings Statute states in relevant part:

        If an action is commenced within the time limited for the action, and the
        action is terminated *in any manner other than by abatement,* voluntary
        dismissal, dismissal for lack of prosecution or a final judgment on the

L981CVEXXDCAADCC4C:604477919

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

merits, the *plaintiff ... may commence* a new action for the same cause after the expiration of the time so limited and within six months after such termination. If an action timely commenced *is terminated by abatement,* voluntary dismissal by order of the court or dismissal for lack of prosecution, *the court in its discretion* may provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired. Such period shall not exceed six months from the date of termination.

A.R.S. § 12-504(A)(emphasis added). Thus, if an action is abated, also known as dismissed for insufficiency of *service* of process, it can only be re-filed by leave of the court. *Id.* If the action is terminated for insufficiency of process, however, the statute entitles the plaintiff to re-file as a matter of right. *Id.*

Pursuant to Arizona law, abatement occurs when the defendant receives no summons or complaint within the 120-day time limit for service set forth in Rule 4(i), ARIZ. R. CIV. P., which would put him on notice of the pending case. *Schwartz v. Arizona Primary Care Physicians*, 192 Ariz. 290, 295, 964 P.2d 491, 496 (Ariz. App. 1998). The abatement rule gives effect to the statute of limitations and prevents a plaintiff who files an action within the statute of limitations, but fails to timely serve the defendant, from gaining a tactical advantage over the defendant. *Id.* Insufficiency of process, on the other hand, goes to the form of the papers rather than the manner or method of its service. *Id.* (citing Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353, at 276 (2d ed.1990)). For example, in the case of *Schwartz v. Arizona Primary Care Physicians*, 192 Ariz. 290, 964 P.2d 491 (Ariz. App. 1998), the court held that the claim did not abate because the defendants received process -- they received a copy of the summons. Instead, there was an insufficiency of process because the summons bore the seal of the wrong court. *Id.*

In the present case, there clearly was an insufficiency of *service* of process by Plaintiff, and thus the claim abated. Plaintiff failed to serve AMEC with any copy of the summons and complaint which would put AMEC on notice of the complaint. AMEC has shown that, in May 2010, Plaintiff did not serve her original Complaint but instead served

2

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1    a December 22, 2009 letter that gave AMEC no notice that a lawsuit had been filed against

2    it. *See* Mot. to Dismiss, Exs. 7-12. Likewise, AMEC has shown that, in January 2011,

3    Plaintiff did not serve her Amended Complaint but instead served blank paper. *Id.*

4           In addition, the Court stated in its December 8, 2011 Order that the Court had

5    previously ruled there was insufficient service of process: "In this matter, the Court's

6    prior ruling was to the nature and extent that there was insufficient service of process."

7    *See* 12/8/11 Order. As such, this Court's ultimate conclusion that "this case will not be

8    dismissed upon abatement, but rather upon insufficiency of service of process," appears to

9    have overlooked that abatement and insufficient service of process are one in the same.

10   Therefore, the Court should reconsider its December 8, 2011 Order and find that

11   Plaintiff's claim abated and, thus, Plaintiff has the burden of showing why the Court

12   should grant discretionary relief pursuant to the Savings Statute.

13   **II.   The Court Should Decline to Grant Discretionary Relief Pursuant to the Savings**
14   **      Statute**

15          The Arizona Supreme Court has articulated a set of factors a trial court must consider

16   in determining whether to permit discretionary relief under the Savings Statute of A.R.S. §

17   12-504(A). Those factors include whether the plaintiff: (1) acted reasonably and in good

18   faith, (2) prosecuted the case diligently and vigorously, and (3) faces a procedural

19   impediment affecting the ability to file a second action. In addition, the court looks to

20   whether either party will be substantially prejudiced. *Jepson v. New*, 164 Ariz. 265, 272,

21   792 P.2d 728, 735 (1990) (quoting *Flynn v. Cornoyer-Hedrick Architects & Planners,*

22   *Inc.*, 160 Ariz. 187, 192, 772 P.2d 10, 15 (App.1988)). Further, "[t]o obtain relief under

23   the savings statute where the action has abated and been terminated, the plaintiff must

24   show that despite diligent efforts, he was unable to effect service." *Id.* at 273, 792 P.2d at

25   736. "The burden is on the plaintiff to present the particular circumstances that justify

26   relief under § 12-504." *Id.* at 272, 792 P.2d at 735. Moreover, Arizona courts have held

27   that "the savings statute should act only as a *limited extension* to prevent injustice." *Flynn,*

28   at 192, 772 P.2d at 15 (emphasis in original).

