

Melanie V. Pate
40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004-4429

Direct Dial: (602) 262-5318
Direct Fax: (602) 734-3785
MPate@LRLaw.com
Admitted in: Arizona

Our File Number: 52219-00001

October 9, 2012

**VIA EMAIL AND U.S. MAIL**

Peter K. Strojnik, Esq.
The Strojnik Firm LLC
2415 E. Camelback Road, Ste. 700
Phoenix, Arizona 85016

Peter Strojnik, Esq.
Strojnik, P.C.
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016

   Re: Stacy Ford-Kelly v. AMEC

Dear Mr. Strojnik and Mr. Strojnik:

  Thank you for your letter dated September 29, 2012, and your email dated October 5, 2012. In my email to you dated October 1, 2012, I asked you to tell us how many computers or any other electronic devices your client has owned and/or used since December 1, 2007. You responded by stating that your client "has only used one computer since 2008." This response does not address whether your client has owned or used any other electronic devices, and it does not address the date of December 1, 2007. In addition, you did not provide any information about the software that your client has bought, downloaded or otherwise obtained and/or used since December 1, 2007. Please clarify your response to our questions.

  Furthermore, we requested in an interrogatory that you provide us with all of the email addresses that your client has used since January 1, 2008. You provided us with five email addresses but failed to provide the address of stacy.deann@yahoo.com. Please provide us with all of your client's emails to and from any AMEC employee that were sent from or received by this email address.

  The remainder of this letter will address the questions raised in your September 29 letter. While we have conducted our due diligence regarding these issues in good faith and to the best of our ability under the expedited circumstances, the responses to your questions are intended to be a summary of the information that was provided to us by current and former AMEC employees whose memories have understandably faded somewhat since the incidents first occurred over four and a half years ago. However, we believe that the following information is



as accurate as is possible at this point in time. In addition, we will supplement and/or correct any information provided in this letter as may be necessary. Our intent is to provide you with as much information as possible so that you may accurately evaluate the documents that your client has provided to you.

First, AMEC did not have a written "documents retention/destruction policy" in effect when your client's original personnel file was destroyed. Due to a merger with another company (MACTEC) that occurred in June 2011, the Human Resources function of AMEC was moved from Bothell, Washington to Alpharetta, Georgia. As part of that transition and integration plan, AMEC's Vice President of Human Resources, Jayne Dinan, directed Melinda Knott in the Bothell office to scan the personnel files of all terminated employees and destroy the hard copy files due to the high cost of shipping and storing the physical files.

The hard copy original of Ms. Ford-Kelly's fully executed offer letter was kept in her AMEC personnel file in Bothell, Washington. Natasha Vu and Mandy Whittle are the former AMEC employees who were tasked with scanning the personnel files of all terminated employees and destroying the physical files. Melinda Knott oversaw this process. Ms. Ford-Kelly's scanned personnel file was saved on AMEC's computer system on October 27, 2011 at 1:24 p.m. The scanned personnel files are stored on the "sea-fs1" server that is physically located in Bothell, Washington. The PDF file is the best copy we have and it is attached. Included in AMEC's supplemental production are screen shots indicating the exact location and properties of the file.

Melinda Knott prepared the offer letter for Stacy Ford before it was signed. Ms. Knott used the Human Resources shared drive on the "sea-fs1" server to prepare the letter from a template offer letter. AMEC uses Microsoft Word as its word processing software. The unsigned offer letter and moving allowance form as they currently exist in AMEC's database are included in AMEC's supplemental production, along with screen shots indicating the exact location and properties of the documents.

Ms. Ford-Kelly would not have had access to AMEC's word processing software (Microsoft Word 10.0) on January 21, 2008, the date that the offer letter was prepared, because she had not yet started working for AMEC. She did have access to AMEC's word processing software during her employment. In addition, as you know, Microsoft Word is available to any person who purchases it and installs it on his or her personal computer. The font type on Ms. Ford-Kelly's offer letter is 10 point Arial. AMEC's computers do not contain a copy of the document that Ms. Ford-Kelly alleges to be her employment contract because that document was not created on AMEC's computers. No drafts of the actual offer letter have been deleted or purged from AMEC's database or servers, and no part of the database has ever been deleted or purged to the best of AMEC's current knowledge.



Stacy Lovett sent an email to Stacy Ford with her offer letter and moving allowance form attached on January 21, 2008. Her email address at the time was stacy.lovett@amec.com. She sent the email to Stacy Ford at stacy.deann@yahoo.com. Stacy Ford signed and returned the offer letter to Stacy Lovett via email on January 21, 2008. To date, AMEC has not been able to locate either of these emails in its archives. David Bennion conducted the due diligence search to locate these two emails. Mr. Bennion and Ms. Lovett are available during the latter part of October for depositions. Please be advised that Ms. Lovett no longer works for AMEC. Mr. Bennion and Ms. Lovett both reside in the Phoenix area.

