

**AFFILIATED FORENSIC LABORATORY Incorporated**

William J. Flynn, B.S., D-ABFDE
Kathleen Annunziata Nicolaides, B.A., D-ABFDE
3030 N. Central Avenue, Suite 1206
Phoenix, AZ 85012-2719
602-241-1890 (Voice) • 602-241-1932 (Fax)

# Laboratory Report

**To:** Peter Strojnik
Attorney at Law
Strojnik, PC
2415 East Camelback Rd.
Suite 700
Phoenix, AZ 85718

**AFL Laboratory #:** 12-3149.1

**Date:** October 17, 2012

**Re:** *Stacy Ford v. AMEC Earth & Environmental*

### PURPOSE OF THE EXAMINATION:

A forensic examination was conducted in order to determine which version of the AMEC offer of employment letter (the version presented by Stacy Ford or the one offered by AMEC) was authentic.

The following is a report of my examinations, observations, and conclusions.

### DOCUMENTS SUBMITTED FOR EXAMINATION:

*Questioned Documents:*

*(Received 10/3/2012 via hand delivery):*

Copy of Stacy Ford's version of a 2-page Offer of Employment letter to Stacy Ford dated January 21, 2008.

Copy of AMEC's version of a 2-page Offer of Employment letter to Stacy Ford dated January 21, 2008, bearing Bates numbers AMEC00002-3.

*Known Documents:*

Copies of employment forms provided by AMEC, bearing Bates numbers AMEC000386-391, 395-406. These were provided as examples of the forms produced by AMEC.

Copies of Known Stacy Ford signatures (where appearing), on documents bearing Bates numbers AMEC000001-32.

## EXAMINATIONS AND OBSERVATIONS:

1. Visual examinations were conducted with the unaided eye, a hand-held magnifier and stereoscopic microscope as needed.

2. Since all of the documents submitted are reproductions, rather than originals, some limitations are imposed on the amount of detail that can be observed in the questioned and known signatures.

3. Because of the ability of modern scanners and computer software to electronically "lift" signatures from one document and transfer them to another, it can be extremely difficult to determine authenticity of conflicting documents from reproductions.

## BASIS AND REASONS FOR THE OPINIONS:

Many of the forgery cases examined in our laboratory over the last few years have been of a type known as "Electronic Cut-and-paste." This is the modern version of the old mechanical cut-and-paste forgeries wherein a photocopy was made of a genuine signature, cut from the paper, and then pasted onto a document such as a contract, will, agreement, etc. Both mechanical and electronic cut-and-paste forgeries produce questioned documents wherein the victim's signature is simultaneously genuine and forged. The signature is genuine because it was copied from a document bearing the genuine signature, but then affixed to a document never signed by the victim.

With the advent of modern, high-resolution scanners and digital processing software such as PhotoShop, it is easier than ever to electronically "lift" a signature from document 'A' and transfer it to document 'B.' Because the background around the signature can be set to transparent and all evidence from the original document removed using the proper software, it can be very difficult to forensically determine that this form of forgery has been utilized.

One universal commonality with electronic cut-and-paste forgeries is that the "original" document is always "lost." This allegation must be made, because there is never an original ink-signed signed document to begin with. If an original "ink-signed" version *did* still exist and one or more of the signatures on it are forgeries they would have to be of the classic type, where a forger makes an effort to mimic the likeness of the victim's signature using pen and ink.

## CONCLUSIONS

1. Typographic examinations of Ms. Ford's version of the questioned January 21, 2008 letter with the AMEC version has shown that the body texts of the two documents are in a similar sans serif Gothic font. The font used in the body of both letters is most likely Arial. Because of the similarities of the fonts known as Arial and Helvetica, however, and the limitations imposed by the reproduction quality of the items examined, Helvetica could not be ruled out as a possibility.

2. On Ms. Ford's version of the questioned letter, the *"AMEC Infrastructure"* address at the bottom of page 1 is in the same, or similar, font as the body text above. On the AMEC version (and in their samples provided) the address data switches to a different font (most likely known as "Calibri").

3. On page 2 of both questioned letters, the signature of the person signing for Chris Hassert is identical. From a forensic standpoint it is considered impossible for identical signatures to appear on different documents without one or both having been transferred thereon.

4. Because of the limitations imposed by an examination of reproductions, rather than originals it could not be determined which (or if either) questioned document had contained an entire set of original (wet-ink) signatures.

5. Had it been possible to examine the original version of the questioned AMEC letter, however, a definitive conclusion as to its authenticity could have been reached.

William J. Flynn, D-ABFDE
Forensic Document Examiner

WJF:cmk