**LEWIS AND ROCA LLP — LAWYERS**

40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Robert G. Schaffer, State Bar No. 017475
Direct Dial: (602) 262-0271
Direct Fax: (602) 734-3777
EMail: BSchaffer@LRLaw.com

Melanie V. Pate, State Bar No. 017424
Direct Dial: (602) 262-5318
Direct Fax: (602) 734-3785
EMail: MPate@LRLaw.com

Alastair Gamble, State Bar No. 025488
Direct Dial: (602) 262-5370
Direct Fax: (602) 262-3787
EMail: AGamble@LRLaw.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy D. Ford-Kelly,<br><br>                    Plaintiff,<br><br>        vs.<br><br>AMEC Environment & Infrastructure, Inc., a Nevada corporation *fka* AMEC Earth & Environmental, Inc. *fka* AMEC Infrastructure, Inc.,<br><br>                    Defendant. | No. 3:12-cv-08085-NVW<br><br>**DEFENDANT AMEC ENVIRONMENT & INFRASTRUCTURE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR AWARD OF ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1927**<br><br>**CROSS MOTION FOR DEFAULT JUDGMENT AGAINST PLAINTIFF OR, ALTERNATIVELY, REQUEST FOR HEARING** |

The evidence overwhelmingly establishes that Plaintiff Stacy Ford-Kelly ("Plaintiff") fraudulently created the alleged "employment agreement" underlying Count One of the First Amended Complaint ("FAC") and that she is engaging in an ongoing fraud to prosecute her bogus claim. The Court should therefore not only deny Plaintiff's Motion for Summary Judgment ("MSJ")—which is in actuality the same motion for default judgment that the Court has twice denied—it should enter default judgment *against Plaintiff* pursuant to its inherent power to sanction conduct that undermines the integrity of judicial proceedings. Alternatively, AMEC requests that the Court hold an evidentiary hearing for purposes of determining the authenticity of the alleged employment agreement.



This Opposition and Cross Motion is supported by the Memorandum of Points and Authorities below and the separately filed Controverting and Additional Statement of Facts, which attaches a Request for Judicial Notice and the Declarations of Robert Schaffer, Mark Cardwell, Brad Knight, Jayne Dinan, Melinda Knott, Chris Hassert, David Bennion, and Stacy Lovett.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. RELEVANT FACTS

#### A. AMEC's Hiring of Plaintiff

In late 2007 or early 2008, AMEC manager Chris Hassert interviewed Plaintiff for a position at AMEC's office in Lake Havasu City, Arizona. Declaration of Chris Hassert ("Hassert Decl."), at ¶ 3.[1] Mr. Hassert decided to hire Plaintiff as an Engineer in Training to work on the Lake Havasu City Wastewater Expansion Program, a limited project scheduled to be completed in 2012 or earlier. Controverting and Additional Statement of Facts ("CSOF"), ¶ 35. Plaintiff did not request, and Mr. Hassert did not offer, a position for a guaranteed term of employment. *Id.* at ¶ 6.

On January 16, 2008, Plaintiff completed and signed a formal application for employment with AMEC indicating that she was applying for an "E.I.T." position. *Id.* at ¶ 36. The application required Plaintiff to "certify" that:

> I . . . understand that my employment and compensation can be terminated, with or without cause, and with or without prior notices, at any time, at the option of either the Company or myself unless otherwise mutually agreed in writing. I understand and acknowledge that no employee or representative of AEE [AMEC Earth & Environmental, Inc.] other than the president or vice president of AEE, has the necessary authority to enter into such a written agreement for employment for any period of time or to make any agreement contrary to the foregoing. I further understand and acknowledge that there are no written, oral, collateral or implied agreements of any kind contrary to the foregoing.

*Id.*

---
[1] Per L.R.Civ. 56.1(a), AMEC's citations to the Controverting and Additional Statement of Facts are limited to facts that are "material" to Plaintiff's MSJ. Direct citations to the Declarations and Request for Judicial Notice—which are attached as Exhibits A-I to the Controverting and Additional Statement of Facts—are used for background facts or facts supporting AMEC's Cross Motion for Default Judgment.

1

3317955.2

Case 3:12-cv-08085-NVW   Document 88   Filed 03/18/13   Page 3 of 20



   **B.   AMEC's Employment Policies**

At the time Plaintiff was hired, AMEC policy, as set forth in its Employee Handbook—which was provided to and acknowledged by all new employees—required that all offers of employment be confirmed in writing using a standard offer letter, and also provided:

> All representatives of AMEC should be aware that the employment with the Company is "at will" and should exercise great care not to make any representations otherwise. During the recruitment, hiring, and orientation process, no statement shall be made promising permanent or guaranteed employment, and no document shall be called a contract . . . .

*Id.* at ¶ 37.  In addition, the first page of the Employee Handbook in effect in January of 2008, which Plaintiff acknowledged in writing that she received, states:

> This Employee Handbook does not constitute an employment agreement.  All employees are employed at-will, which means that either AEEI or an employee may sever the employment relationship at any time with or without cause and with or without prior notice.  No one at AEEI has the authority to enter into a contract for employment or make an agreement modifying our at-will employment relationship except the President or the Executive Vice President of AEEI, who may enter into an explicit, written employment contract with individual employees.  Such contracts are valid only if they are signed by both the President or Executive Vice President and the employee and specifically state that they are intended to be the employee's written employment contract.

