# EXHIBIT F

LEWIS
AND
ROCA
—LLP—
L A W Y E R S

40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Robert G. Schaffer, State Bar No. 017475
Direct Dial: (602) 262-0271
Direct Fax: (602) 734-3777
EMail: BSchaffer@LRLaw.com

Melanie V. Pate, State Bar No. 017424
Direct Dial: (602) 262-5318
Direct Fax: (602) 734-3785
EMail: MPate@LRLaw.com

Alastair Gamble, State Bar No. 025844
Direct Dial: (602) 262-5370
Direct Fax: (602) 262-3787
EMail: AGamble@LRLaw.com

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy D. Ford-Kelly,<br><br>               Plaintiff,<br><br>vs.<br><br>AMEC Environment and Infrastructure, Inc., a Nevada corporation *fka* AMEC Earth & Environmental, Inc. *fka* AMEC Infrastructure, Inc.,<br><br>               Defendant. | No. 3:12-cv-08085-NVW<br><br>**DECLARATION OF MARK CARDWELL IN SUPPORT OF AMEC ENVIRONMENT & INFRASTRUCTURE, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR DEFAULT JUDGMENT** |

MARK CARDWELL, upon his oath, states as follows:

1.    I am the Principal Forensic Investigator for Forentech, LLC. I make this declaration based on my personal knowledge and in support of AMEC's Response in Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Default Judgment. If called upon to do so, I could and would personally and competently testify to the following facts.

2.    I received a Bachelor of Science in Economics and Mathematics from the University of Oregon in 1979, and I received a Masters of Business Administration from the Boston College Graduate School of Management in 1988. I am professionally trained and certified to conduct forensic examinations of computers and related technology. I

3381162.1

LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1   have served as a computer forensics expert for a wide variety of legal matters, and I have

2   given sworn expert testimony in both depositions and court proceedings on numerous

3   occasions.  In addition, I have designed and delivered Continuing Legal Education (CLE)

4   seminars regarding computer forensics issues for the State Bar of Arizona and the

5   Maricopa County Bar Association.  Attached to this declaration as **Exhibit 1** is a true and

6   correct copy of my current curriculum vitae.  I attest that it accurately represents my

7   education, experience and knowledge as a computer forensics expert.

8       3.     I was hired by Lewis and Roca, LLP to conduct a forensic examination of

9   multiple data sources to try to resolve the disputed authenticity of an employment offer

10  letter (the "Letter") from AMEC to Stacy Ford-Kelly, which AMEC asserts was emailed

11  to Stacy Ford-Kelly on January 21, 2008.  Attached as **Exhibit 2** is a true and correct copy

12  of the Letter that was the focus of my examination.

13      4.     My examination looked at data from AMEC computers and data from Stacy

14  Ford-Kelly's computer.  In both data collections, I searched for existing copies of the

15  Letter and attempted to find any drafts or variations on the Letter that might illuminate its

16  history.

17      5.     My examination began with a review of folders and files on the AMEC

18  Human Resources computer to identify documents relevant to this matter and check their

19  Windows file metadata to determine if it is consistent with the creation of the Letter on or

20  about January 21, 2008.

21      6.     I was given a login for the AMEC Human Resources computer so I could

22  connect via the Internet and review all documents on the HR server.  I ran a Windows

23  search for "Stacy" across the entire HR server.

24      7.     Among my results from this search were two copies of the Letter in

25  Microsoft Word .doc format, both named "Stacy Ford Lake Havasu INF.doc."  These

26  documents were located in different folders on the AMRC HR computer server, in what

27  appeared to be overlapping date-ranged archives. The Windows date metadata for both

28  copies of the Letter show the same Date Modified: 1/21/2008 at 9:33 a.m.; the same Date

2

3381162.1



LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1  Created: 1/21/2008 at 9:33 a.m.; and the same Date Last Saved: 1/21/2008 at 10:33 a.m.

2  Based on the fact that both documents had the same metadata, I was fairly confident that

3  these were identical copies of the same file.  Nevertheless, I definitely confirmed that these

4  documents were identical by comparing the hash values using two hash analysis tools: the

5  Forensic Toolkit (FTK) and Karens Hasher.

6       8.      As part of my examination, I was provided with an outlook PST reported to

7  be the email archive PST of AMEC employee Stacy Lovett.  I searched that PST and

8  found a copy of the Letter with the following statistics:

9           - Created on 1/21/2008 at 10:26:14 a.m.
           - Last Saved by Melinda Knott on 1/21/2008 at 11:58:46 a.m.
10          - Last Author is "DWT"
11          - The Letter is marked as an attachment to an email.

12  This copy of the letter was attached to an email from Melinda Knott to Stacy Lovett sent

13  on January 21, 2008 at 6:58:46 p.m. Universal Time (UTC), which is 11:58:46 a.m.

14  Phoenix time.

15       9.      I processed the copy of the Letter attached to the January 21, 2008 Knott-

16  Lovett email using a file comparison tool to determine whether there are substantive

17  differences between this copy and the .doc copies of the Letter found on the HR server.

18  The comparator tool verified that there was no substantive difference between these three

19  copies of the Letter.  Attached as **Exhibit 3** is a true and correct copy of the email from

20  Melinda Knott to Stacy Lovett and the attached copy of the Letter.

21       10.     I have reviewed the alleged "employment agreement" that is attached as

22  Exhibit 1 to the First Amended Complaint in this case.  In my extensive search of the HR

23  server, I did not find any documents that resembled this document.

24       11.     I was also asked to examine Stacy Ford-Kelly's personal Acer computer in

25  order to locate any copies or version of the Letter.  The Acer computer was delivered to

26  my office by courier at 6:20 p.m. on January 2, 2013.  I did not find a copy of either the

27  Letter or the alleged "employment agreement" on the Acer computer.

28

3381162.1



LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1    12.    I did discover that a great deal of deleted data on the Acer hard drive had

2    been wiped with a tool called CCleaner.  When CCleaner is used to perform a "secure

3    wipe" of data files it leaves behind files named with a repeating pattern of "Z" for the file

4    name    and    extension.    For    example,    any    file    named    in    the    manner    of

5    "Z…Z.ZZZZ.ZZ.Z.ZZZ" indicates that CCleaner has wiped file information from the hard

6    drive.

7    13.    I counted 45,626 files that were deleted and wiped by CCleaner.  The files

8    were all wiped on January 2, 2013 just after midnight.