3

2594377.1

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1    Applying the *Flynn* test, there is no evidence that Plaintiff acted reasonably and in

2    good faith in attempting to serve AMEC or that she prosecuted her case diligently and

3    vigorously. As discussed above, Plaintiff did not serve her Amended Complaint in

4    January 2011, but instead served blank paper. *See* Mot. to Dismiss, Exs. 7-12. Moreover,

5    after a representative of CT Corp. received one of Plaintiff's certified mail packages in

6    January 2011, Plaintiff was informed through a letter directed to her return mailbox

7    address in Lake Havasu City that the package she sent contained blank paper. The letter

8    was delivered on January 28, 2011, over a month before Plaintiff filed her affidavits of

9    service with the Court. *See* Mot. to Dismiss, Ex. 12, Decl. of A. Martinez ¶¶ 3-4 & Exs.

10   B-C (letter and delivery confirmation).

11   After receiving this letter, Plaintiff did not take steps to serve her actual Amended

12   Complaint, but instead proceeded to file affidavits of service with the Court. In short,

13   Plaintiff lacked diligence in pursuing her claim and her conduct was not reasonable

14   because she failed to take action, or even attempt to make any inquiries, after she was

15   notified of the deficient service. *See Perry v. County of Maricopa*, 167 Ariz. 458, 461,

16   808 P.2d 343, 346 (App. 1991) (trial court did not abuse its discretion in denying relief

17   under § 12-504(A) when defendant, a government agency, was not difficult to find and

18   plaintiff had made no effort to follow up on service after process server noted confusion

19   and despite notice that service had to be completed shortly). In addition, Plaintiff has

20   offered no explanation for why she failed to take any steps to correct service after being

21   informed that she served blank paper. *See Copeland v. Arizona Memorial Coliseum and*

22   *Exposition Center*, 176 Ariz. 86, 92, 859 P.2d 196, 202 (App. 1993) (trial court

23   appropriately denied request for relief under savings statute where, among other things,

24   plaintiff did not provide an explanation for his lengthy inaction).

25   Lastly, it cannot be overlooked that Plaintiff did not act in good faith if she, in fact,

26   served blank paper intentionally. It stretches the bounds of plausibility to suggest that she

27   attempted to serve her Amended Complaint — not once but three times — without

28   checking to make sure that she was mailing copies of her actual Amended Complaint.

4

2594377.1




LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1    And, if she did attempt to mail her Amended Complaint to three different addressees

2    without noticing that she was sending blank paper, pursuant to the *Flynn* factors she

3    lacked diligence in prosecuting her claim.  Although Plaintiff may be prejudiced by this

4    Court's denial of a right to re-file under the Savings Statute to the extent some of her

5    claims may be time barred, all of the *Flynn* factors strongly support denying Plaintiff leave

6    to re-file.

7    **III.    Conclusion**

8         For the foregoing reasons, AMEC respectfully requests that the Court reconsider

9    its December 8, 2011 Order and deny Plaintiff the right to file a new action.  Instead, the

10   Court should hold that Plaintiff's claim is abated and that Plaintiff is not entitled to file a

11   new action under the Savings Clause of A.R.S. § 12-504(A) because Plaintiff has failed to

12   satisfy her burden of establishing grounds for discretionary relief and the *Flynn* factors

13   support denying Plaintiff leave to re-file.

14        RESPECTFULLY SUBMITTED this 21st day of December, 2011.

15

16                                    **LEWIS AND ROCA LLP**

17

18   By _____
                Robert G. Schaffer
19              Cindy Villanueva
     *Attorneys for AMEC Earth & Environmental,*
20   *Inc.*

21

22

23

24

25

26

27

28

5

2594377.1

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1  ORIGINAL of the foregoing was
   filed by FedEx Next Day Delivery
2  with the Mohave County Superior Court
   this 21st day of December, 2011, and a
3  COPY provided for:

4  Honorable Charles W. Gurtler, Jr.
   Mohave County Superior Court, Division I
5  2225 Trane Road
   Bullhead City, AZ  86442
6
   COPY of the foregoing was sent by
7  FedEx Next Day Delivery
   this 21st day of December, 2011, to:
8
   Stacy D. Ford-Kelly
9  1561 Mohican Dr.
   Lake Havasu City, AZ  86406
10 *Pro Se*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