Melinda Knott does not admit the genuineness of the signature on the document that Ms. Ford-Kelly alleges to be her employment contract because she did not sign that document. Ms. Knott does admit the genuineness of her signature on the actual offer letter that is included in Ms. Ford-Kelly's official personnel file. It appears to Ms. Knott that her signature was somehow copied and pasted from the actual offer letter and then slightly altered through the use of image editing software, but she does not know exactly how Ms. Ford-Kelly was able to duplicate her signature on the fraudulent document. We are not currently aware of any other employment agreements that Ms. Knott signed for Mr. Hassert. She signed Ms. Ford-Kelly's agreement because Mr. Hassert was unavailable. As the Human Resources Manager for the Western United States at the time, Ms. Knott had authority to sign employee offer letters if the hiring manager had already signed the Employee Action Form, which Mr. Hassert had done on January 15, 2008. Ms. Knott no longer works for AMEC but she is available for a deposition in the latter part of October. Please be advised that Ms. Knott currently resides in the Seattle area.

Our client has just this past week located two physical files that were in storage in Phoenix which contain copied and original documents regarding Ms. Ford-Kelly's employment. These files were created and maintained by Stacy Lovett during Ms. Ford-Kelly's employment as secondary files but they are not, nor were they intended to be, her official AMEC personnel file. We will produce a copy of the contents of these files in the next couple of days, and we will also make the files available for inspection at our office. The offer letter that is contained in one of these files is included in AMEC's supplemental production for your review. You will note that it is only signed by Stacy Ford because this copy had not yet been sent to Melinda Knott in Bothell for her signature. Stacy Lovett apparently printed the signed version for her physical file and sent it on to Melinda Knott via email, as was her standard procedure.

The Employee Action Form dated January 15, 2008 does not cross out Ms. Ford-Kelly's "designation EIT" as you state in your letter. The "Level Title" is crossed out and replaced with "E/S 3," which is an AMEC job classification level that generally applies to the lowest level of FLSA-exempt employees. You can clearly see that the "Job Title" is "EIT," which is an abbreviation for "Engineer in Training." You should also note that "EIT" appears repeatedly throughout your client's personnel file, most notably on the Application for Employment, which your client completed on January 16, 2008. Ms. Ford-Kelly wrote "E.I.T." in the space



designated for the position she was applying for. In addition, Ms. Ford-Kelly's termination letter and current resume (produced by you and numbered FORD 00119-00120 and FORD 00179) both indicate that her job title at AMEC was "Engineer in Training." Furthermore, Ms. Ford-Kelly's business card reflects the title of "EIT". Ms. Ford-Kelly's employee number was 506536.

    AMEC denies that Ms. Ford-Kelly inquired "whether AMEC intended to pay her pursuant to the Ford-Kelly Agreement." The "Ford-Kelly Agreement" presumably did not exist at the time of her termination, and she did not produce a copy of the fraudulent agreement at any time during her employment or upon her termination. AMEC did not request that Ford-Kelly "release it from liability from a written employment agreement pursuant to A.R.S. § 23-1501." All employees who were laid off by AMEC in 2009 received offers to sign a separation agreement and general release in exchange for a severance package. Melinda Knott prepared the separation agreement and general release document for Ms. Ford-Kelly because she was laid off and treated in the same manner as all other laid off employees. AMEC does not admit that the separation agreement and general release was presented to Ms. Ford-Kelly "because there was a potential for litigation." Redacted copies of similar separation agreements for several other laid off AMEC employees are included with AMEC's supplemental production.

    Regarding the copy of the envelope that you produced, AMEC cannot determine if it is the type of envelope "used by AMEC for purposes of forwarding tax forms to employees and contractors" because our client has not had an opportunity to inspect the actual envelope. In addition, AMEC cannot determine if the envelope was "metered on AMEC's postage meter" because our client has not inspected the actual envelope. Furthermore, AMEC does not admit or acknowledge that the envelope is genuine or that it was ever sent to Ms. Ford-Kelly from any AMEC office. We are producing with this letter a copy of an actual envelope that was used to send a Form 1099 to a subcontractor in January 2011. AMEC has this envelope because it was returned to the Bothell office after it was sent to the subcontractor. Please confirm that we will be given access to the original Form 1099 and the envelope that allegedly contained the Form 1099 so that we may inspect them and provide them to our documents expert for review.

    In addition, with regard to the fraudulent IRS Form 1099, we are producing eight partially redacted copies of actual Form 1099 documents that were issued by AMEC to various entities in January 2011. You can see from the face of the documents that there are obvious differences between the actual Form 1099 documents and the Form 1099 document that your client provided to you and on which you base most of the proposed new claims in your motion to amend. In addition, we previously informed you that your client is listed in AMEC's accounting and payroll systems as "Stacy D. Ford" and not "Stacy D. Ford-Kelly".

    Given all of this additional information, and with the knowledge that your client was heavily sanctioned by the IRS for filing a frivolous tax return based upon the fraudulent Form



Peter K. Strojnik
Peter Strojnik
October 9, 2012
Page 5

1099, we request that you withdraw your new motion to amend and Count 1 of Plaintiff's Complaint before we are required to respond to the motion and serve you with a motion for Rule 11 sanctions on October 15, 2012.

Sincerely,

Melanie V. Pate

MVP/sjd
Attachments

3133381.1