*Id.*

   **C.   Plaintiff's Offer Letter**

On January 21, 2008, AMEC Human Resources Manager Melinda Knott prepared a standard offer letter for Plaintiff using Microsoft Word and saved it in .doc format on AMEC's Human Resources document server.  *Id.* at ¶ 40.  Plaintiff's offer letter expressly states that her employment with AMEC was "at-will."  *Id.* at ¶ 41.  Plaintiff's offer letter follows the same format and contains the same language as other offer letters prepared and sent to other AMEC employees hired around the same time as Plaintiff.  *Id.* at ¶ 40.  In addition, the .doc version of Plaintiff's original offer letter, as prepared by Ms. Knott, is maintained on AMEC's Human Resources document server in the same form in which it existed when it was created; the metadata of that document shows a "last modified" date of January 21, 2008.  *Id.*

2

3317955.2

Before the letter was sent to Plaintiff, Plaintiff spoke to Ms. Knott by phone and requested that the letter be emailed to her at stacy.deann@yahoo.com. Declaration of Melinda Knott ("Knott Decl."), at ¶ 5, Ex. 2; Declaration of Stacy Lovett ("Lovett Decl."), at ¶ 4, Ex. 1. Accordingly, after Ms. Knott prepared the letter, she forwarded it to Stacy Lovett, an administrative assistant in AMEC's Mesa office, so that Ms. Lovett could email it to Plaintiff for her signature. CSOF, at ¶ 44. Ms. Knott advised Ms. Lovett by e-mail that the letter was "ready to be printed" except for "inserting a mailing address" for Plaintiff, which was missing in the version Ms. Knott prepared. Knott Decl., at ¶ 5, Ex. 2; Lovett Decl., at ¶ 4, Ex. 1. The offer letter attached to Ms. Knott's email to Ms. Lovett is identical to the offer letter saved by Ms. Knott on AMEC's Human Resources document server. CSOF, at ¶ 42.

Shortly after receiving the offer letter from Ms. Knott on January 21, 2008, Ms. Lovett emailed it in .pdf format to Plaintiff at stacy.deann@yahoo.com, but Ms. Lovett did not insert Plaintiff's mailing address in the offer letter. CSOF, at ¶ 43. Plaintiff replied to Ms. Lovett's email in less than an hour, attaching an electronic copy of the offer letter and stating in her reply email: "Here are the signed offer and moving allowances paperwork." CSOF, at ¶ 44.

After receiving Plaintiff's signed offer letter, Ms. Lovett printed a hard copy of the letter and placed it in a file she maintained in her office for AMEC employees working in Arizona. Lovett Decl., at ¶ 6, Ex. 3. With the addition of Plaintiff's signature, the copy of the offer letter in Ms. Lovett's physical file is identical to both (1) the copy attached to the email Ms. Knott sent to Ms. Lovett on January 21, 2008, and (2) the copy prepared and saved by Ms. Knott on AMEC's Human Resources document server on the same date. CSOF, at ¶ 49.

The next day, Ms. Lovett emailed the offer letter executed by Plaintiff to Ms. Knott. Knott Decl., at ¶ 6. Ms. Knott noticed that the offer letter had not been signed by Mr. Hassert, so she signed the offer letter on Mr. Hassert's behalf in his absence. CSOF, at ¶ 45. After executing the offer letter for AMEC, Ms. Knott put a copy of the fully executed letter in Plaintiff's physical personnel file and also personally provided a copy of the fully executed letter to AMEC's corporate payroll department in Bothell, Washington. *Id.* Both copies of the signed offer letter

3

3317955.2

are identical. CSOF, at ¶ 49. In addition, except for Ms. Knott's and Plaintiff's signatures, the copies of the offer letter in Plaintiff's personnel and payroll files are identical to (1) the copy in Ms. Lovett's hard-copy file, (2) the copy attached to the email Ms. Knott sent to Ms. Lovett on January 21, 2008, and (3) the copy prepared and saved by Ms. Knott on AMEC's Human Resources computer database on the same date. *Id.*

Plaintiff's employment with AMEC ended on April 21, 2009. *Id.* at ¶ 15.

In January 2010, Plaintiff requested a copy of her personnel file from AMEC. Knott Decl., at ¶ 9; Declaration of David Bennion ("Bennion Decl."), at ¶ 6. In response to that request, Ms. Knott scanned the documents comprising Plaintiff's physical personnel file in .pdf format and emailed it on January 20, 2010, to David Bennion, AMEC's Human Resources Manager for the Mountain Group (which includes Arizona). Knott Decl., at ¶ 9, Ex. 4; Bennion Decl., at ¶ 6, Ex. 2. Included in this copy of Plaintiff's personnel file was a copy of the fully executed offer letter. *Id.* The copy of the offer letter contained in the .pdf document that was attached to the January 20, 2010 email from Ms. Knott to Mr. Bennion is identical to the copies of the offer letter contained in Plaintiff's personnel and payroll files and, except for Ms. Knott's and Plaintiff's signatures, is identical to (1) the copy in Ms. Lovett's hard-copy file, (2) the copy attached to the email Ms. Knott emailed to Ms. Lovett on January 21, 2008, and (3) the copy prepared and saved by Ms. Knott on AMEC's Human Resources document server on the same date. CSOF, at ¶ 49.