9    14.    That data is not recoverable even by forensic means. There were only about

10   155,500 files on the entire hard drive, so the deleted total of almost 46,000 represents a

11   huge portion of all data on the drive.

12   15.    I also found a link on the Acer computer to the CCleaner.Exe executable

13   program file in the Windows PreFetch folder, meaning it was run manually by a user.  The

14   CCleaner program was most recently run on 1/2/2013 at 12:22:03 a.m., which is consistent

15   with the date and time metadata on the wiped CCleaner "Z" files.

16   16.    In addition to the analysis above, I was asked to review documents

17   produced in response to a subpoena from the internet company Yahoo! regarding

18   information about the email account "stacy.deann@yahoo.com."  Attached as **Exhibit 4**

19   are a true and correct copy of the documents I was provided from Yahoo.

20   17.    The    documents    from    Yahoo!    revealed    that    the    email    account

21   "stacy.deann@yahoo.com" was created on 1/19/2008 at 00:45:04 GMT by a user

22   connecting to Yahoo from IP address 67.60.38.229.  I researched this IP address on

23   various    IP    tracking    services,    including    GeoByts.com,    GeoMapLookup.com,

24   InfoSniper.com,  and  whatismyipaddress.com,  all  of  which  are  reliable  tools  for

25   determining the geographic location of an IP address.  All of the tracking services I used

26   revealed that the IP address was located in or near Boise, Idaho.  They all also revealed

27   that the owner of the IP address was the internet service company Cable One.

28

3381162.1



18.    The documents from Yahoo! also revealed that this email account was accessed five times on October 17, 2012 by someone using the IP address 65.49.14.52.  I ran this IP address through the IP tracking service InfoSniper.com, which identified this IP address as an anonymous proxy server, typically referred to as an "Anonymizer."  This is a server that allows people to conduct their activity on the Internet through a proxy, completely shielding their real IP addresses (and therefore their locations and identities) while on the Internet. As the name implies, anonymizers are used to enable people to be anonymous during their Internet activity.

19.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 18th day of March, 2013.

Mark Cardwell

3381162.1

# EXHIBIT 1



**Mark S. Cardwell, CCE, MBA**
**Principal Forensic Investigator**

Phone: (602) 952-1078
mark.cardwell@forentech.com

computer forensics experts
www.forentech.com

4222 E. Thomas Road • Suite 250 • Phoenix, AZ 85018 • 602.952.1078

---

# R E P R E S E N T A T I V E   E X P E R T   E X P E R I E N C E

Served as a computer forensics expert in the largest not-for-profit bankruptcy in the United States.  Made forensic images of many workstation and server computers in order to obtain electronic files under a disclosure order.  Cataloged and organized files for export to parties requesting discovery, while ensuring the protection of privileged and confidential data of the responding party.

Served as a technology forensics expert, appointed by the Presiding Judge of the Maricopa County Superior Court, reporting to a Special Master also appointed by the Presiding Judge.  Conducted a technical investigation of the Maricopa County Jails Inmate telephone recording System to determine whether the System was recording privileged inmate legal calls to their attorneys and, if so, why.

Conducted a forensic examination of multiple computers in a complex civil litigation involving six parties.  Analyzed and extracted thousands of files and file fragments from the various computers of the parties and produced a comprehensive and detailed report of findings while ensuring protection of confidential and privileged information of all parties.

Conducted a forensic examination of multiple computers in a complex bankruptcy involving several interrelated companies.  Recovered, produced and analyzed financial transactions among the companies, working with a forensic accountant.

Conducted a forensic examination of multiple computers and servers for an international trade organization in a matter of suspected embezzlement by the president of the organization.  Worked with a forensic accountant and private investigator to recover, produce and analyze financial information from all computers.

Conducted a computer forensic investigation for a national insurance company to determine whether confidential customer account information had been leaked to a competitor by a fired executive.

Conducted a computer forensic investigation for the CEO of a major healthcare company to determine the internal source of communications meant to sabotage the company's relationship with its employees and clients.  Performed detailed forensic analysis on a significant number of company computers and email files.

Worked for attorneys representing a major bank in a labor and employment action. Investigated the computers of a terminated bank employee to discover, recover, and catalog large amounts of pornographic material that the employee downloaded from the internet to his company computers and used to harass co-workers.

Worked for attorneys representing a national movie theater company in a multi-million dollar class action suit involving complex interstate telecommunications Act issues and a complex computer network and telephone and fax infrastructure.


**Mark S. Cardwell**

Worked for attorneys representing a software company in a matter involving allegations of misappropriation of company computer source code and its use in developing a competing product. Conducted a comparative technical review of the two products to determine whether computer source code had been stolen.

Worked for attorneys representing a mortgage company in a matter involving allegations of theft and destruction of customer data by a terminated executive.

Assisted a casino gaming company in investigating and documenting the theft and destruction by former employees of proprietary technical data and customer contract information.

Worked for attorneys in a complex contract dispute in aviation restoration by imaging and analyzing multiple computer hard drives in order to render an opinion as to whether a party had performed according to contract.

Worked for attorneys representing a suspended executive of a casino operation in conducting a forensic analysis of the executive's computers to identify files and emails relevant to the matter. Segregated privileged and confidential files from other files relevant to the matter.

---

## PROFESSIONAL TRAINING/ CERTIFICATION

- Earned the Certified Computer Examiner (CCE) credential from the International Society of Forensic Computer Examiners (ISFCE)

- Successfully passed Guidance Software training for the EnCase forensic analysis product.

- Successfully passed Access Data training for the Forensic Tookit (FTK) product.

- Successfully passed Access Data "Windows Forensics" training for the Forensic Toolkit (FTK) product.

- Successfully passed Expert Witness Training for computer forensic experts at NTI, Inc.

- Regular attendance at training seminars and labs at annual national forensics conferences.

---

## SWORN EXPERT TESTIMONY

- Court: April 30, 2004; Richard D. Grand vs. Steven D. Cople, Case No. C20036639, State of Arizona, Pima County Superior Court, Honorable John F. Kelly.

- Deposition: June 10, 2005; State of Arizona v. Joaquin Franco Perez; Case No. CR2004-020383-001, Maricopa County Superior Court.