●                                    ●          **FILED BHC**
                                                TIME _____ M

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA       JAN 0 5 2012

IN AND FOR THE COUNTY OF MOHAVE            VIRLYNN TINNELL
                                           CLERK SUPERIOR COURT
                                           BY_____DEPUTY

HONORABLE CHARLES W. GURTLER, JR., JUDGE
DIVISION I – BULLHEAD CITY                         *ks
DATE:  JANUARY 5, 2012

---

| **COURT ORDER** |
| --- |

STACY D. FORD-KELLY,

                          Plaintiff,          NO. CV-2010-7063

v.

AMEC EARTH & ENVIRONMENTAL, INC.,

                          Defendant.

---

Pending is Defendant's Motion for Reconsideration of December 8, 2011, Order granting Plaintiff the right to file a new action.  For the reasons hereinafter specified,

**IT IS ORDERED** denying the Motion.

The Court was essentially left with a couple of different inferences available to it as a result of the briefing in this matter.  On the one hand, Defendant provided Affidavits that said that all they received were blank papers.  The flip side of the coin is that Plaintiff provided a Declaration specifying she copied and mailed the Complaint and Summons to Defendant.  Without an evidentiary hearing the Court could not determine the veracity of the two Affidavits.

One inference is that the Plaintiff thought she copied the Summons and Complaint and mailed the same, whereas, all that was sent were blank copies.  Under such a scenario the Court would be looking at discretionary right to re-file under A.R.S. §12-504(A).  In such a situation, the Court would query of Defendant's counsel as to whether staff had ever inaccurately copied a document?  It certainly is not inconceivable that the document was placed upside down and it was ran through the copier (the Court notes that some copy machines take documents face down, and others face up).  The Court would also query as to whether staff had ever inaccurately mailed anything?  Had a document gone out without an exhibit?  Had a document been sent to the wrong addressee?  Without an evidentiary hearing, the Court can only assume that the Plaintiff reasonably took steps to copy and mail the Summons and Complaint, did so in a timely manner, and felt that service had occurred.  Indeed, she proceeded to apply for the default of the Defendant in the matter.  She unequivocally faces a procedural impediment given the Statute of Limitations which would affect the ability to file a second action.  Therefore, the three factors as cited in Jepson v. New, 164 Ariz. 265, 272, 792 P.2d 728 (1990) have been met.

The second inference is that the Plaintiff did, in fact, copy and mail the Summons and Complaint to the Defendant.  There are, in fact, conflicting statements under oath to this extent.  Without an evidentiary hearing, the Court has no reason to doubt the veracity of either the Plaintiff or the Defendant's representatives.


L8015CV201007063

Similarly, Defendant desires the Court to focus on why the Plaintiff has provided no explanation, or why, she failed to take steps to correct service after being informed that she served blank papers citing Copeland v. Arizona Veterans Memorial Coliseum and Exposition Center, 176 Ariz. 86, 92, 859 P.2d 196 (App. 1993). However, the Court does note that the Plaintiff filed Motions to Extend the Time to Effectuate Service.

It further appears to the Court that as a result of the Application for the Default Hearings, the Defendant realized the Plaintiff thought service was complete. The Application for Default was filed March 8, 2011. The Defendant's Motion to Dismiss was filed March 22, 2011. If the Plaintiff were truly acting in bad faith, why would she proceed to mail the Applications for Default to the Defendant at its various addresses?

The gravamen of this matter boils down to the fact that Plaintiff thought that she had validly served the Defendant. She filed two Motions while the issue was under advisement to extend the time frame to serve. Although some of the filings of the Plaintiff are difficult to follow in light of her pro per status, it appears to the Court that she has taken reasonable and good faith steps to attempt to prosecute the matter. There is an impediment to filing a new case given the Statute of Limitations and/or abatement rule. There have been serious allegations concerning a $10,000,000.00 W-2, which certainly can create significant tax consequences. As such, the Motion is denied.

cc:

STACY D. FORD-KELLY
1561 MOHICAN DR
LAKE HAVASU CITY AZ  86406
Plaintiff

ROBERT G. SHAFFER*
LEWIS & ROCA, LLP
Attorney for Defendant

Honorable Charles W. Gurtler, Jr.
Division I