### D. Exhibit One to Plaintiff's FAC -- The Alleged "Employment Agreement"

Plaintiff's fraudulent version of the offer letter—which purportedly guarantees her employment with AMEC for six years and requires immediate pay-out of any amount due under the contract if Plaintiff is terminated by "no fault" of her own—first appeared as one of many exhibits attached to Plaintiff's First Amended Complaint, which Plaintiff filed *in propria persona* in Mohave County Superior Court on January 14, 2011. This is the same purported "employment agreement" that Plaintiff has attached as Exhibit 1 to her First Amended Complaint in this case and as Exhibit 1 to her declaration in support of her MSJ.

However: Melinda Knott—whose signature appears on the alleged "employment agreement" *exactly* as it appears on the actual offer letter—states that she did not prepare or sign this document. CSOF, at ¶ 50. A copy of the alleged "employment agreement" does not appear in AMEC's records. *Id.*, at ¶ 51. The alleged "employment agreement" does not comport with AMEC policies. *Id.*, at ¶ 52. Further, the current and former AMEC employees with personal knowledge of the terms of Plaintiff's employment—Mr. Hassert, Mr. Bennion, Ms. Knott, and Ms. Lovett—have reviewed the alleged "employment agreement" and categorically state that Plaintiff was not offered the terms of employment reflected in that document. Hassert Decl., at ¶ 8; Bennion Decl., at ¶ 5; Knott Decl., at ¶¶ 7-8; Lovett Decl., at ¶ 7. In fact, none of these employees are aware of *any* AMEC employee being offered terms of employment similar to those reflected in the alleged "employment agreement." *Id*.

### E. Relevant Procedural Background

#### 1. Original State Court Action and Plaintiff's Fraud on the Court

On April 15, 2010, almost a year after her employment with AMEC ended, Plaintiff filed a one-page, handwritten complaint against AMEC in Mohave County Superior Court seeking $25 million in damages. CSOF, Ex. I, Request for Judicial Notice ("RJN"), Ex. 1. After filing affidavits with the state court swearing that she had served the complaint and summons on AMEC, Plaintiff moved for a default judgment. *Id.* Plaintiff filed further affidavits swearing that she had served AMEC with notice of the default motion. *Id.* At the scheduled default hearing, the court ordered Plaintiff to amend her sparse pleading to comply with Ariz. R. Civ. Pro. 8. *Id.* Plaintiff then filed an amended complaint on January 14, 2011, and filed affidavits swearing to have served it on AMEC by certified mail on January 26, 2011. *Id.* On March 8, 2011, Plaintiff again sought a default judgment, and, once again, filed affidavits of service for the notices of the default hearings. *Id.*

In actuality, Plaintiff had never sent AMEC a copy of either her original or amended complaint, nor had she sent AMEC notices of the default hearings. *Id.*; Declaration of Brad Knight ("Knight Decl."), at ¶¶ 3-4. She had, in two separate instances, sent envelopes containing

5

only sheets of blank paper or copies of a lengthy letter signed by Plaintiff to two AMEC executives and AMEC's statutory agent, neither of which put AMEC on notice of Plaintiff's lawsuit.[2]  RJN, Ex. 1; Knight Decl, at ¶ 3.  It was only through AMEC's own investigation that it discovered Plaintiff's lawsuit.  RJN, Ex. 1; Knight Decl, at ¶ 2.

Upon discovering Plaintiff's original state court lawsuit, AMEC moved to dismiss for (1) insufficiency of service of process and (2) attempted fraud on the court.  CSOF, at ¶ 23.  The state court dismissed the original action for insufficiency of service of process.  RJN, Ex. 2.  The court stated that it was unable to reach the question of fraud on the court without an evidentiary hearing, which neither party had requested prior to the oral argument (but which AMEC did request during the argument).  RJN, Ex. 2.  As part of the dismissal, Plaintiff was given leave to re-file her lawsuit within ninety days.  RJN, Ex. 2.  Plaintiff filed a second action in Mohave County Superior Court in March 2012, which AMEC timely removed to this Court.  Doc. # 1.

### 2. Plaintiff's Fraudulent Conduct During Litigation in this Court

#### a. Plaintiff "Does Not Recall" Using a Yahoo Email Account

On January 18, 2008, Plaintiff sent Mr. Hassert an email advising him that she had changed her email address to stacy.deann@yahoo.com.  Hassert Decl., at ¶ 5, Ex. 1.  This is the same address that Plaintiff had requested Ms. Knott use to transmit the offer letter to her, the same address Ms. Lovett used to transmit the offer letter to Plaintiff, and the same address Plaintiff used to return the executed copy of her offer letter to Ms. Lovett.  Knott Decl., at ¶ 5, Ex. 2; Lovett Decl., at ¶ 4, Ex. 2.  These emails, which appear within another email that was later forwarded by

---

[2] The letter that Plaintiff mailed in lieu of her original complaint and summons is dated December 22, 2009, and it details Plaintiff's employment with AMEC, including the circumstances surrounding her termination.  For instance:

> On April 21, 2009 I was let go by AMEC at 8:05 am. I was told by Mike Lywood and Darin Miller it was due to the economic downfall but, I was the only one laid off and the Lake Havasu City office was operating at an unbelievable 35% profit at the time.  My leave of absence forms stated I would return to the same position at the same rate of pay and if there were any changes I would be notified of the changes and have to sign documentation acknowledging the change, which never happened (Appendix E).