- Deposition: October 18, 2005; Maria De Jesus Jimenez v. Basha's, Inc., ICA Claim Number 20051230066, Industrial Commission of Arizona., Honorable Deborah Nye.

forentech                                          **Mark S. Cardwell**

- Court: October 25, 2005;   Maria De Jesus Jimenez v. Basha's, Inc., ICA Claim Number
  20051230066, Industrial Commission of Arizona., Honorable Deborah Nye.

- Deposition: December 11, 2006; Tourelle Development , Inc. v. Kathryn Proffitt et al.; Case No.
  2004-091530, State of Arizona, Maricopa County Superior Court; Honorable Bethany Hicks.

- Court: March 14, 2007; ATC Group Services, Inc. v. Frank Hathaway; Cause No. CV2006-
  019592, State of Arizona, Maricopa County Superior Court; Honorable Robert Miles.

- Deposition: March 20, 2007; Lee v. Rental Services Corporation, Cause No. 342-216509-06,
  Tarrant County, Texas; 342nd Judicial District.

- Court: October 12, 2007; Desert Schools Financial Services LLC et al, v. Tom Konkowski et al.;
  Case No. CV2007-017754, State of Arizona, Maricopa County Superior Court. Honorable
  Pendleton Gaines.

- Court: October 17, 2007; Desert Schools Financial Services LLC et al, v. Tom Konkowski et al.;
  Case No. CV2007-017754, State of Arizona, Maricopa County Superior Court. Honorable
  Pendleton Gaines.

- Court: February 8, 2008; Cybermark International Inc. v. Derek David Carlock et al.; Cause No.
  CV- 2007-018524. State of Arizona, Maricopa County Superior Court; Honorable Peter Swann.

- Court: January 13, 2009; State of Arizona v. Steven Carroll DeMocker; Case No. CR 2008-1339.
  State of Arizona, Maricopa County Superior Court; Honorable Thomas Lindberg.

- Court: January 15, 2009; State of Arizona v. Steven Carroll DeMocker; Case No. CR 2008-1339.
  State of Arizona, Maricopa County Superior Court; Honorable Thomas Lindberg.

- Court: April 8, 2009; Petro Reps, Inc., and The Jankovich Company v. Steven Bowlin and Pioneer
  Distributing et al., Case No CV2009-007055; State of Arizona, Maricopa County Superior Court;
  Honorable J. Kenneth Mangum.

- Deposition: August 10, 2009; Laura Thompson et al. v. Steven H. Wiener, M.D. et al., Case No.
  CV08-00991-PHX-GMS, United States District court, District of Arizona, Honorable G. Murray
  Snow.

- Deposition: December 21, 2009; James Finnegan, Petitioner, and Joanne Finnegan,
  Respondent; Case No FC2009-051752; Superior Court of Arizona, Maricopa County.

- Court: December 23, 2009; James Finnegan, Petitioner, and Joanne Finnegan, Respondent;
  Case No FC2009-051752; Superior Court of Arizona, Maricopa County; Honorable Michael
  Gordon.

- Deposition: January 19, 2010; James Finnegan, Petitioner, and Joanne Finnegan, Respondent;
  Case No FC2009-051752; Superior Court of Arizona, Maricopa County.

- Court: January 27, 2010; James Finnegan, Petitioner, and Joanne Finnegan, Respondent; Case
  No FC2009-051752; Superior Court of Arizona, Maricopa County; Honorable Michael Gordon.

                                    **Mark S. Cardwell**

- Court: November 19, 2010; Schendel Services, Inc. vs. Assured Audit Pest Prevention, LLC; Case No. CV2010-025739; Superior Court of Arizona, Maricopa County; Honorable Gary Donohoe.

- Court: February 8, 2011; Microgroup Manufacturing, Inc. vs. Sottera, Inc.; Case No. CV2007-019788; Superior Court of Arizona, Maricopa County; Honorable John Rea.

- Court: June 6, 2012; DDMC, LLC v. Rodney L. Morris et al.; Case No. CV2010-004011; Superior Court of Arizona, Maricopa County; Honorable John Buttrick.

- Court: November 5, 2012; In re N'Genuity Enterprises, Inc., Debtor; Chapter 11 Proceedings; Case No. 2:11-bk-28705-GBN; Honorable George B. Nielsen, Jr..

## CLE TRAINING DELIVERED

- Designed and delivered Continuing Legal Education (CLE) seminars for attorneys and paralegals at over 20 law firms

- Designed and delivered CLE seminars sponsored by the Arizona State Bar Association and the Maricopa County Bar Association

- Designed and delivered paralegal CLE seminars for national paralegal associations

## OTHER PROFESSIONAL EXPERIENCE

Serve as a lay volunteer arbitrator for the Arizona State Bar Fee Arbitration Committee.

Worked as a field investigator and collection officer for the Internal Revenue Service. IRS investigative training comprised several months of classroom training combined with supervised field training before operating independently in the field.

Co-founded an internet communications portal company. Managed the daily operations of the company during the first year while building a full staff of 140 employees; Managed the design, development and implementation of the company's technical infrastructure and network (web servers, data storage, network routers and switches); hired all technical development and maintenance staff; customer service representatives; and human resources staff. Approved and managed relationships with outside vendors and contractors; managed relationships with external recruiters; served as technical liaison to the investor community.

Opened a Phoenix office for a major mid-Atlantic based custom software development company. Built the branch to 38 consultants and managers over a period of 30 months serving the needs of mid- to large-sized client companies. Acquired clients; developed technical infrastructure for the branch through two office expansion moves; hired and managed professional and administrative staff; managed consulting projects and teams in multiple software technologies across industries including Health Care,



**Mark S. Cardwell**

Financial Services, Travel Related Services, Real Estate, Emergency Services, state and city government, Manufacturing, and Aviation Parts Distribution and Sale.

Worked for a regional systems integration company, managing consulting projects in strategic planning, business process reengineering, application requirements analysis, database design, and client/server application development; taught programming classes and Information Engineering Methodology to professional software developers; managed all activities comprising the effort to build a software training and consulting division; developed management process models for internal use in the company.

Implemented the first nationwide PC-based financial accounting and reporting system in the Internal Revenue Service, and coordinated PC software development among the eight IRS regional Finance offices; planned the conversion of manual systems to PC-based systems, and the migration of minicomputer-based systems to the PC; developed database software for service-wide use in budgeting and accounting; managed the contracting process for a multi-million dollar service-wide PC contract for the national finance division, including development of the vendor evaluation and selection process; managed the installation of PCs and software in the IRS regional Finance offices; developed end-user training materials and conducted a service-wide training program for end-users.