RJN, Ex. 1.  The letter never mentions an "employment agreement."  *Id.*

6

3317955.2

1  Plaintiff to Ms. Lovett (without the attachment), are critical evidence confirming AMEC's
2  position that Plaintiff signed the actual offer letter and not the proffered "employment agreement."
3        During discovery in this action, AMEC asked Plaintiff to produce emails sent to AMEC
4  employees from the Yahoo! account.  Declaration of Robert Schaffer ("Schaffer Decl."), at ¶ 4.
5  On October 15, 2012, Plaintiff indicated through counsel that she "does not recall use or
6  ownership" of the account, and she refused to produce the emails—even after AMEC pointed out
7  the multiple emails demonstrating that Plaintiff had in fact used this address.  *Id.*, at ¶¶ 5-6, Exs. 3
8  & 4.  Plaintiff also refused to sign a consent form, which Yahoo! insisted was required before it
9  would produce any emails in the account, despite AMEC issuing a subpoena.  *Id.*, at ¶¶ 7-8, Ex. 5.
10        Yahoo! did, however, produce information identifying the IP Registration Address used to
11  set up the stacy.deann@yahoo.com email account.  *Id.*, at ¶ 8, Ex. 5.  AMEC's computer forensics
12  expert, Mark Cardwell, has confirmed that this IP address was owned by internet service company
13  Cable One and assigned to a computer in the Boise, Idaho area.  Declaration of Mark Cardwell,
14  ("Cardwell Decl."), at ¶ 17.  Plaintiff was living in the Boise, Idaho metropolitan area in January
15  2008, and she was using an email address from Cable One.  Declaration of Stacy Ford-Kelly,
16  ("Ford-Kelly Decl."), at ¶¶ 2, 6 (filed in support of the MSJ); *see also* Dinan Decl., at  ¶ 4, Ex. 2
17  (address on Plaintiff's application); Hassert Decl., at ¶ 5, Ex. 1 (email from Plaintiff's Cable One
18  address).
19        Yahoo! also produced information showing that someone had accessed the account only
20  five times in the last year, all on October 17, 2012, less than 48 hours *after* Plaintiff represented
21  through counsel that she did not "recall" using the account. Schaffer Decl., at ¶ 8, Ex. 5.  The
22  person who accessed the account used an anonymous proxy service to disguise identifying
23  information.  Cardwell Decl., at ¶ 18.
24        The Yahoo! information also revealed that *most* of the information that is entered (and can
25  be altered) by the account owner—*e.g.*, name, address, birthday, gender, alternate email address,
26  etc.—matches Plaintiff: the gender is "Female," the birthday is "November 10, 1971," and the
27  alternate email address is "do_it_2_spec@yahoo.com."  Schaffer Decl., at ¶ 8, Ex. 5.  However,
28  

7

3317955.2

*some* of the changeable information matches AMEC employee David Bennion: the initials "DB" and the address in Mesa, Arizona. *Id.* Mr. Bennion unequivocally denies knowledge of the account and he does not know why his initials and home address appear in the account information. Bennion Decl., ¶ 8.[3]

### b. Plaintiff Deletes Over 45,000 Files from Her Computer Hours Before Producing it to AMEC's Computer Expert

During discovery, AMEC asked Plaintiff to produce her personal Acer computer for inspection by Mr. Cardwell. Schaffer Decl., at ¶ 9. However, as Mr. Cardwell details in his report, Plaintiff used wiping software called CCleaner to permanently delete over 45,000 files—nearly one-third of all the files on the computer—*hours* before she produced the computer to Mr. Cardwell. Cardwell Decl., at ¶ 12. When confronted with Mr. Cardwell's report and their client's spoliation of evidence, Plaintiff's counsel responded that the software used to erase the files was merely a "computer enhancement tool" and that "[t]he best possible inference from the report is that someone attempted to improve the computer's performance." Schaffer Decl., at ¶ 10, Ex. 7.

## II. PLAINTIFF'S MSJ SHOULD BE DENIED

Plaintiff moves for summary judgment on Count One of the FAC, in which she alleges that AMEC breached its employment contract with her. Under Arizona law, the threshold element for a claim for breach of employment contract is the existence of a valid, enforceable contract. A.R.S. § 23-1501(2) (providing that an employment relationship is "severable at the pleasure of either the employee or the employer" unless there is a "signed written contract to the contrary"). At a minimum, a dispute of fact about whether an employment contract even exists necessarily precludes summary judgment. Fed. R. Civ. Pro. 56(a).