**U.S. Navy**
Aircraft Carrier Independence
Portsmouth, VA

## E D U C A T I O N

**Boston College**
**Graduate School of Management**
**Chestnut Hill, MA**
**Master of Business Administration (MBA), 1988**

**University of Oregon**
**Eugene, Oregon**
**Bachelor of Science, Economics and Mathematics, 1979**

# EXHIBIT 2

January 21, 2008

*__Private & Confidential__*

Stacy Ford
Address Line 1
Address Line 2

Dear Ms. Ford:

On behalf of AMEC Infrastructure (AMEC), I am pleased to offer you the position of Engineer in Training, reporting to me in the Lake Havasu, AZ office, effective January 28, 2008. If you need to change the date, we will be pleased to discuss one that is mutually acceptable.

The following will outline the terms and conditions of employment:

**Compensation**

- Status – exempt.
- Salary is $2,384.62 payable on a bi-weekly basis which annualizes to $62,000.12. Direct Deposit is available if preferred.
- Extra compensation for additional hours worked <u>may be available</u> subject to manager approval. Extra compensation is paid at straight time unless otherwise legislated.
- You will receive a relocation allowance in the amount of $4,500.00 – the terms of this allowance are attached. Please sign and return a copy along with your signed copy of this letter.

**Benefits**

Enclosed, please find the *Choices* Benefits Package that explains the benefits currently offered to AMEC regular, full- time employees. Upon your employment you will be immediately eligible for:

- Health insurance coverage, including medical, vision, dental and prescription drug.
- Participation in AMEC's 401(k) program.
- Flexible Spending Account.
- Employee Assistance Plan.
- Short Term Disability, Long Term Disability, Life Insurance, Accidental Death & Dismemberment Insurance.
- You will accrue annual vacation leave at a rate of 15 days per year or 4.62 hours bi-weekly.
- Holidays – AMEC observes 7 holidays per year plus 3 floating holidays throughout the year, the details of which are provided in the Employee Handbook.
- Sick day accrual.
- Tuition Reimbursement (with prior management approval).
- Health Club Membership Reimbursement.
- Company provided training including Code of Business Conduct (COBC), Safety Health & Environment (SHE) and more. Your Manager will determine with you what training is appropriate. Please be advised that successful completion of the COBC program is a condition of employment and you will be required to undergo an annual refresher. Please complete the online training (available after hire), within the first week of employment.

**Background Screening/Employment Documentation**

It is AMEC's policy to provide a safe and secure work environment for both our employees and our clients. To that end it is the policy of AMEC that all offers of employment are contingent upon the successful completion of a background screening, drug screening and educational credentials

AMEC Infrastructure
94 Acoma Blvd South #100
Lake Havasu City, AZ 86403
Phone: 928-854-8030
Fax: 928-854-8036                    www.amec.com

**AMEC000094**

confirmation (where applicable). If any of the screenings returned are found to be in conflict with AMEC's policy we will discuss the results with you and determine if employment will continue. All screenings will be conducted within the guidelines of all state and federal legislation.

Employees are required to complete the Employment Eligibility Verification form (I-9) attesting to their employment eligibility and must provide documentation to support their statement. Examples of acceptable proof of employment eligibility include a U.S. Passport, or both a valid State Driver's License and Social Security Card. Please bring these documents with you on the first day of your employment. If you do not have the documents mentioned you may contact the Human Resources department for further information at (425) 820-4669.

**Probationary Period and Employment at Will**

AMEC has a three-month probationary period for newly hired regular, full-time and part-time employees during which time an employee's work performance and/or general suitability for AMEC employment will be evaluated. While we are confident that your employment with us will be a positive and mutually rewarding experience please understand that your employment, both during and after the probationary period, is not guaranteed for any specific length of time and is terminable at will, which means that either you or the Company may end the employment relationship at any time for any reason.

**Confidentiality Agreement Clause**

Under the AMEC Code of Business Conduct and as an employee of AMEC, you hereby agree to keep all of AMEC's business secrets confidential at all times and after the term of your employment. AMEC's business secrets include any information regarding our clients, contractors, subcontractors, employees, finances or any other technical or business information. It is further agreed that you will not make any unauthorized copies of any of AMEC's secrets or information without the consent of AMEC, nor remove any business secrets or information from an AMEC facility.

**Severability**

If any part of the Offer of Employment is held to be invalid, illegal, or unenforceable, the remaining provisions of the agreement will be enforced.

Further information regarding the Company, its policies and programs will be provided during your orientation. Upon acceptance of the above and enclosed, please sign and return the enclosed copy of this letter, a completed application for employment and any other completed documents within seven business days to the Lake Havasu, AZ location. Please feel free to contact me should you have any questions.

We look forward to having you join us and wish you much success in your new position.

Sincerely,
**AMEC Infrastructure**


**Chris Hassert**
**Unit Manager—Lake Havasu, AZ**


I have read and accept the offer of employment contained in this letter, including the referenced attachments.

_____    _____
Date                            (Employee)

2

**AMEC000095**

# EXHIBIT 3

| | |
|---|---|
| **From:** | Knott, Melinda R |
| **To:** | Lovett, Stacy |
| **CC:** | Bennion, David B |
| **Sent:** | 1/21/2008 11:58:47 AM |
| **Subject:** | Stacy Ford - Offer Letter |
| **Attachments:** | Stacy Ford EAF Signed.PDF; Stacy Ford Lake Havasu INF.doc; Stacy Ford Lake Havasu MOVING INF.doc |

Hi Stacy,

Stacy Ford's offer letter and moving allowance form are attached.

Stacy called her directly this morning asking for her offer letter.  I let her know that we (HR) does not send out the offer letters directly to new employees and that I would pass along her contact information to you.

She would like a copy of the letter PDFd to her at stacy.deann@yahoo.com.  Her phone number is (208) 389-8087.

Unless there are any changes that need to be made to the letter (besides inserting a mailing address), it is ready to be printed, signed and sent out from your office with a complete offer packet.