### A. AMEC Disputes the Existence of A Contract Between the Parties

In support of her MSJ, Plaintiff submits an affidavit in which she asserts (without any corroborating evidence) that in January 2008, she and AMEC entered into an employment

---

[3] Plaintiff's counsel informed counsel for AMEC of their intention to withdraw as Plaintiff's counsel the day after the Yahoo! account information was disclosed to them. They have stated that the reason for their withdrawal is that continued representation would cause them to violate ethical rules. *See* Doc. 87.

8

3317955.2

contract guaranteeing her six years of employment as a "design engineer." Under the terms of the alleged contract, AMEC was obligated to pay out any salary remaining on the contract (plus eighteen months of COBRA coverage, among other benefits) if Plaintiff's employment ended through "no fault of [her] own." Plaintiff claims that AMEC terminated her employment in April 2009 without cause, and that she did not receive the pay-out per the alleged employment contract.

AMEC does not dispute that it terminated Plaintiff's employment in April 2009. However, it flatly denies that Plaintiff had an employment contract, much less one with the terms Plaintiff alleges. AMEC has submitted five affidavits from current and former employees with personal or custodial knowledge regarding Plaintiff's employment with AMEC, and all state that (1) AMEC offered, and Plaintiff accepted, an "at-will" position of no guaranteed duration, (2) no AMEC employee ever drafted, signed, or was even aware of the alleged "employment contract," and (3) Plaintiff was never offered the terms of employment reflected in the alleged contract, as they would have violated AMEC's employment policies.

There is a clear dispute of fact regarding the existence of an employment contract. Therefore, summary judgment on this claim should be denied.

### B. Spoliation Sanctions Are Not Warranted Against AMEC

Plaintiff is aware that AMEC denies that it prepared or signed the document on which her contract claim is based, and she attempts to circumvent the resulting factual dispute by seeking default judgment as a sanction for alleged spoliation of evidence, a request she has made unsuccessfully twice before based on the exact same grounds. (*See* Docs. 42 - 46.) As discussed below, Plaintiff's third request for terminating sanctions is equally without merit.

#### 1. Grounds for Spoliation Sanctions

"A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence[.]" *Surowiec v. Capital Title Agency,*

9

3317955.2

1   *Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F.
2   Supp. 2d 494, 509 (D. Md. 2009)).  Even where spoliation has occurred, terminating sanctions are
3   "only warranted where the party 'engaged deliberately in deceptive practices that undermine the
4   integrity of judicial proceedings' or 'has willfully deceived the court and engaged in conduct
5   utterly inconsistent with the orderly administration of justice.'"  *Leon v. IDX Systems Corp.*, 464
6   F.3d 951, 958 (9th Cir. 2006) (quoting *Anheuser–Busch, Inc. V. Natural Beverage Distribs.*, 69
7   F.3d 337, 348 (9th Cir. 1995)).  Plaintiff fails to meet her burden to establish that spoliation
8   occurred, much less to establish that AMEC engaged in misconduct severe enough to warrant
9   terminating sanctions.

**2.    Plaintiff's (inadmissible) evidence does not establish spoliation.**

The evidence that Plaintiff exclusively relies upon to establish that AMEC destroyed the original copy of the signed offer letter is correspondence dated October 9, 2012, from AMEC's counsel to Plaintiff's counsel, which states in pertinent part:

> While we have conducted our due diligence regarding these issues in good faith and to the best of our ability under the expedited circumstances, the responses to your questions are intended to be a *summary of the information that was provided to us by current and former AMEC employees whose memories have understandably faded* somewhat since the incidents first occurred over four and a half years ago. . . .
>
> First, AMEC did not have a written "documents retention/destruction policy" in effect when your client's original personnel file was destroyed.  Due to a merger with another company (MACTEC) that occurred in June 2011, the Human Resources function of AMEC was moved from Bothell, Washington to Alpharetta, Georgia.  As part of that transition and integration plan, AMEC's Vice President of Human Resources, Jayne Dinan, directed Melinda Knott in the Bothell office to scan the personnel files of all terminated employees and destroy the hard copy files due to the high cost of shipping and storing the physical files.
>
> The hard copy original of Ms. Ford-Kelly's fully executed offer letter was kept in her AMEC personnel file in Bothell, Washington. . . . Ms. Ford-Kelly's scanned personnel file was saved on AMEC's computer system on October 27, 2011 at 1:24 p.m.

10

3317955.2



Plaintiff's Statement of Facts ("PSOF"), ¶ 26, Ex. 7 (emphasis added). Even if Plaintiff's evidence were admissible—which it is not[4]—it would not establish grounds for spoliation sanctions because it does not establish (1) that AMEC had a "culpable state of mind" or (2) that she was prejudiced by the destruction of the original offer letter.[5]

          **a.**       **AMEC did not have a "culpable state of mind."**

As AMEC's counsel explained in the letter on which Plaintiff relies, the hard copy version of Plaintiff's personnel file, which included a copy of the fully executed offer letter, was scanned and preserved in AMEC's electronic files after AMEC merged with another company and moved its central human resources department from Washington to Georgia. Due to the expense that AMEC would have incurred in shipping and storing the physical files for all terminated employees, AMEC's Vice President of Human Resources, who was not at that time aware of the pending litigation with Plaintiff, directed her staff to convert the physical files to electronic files. Contrary to Plaintiff's baseless accusations, AMEC's destruction of the physical personnel file was not done for an improper purpose. Her personnel file was preserved in electronic form exactly as it existed in paper form. *E.g.*, *Guifu Li v. A Perfect Day Franchise, Inc.*, (N.D. Cal. 2011) (holding that spoliation sanctions were not justified where original documents were preserved electronically before being destroyed).