Thanks,

*Melinda R. Knott*
AMEC Earth & Environmental, Inc.
Human Resources Generalist, US Human Resources
telephone +1 (425) 820-4669 ext. 3154
confidential fax +1 (425) 820-5634
melinda.knott@amec.com

*The information contained in this e-mail is intended only for the individual or entity to whom it is addressed. Its contents (including attachments) are confidential and may contain privileged information. If you are not an intended recipient you must not use, disclose, disseminate, copy or print its contents. If you receive this e-mail in error, please notify the sender by reply e-mail and delete and destroy the message.*

---

**From:** Lovett, Stacy
**Sent:** Monday, January 21, 2008 8:17 AM
**To:** Knott, Melinda R
**Subject:** Approved EAF

Here is the EAF signed by Dave Peterson-

Stacy Lovett
AMEC
Mesa, AZ
Phone: 1 480 648 5301
Fax: 1 480 830 3903
stacy.lovett@amec.com

AMEC000092

**Earth & Environmental**

**Employee Action Form**



DATE 01-15-2008    EFFECTIVE DATE 01-28-2008    UNIT 6712    EMPLOYEE NO. _____

NAME OF THE EMPLOYEE Stacy Ford
EMAIL ADDRESS stacy.ford@amec.com          New Hire ☒    Rhire ☐ –enter 1st day worked _____    ☐ Term

**New Hires/Offer Proposal Information** (Mark off all applicable boxes)

| | |
|---|---|
| Level Title _____ | Office Location 6712 LKH |
| Job Title EIT | Work Location (if working remotely or telecommuting) _____ |
| ☒ Regular, Full-Time (24 - 40 hours/week) | 40 Hours/week |
| ☐ Temporary, Full-Time (24 - 40 hours/week – Max. 6 months)* | ☒ Exempt (salaried)    ☐ Nonexempt (hourly) |
| ☐ Regular, Part-Time (Max. 23 hours/week)* | Pay $2384.62 (biweekly if exempt / hourly if nonexempt) |
| ☐ Temporary, Part-Time (Max. 23 hours/week – Max. 6 months)* | Unit Billable (average 70% unit pricing work) ☒ Yes    ☐ No |
| ☐ On-Call (no set schedule or hours / no benefits)*  *not eligible for Choices benefits | Timesheet Approver /Supervisor Chris Hassert |
| Vacation Exception: ☒ 3 weeks    ☐ 4 weeks | Participation in: ☐ Driving Program  ☐ Medical Surveillance Program |
| | ☐ Signing Bonus: $0    ☒ Moving Allowance: $4500 |
| *Please attach applicant resume or application | |

**Changes** (Mark off all applicable boxes)

| | |
|---|---|
| ☐ New Level Title _____ | ☐ New Job Title _____ |
| ☐ New Location _____ | ☐ New Supervisor/Manager _____ |
| ☐ New Unit _____ | ☐ New Timesheet Approver _____ |
| ☐ Regular  or  ☐ Temporary | ☐ Exempt to Nonexempt |
| ☐ PT to FT (24 - 40 hr/wk) _____ hrs/wk | ☐ Nonexempt to Exempt (attach job description; prior HR approval) |
| ☐ FT to PT (Max. 23 hr/wk / no benefits) _____ hrs/wk | ☐ New Hours per Week _____ |
| ☐ FT/PT to On-Call (no set schedule or hours / no benefits). | ☐ On-Call to FT or PT (circle one) _____ hrs/wk |

☐ Employee requested  or  ☐ Employer requested, if due to lack of work contact HR

☐ Base Pay Change    Current Pay $ _____    New Pay $ _____ (biweekly if exempt / hourly if nonexempt)
Reason for Change**    ☐ Merit Increase    ☐ Promotion    ☐ Market Adjustment _____ % Increase
** Attach appropriate documentation (i.e., market data if this is an adjustment) or use explanation area below

**Leave of Absence** (Start – use first day not working. Return – use first day back. Attach appropriate documentation)

| | | | |
|---|---|---|---|
| ☐ Start Leave of Absence | Date: _____ | Type: ☐ FMLA | ☐ Other _____ |
| ☐ Return from Leave of Absence | Date: _____ | ☐ Personal | ☐ Lack of Work (Temporary Layoff) |

**Terminations** (Attach resignation letter/form. For separations attach documentation and final timesheets.)

| | |
|---|---|
| ☐ Resignation | Separation Code _____ (reference leave codes) |
| ☐ Involuntary Separation – Term with cause | Eligible for rehire?  ☐ Yes or  ☐ No  (If No is checked, please attach |
| ☐ Involuntary Separation – Layoff | or provide explanation) |

**Explanations/Notes:** _____

| AUTHORIZATIONS | WHEN REQUIRED | SIGNATURE | DATE |
|---|---|---|---|
| Unit Manager | All Changes | *(signature)* | 01-16-2008 |
| Area Manager | See Limits of Authority | *(signature)* | 1/17/08 |
| Regional Manager | See Limits of Authority | | |
| Human Resources | Reviews All Changes; Concurrence per Limits of Authority | | |
| Exec. Vice- President | See Limits of Authority | | |

| For Office Use Only: | Continued Service date _____ | Billing Class Code _____ | EEO Code _____ |
|---|---|---|---|

| HR/Payroll Use Only | HR Initial | ADP Initial | BST Initial |
|---|---|---|---|

Updated 11-2007

AMEC000093

January 21, 2008

*__Private & Confidential__*

Stacy Ford
Address Line 1
Address Line 2

Dear Ms. Ford:

On behalf of AMEC Infrastructure (AMEC), I am pleased to offer you the position of Engineer in Training, reporting to me in the Lake Havasu, AZ office, effective January 28, 2008.  If you need to change the date, we will be pleased to discuss one that is mutually acceptable.

The following will outline the terms and conditions of employment:

**Compensation**

- Status – exempt.
- Salary is $2,384.62 payable on a bi-weekly basis which annualizes to $62,000.12.  Direct Deposit is available if preferred.
- Extra compensation for additional hours worked <u>may be available</u> subject to manager approval. Extra compensation is paid at straight time unless otherwise legislated.
- You will receive a relocation allowance in the amount of $4,500.00 – the terms of this allowance are attached.  Please sign and return a copy along with your signed copy of this letter.