Moreover, there is no evidence at all suggesting that AMEC's destruction of the physical file was conduct amounting to "deceptive practices," and Plaintiff has therefore failed to establish grounds for the extreme sanction she seeks. *Leon*, 464 F.3d at 958 (quotations omitted).

---

[4] As detailed in the CSOF, this is an unauthenticated, unsworn letter from AMEC's counsel who made assertions based on what AMEC employees had told her. Therefore, this is not admissible evidence and cannot be used in the MSJ to establish spoliation. CSOF, at ¶ 26; *see also* Fed. R. Civ. Pro. 56(c)(2) & (4); L.R. Civ. 56.1(b); Fed. R. Evid. 602, 603, 802, 901(a).

[5] For present purposes, AMEC does not dispute that it was aware of Plaintiff's original state court lawsuit when it disposed of Plaintiff's hard copy personnel file after preserving it electronically. However, as discussed above, Plaintiff took great pains to avoid providing notice to AMEC of her original lawsuit in an effort to obtain a fraudulent default judgment. When AMEC discovered the original lawsuit through its own investigation, it was focused on dismissing the case for attempted fraud upon the court and failure to effect timely service, not on the merits of the claims. Knight Decl., at ¶ 5. It was only after Plaintiff re-filed her lawsuit in March 2012 that AMEC discovered that Plaintiff's contract claim was based on a purported "employment agreement" that was different than the actual employment offer letter that was sent to Plaintiff in January 2008. *Id.*

11

3317955.2

### b. Only AMEC—and not Plaintiff—has been prejudiced.

Plaintiff's explanation for why she has been prejudiced by the conversion of the hard copy personnel file to the electronic file is that her expert has opined that only by examining the original document bearing "wet-ink" signatures can one draw a definitive conclusion as to which of the competing documents is authentic. It is true that AMEC has not located a copy of the offer letter bearing wet-ink signatures. However, there is no indication—in Plaintiff's proffered evidence or otherwise—that the hard copy maintained in Plaintiff's personnel file had the original wet-ink signatures, and thus that the copy of the offer letter contained in the hard copy personnel file would have been useful in determining authenticity. *See Whitney v. JetBlue Airlines, Inc.*, 2008 WL 2156324, at *6 (E.D.N.Y. 2008) (holding that spoliation sanctions were not warranted where party had destroyed original handwritten reports after importing the substance of the reports into a database because "plaintiff has not demonstrated that the information in the handwritten [reports] would be favorable to her case, or that she has been prejudiced by its absence").

In any event, Plaintiff's "prejudice" argument is nonsensical. AMEC made an electronic record of the personnel file exactly as it existed in hard copy form on two separate occasions: first, in 2010 when Plaintiff requested a copy of her personnel file, and second, in 2011 when the physical file was converted to electronic form. Both of the resulting .pdf files contain an exact copy of the fully executed offer letter, which is identical to the offer letter bearing only Plaintiff's signature that was maintained in Stacy Lovett's file, and which is also identical to the native MS Word file stored on AMEC's document server. Thus, if the physical personnel file had been maintained, it would only confirm what the .pdf's show—that Plaintiff signed the offer letter that AMEC maintains is the genuine offer letter. The original copy of the document would be no better than a copy to establish the actual terms of Plaintiff's employment with AMEC.

For this reason, Plaintiff necessarily must—and has—accused AMEC of somehow creating a fraudulent offer letter, and then placing that letter in her personnel file before scanning the physical personnel file into .pdf format. What is more, the documents reflect that this necessarily must have happened before the first .pdf file was created in January 2010, and thus



long before AMEC had any inkling that Plaintiff was claiming the existence of an employment "contract." She is also evidently claiming that AMEC somehow was able to create a native MS Word file with altered Windows metadata showing a "last modified" date of January 21, 2008, and that the email on that same date transmitting the MS Word file to Stacy Lovett was also somehow manufactured. The point is not just that Plaintiff has <u>*absolutely no proof*</u> for any of this, but that if her story is to be believed, then there never was an original wet-ink copy of the offer letter because AMEC fraudulently created it and placed it into her personnel file months before Plaintiff even filed her original complaint. Either way, Plaintiff has not shown prejudice.

### C. AMEC is Entitled to Attorneys' Fees for Plaintiff's Bad Faith MSJ

The Court is authorized to impose sanctions against "[a]ny lawyer who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927; *see also Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000) ("1927 authorizes . . . sanctions against any lawyer who wrongfully proliferates litigation proceedings").