**Benefits**

Enclosed, please find the *Choices* Benefits Package that explains the benefits currently offered to AMEC regular, full- time employees.  Upon your employment you will be immediately eligible for:
- Health insurance coverage, including medical, vision, dental and prescription drug.
- Participation in AMEC's 401(k) program.
- Flexible Spending Account.
- Employee Assistance Plan.
- Short Term Disability, Long Term Disability, Life Insurance, Accidental Death & Dismemberment Insurance.
- You will accrue annual vacation leave at a rate of 15 days per year or 4.62 hours bi-weekly.
- Holidays – AMEC observes 7 holidays per year plus 3 floating holidays throughout the year, the details of which are provided in the Employee Handbook.
- Sick day accrual.
- Tuition Reimbursement (with prior management approval).
- Health Club Membership Reimbursement.
- Company provided training including Code of Business Conduct (COBC), Safety Health & Environment (SHE) and more.  Your Manager will determine with you what training is appropriate. Please be advised that successful completion of the COBC program is a condition of employment and you will be required to undergo an annual refresher.  Please complete the online training (available after hire), within the first week of employment.

**Background Screening/Employment Documentation**

It is AMEC's policy to provide a safe and secure work environment for both our employees and our clients.  To that end it is the policy of AMEC that all offers of employment are contingent upon the successful completion of a background screening, drug screening and educational credentials

AMEC Infrastructure
94 Acoma Blvd South #100
Lake Havasu City, AZ 86403
Phone: 928-854-8030
Fax: 928-854-8036                    www.amec.com

**AMEC000094**

confirmation (where applicable). If any of the screenings returned are found to be in conflict with AMEC's policy we will discuss the results with you and determine if employment will continue. All screenings will be conducted within the guidelines of all state and federal legislation.

Employees are required to complete the Employment Eligibility Verification form (I-9) attesting to their employment eligibility and must provide documentation to support their statement. Examples of acceptable proof of employment eligibility include a U.S. Passport, or both a valid State Driver's License and Social Security Card. Please bring these documents with you on the first day of your employment. If you do not have the documents mentioned you may contact the Human Resources department for further information at (425) 820-4669.

**Probationary Period and Employment at Will**

AMEC has a three-month probationary period for newly hired regular, full-time and part-time employees during which time an employee's work performance and/or general suitability for AMEC employment will be evaluated. While we are confident that your employment with us will be a positive and mutually rewarding experience please understand that your employment, both during and after the probationary period, is not guaranteed for any specific length of time and is terminable at will, which means that either you or the Company may end the employment relationship at any time for any reason.

**Confidentiality Agreement Clause**

Under the AMEC Code of Business Conduct and as an employee of AMEC, you hereby agree to keep all of AMEC's business secrets confidential at all times and after the term of your employment. AMEC's business secrets include any information regarding our clients, contractors, subcontractors, employees, finances or any other technical or business information. It is further agreed that you will not make any unauthorized copies of any of AMEC's secrets or information without the consent of AMEC, nor remove any business secrets or information from an AMEC facility.

**Severability**

If any part of the Offer of Employment is held to be invalid, illegal, or unenforceable, the remaining provisions of the agreement will be enforced.

Further information regarding the Company, its policies and programs will be provided during your orientation. Upon acceptance of the above and enclosed, please sign and return the enclosed copy of this letter, a completed application for employment and any other completed documents within seven business days to the Lake Havasu, AZ location. Please feel free to contact me should you have any questions.

We look forward to having you join us and wish you much success in your new position.

Sincerely,
**AMEC Infrastructure**

**Chris Hassert**
**Unit Manager—Lake Havasu, AZ**

I have read and accept the offer of employment contained in this letter, including the referenced attachments.

_____          _____
Date                                                          (Employee)

2

AMEC000095

**Earth & Environmental**

**Moving Allowance Form**

**amec**

| Employee Name: Stacy Ford | File Number: |
|---|---|

| Current Location: Idaho | New Location: Lake Havasu, AZ |
|---|---|

| **Employee Status:** | ☐ Current Employee<br>✳ New Hire | **Move is:** | ☐ Employee initiated (requires Exec VP approval)<br>✳ AEE initiated (authorizations see below) |
|---|---|---|---|

### Allowance

*All taxable allowances are lump sum paid as taxable income, with the employee assuming responsibility for any and all tax implications. Non-taxable reimbursements are paid only with proper documentation (receipts) of expenses. If proper receipts are not submitted all reimbursements will be treated as taxable income. All allowances (taxable and non-taxable) will be distributed through AEE payroll and should not exceed the approved authorized maximum allowance.*

Employee Salary $62,000.12. Authorized maximum allowance $4,500.00.

Non-Taxable Amount $_____.    Taxable Amount $_____.
(moving van, truck rental, packing materials only)      (all other expenses)

Allowance is to be ☐ paid at completion of move **OR** ☐ advances are authorized (to be settled at completion of move).

Additional terms _____

**\*\*SEE EAF/OFFER LETTER FOR APPROVALS\*\***
Authorization for allowance: _____
                           Authorizing Signature              Date

AEE initiated moves require the following approval levels:
    Allowance up to and including one month's salary=    Senior Manager (SVP)
    Allowance up to and including three month's salary=    Executive Vice President
    Allowance of more than three month's salary=    President

### Advances

**All advances are to be deducted from maximum allowance. Settlement of this allowance must be within 90 days of move to new home.**

**Advance amount**$_____  **Date issued**_____  **Payroll initials**_____

### Agreement

In consideration of this company-paid moving allowance, I acknowledge that I have received a copy of the AMEC Earth & Environmental Employee Relocations policy #1.70, that I understand its contents, and that I agree to abide by its requirements.

_____    _____
Employee Signature                                Date

AMEC000096



| Settlement | | |
|---|---|---|
| Total amount authorized | $_____ | |
| Less amount advanced | _____ | |
| Total Moving Allowance Disbursement at Settlement | | $_____ |
| Settlement Date_____ by (Payroll) _____ | | |

| Policy #1.70 | Title: EMPLOYEE RELOCATIONS |
|---|---|
| Effective Date: JANUARY 1, 1997 | Revision Date: |

**1.0    OBJECTIVE**

In the normal course of operations, employees of AMEC Earth & Environmental may be required to relocate due to organizational requirements. The objective of this policy is to ensure that employee relations occur in an equitable and mutually agreeable manner for both the employee and the company.

**2.0    PURPOSE**

To establish guidelines regarding relocation practices for employees of AMEC Earth & Environmental

**3.0    SCOPE**

This policy applies to AMEC Earth & Environmental

**4.0    POLICY**

**Method of Reimbursement**

In situations where AEE will contribute financially toward the relocation of an employee, the amount of the company contribution will be negotiated between the employee and the company, and may vary depending on the circumstances of each specific situation. The company's contribution will be treated as a Moving Allowance, which will be paid directly to the employee upon completion of the relocation, except as allowed under AEE Policy #1.40. The employee will be responsible to arrange all aspects of his/her relocation, and will pay directly all costs associated with the relocation.