Plaintiff's MSJ is based on the same evidence and arguments on which she based her previously denied motion for sanctions and her motion for reconsideration of the denial of that motion. This is presumptively bad faith conduct for purposes of 28 U.S.C. § 1927. *Averbach v. Rival Mfg. Co.*, 737 F. Supp. 330, 334 (E.D. Penn. 1990) ("It is inconceivable that an attorney, acting in good faith, would renew a motion that has been twice denied without offering to the Court any authority which would justify a ruling different from that previously rendered."); *see also Alward v. Burrelle's Information Services*, 2001 WL 1708779, at *9 (D. Ariz. 2001) (holding that Section 1927 sanctions were justified against plaintiff's counsel after filing three pleadings containing the same objectionable material). Moreover, prior to filing the MSJ, Plaintiff's counsel stated that if AMEC were to pursue Rule 11 sanctions in this case, he would "reciprocate" by seeking sanctions against AMEC, threatening: "[Y]ou serve, we serve. That would provide us with an opportunity to put AMEC's destruction of the original under your watch *back in front of Judge Wake*." Schaffer Decl., ¶ 11, Ex. 1 (emphasis added).

13

3317955.2

1  The repetitive, bad faith motion practice here has prejudiced AMEC by its having to prepare and file this unnecessary Opposition. Therefore, AMEC requests monetary sanctions against Plaintiff's counsel to recover the unnecessary fees incurred.

### III.   DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFF

A party who falsifies evidence commits "an affront to the administration of justice," and default judgment can and should be entered against the culpable party pursuant to the Court's inherent powers. *Greenburg v. Roberts Properties, Ltd.*, 2005 WL 3536114, *2 (D. Ariz. 2005), *aff'd* 246 Fed. Appx. 500 (9th Cir. 2007); *see also Gilmer v. Colorado Institute of Art*, 12 Fed. Appx. 892, 895 (10th Cir. 2001); *Combs v. Rockwell International Corp.*, 927 F.2d 486 (9th Cir. 1991); *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 390 (E.D. Cal. 1992).

Here, the evidence clearly and convincingly proves[6] that Plaintiff's alleged employment agreement is fake and that Plaintiff is asserting a false claim *and* that she is continuing her fraud through destruction and manipulation of critical evidence. Accordingly, this entire action should be dismissed, among other sanctions. *E.g.*, *Greenburg*, 2005 WL 3536114, *2 (holding that falsification of evidence "could result, at a minimum, in the dismissal of this action with prejudice, the entry of default judgment in Defendants' favor, an award of all fees and costs to Defendants, and even a referral to the United States Attorney's Office for criminal investigation"). Alternatively, AMEC requests that the Court schedule an evidentiary hearing for purposes of determining the authenticity of the alleged employment agreement.

#### A.   AMEC's Evidence that the Alleged Employment Contract is Fake

The evidence overwhelmingly demonstrates that Plaintiff forged the document on which she is basing her breach of employment contract claim.

First, the terms of the alleged employment agreement are facially incredible, especially given Plaintiff's utter lack of professional experience at the time of her hiring. Second, AMEC had a clear written policy that employment was "at-will," a policy Plaintiff expressly

---

[6] The Ninth Circuit has not determined the burden of proof a moving party must meet to establish sanctionable misconduct, but clear and convincing evidence is unquestionably sufficient. *Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).

14

3317955.2

acknowledged by signing her application for employment.  Third, multiple copies of the offer letter—stating that Plaintiff's employment was "at will"—are located in hard-copy and electronic files within AMEC's records, all of which are substantively identical.  The oldest saved copy of the offer letter is dated January 21, 2008—the day that Plaintiff signed it.  Fourth, Melinda Knott—whose signature appears in identical form at the bottom of both the actual offer letter and the alleged employment agreement—states that she prepared and signed the AMEC offer letter and not Plaintiff's alleged employment agreement.[7]  Fifth, current and former AMEC employees with personal knowledge declare that Plaintiff was offered (and she accepted) terms of employment consistent with those reflected in the AMEC offer letter, not those reflected in Plaintiff's alleged employment agreement.  None of these employees are aware of any AMEC employee ever being offered terms of employment consistent with the alleged employment agreement.  Sixth, offer letters that were prepared for other AMEC employees hired around the same time as Plaintiff closely resemble the substance and appearance of Plaintiff's offer letter.  Seventh, Plaintiff was terminated in April 2009, and yet she made absolutely no effort to invoke her purported employment agreement until January 2011 when she filed her amended complaint in Mohave County Superior Court.

To rebut the mountain of evidence authenticating the offer letter and proving the fabrication of the alleged employment agreement, Plaintiff submits only her own self-serving declaration that the alleged agreement is authentic.  However, to believe Plaintiff would require all of the following to be true:

1) Plaintiff was such a desirable entry-level engineer candidate that, in the middle of a recession and with construction at a standstill nationwide, AMEC violated its own written policies and guaranteed Plaintiff six years of employment (protected by an *in terrorem* clause) to work on a project that was expected to end in less than five years,

---

[7] Her unequivocal denial regarding the alleged "employment agreement" aside, it is highly notable that Ms. Knott's signature is identical on both the offer letter and the alleged agreement—something that Plaintiff's expert characterizes as "impossible" unless it had been "transferred" from one document to the other—while Plaintiff's signature is different.  The only reasonable inference to draw is that Plaintiff signed both documents at different times, but that Ms. Knott's signature *needed* to be "transferred" because Ms. Knott was not a participant in the fraud.