The company will comply with all income tax requirements regarding the issuance of applicable tax documentation referencing the payment of the lump sum moving allowance to the employee.

The employee will be fully responsible for documenting all costs associated with the relocation, and will be responsible for his/her personal income tax preparation, which should include receipt of the AEE Moving Allowance, net of his actual tax deductible relocation costs. AEE does not assume any responsibility for the employee's personal income tax preparation nor any potential personal income tax liability resulting from the relocation.

**Employee Relocation Loan or Advance**

Any employee relocation loan or advance granted to an employee should be in accordance with the AEE Policy #1.40, "Employee Loans and Advances."

**Employee Initiated Relocations**

Any reimbursement toward the costs of an employee relocation, whereby the relocation request has been initiated by the employee, requires the approval of the appropriate Executive Vice President, regardless of the amount of the company contribution.

**AEE (Company) Initiated Relocations**

Moving Allowances granted to an employee, in situations whereby the company had initiated the request to relocate, shall require the following levels of approval, prior to a commitment being made:

     Equivalent to one month's salary    - Senior Manager
     Equivalent to two month's salary    - Senior Vice President
     Equivalent to three month's salary or more    - Executive Vice President

The President of AEE has the authority to approve alternative arrangements to this policy for senior executives or professionals, at his discretion.

**Reimbursement of AEE Moving Allowance**

It is a condition of this policy that any employee receiving an AEE Moving Allowance must agree to reimburse AEE for the Allowance on the following basis if they voluntarily resign from the company with in the first 36 months of their relocation:

     Less than 12 months    - 100% reimbursement
     More than 12 months, but less than 24 months    - Pro-rated monthly from 100% at month #12 to 50% at month #24
     More than 24 months, but less than 36 months    - Pro-rated from 50% at month #24 to zero at month #36

It is furthermore a condition of this policy that any employee receiving an AEE Moving allowance agrees that in the event that he/she voluntarily resigns from AEE during the above reference period of time, AEE may offset any monies owing the employee, upon his/her resignation, against any outstanding balance owing AEE.

The employee shall acknowledge and document his/her acceptance of this condition by signing and dating a copy of this policy. The signed original shall be retained in the Human Resources department until the 36 month period has elapsed.

**5.0    PROCEDURAL REFERENCE**

AMEC000097



When agreement has been reached between an employee and the company, the applicable manager should initiate a letter to the employee outlining the amount of the moving allowance, and other relevant details of the relocation. The letter should be signed by the manager having the appropriate level of authority. A copy of the letter should be given to Human Resources for retention in the employee's file.

All approved Moving Allowances should be disbursed through the payroll department to ensure appropriate income tax documentation. The applicable Manager is responsible to advise the payroll department when a Moving Allowance is required, and should provide a copy of the letter to the employee, confirming the amount and evidencing the appropriate approval.

**6.0    RESPONSIBILITIES**

It is the responsibility of the Executive Vice President, Finance & Administration or his/her designate to administer this policy.

**7.0    EFFECTIVENESS CONSIDERATIONS/MEASURES**

This policy will be considered effective when employee relocations occur in an equitable and mutually agreeable manner for both the employee and the company.

AMEC000098

# EXHIBIT 4



# fax message

| | | | |
|---|---|---|---|
| date: | February 6, 2013 | | |
| to: | Robert G. Schaffer, Esq.<br>Lewis & Roca LLP | fax: | 602-734-3777 |
| re: | Request for Information Pertaining to Specified User Account | | |
| from: | Yahoo! Compliance Team | pages: | _8_ (including coversheet) |

**Internal Reference Number: 221502**

YAHOO000001



February 6, 2013

*Via Facsimile and U.S. Mail*
602-734-3777

Robert G. Schaffer, Esq.
Lewis & Roca LLP
40 North Central Avenue, Suite 1900
Phoenix, AZ 85004

Re:    Request for Information Pertaining to User Account: stacy.deann@yahoo.com
       Stacy D. Ford-Kelly v. AMEC Earth & Environmental, Inc., 3:12-cv-0805
       (Internal Reference No. 221502)

Dear Mr. Schaffer:

Yahoo! Inc. ("Yahoo!") is in receipt of a subpoena dated December 13, 2012, in the above-referenced matter.

Based upon its interpretation of the subpoena and considerable experience with requests for user data, Yahoo! took the subpoena to require and be satisfied by the production of the following enclosed information regarding the specified user account, for the time period(s) specified (if any), to the extent available from our system: (1) the user profile, as produced by the Yahoo! Account Management Tool and (2) the dates, times, and Internet protocol addresses for logins, as produced by the Login Tracker Tool.[1]  A declaration authenticating these records also is enclosed.

Please be advised that the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, et seq., prohibits Yahoo! from disclosing certain information you seek.  Specifically, the SCA prohibits Yahoo! from disclosing "contents" of electronic communications, unless one of the specifically enumerated exceptions to the prohibition is satisfied. None of these exceptions provide a basis for disclosure in response to legal process, even a court order, secured at a civil litigant's (or other non-governmental entity's) request.  See, e.g., Suzlon Energy Ltd. v. Microsoft Corp., 671 F.3d 726 (9th Cir. 2011) (affirming lower court's decision to deny a request to order production of emails to a non-governmental entity because the emails were protected from such disclosure by the SCA); In re Subpoena Duces Tecum to AOL, LLC, 550 F.Supp.2d 606 (E.D. Va. 2008) (holding that "the clear and unambiguous language" of the SCA prohibited AOL from divulging communications contents because the SCA "does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas").

At least one court has recognized that the SCA can be a frustrating impediment to non-governmental entities seeking discovery.  See Bower v. Bower, 808 F.Supp.2d 348 (D. Mass. 2011) (recognizing "plaintiff's frustration," but denying motion to compel Yahoo! and Google to produce communications contents pursuant to a subpoena because "the SCA precludes Yahoo! and Google from producing the requested emails").  We are, likewise, not unappreciative of your desire to obtain the requested electronic communications contents and we acknowledge your likely dismay that the SCA prohibits Yahoo! from making the requested disclosure.  However,

---

[1] Yahoo!'s Login Tracker Tool was designed to capture and produce web-based login events for a Yahoo! account.  The tool was built before Yahoo! received logins from mobile devices and therefore mobile login events are not contained in Login Tracker results. Yahoo! is exploring solutions to make mobile login data available in future tools, but such data is not reasonably available at the present time.