15                                                             3317955.2

with terms of employment never before known to four of AMEC's senior human resources employees, including the company's Vice President for Human Resources;

2) On the very day that AMEC and Plaintiff entered into the alleged "employment agreement," AMEC prepared and saved onto its document server a different offer letter (consistent with its standard offer letter) and then later "transferred" Ms. Knott's signature from the "employment agreement" to the offer letter and also forged Plaintiff's signature or "transferred" it from an unknown document;

3) Several AMEC employees engaged in sham email conversations at various times before Plaintiff ever brought a lawsuit in order to preserve multiple copies of the offer letter, or fabricated this evidence thereafter;

4) Despite its "employment agreement" with Plaintiff, AMEC laid her off;

5) Several current *and former* AMEC employees are lying to cover up for AMEC's fraudulent acts.

Further, one would have to conclude that there is nothing about the following that is inconsistent with Plaintiff's story:

1) Plaintiff wrote a letter eight months after her employment with AMEC ended in which she complains that her termination was wrongful because she was supposed to be reinstated after her medical leave, but never mentions an employment contract;

2) Plaintiff waited nearly a full year before suing AMEC, and in her initial state court complaint she never mentions a contract or alleges a claim for breach;

3) Plaintiff failed to serve AMEC with the original state court complaint and "inadvertently" put the wrong documents in the service envelopes at least four times;

4) Plaintiff is able to identify multiple email addresses she has used in the past, but not the one she used to send and receive the critical documents in this case; and

5) Plaintiff wiped over 45,000 files off her computer hours before providing it for inspection by AMEC's expert examiner.

3317955.2

Even without all of the other evidence proving that the "employment agreement" is fabricated, Plaintiff's inconsistent conduct is in itself enough to discredit her story.

### B. There is Clear and Convincing Evidence Justifying Default Judgment

AMEC has presented the declarations of five current *and former* (*i.e.*, presumptively disinterested) employees establishing that the offer letter, and not Plaintiff's proffered "employment agreement," is the authentic document. This conclusion is further supported by Mark Cardwell, a computer forensics expert. In response, Plaintiff submits only her own self-serving declaration, the contents of which are greatly undermined by Plaintiff's fraudulent and inconsistent conduct in this litigation and, of course, common sense. In sum, the evidence constitutes clear and convincing proof that Plaintiff knowingly falsified the alleged employment agreement in order to assert a phony claim. *E.g.*, *Gilmer*, 12 Fed. Appx. at 895; *Sun World*, 144 F.R.D. at 390.

But beyond the forgery of the contract, Plaintiff's fraud on AMEC and the Court has been ongoing: (1) Plaintiff twice attempted to fraudulently obtain a default judgment against AMEC in the original state court action, (2) Plaintiff wiped her computer of over 45,000 files the same day she provided it to AMEC's expert, (3) Plaintiff surreptitiously accessed the stacy.deann@yahoo.com account less than 48 hours after Plaintiff represented through counsel that she does not recall ever using it, and (4) Plaintiff altered the Yahoo! account information to implicate a current AMEC employee (Mr. Bennion). Plaintiff's demonstrated goal is to extort money from her former employer and no dishonest act—including implicating innocent former co-workers—is outside her repertoire.

Based on the clear and convincing evidence of Plaintiff's past and ongoing fraud on the Court, AMEC respectfully requests that the Court dismiss this action pursuant to its inherent powers. *Greenburg*, 2005 WL 3536114, *2.

### C. Alternatively, AMEC Requests an Evidentiary Hearing

If the Court is not inclined to grant terminating sanctions on the evidence of wrongdoing presented here, AMEC respectfully requests that the Court hold this motion in abeyance and

17

3317955.2



schedule an evidentiary hearing to determine whether the purported employment agreement has been fabricated. Fed. R. Evid. 901; *see also Gilmer*, 12 Fed. Appx. at 894 (holding that a Court should hold a pretrial evidentiary hearing to determine authenticity of document if it is contested because a party "obviously has no right to submit fabricated evidence to the jury").

## IV. CONCLUSION

Plaintiff brings an MSJ despite a clear dispute of fact as to the threshold element of her contract claim—the existence of a contract. She attempts to overcome the dispute with the same spoliation argument that the Court has denied twice before. Not only should the MSJ be denied, but fees should be awarded to AMEC.

AMEC also respectfully requests that the Court enter default judgment against Plaintiff. The evidence that Plaintiff is asserting a false claim based on a fraudulent document is overwhelming. Alternatively, AMEC requests an evidentiary hearing to determine the authenticity of the alleged "employment agreement."

RESPECTFULLY SUBMITTED this 18th day of March, 2013.

LEWIS AND ROCA LLP

By  */s/ Melanie V. Pate*
　　Robert G. Schaffer
　　Melanie V. Pate
　　Alastair Gamble
　　Attorneys for Defendant

3317955.2

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter K. Strojnik, Esq.
The Strojnik Firm L.L.C.
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, AZ 85016
strojnik@skplaw.com

Peter Strojnik, Esq.
Strojnik, P.C.
2415 East Camelback Road, Suite 700
Phoenix, AZ 85016
ps@strojnik.com

/s/ Susan J. Durkee

3317955.2