701 first avenue, sunnyvale, ca 94089 • phone: 408 349 3300  fax: 408 349 3301

YAHOO000002

Yahoo! is constrained with respect to the contents of electronic communications by unambiguous federal law. Consistent with that law, Yahoo! has not produced any content information in response to the subpoena.

To the extent any document provided herein contained information that exceeded the scope of your request, is protected from disclosure, or is otherwise not subject to production, we have redacted or otherwise removed such information. When reviewing the information provided, please note that Yahoo! may not require or verify user information because it offers many of its services to users for free.

Yahoo! requests reimbursement in the amount of $40.45 for reasonable costs incurred in searching for, assembling, and providing information in response to your request. Payment information is provided on the attached invoice.

Please contact me if you have any questions.

Sincerely,

Ian LaChance
Compliance Paralegal II
Phone: 408-349-7625
Fax: 408-349-7941

Enclosures

YAHOO000003

02/07/2013 11:33 FAX                                                    ☑004/008



# invoice

date:    February 6, 2013

to:      Mr. Robert G. Schaffer, Esq.
         Lewis & Roca LLP

re:      Request for Information Pertaining to User Account: stacy.deann@yahoo.com
         (Internal Reference No. 221502)

In accordance with 18 U.S.C. § 2706, Yahoo! requests reimbursement for the following
reasonable costs incurred in responding to your request.

|  |  |
|---|---|
| Search, Retrieval, and Assembly | $40.00 |
| Shipping | 0.45 |
| Media | 0.00 |
| Notary | 0.00 |
| Less Prior Payment | (0.00) |
| **TOTAL** | **$40.45** |

Your timely payment of this invoice is important to enable Yahoo! to continue responding
expeditiously to future legal process. Accordingly, Yahoo! asks that you remit payment by one
of the means listed below within 30 days of receipt of this invoice:

**By Mail:**                              **By Wire:**
Yahoo! Custodian of Records              Citibank N.A., New York, NY
701 First Avenue                          Account: 30525078
Sunnyvale, CA 94089                       ABA/Routing # 021000089
Tax ID 77-0398689

If you have any questions about this invoice or methods of payment, please contact the Yahoo!
Legal Compliance Team at 408-349-3687.

701 first avenue, sunnyvale, ca 94089 • phone: 408 349 3300  fax: 408 349 3301

YAHOO000004

## BUSINESS RECORDS DECLARATION

Request for information regarding:                )      **DECLARATION OF**
stacy.deann@yahoo.com                              )      **IAN LACHANCE**
_____           )
                                                   )

I, Ian LaChance, declare:

1.  I am a Custodian of Records for Yahoo! Inc. ("Yahoo!"), located in Sunnyvale, California. I am
    authorized to submit this declaration on behalf of Yahoo!. I make this declaration pursuant to the
    Federal Rules of Evidence Rule 902(11) and the California Code of Evidence section 1561 and in
    response to a subpoena dated December 13, 2012 ("the request"). I have personal knowledge of the
    following facts, except as noted, and could testify competently thereto if called as a witness.

2.  Attached hereto are 3 pages that contain true and correct copies of the following data pertaining to the
    user account identified in the request: (1) the user profile, as produced by the Yahoo! Account
    Management Tool and (2) the dates, times, and Internet protocol addresses for logins. Yahoo!'s
    servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted,
    and this data is kept in the course of this regularly conducted activity and was made by regularly
    conducted activity as a regular practice. Yahoo! may not require or verify user information because it
    offers many of its services to users for free.

3.  To the extent any document attached hereto contained information that exceeded the scope of the
    request, is protected from disclosure, or is otherwise not subject to production, such information has
    been redacted or otherwise removed.

I declare under penalty of perjury under the laws of the United States of America and the State of
California that the foregoing is true and correct.

DATED: ___6 February 2013___          _____
                                       Ian LaChance, Custodian of Records

Internal reference number: 221502

**YAHOO000005**

# YAHOO! ACCOUNT MANAGEMENT TOOL

| | |
|---|---|
| Login Name: | **stacy.deann** |
| GUID: | **XUGNZVCS6LO2DSGSRTWZX753TY** |
| Yahoo Mail Name: | **stacy.deann@yahoo.com** |
| Alternate Communication Channels: | **do_it_2_spec@yahoo.com** |
| Registration IP address: | **67.60.38.229** |
| Account Created (reg): | **Sat Jan 19 00:45:04 2008 GMT** |
| Other Identities: | **stacy.deann (Yahoo! Mail)** |
| Full Name | **D B** |
| Address1: | **1841 Fox Circle** |
| Address2: | |
| City: | **Mesa** |
| State, territory or province: | **AZ** |
| Country: | **United States** |
| Zip/Postal Code: | **85203** |
| Phone: | |
| Time Zone: | |
| Birthday: | **November 10, 1971** |
| Gender: | **Female** |
| Occupation: | |
| Business Name: | |
| Business Address: | |
| Business City: | |
| Business State: | |
| Business Country: | **us** |
| Business Zip: | |
| Business Phone: | |
| Business Email: | |
| Additional IP Addresses: | **Sat Jan 19 00:45:04 2008 GMT  67.60.38.229** |

**YAHOO000006**

**Account Status:**                    **Active**

**YAHOO000007**

02/07/2013 11:33 FAX                                                    ☒ 008/008

Search for       stacy.deann
Date Range       2012-01-12 / 2013-01-10
Time zone        (GMT) Greenwich Mean Time : London
Total Results              5

| Yahoo ID | IP Address | Port | Login Time |
|---|---|---|---|
| stacy.deann | 65.49.14.52 | 25796 | Wed 01:07:19 (GMT) 17-Oct-2012 |
| stacy.deann | 65.49.14.52 | 26508 | Wed 00:56:34 (GMT) 17-Oct-2012 |
| stacy.deann | 65.49.14.52 | 61308 | Wed 00:52:00 (GMT) 17-Oct-2012 |
| stacy.deann | 65.49.14.52 | 31822 | Wed 00:50:13 (GMT) 17-Oct-2012 |
| stacy.deann | 65.49.14.52 | 39880 | Wed 00:46:15 (GMT) 17-Oct-2012 |

YAHOO000008