# EXHIBIT H



40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004-4429
Telephone: (602) 262-5311

Robert G. Schaffer, State Bar No. 017475
Direct Dial:  (602) 262-0271
Direct Fax:  (602) 734-3777
EMail:  BSchaffer@LRLaw.com

Melanie V. Pate, State Bar No. 017424
Direct Dial:  (602) 262-5318
Direct Fax:  (602) 734-3785
EMail:  MPate@LRLaw.com

Alastair Gamble, State Bar No. 025844
Direct Dial:  (602) 262-5370
Direct Fax:  (602) 262-3787
EMail:  AGamble@LRLaw.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy D. Ford-Kelly, | ) |
| | ) |
| Plaintiff, | ) No. 3:12-cv-08085-NVW |
| | ) |
| vs. | ) |
| | ) **DECLARATION OF ROBERT** |
| AMEC Environment & Infrastructure, Inc., | ) **SCHAFFER IN SUPPORT OF** |
| a Nevada corporation *fka* AMEC Earth & | ) **DEFENDANT AMEC** |
| Environmental, Inc. *fka* AMEC | ) **ENVIRONMENT &** |
| Infrastructure, Inc., | ) **INFRASTRUCTURE, INC.'S** |
| | ) **RESPONSE IN OPPOSITION TO** |
| Defendant. | ) **PLAINTIFF'S MOTION FOR** |
| | ) **SUMMARY JUDGMENT AND** |
| | ) **CROSS MOTION FOR DEFAULT** |
| | ) **JUDGMENT** |

ROBERT G. SCHAFFER, upon his oath, states as follows:

1.     I am a Partner in the law firm Lewis and Roca, LLP, counsel of record for

Defendant AMEC Earth & Environmental, Inc., n/k/a AMEC Environment &

Infrastructure, Inc. ("AMEC") in the above captioned matter.  I make this declaration

based on my personal knowledge and in support of AMEC's Response in Opposition to

Plaintiff's Motion for Summary Judgment and Cross Motion for Default Judgment.  If

called upon to do so, I could and would personally and competently testify to the

following facts.

3381603.1

LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1       2.     Plaintiff Stacy Ford-Kelly ("Plaintiff") has denied in this lawsuit that she

2  signed the offer letter maintained in AMEC's human resources records—an offer letter

3  that states unequivocally that her employment with AMEC was "at-will" and not for a

4  guaranteed term of employment.  Plaintiff claims instead that she entered into a contract

5  with AMEC guaranteeing Plaintiff six years of employment.

6       3.     Among the body of evidence that contradicts Plaintiff's denial is an email

7  exchange that AMEC employee Stacy Lovett had with Plaintiff on January 21, 2008.  In

8  this exchange, Plaintiff sent a signed copy of the offer letter to Ms. Lovett using the email

9  account stacy.deann@yahoo.com.  Attached as **Exhibit 1** is a true and correct copy of the

10  email exchange described in this paragraph.

11       4.     AMEC sought to obtain the emails from the stacy.deann@yahoo.com

12  account during discovery in this case.  However, in correspondence dated October 15,

13  2012, Plaintiff's counsel informed us that Plaintiff "did not recall use or ownership" of the

14  Yahoo! email account.  Attached as **Exhibit 2** is a true and correct copy of correspondence

15  from Plaintiff's counsel dated October 15, 2012.

16       5.     In response, I sent a letter to Plaintiff's counsel advising him that it was

17  untenable for Plaintiff to claim not to remember using the Yahoo! email account when

18  there was clear evidence that she had.  I provided copies of the emails produced in this

19  case evidencing Plaintiff's use of the account, and I asked that Plaintiff either produce the

20  emails from the account or sign a consent form authorizing Yahoo to produce the emails

21  from its corporate records.  Attached as **Exhibit 3** is a true and correct copy of the letter I

22  sent Plaintiff's counsel on November 9, 2012.

23       6.     On November 13, 2012, Plaintiff's counsel responded by email: "Please feel

24  free to serve Yahoo; as a litigant, AMEC certainly has that right."  Attached as **Exhibit 4**

25  is a true and correct copy of the email Plaintiff's counsel sent me on November 13, 2012.

26       7.     Despite several meet-and-confer efforts on this issue, Plaintiff steadfastly

27  refused to produce the emails from the Yahoo account or sign the requested consent form,

28

3381603.1



1  and AMEC was forced to subpoena Yahoo! directly without an authorization for release of

2  the records.

3      8.    As expected, Yahoo! responded to the subpoena stating that it could not

4  provide email content from the account without consent. However, Yahoo! provided some

5  information about the account, including that it had been created on January 19, 2008

6  using the IP address 67.60.38.229. Yahoo! also provided information indicating that the

7  account had been accessed only five times in the previous 12 months, all of which

8  occurred on October 17, 2012, two days after Plaintiff's counsel had stated to me that

9  Plaintiff did "not recall use or ownership" of the account. Attached as **Exhibit 5** are the

10  relevant documents provided by Yahoo! in response to AMEC's subpoena regarding the

11  account.

12      9.    In addition to seeking information regarding the Yahoo! account, AMEC

13  requested that Plaintiff's produce her personal Acer computer for inspection by a computer

14  forensic expert, Mark Cardwell. I arranged for a courier to pick up Plaintiff's computer

15  from her home in Lake Havasu City on January 2, 2013. However, as detailed in Mr.

16  Cardwell's expert report, Mr. Cardwell was unable to inspect more than 46,000 files—

17  nearly one-third of the files on Plaintiff's computer—because he found that they had been

18  irretrievably deleted using a spoliation tool called CCCleaner. According to Mr. Cardwell,

19  these files had been deleted a little after midnight on January 2, 2013, the same day the

20  courier picked up the computer from Plaintiff's home. Attached as **Exhibit 6** is a true and

21  correct copy of the report prepared by Mark Cardwell related to the inspection of

22  Plaintiff's computer.

23      10.    After disclosing Mr. Cardwell's report, Plaintiff's counsel sent a letter to me

24  and my colleagues stating that CCleaner was a "computer enhancement tool" and that "the

25  best inference" to be drawn from the deletion of 46,000 files from Plaintiff's computer

26  hours before it was provided to Mr. Cardwell was that "someone attempted to improve the

27  computer's performance." Attached as **Exhibit 7** is a true and correct copy of the January

28  12, 2013 letter sent to me by Plaintiff's counsel regarding Mr. Cardwell's report. (NB:

3381603.1



LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1  Some content has been redacted from this document to protect privileged communications

2  related to settlement.)

3       11.    On February 1, 2013, I received an email in response to a letter I had sent

4  advising Plaintiff's counsel that Defendant AMEC PLC intended to seek Rule 11 sanctions

5  for Plaintiff's refusal to dismiss the breach of contract and FMLA claims against this

6  defendant since AMEC PLC was not a signatory to the alleged employment agreement nor

7  was it Plaintiff's employer for FMLA purposes.  Plaintiff's counsel stated that if AMEC

8  PLC were to serve a Rule 11 motion, Plaintiff would "reciprocate" by filing a similar

9  motion, stating: "[Y]ou serve, we serve.  That would provide us with an opportunity to put

10  AMEC's destruction of the original under your watch back in front of Judge Wake."

11  Attached as **Exhibit 8** is a true and correct copy of the February 1, 2013 email sent to me

12  by Plaintiff's counsel.  (NB: Some content has been redacted from this document to

13  protect privileged communications related to settlement.)

14       12.    I declare under penalty of perjury that the foregoing is true and correct to

15  the best of my knowledge and belief.

16      Dated this _18th_ day of March, 2013.

17

18

19  Robert G. Schaffer

20

21

22

23

24

25

26

27

28

4

# EXHIBIT 1

Page 1 of 4

| | |
|---|---|
| **From:** | Ford, Stacy D [IMCEAEX-_O=MESSAGING_OU=AM_CN=RECIPIENTS_CN=STACY+2EFORD@root.domain] |
| **Sent:** | Tuesday, February 05, 2008 3:44 PM |
| **To:** | Knott, Melinda R |
| **Cc:** | Bennion, David B |
| **Subject:** | RE: AMEC Offer Letter and Moving Allowance form |

In my communications with David since I spoke to you yesterday I was under the impression that David was going to have a check cut for me as soon as this was received.

Stacy Ford

**From:** Knott, Melinda R
**Sent:** Tuesday, February 05, 2008 3:37 PM
**To:** Ford, Stacy D
**Cc:** Bennion, David B
**Subject:** RE: AMEC Offer Letter and Moving Allowance form

Thanks Stacy.  I will get this form submitted.  It will be paid out with the 2/15 payroll.

**From:** Ford, Stacy D
**Sent:** Tuesday, February 05, 2008 2:35 PM
**To:** Knott, Melinda R; Bennion, David B
**Subject:** RE: AMEC Offer Letter and Moving Allowance form

Stacy Ford

10/9/2012

AMEC000590

**From:** Knott, Melinda R
**Sent:** Tuesday, February 05, 2008 3:11 PM
**To:** Stacy Ford; Bennion, David B
**Cc:** Ford, Stacy D
**Subject:** RE: AMEC Offer Letter and Moving Allowance form

Hi Stacy,

On the Moving Allowance form, can you please indicate whether you intend to have the allowance be paid out as taxable (taxed at a supplemental/bonus rate and paid without receipts) or non-taxable (receipts for moving vehicle and/or packing supplies must be provided prior to reimbursement) or a combination of the two.

If you choose to do a combination, the allowance will be paid out once we receive receipts for the allowable non-taxables (moving vehicle and packing supplies).

Can you please complete this section and re-send?

Please let me know if you have any questions.

Thanks,

*Melinda R. Knott*
AMEC Earth & Environmental, Inc.
Human Resources Generalist, US Human Resources
telephone +1 (425) 820-4669 ext. 3154
confidential fax +1 (425) 820-5634
melinda.knott@amec.com

*The information contained in this e-mail is intended only for the individual or entity to whom it is addressed. Its contents (including attachments) are confidential and may contain privileged information. If you are not an intended recipient you must not use, disclose, disseminate, copy or print its contents. If you receive this e-mail in error, please notify the sender by reply e-mail and delete and destroy the message.*

**From:** Stacy Ford [mailto:stacy.deann@yahoo.com]
**Sent:** Tuesday, February 05, 2008 1:59 PM
**To:** Knott, Melinda R; Bennion, David B
**Cc:** Ford, Stacy D
**Subject:** Fw: AMEC Offer Letter and Moving Allowance form

Melinda & David,
Here is the email I sent to Stacy Lovett on 1/21 with the signed offer letter and moving allowance attachments. I did give Renee the originals on 1/23 and she sent those to Stacy.

Stacy Ford

----- Forwarded Message ----

AMEC000591

Page 4 of 4

destroy the message.

---

Be a better friend, newshound, and know-it-all with Yahoo! Mobile. Try it now.

---

Never miss a thing. Make Yahoo your homepage.

AMEC000593

# EXHIBIT 2

# THE STROJNIK FIRM LLC

### ATTORNEYS AT LAW

ESPLANADE CENTER III, 2415 EAST CAMELBACK ROAD, SUITE 700, PHOENIX, ARIZONA 85016

PHONE: 602.510.9409 | FAX: 602.532.7572 | WEBSITE: WWW.SKPLAW.COM

**October 15. 2012**

Melanie Pate, Esq.
Lewis & Roca LLP
40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004

**VIA E-MAIL: mpate@lrlaw.com**

> Re:    Additional Information regarding computers and e-mail addresses
>        Ford-Kelly v. AMEC

Dear Melanie:

We provide herein responses to your follow up questions and have a few follow up questions of our own.

**Computer Ownership**

Since 2007, it is Ms. Ford-Kelly's recollection that she has owned two computers and used five computers. In or around late 2005 or early 2006, Ms. Ford-Kelly purchased a Dell laptop computer. She believes it was an Inspiron model. She used this Dell laptop computer until in or around February 2008 at which point she pawned it. The pawn shop was located in Lake Havasu, but Ms. Ford-Kelly does not recall the name of the shop.

From the date Ms. Ford-Kelly pawned the Dell computer until in or around December 2008, Ms. Ford-Kelly does not believe she owned any computer. In December 2008, she purchased an Acer laptop computer. The model is "Aspire One". She believes she purchased the computer from Walmart in Lake Havasu for approximately $250.00. This is the computer she currently uses and is currently located at her home.

**Computer Use**

Of course, she used the two computers she owned. Additionally, while she was employed with AMEC, she used her work computer at the office. That computer was a desktop computer, and obviously she does not possess that computer. In 2007, Ms. Ford-Kelly also used computer lab and library computers at Boise State University while she was still going to school there. She cannot specify these exact computers since she used

different ones each time. She used these computers to do school work and to complete school assignments. Finally, for a short period after her hire at AMEC, Ms. Ford-Kelly was living at the Hampton Inn in Lake Havasu. She used the business center computer at the Hampton Inn a few times to check e-mails.

## E-mail Address

Ms. Ford-Kelly does not recall use or ownership of the e-mail address stacy.deann@yahoo.com. Accordingly, she cannot provide you any e-mails from that e-mail address.

## Follow Up Questions and Requests for Deposition Dates

On page two of your correspondence you discuss the destruction of the original contract as follows:

First, AMEC did not have a written "documents retention/destruction policy" in effect when your client's original personnel file was destroyed. Due to a merger with another company (MACTEC) that occurred in June 2011, the Human Resources function of AMEC was moved from Bothell, Washington to Alpharetta, Georgia. As part of that transition and integration plan, AMEC's Vice President of Human Resources, Jayne Dinan, directed Melinda Knott in the Bothell office to scan the personnel files of all terminated employees and destroy the hard copy files due to the high cost of shipping and storing the physical files.

The hard copy original of Ms. Ford-Kelly's fully executed offer letter was kept in her AMEC personnel file in Bothell, Washington. Natasha Vu and Mandy Whittle are the former AMEC employees who were tasked with scanning the personnel files of all terminated employees and destroying the physical files. Melinda Knott oversaw this process. Ms. Ford-Kelly's scanned personnel file was saved on AMEC's computer system on October 27, 2011 at 1:24 p.m. The scanned personnel files are stored on the "sea-fs1" server that is physically located in Bothell, Washington. The PDF file is the best copy we have and it is attached. Included in AMEC's supplemental production are screen shots indicating the exact location and properties of the file.

1)  Can you provide the communication from Jayne Dinan to Melinda Knott directing Ms. Knott to scan and destroy originals?
2)  Can you provide a date when we can depose Ms. Knott?

I also have a few follow up questions as to the following paragraph:

Stacy Lovett sent an email to Stacy Ford with her offer letter and moving allowance form attached on January 21, 2008. Her email address at the time was stacy.lovett@amec.com. She sent the email to Stacy Ford at stacy.deann@yahoo.com. Stacy Ford signed and returned the offer letter to Stacy Lovett via email on January 21, 2008. To date, AMEC has not been able to locate either of these emails in its archives. David Bennion conducted the due diligence search to locate these two emails. Mr. Bennion and Ms. Lovett are available during the latter part of October for depositions. Please be advised that Ms. Lovett no longer works for AMEC. Mr. Bennion and Ms. Lovett both reside in the Phoenix area.

PHOENIX | SAN FRANCISCO BAY AREA

My questions are as follows:

1) Can you provide a date when we can depose Ms. Lovett?
2) Can you provide individual non-forwarded e-mails <u>with attachments</u>?

As to the following paragraph:

Melinda Knott does not admit the genuineness of the signature on the document that Ms. Ford-Kelly alleges to be her employment contract because she did not sign that document. Ms. Knott does admit the genuineness of her signature on the actual offer letter that is included in Ms. Ford-Kelly's official personnel file. It appears to Ms. Knott that her signature was somehow copied and pasted from the actual offer letter and then slightly altered through the use of image editing software, but she does not know exactly how Ms. Ford-Kelly was able to duplicate her signature on the fraudulent document. We are not currently aware of any other employment agreements that Ms. Knott signed for Mr. Hassert. She signed Ms. Ford-Kelly's agreement because Mr. Hassert was unavailable. As the Human Resources Manager for the Western United States at the time, Ms. Knott had authority to sign employee offer letters if the hiring manager had already signed the Employee Action Form, which Mr. Hassert had done on January 15, 2008. Ms. Knott no longer works for AMEC but she is available for a deposition in the latter part of October. Please be advised that Ms. Knott currently resides in the Seattle area.

1) On what date did Ms. Knott sign the employment contract?
2) Where was Ms. Knott when she signed the employment contract?
3) At what AMEC location did Chris Hassert work?
4) How was Mr. Hassert unavailable, e.g. was he overseas, in a meeting, etc.?

As to the following paragraph:

Our client has just this past week located two physical files that were in storage in Phoenix which contain copied and original documents regarding Ms. Ford-Kelly's employment. These files were created and maintained by Stacy Lovett during Ms. Ford-Kelly's employment as secondary files but they are not, nor were they intended to be, her official AMEC personnel file. We will produce a copy of the contents of these files in the next couple of days, and we will also make the files available for inspection at our office. The offer letter that is contained in one of these files is included in AMEC's supplemental production for your review. You will note that it is only signed by Stacy Ford because this copy had not yet been sent to Melinda Knott in Bothell for her signature. Stacy Lovett apparently printed the signed version for her physical file and sent it on to Melinda Knott via email, as was her standard procedure.

1) Was it standard procedure to maintain secondary files for all employees?
2) Why did Stacy Lovett maintain a secondary file for Ms. Ford-Kelly?

Please let us know when you would like to examine Ms. Ford-Kelly's Acer computer. As discussed, we can arrange for the delivery of the computer to Phoenix so long as you give us a few days notice. Thank you.

PHOENIX | SAN FRANCISCO BAY AREA

Very Truly Yours,

The Strojnik Firm L.L.C.



Peter Kristofer Strojnik

# EXHIBIT 3



**LEWIS**
**AND**
**ROCA**
— LLP —
**L A W Y E R S**

Robert G. Schaffer
40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004-4429

Direct Dial: (602) 262-0271
Direct Fax: (602) 734-3777
BSchaffer@LRLaw.com
Admitted in: Arizona

Our File Number: 52219-00001

**VIA EMAIL AND REGULAR MAIL**

November 9, 2012

Peter K. Strojnik, Esq.
The Strojnik Firm L.L.C.
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, AZ 85016

   Re: *AMEC Earth & Environmental, Inc. adv. Stacy D. Ford-Kelly*

Dear Mr. Strojnik:

   I write regarding your October 15, 2012 letter, in which you state that "Ms. Ford-Kelly does not recall use or ownership of the e-mail address stacy.deann@yahoo.com" and will not be producing any emails from that account.

   By now, you have surely seen the emails AMEC produced showing that Plaintiff in fact used this email account in early 2008. Specifically, Plaintiff sent AMEC an email dated January 18, 2008 (AMEC000594), in which she provided the above Yahoo email address and asked that her employment offer letter be sent to this address. On January 21, 2008, AMEC complied with her request and sent an email attaching the offer letter to stacy.deann@yahoo.com. Plaintiff signed and returned the offer letter that same day using this email account. Plaintiff forwarded these emails (without the attachments) to AMEC's human resources department on February 5, 2008 (AMEC000590-593) from her stacy.deann@yahoo.com account. Copies of these emails are attached for your review.

   In light of these emails, any suggestion by your client that she did not use the referenced email account is untenable. Please produce all relevant emails from Plaintiff's stacy.deann@yahoo.com account by next Friday, November 16, 2012. Alternatively, please have your client sign and return the attached Consent to Subpoena so that AMEC may obtain the records from Yahoo.

       Very truly yours,

       Robert G. Schaffer

RGS/cgh

**From:** Hassert, Chris
**Sent:** Saturday, January 19, 2008 3:51 PM
**To:** 'stacy71@cableone.net'
**Subject:** RE: New email address
Okay, thanks Stacy.


Chris Hassert, PE
AMEC Infrastructure
94 Acoma Blvd South, Ste. 100
Lake Havasu City, Arizona  86403
Phone +1 928 854 8030
Fax +1 928 854 8036
chris.hassert@amec.com


**From:** Stacy Ford [mailto:stacy71@cableone.net]
**Sent:** Friday, January 18, 2008 6:25 PM
**To:** Hassert, Chris
**Subject:** New email address

Chris,

Here is my new email address since I will no longer have my cableone account effective Monday
1/21

stacy.deann@yahoo.com


Stacy Ford
(208) 389-8087


Msg sent via CableONE.net MyMail - http://www.cableone.net

AMEC000594

| From: | Knott, Melinda R |
|---|---|
| To: | Lovett, Stacy |
| CC: | Bennion, David B |
| Sent: | 1/21/2008 11:58:47 AM |
| Subject: | Stacy Ford - Offer Letter |
| Attachments: | Stacy Ford EAF Signed.PDF; Stacy Ford Lake Havasu INF.doc; Stacy Ford Lake Havasu MOVING INF.doc |

Hi Stacy,

Stacy Ford's offer letter and moving allowance form are attached.

Stacy called her directly this morning asking for her offer letter. I let her know that we (HR) does not send out the offer letters directly to new employees and that I would pass along her contact information to you.

She would like a copy of the letter PDFd to her at stacy.deann@yahoo.com. Her phone number is (208) 389-8087.

Unless there are any changes that need to be made to the letter (besides inserting a mailing address), it is ready to be printed, signed and sent out from your office with a complete offer packet.

Thanks,

*Melinda R. Knott*
AMEC Earth & Environmental, Inc.
Human Resources Generalist, US Human Resources
telephone +1 (425) 820-4669 ext. 3154
confidential fax +1 (425) 820-5634
melinda.knott@amec.com

The information contained in this e-mail is intended only for the individual or entity to whom it is addressed. Its contents (including attachments) are confidential and may contain privileged information. If you are not an intended recipient you must not use, disclose, disseminate, copy or print its contents. If you receive this e-mail in error, please notify the sender by reply e-mail and delete and destroy the message.

From: Lovett, Stacy
Sent: Monday, January 21, 2008 8:17 AM
To: Knott, Melinda R
Subject: Approved EAF

Here is the EAF signed by Dave Peterson-

Stacy Lovett
AMEC
Mesa, AZ
Phone: 1 480 648 5301
Fax: 1 480 830 3903
stacy.lovett@amec.com

**AMEC000092**

Page 1 of 4

| | |
|---|---|
| **From:** | Ford, Stacy D [IMCEAEX-_O=MESSAGING_OU=AM_CN=RECIPIENTS_CN=STACY+2EFORD@root.domain] |
| **Sent:** | Tuesday, February 05, 2008 3:44 PM |
| **To:** | Knott, Melinda R |
| **Cc:** | Bennion, David B |
| **Subject:** | RE: AMEC Offer Letter and Moving Allowance form |

In my communications with David since I spoke to you yesterday I was under the impression that David was going to have a check out for me as soon as this was received.

Stacy Ford

**From:** Knott, Melinda R
**Sent:** Tuesday, February 05, 2008 3:37 PM
**To:** Ford, Stacy D
**Cc:** Bennion, David B
**Subject:** RE: AMEC Offer Letter and Moving Allowance form

Thanks Stacy. I will get this form submitted. It will be paid out with the 2/15 payroll.

**From:** Ford, Stacy D
**Sent:** Tuesday, February 05, 2008 2:35 PM
**To:** Knott, Melinda R; Bennion, David B
**Subject:** RE: AMEC Offer Letter and Moving Allowance form

Stacy Ford

10/9/2012

AMEC000590

Page 2 of 4

**From:** Knott, Melinda R
**Sent:** Tuesday, February 05, 2008 3:11 PM
**To:** Stacy Ford; Bennion, David B
**Cc:** Ford, Stacy D
**Subject:** RE: AMEC Offer Letter and Moving Allowance form

Hi Stacy,

On the Moving Allowance form, can you please indicate whether you intend to have the allowance be paid out as taxable (taxed at a supplemental/bonus rate and paid without receipts) or non-taxable (receipts for moving vehicle and/or packing supplies must be provided prior to reimbursement) or a combination of the two.

If you choose to do a combination, the allowance will be paid out once we receive receipts for the allowable non-taxables (moving vehicle and packing supplies).

Can you please complete this section and re-send?

Please let me know if you have any questions.

Thanks,

*Melinda R. Knott*
AMEC Earth & Environmental, Inc.
Human Resources Generalist, US Human Resources
telephone +1 (425) 820-4669 ext. 3154
confidential fax +1 (425) 820-5634
melinda.knott@amec.com

*The information contained in this e-mail is intended only for the individual or entity to whom it is addressed. Its contents (including attachments) are confidential and may contain privileged information. If you are not an intended recipient you must not use, disclose, disseminate, copy or print its contents. If you receive this e-mail in error, please notify the sender by reply e-mail and delete and destroy the message.*

**From:** Stacy Ford [mailto:stacy.deann@yahoo.com]
**Sent:** Tuesday, February 05, 2008 1:59 PM
**To:** Knott, Melinda R; Bennion, David B
**Cc:** Ford, Stacy D
**Subject:** Fw: AMEC Offer Letter and Moving Allowance form

Melinda & David,
Here is the email I sent to Stacy Lovett on 1/21 with the signed offer letter and moving allowance attachments. I did give Renee the originals on 1/23 and she sent those to Stacy.

Stacy Ford

—— Forwarded Message ——

10/9/2012

AMEC000591

Page 3 of 4

From: Stacy Ford <stacy.deann@yahoo.com>
To: "Lovett, Stacy" <Stacy.Lovett@amec.com>
Sent: Monday, January 21, 2008 1:03:53 PM
Subject: Re: AMEC Offer Letter and Moving Allowance form

Stacy,

Here are the signed offer and moving allowance paperwork. I will get in touch with Renee in
Lake Havasu on Wednesday and get the drug test paperwork and drop off these signed papers to
her. Thank you for your help.

Stacy Ford

—— Original Message ——
From: "Lovett, Stacy" <Stacy.Lovett@amec.com>
To: stacy.deann@yahoo.com
Sent: Monday, January 21, 2008 12:20:05 PM
Subject: AMEC Offer Letter and Moving Allowance form

Stacy Lovett

The information contained in this e-mail is intended only for the individual or entity to whom it
is addressed.
Its contents (including any attachments) may contain confidential and/or privileged information.

If you are not an intended recipient you must not use, disclose, disseminate, copy or print its
contents.
If you receive this e-mail in error, please notify the sender by reply e-mail and delete and

10/9/2012

AMEC000592

destroy the message.

---

Be a better friend, newshound, and know-it-all with Yahoo! Mobile. Try it now.

---

Never miss a thing. Make Yahoo your homepage.

AMEC000593

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| Stacy D. Ford-Kelly | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.   3:12-cv-08085 |
| AMEC Earth & Environmental, Inc. | ) |
| | ) (If the action is pending in another district, state where: |
| _Defendant_ | )           District of Arizona           ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Yahoo! Custodian of Records
     701 First Ave., Sunnyvale, CA 94089

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

          See Exhibit A attached.

| Place: Lewis and Roca LLp | Date and Time: |
|---|---|
| 40 N. Central Ave, Suite 1900 Phoenix, AZ 85004 | 12/07/2012 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

          The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    11/09/2012

          _CLERK OF COURT_

                                            OR    _____
          _____                    _Attorney's signature_
          _Signature of Clerk or Deputy Clerk_

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
AMEC Earth & Environmental, Inc._____ _____ , who issues or requests this subpoena, are:

Robert G. Schaffer, Lewis and Roca LLP, 40 N. Central Ave., Suite 1900, Phoenix AZ 85004 (602) 262-0271
bschaffer@lrlaw.com

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:12-cv-08085

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____  _____ .   ___  __   ___  _____

was received by me on *(date)*  _____  . . .  .

❑ I served the subpoena by delivering a copy to the named person as follows: 

_____  _____  ____  _____  _____  _____

__  __   ___  _____  ___  on *(date)* _____  _____  ; or

❑ I returned the subpoena unexecuted because:  ____   ___  _____  _____  _____

_____  _____  _____  _____  .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____  .  ____

My fees are $ _____  for travel and $ _____  for services, for a total of $ _____ 0.00  .

I declare under penalty of perjury that this information is true.

Date: 

_____  __  _  _____  _  _
Server's signature

___  _  _  _____  ___  __  _  _
Printed name and title

_____  __  __  _____  _____  ____ __
Server's address

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

1.      Documents sufficient to identify the subscriber(s), creator(s), owner(s), and/or user(s) of the email account stacy.deann@yahoo.com, including but not limited to name(s), location(s), address(es), phone number(s), email address(es) or other contact information for these persons.

2.      IP addresses associated with log-ins to the email account stacy.deann@yahoo.com

3.      All connection logs and records of user activity for email account stacy.deann@yahoo.com between the creation of the account and the present, including;

      a. Connection date and time;

      b. Disconnect date and time;

      c. Method of connection (e.g., telnet, ftp, http);

      d. Type of connection (e.g., modem, cable / DSL, T1/LAN);

      e. Data transfer volume;

      f. User name associated with the connection and other connection information, including the Internet Protocol address of the source of the connection;

      g. Telephone caller identification records;

      h. Records of files

4.      The content of all electronic communications between the email account stacy.deann@yahoo.com and any email account using the domain address "amec.com" from January 1, 2008 to the present, including but not limited to Stacy.Lovett@amec.com, David.Bennion@amec, and Melinda.Knott@amec.com.

## <u>CONSENT TO SUBPOENA DUCES TECUM</u>

Pursuant to the Stored Communications Act, 18 U.S.C. § 2702(b)(3), I hereby give consent as the account holder of the user account <u>stacy.deann@yahoo.com</u> to the disclosure of communications and information requested by the attached Subpoena Duces Tecum from AMEC Earth & Infrastructure, Inc. dated November 9, 2012.

_____
Stacy D. Ford-Kelly

SUBSCRIBED AND SWORN to before me this _____ day of November 2012.

_____
Notary Public

My Commission Expires:

_____

2

# EXHIBIT 4

**From:**    ps@strojnik.com
**Sent:**    Tuesday, November 13, 2012 4:01 PM
**To:**    Hanger, Carole; Pete
**Cc:**    Schaffer, Robert; Pate, Melanie; Stacy Ford-Kelly; Gamble, Alastair
**Subject:**    RE: Stacy D. Ford-Kelly v. AMEC Environment & Infrastructure, Inc., et al

**Dear Carole. Please thank Mr. Schaffer for the correspondence. Please feel free to serve Yahoo;
as a litigant, AMEC certainly has that right.**

On a related matter, can you please relate to Ms. Pate that Ms. Ford Kelly would prefer that the
investigations regarding the 1099 and the Ms. Ford-Kelly's computer be conducted in Lake Havasu City?
Unfortunately, Mr. Ford Kelly is currently destitute and cannot travel to Phoenix other than on a
motorcycle which she cannot currently ride because of her shoulder injury; besides, as we all know, riding
a motorbike over such a long distance is a laborious and buttock wrenching affair.

Lastly, can you discern when we should expect supplemental discovery responses we requested on
October 30,2012?

Cordially Yours,

Peter Strojnik
STROJNIK, P.C.
2415 East Camelback Road Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail ps@strojnik.com

Confidentiality Notice: The information contained in this electronic e-mail and any accompanying
attachment(s) is intended only for the use of the intended recipient and may be confidential and/or
privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure
or copying is strictly prohibited, and may be unlawful. If you have received this communication in error,
please immediately notify the sender by return e-mail, and delete the original message and all copies
from your system. Thank you.

-------- Original Message --------
Subject: Stacy D. Ford-Kelly v. AMEC Environment & Infrastructure,
Inc., et al
From: "Hanger, Carole" <CHanger@lrlaw.com>
Date: Fri, November 09, 2012 3:14 pm
To: "'ps@strojnik.com'" <ps@strojnik.com>,
"'strojnik@skplaw.com'" <strojnik@skplaw.com>
Cc: "Schaffer, Robert" <BSchaffe@lrlaw.com>

Dear Mr. Strojnik,

Please see the attached letter and enclosures from Bob Schaffer regarding the
above matter. Thank you.

Carole Hanger
Secretary to Robert G. Schaffer

Lewis and Roca LLP
40 N. Central Avenue
Phoenix, Arizona 85004
602-239-7429
changer@lrlaw.com


----------------------

For more information about Lewis and Roca LLP, please go to www.lewisandroca.com.

Phoenix (602)262-5311 Reno (775)823-2900
Tucson (520)622-2090 Albuquerque (505)764-5400
Las Vegas (702)949-8200 Silicon Valley (650)391-1380

This message is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this E-Mail by return E-Mail or by telephone.
In accordance with Internal Revenue Service Circular 230, we advise you that if this email contains any tax advice, such tax advice was not intended or written to be used, and it cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer

# EXHIBIT 5

# YAHOO!

February 6, 2013

*Via Facsimile and U.S. Mail*
602-734-3777

Robert G. Schaffer, Esq.
Lewis & Roca LLP
40 North Central Avenue, Suite 1900
Phoenix, AZ 85004

Re:    Request for Information Pertaining to User Account: stacy.deann@yahoo.com
       Stacy D. Ford-Kelly v. AMEC Earth & Environmental, Inc., 3:12-cv-0805
       (Internal Reference No. 221502)

Dear Mr. Schaffer:

Yahoo! Inc. ("Yahoo!") is in receipt of a subpoena dated December 13, 2012, in the above-referenced matter.

Based upon its interpretation of the subpoena and considerable experience with requests for user data, Yahoo! took the subpoena to require and be satisfied by the production of the following enclosed information regarding the specified user account, for the time period(s) specified (if any), to the extent available from our system: (1) the user profile, as produced by the Yahoo! Account Management Tool and (2) the dates, times, and Internet protocol addresses for logins, as produced by the Login Tracker Tool.[1] A declaration authenticating these records also is enclosed.

Please be advised that the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, et seq., prohibits Yahoo! from disclosing certain information you seek. Specifically, the SCA prohibits Yahoo! from disclosing "contents" of electronic communications, unless one of the specifically enumerated exceptions to the prohibition is satisfied. None of these exceptions provide a basis for disclosure in response to legal process, even a court order, secured at a civil litigant's (or other non-governmental entity's) request. See, e.g., Suzlon Energy Ltd. v. Microsoft Corp., 671 F.3d 726 (9th Cir. 2011) (affirming lower court's decision to deny a request to order production of emails to a non-governmental entity because the emails were protected from such disclosure by the SCA); In re Subpoena Duces Tecum to AOL, LLC, 550 F.Supp.2d 606 (E.D. Va. 2008) (holding that "the clear and unambiguous language" of the SCA prohibited AOL from divulging communications contents because the SCA "does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas").

At least one court has recognized that the SCA can be a frustrating impediment to non-governmental entities seeking discovery. See Bower v. Bower, 808 F.Supp.2d 348 (D. Mass. 2011) (recognizing "plaintiff's frustration," but denying motion to compel Yahoo! and Google to produce communications contents pursuant to a subpoena because "the SCA precludes Yahoo! and Google from producing the requested emails"). We are, likewise, not unappreciative of your desire to obtain the requested electronic communications contents and we acknowledge your likely dismay that the SCA prohibits Yahoo! from making the requested disclosure. However,

---

[1] Yahoo!'s Login Tracker Tool was designed to capture and produce web-based login events for a Yahoo! account. The tool was built before Yahoo! received logins from mobile devices and therefore mobile login events are not contained in Login Tracker results. Yahoo! is exploring solutions to make mobile login data available in future tools, but such data is not reasonably available at the present time.

Yahoo! is constrained with respect to the contents of electronic communications by unambiguous federal law. Consistent with that law, Yahoo! has not produced any content information in response to the subpoena.

To the extent any document provided herein contained information that exceeded the scope of your request, is protected from disclosure, or is otherwise not subject to production, we have redacted or otherwise removed such information. When reviewing the information provided, please note that Yahoo! may not require or verify user information because it offers many of its services to users for free.

Yahoo! requests reimbursement in the amount of $40.45 for reasonable costs incurred in searching for, assembling, and providing information in response to your request. Payment information is provided on the attached invoice.

Please contact me if you have any questions.

Sincerely,

Ian LaChance
Compliance Paralegal II
Phone: 408-349-7625
Fax: 408-349-7941

Enclosures

02/07/2013 11:33 FAX                                                            ☑005/008

## BUSINESS RECORDS DECLARATION

Request for information regarding:                )
stacy.deann@yahoo.com                             )        **DECLARATION OF**
_____                       )        **IAN LACHANCE**
                                                  )

I, Ian LaChance, declare:

1.  I am a Custodian of Records for Yahoo! Inc. ("Yahoo!"), located in Sunnyvale, California. I am
    authorized to submit this declaration on behalf of Yahoo!. I make this declaration pursuant to the
    Federal Rules of Evidence Rule 902(11) and the California Code of Evidence section 1561 and in
    response to a subpoena dated December 13, 2012 ("the request"). I have personal knowledge of the
    following facts, except as noted, and could testify competently thereto if called as a witness.

2.  Attached hereto are 3 pages that contain true and correct copies of the following data pertaining to the
    user account identified in the request: (1) the user profile, as produced by the Yahoo! Account
    Management Tool and (2) the dates, times, and Internet protocol addresses for logins. Yahoo!'s
    servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted,
    and this data is kept in the course of this regularly conducted activity and was made by regularly
    conducted activity as a regular practice. Yahoo! may not require or verify user information because it
    offers many of its services to users for free.

3.  To the extent any document attached hereto contained information that exceeded the scope of the
    request, is protected from disclosure, or is otherwise not subject to production, such information has
    been redacted or otherwise removed.

I declare under penalty of perjury under the laws of the United States of America and the State of
California that the foregoing is true and correct.

DATED: ___6 February 2013___          _____
                                       Ian LaChance, Custodian of Records


                                                   Internal reference number: 221502

# YAHOO! ACCOUNT MANAGEMENT TOOL

| | |
|---|---|
| Login Name: | stacy.deann |
| GUID: | XUGNZVCS6LO2DSGSRTWZX753TY |
| Yahoo Mail Name: | stacy.deann@yahoo.com |
| Alternate Communication Channels: | do_it_2_spec@yahoo.com |
| Registration IP address: | 67.60.38.229 |
| Account Created (reg): | Sat Jan 19 00:45:04 2008 GMT |
| Other Identities: | stacy.deann (Yahoo! Mail) |
| Full Name | D B |
| Address1: | 1841 Fox Circle |
| Address2: | |
| City: | Mesa |
| State, territory or province: | AZ |
| Country: | United States |
| Zip/Postal Code: | 85203 |
| Phone: | |
| Time Zone: | |
| Birthday: | November 10, 1971 |
| Gender: | Female |
| Occupation: | |
| Business Name: | |
| Business Address: | |
| Business City: | |
| Business State: | |
| Business Country: | us |
| Business Zip: | |
| Business Phone: | |
| Business Email: | |
| Additional IP Addresses: | Sat Jan 19 00:45:04 2008 GMT  67.60.38.229 |

**Account Status:**                    **Active**

Search for        stacy.deann
Date Range        2012-01-12 / 2013-01-10
Time zone         (GMT) Greenwich Mean Time : London
Total Results                  5

| Yahoo ID | IP Address | Port | Login Time |
|---|---|---|---|
| stacy.deann | 65.49.14.52 | 25796 | Wed 01:07:19 (GMT) 17-Oct-2012 |
| stacy.deann | 65.49.14.52 | 26508 | Wed 00:56:34 (GMT) 17-Oct-2012 |
| stacy.deann | 65.49.14.52 | 61308 | Wed 00:52:00 (GMT) 17-Oct-2012 |
| stacy.deann | 65.49.14.52 | 31822 | Wed 00:50:13 (GMT) 17-Oct-2012 |
| stacy.deann | 65.49.14.52 | 39880 | Wed 00:46:15 (GMT) 17-Oct-2012 |

# EXHIBIT 6

# Digital Forensic Report

In the matter of

## STACY D. FORD-KELLY,
Plaintiff,

vs.

## AMEC ENVIRONMENT & INFRASTRUCTURE, INC.,
a Nevada corporation

*fka* AMEC EARTH & ENVIRONMENTAL, INC.
*fka* AMEC INFRASTRUCTURE, INC.;
AMEC PLC, a British Company,
Defendants

In United States District Court, District of Arizona

Case: No. 3:12-cv-08085-NVW

Report by:

Mark S. Cardwell

Forentech, LLC
4222 E. Thomas Rd, Suite 250
Phoenix, AZ 85018
(602) 952-1078

January 11, 2013

## Introduction

I was hired by Lewis and Roca, LLP to conduct a forensic examination of multiple data sources to try to resolve the disputed authenticity of an employment offer letter (the "Letter") from AMEC to Stacy Ford-Kelly. Multiple copies/versions of the Letter exist, and my goal was to examine a variety of source data to try to establish which version of the Letter is the original.

My Examination looked at data from AMEC computers and data from Stacy Ford-Kelly computers.  In both data collections I searched for existing copies of the Letter and attempted to find any drafts or variations on the Letter that might illuminate its history.

Copies of the Letter from various sources are reproduced as Exhibits at the end of this report.

## The Examination Plan

My examination began with a review of folders and files on the AMEC Human Resources computer to identify documents relevant to this matter and check their Windows file metadata to determine if it is consistent with the creation of the Letter on or about January 21, 2008. I searched the HR server for the term "Stacy", reviewed the results of that search, and downloaded relevant files from the HR server.

I examined an Outlook PST from AMEC said to be the email archive PST of Stacy Lovett.  The PST has a Modified date of 8/29/2012. In this mail archive I searched in a variety of ways to find emails relating to the Letter, and to find additional copies or variations of the Letter.

I examined a thumb drive and the personal Acer computer of Stacy Ford-Kelly. Again, I searched in a variety of ways for copies or variations of the letter. My objective in the examination of the Ford-Kelly data was to find any file or file remnant that would show a history for the letter that Ford-Kelly claims to be authentic.

## Summary of Findings and Opinion

In my examination and search of AMEC data and the AMEC HR server computer I found multiple copies of the Letter that AMEC represents to be the authentic letter. Using forensic software tools I verified that all copies of the Letter are identical.  I found no versions of the Letter that differed from the one AMEC claims to be authentic.

In my extensive search of the Ford-Kelly data I found nothing at all related to either version of the Letter. However, I was stymied in my examination of the Acer computer because forensic wiping software had been used on the computer just prior to it being turned over to a courier for delivery to my office.  Nearly 46,000 files (of a total of 155,000 files on the hard drive) were forensically wiped from the computer with a tool called CCleaner just over midnight on the day

the computer was delivered to me. There is no way to recover the wiped files or to know what was in them.

## Technical Terms

### Metadata

Metadata is "data about data", and it helps us explain the life cycle of a file – when it was created, when it was last edited, etc. In the case of an individual file, the metadata I am interested in includes Windows file metadata, and in particular the "Date Modified" of a file. One will typically see Date Modified in the listing of files produced by the Windows Explorer (see the screen picture on the following page). Date Modified is a useful date in a forensic examination because it is not updated by Windows when a file is opened, or moved, or copied. It is updated only when a file is opened AND the content is changed AND the file is then saved.

Additionally, many files have internal metadata created and maintained by the software that created them – for example Microsoft Word documents and Excel spreadsheets contain internal metadata that informs us about the lifecycle of a file.

### Data Hashing

Hashing is the process of examining every "bit" of a file (or hard drive, or CD, etc.) and reducing its content to a representative value. There are a variety of hashing algorithms (formulas) that can be used to ensure a desired level a confidence in the descriptive accuracy of the representative hash value. In this examination I used SHA-1 (Secure Hash Algorithm) to hash the files.

In terms of the identifying power of hashing, one can draw a parallel between the hash value of a file and the fingerprint of a person, though fingerprints are less powerful. If two files have the same hash value using (using SHA-1), we can be confident that there is just 1 chance in $2^{160}$ that the files are different in any way. The number 1,073,741,824 is only $2^{30}$. Conversely, if two files have different hash values, there is the same degree of certainty that they are in fact different.

For additional verification I also hashed with the more common but less rigorous MD5 algorithm.

# Review of the AMEC Human Resource Server Computer

I was given a login for the AMEC Human Resources computer so I could connect via the Internet and review all documents on the HR server. I ran a Windows search for "Stacy" across the entire HR server. The search results are shown below, and include 6 documents and a folder for Stacy Ford.



The relevant document, the Stacy Ford Employment offer letter (the "Letter"), is named "Stacy Ford Lake Havasu INF.doc". There are two copies of the Letter in two different folders, which appear to be overlapping date-ranged archives on the HR server.

1. U:\HR\Offer Letters\Offer Letters - 2002-2011\Offer Letters 2008\
2. U:\HR\AMEC HR Initiatives\Offer Letters\Offer Letters - 2002-2009\Offer Letters 2008\

The Windows date metadata for both copies of the Letter show the same Date Modified: 1/21/2008 at 9:33 a.m.; the same Date Created: 1/21/2008 at 9:33 a.m.; and the same Date Last Saved: 1/21/2008 at 10:33 a.m. We can be fairly confident that these are identical copies of the same file because the date and time modified is the same. However, the two copies could be different and could have been saved just a few tenths or hundredths or thousandths of a second apart. We would not see that in the Explorer listing.

To determine absolutely whether two copies of a file are identical, we can "hash" the copies and compare the hash values.

When I hashed the two files above using both SHA-1 and MD5 algorithms, I found they have identical hash values:

> MD5: 66DFF108F9531A06FBC84AFFE6B4D7B9
> SHA-1: D85A2E6AEAC64A00BC841BF276222CB64C373436

So, we know the two file copies on the AMEC HR server are identical. The files were hashed with two different tools: the Forensic Toolkit (FTK) and Karens Hasher. Both reported the identical MD5 hash values and identical SHA-1 hash values.

## Analysis of the Stacy Lovett Outlook Archive PST File

### Copy of the Letter Found in the PST Mail File

I processed and searched the Stacy Lovett Archive PST provided to me by AMEC. I searched that PST for "Stacy" and found a copy of the Letter with the following statistics:

- Created on 1/21/2008 at 10:26:14 a.m.
- Last Saved by Melinda Knott on 1/21/2008 at 11:58:46 a.m.
- Last Author is "DWT"
- The Letter is marked as an attachment to an email.

The hashing process for this Letter produced the following hash values:

> MD5: 04CBA2BEDDECA71A5F20C1ABFF622A3C
> SHA-1: ADECA3EB9D51160ED3A1EC7F6E4CBDEDE085F9A1

Note that the hash values for this Letter do not match the hashes for the copies from the AMEC HR server. Because of this difference I processed the file in a file comparison tool to determine whether there are substantive differences between this copy and the HR server copies. The comparator tool reported the following:

**First file name:**  \Offer Letter from Lovett Archive PST\Stacy Ford Lake Havasu INF.doc
**Second file name:** \HR.AMEC HR Initiatives\Offer Letters\Offer Letters – 2002-2009\Offer Letters 2008\Stacy
Ford Lake Havasu INF.doc

**Summary:**
The files are identical: 72 Line(s) match; 0 Block(s) different; 0 Line(s) different.
2563 : 3 Byte(s) difference
45053 Byte(s) match
47616 : 45056 Byte(s) total

This comparison verifies that there is no substantive difference between the files. Viewing the file from the
Outlook PST in the forensic tool FTK reveals that the only difference is in the technical header area of the file,
and is probably a result of the file being packaged as an attachment by Microsoft Outlook. A user cannot
access or view the technical header area of a file.

### Email from Melinda Knott Conveying the Letter to Stacy Lovett

The copy of the Letter described above, "Stacy Ford Lake Havasu INF.doc", is a Microsoft Word document
that was attached to an email from Melinda Knott to Stacy Lovett on 1/21/2008 at 6:58:46 p.m. Universal
Time (UTC), which is 11:58:46 a.m. Phoenix time. The email is reproduced below with its metadata and header
information.

/////////////// Begin Email from Knott to Lovett ////////////////////////

**From:**            Knott, Melinda R </O=MESSAGING/OU=AM/CN=RECIPIENTS/CN=MELINDA.KNOTT>

**Sent:**            1/21/2008 6:58:46 PM +00:00

**To:**              Lovett, Stacy </O=MESSAGING/OU=AM/CN=RECIPIENTS/CN=STACY.LOVETT>

**CC:**              Bennion, David B </O=MESSAGING/OU=AM/CN=RECIPIENTS/CN=DAVID.BENNION>

**Subject:**         Stacy Ford - Offer Letter

**Attachments:**     1. Stacy Ford EAF Signed.PDF
                     2. Stacy Ford Lake Havasu MOVING INF.doc
                     3. Stacy Ford Lake Havasu INF.doc

Hi Stacy,

Stacy Ford's offer letter and moving allowance form are attached.

Stacy called her directly this morning asking for her offer letter. I let her know that we (HR) does not send out the offer
letters directly to new employees and that I would pass along her contact information to you.

She would like a copy of the letter PDFd to her at stacy.deann@yahoo.com. Her phone number is (208) 389-8087.

Unless there are any changes that need to be made to the letter (besides inserting a mailing address), it is ready to be
printed, signed and sent out from your office with a complete offer packet.

Thanks,

*Melinda R. Knott*

AMEC Earth & Environmental, Inc.
Human Resources Generalist, US Human Resources
telephone +1 (425) 820-4669 ext. 3154
confidential fax +1 (425) 820-5634
melinda.knott@amec.com

*The information contained in this e-mail is intended only for the individual or entity to whom it is addressed. Its contents (including attachments) are confidential and may contain privileged information. If you are not an intended recipient you must not use, disclose, disseminate, copy or print its contents. If you receive this e-mail in error, please notify the sender by reply e-mail and delete and destroy the message.*

---

**From:** Lovett, Stacy
**Sent:** Monday, January 21, 2008 8:17 AM
**To:** Knott, Melinda R
**Subject:** Approved EAF

Here is the EAF signed by Dave Peterson-
Stacy Lovett
AMEC
Mesa, AZ
Phone: 1 480 648 5301

Fax: 1 480 830 3903

stacy.lovett@amec.com

**Message Headers:**
```
Microsoft Mail Internet Headers Version 2.0
X-MimeOLE: Produced By Microsoft Exchange V6.5
Content-class: urn:content-classes:message
MIME-Version: 1.0
Content-Type: application/ms-tnef;
       name="winmail.dat"
Content-Transfer-Encoding: binary
Subject: Stacy Ford - Offer Letter
Date: Mon, 21 Jan 2008 13:58:46 -0500
Message-ID: <AA84C8D613FFB84DB165E04AB9CCBE9C0276938F@ATT1-EX2.am.int.amec.com>
X-MS-Has-Attach: yes
X-MS-TNEF-Correlator: <AA84C8D613FFB84DB165E04AB9CCBE9C0276938F@ATT1-
EX2.am.int.amec.com>
Thread-Topic: Stacy Ford - Offer Letter
Thread-Index: AchcSRgAJ8n67ZfoT/G7iq14Y6Sr+gAFd1Jg
From: "Knott, Melinda R" <Melinda.Knott@amec.com>
To: "Lovett, Stacy" <Stacy.Lovett@amec.com>
Cc: "Bennion, David B" <David.Bennion@amec.com>
```

This HTML was generated by AccessData using data parsed from "stacy.lovett-Archive.pst".
Please refer to that file for the original evidence.

/////////////// End Email from Knott to Lovett /////////////////////////

**Summary of Metadata from the Knott-to-Lovett Email:**

| Subject | Stacy Ford - Offer Letter |
|---|---|
| Name | Stacy Ford - Offer Letter |
| To | Lovett, Stacy </O=MESSAGING/OU=AM/CN=RECIPIENTS/CN=STACY.LOVETT> |
| From | Knott, Melinda R </O=MESSAGING/OU=AM/CN=RECIPIENTS/CN=MELINDA.KNOTT> |
| CC | Bennion, David B </O=MESSAGING/OU=AM/CN=RECIPIENTS/CN=DAVID.BENNION> |
| BCC | Snyder, Mary </o=Messaging/ou=AM/cn=Recipients/cn=mary.snyder> |
| Submit Time | **1/21/2008 11:58:46 AM (2008-01-21 18:58:46 UTC)** |
| Delivery Time | **1/21/2008 11:58:48 AM (2008-01-21 18:58:48 UTC)** |
| Unread | FALSE |
| Unsent | FALSE |
| Has Attachment | **TRUE** |
| Created | **1/21/2008 11:58:46 AM (2008-01-21 18:58:46 UTC)** |
| Accessed | n/a |
| Modified | **1/21/2008 12:00:57 PM (2008-01-21 19:00:57 UTC)** |
| Item # | 10478 |
| Category | Message |
| P-Size (bytes) | n/a |
| L-Size (bytes) | 5518 |
| Path | /stacy.lovett-Archive.pst/Stacy Lovett 2008 Archive/Top of Personal Folders/Inbox/Offer Letters/Stacy Ford - Offer Letter |

## Analysis of the Stacy Ford-Kelly Thumb Drive

I analyzed both allocated and deleted space on this storage device, and I found no copies of the Letter, and I found no digital traces that would indicate such a copy ever existed on the device.

## Analysis of the Stacy Ford-Kelly Acer Computer Hard Drive

The Acer computer runs the Windows XP operating system with Service Pack 3. The operating system was installed on the computer on September 21, 2011.

### Significant Destruction of Data by Use of a Spoliation/Wiping Tool

A great deal of deleted data on the Acer hard drive has been wiped from the drive with a spoliation (wiping) tool called CCleaner. When CCleaner is used to perform a "secure wipe" of data files it leaves behind files named completely with a repeating pattern of "Z" for the file name and extension. For example, any file named in the manner of "Z...Z.ZZZZ.ZZ.Z.ZZZ" indicates that CCleaner has wiped file information from the hard drive.

I found a link to the CCleaner.Exe executable program file in the Windows PreFetch folder, meaning it was run manually by a user. The CCleaner program was most recently run on 1/2/2013 at 12:22:03 a.m., which is consistent with the date and time metadata on the wiped CCleaner "Z" files.

I counted 45,626 files deleted and wiped by CCleaner. That data is not recoverable even by forensic means. There are only about 155,500 files on the entire hard drive, so the deleted total of almost 46,000 represents a huge portion of all data on the drive. The files were all wiped on 1/2/2013 just after midnight.

January 2, 2013 is the day the Acer computer was delivered to my office by courier at 6:20 p.m., so one might guess the wiping was done to hide data from the forensic examination that was to start that day.

# Exhibit 1 - The Letter from the AMEC HR Server

**Page 1 of the Letter retrieved from the AMEC HR server computer.**

January 21, 2008

*Private & Confidential*

Stacy Ford
Address Line 1
Address Line 2

Dear Ms. Ford:

On behalf of AMEC Infrastructure (AMEC), I am pleased to offer you the position of Engineer in Training, reporting to me in the Lake Havasu, AZ office, effective January 28, 2008. If you need to change the date, we will be pleased to discuss one that is mutually acceptable.

The following will outline the terms and conditions of employment:

**Compensation**

- Status – exempt.
- Salary is $2,384.62 payable on a bi-weekly basis which annualizes to $82,000.12. Direct Deposit is available if preferred.
- Extra compensation for additional hours worked *may be available* subject to manager approval. Extra compensation is paid at straight time unless otherwise legislated.
- You will receive a relocation allowance in the amount of $4,500.00 – the terms of this allowance are attached. Please sign and return a copy along with your signed copy of this letter.

**Benefits**

Enclosed, please find the *Choices* Benefits Package that explains the benefits currently offered to AMEC regular, full-time employees. Upon your employment you will be immediately eligible for:

- Health insurance coverage, including medical, vision, dental and prescription drug.
- Participation in AMEC's 401(k) program.
- Flexible Spending Account.
- Employee Assistance Plan.
- Short Term Disability, Long Term Disability, Life Insurance, Accidental Death & Dismemberment Insurance.
- You will accrue annual vacation leave at a rate of 15 days per year or 4.62 hours bi-weekly.
- Holidays – AMEC observes 7 holidays per year plus 3 floating holidays throughout the year, the details of which are provided in the Employee Handbook.
- Sick day accrual.
- Tuition Reimbursement (with prior management approval).
- Health Club Membership Reimbursement.
- Company provided training including Code of Business Conduct (COBC), Safety Health & Environment (SHE) and more. Your Manager will determine with you what training is appropriate. Please be advised that successful completion of the COBC program is a condition of employment and you will be required to undergo an annual refresher. Please complete the online training (available after hire), within the first week of employment.

**Background Screening/Employment Documentation**

It is AMEC's policy to provide a safe and secure work environment for both our employees and our clients. To that end it is the policy of AMEC that all offers of employment are contingent upon the successful completion of a background screening, drug screening and educational credentials

AMEC Infrastructure
94 Acoma Blvd South #100
Lake Havasu City, AZ 86403
Phone: 928-854-8030
Fax: 928-854-8036                    www.amec.com

**Page 2 of the Letter retrieved from the AMEC HR server computer.**

confirmation (where applicable). If any of the screenings returned are found to be in conflict with AMEC's policy we will discuss the results with you and determine if employment will continue. All screenings will be conducted within the guidelines of all state and federal legislation.

Employees are required to complete the Employment Eligibility Verification form (I-9) attesting to their employment eligibility and must provide documentation to support their statement. Examples of acceptable proof of employment eligibility include a U.S. Passport, or both a valid State Driver's License and Social Security Card. Please bring these documents with you on the first day of your employment. If you do not have the documents mentioned you may contact the Human Resources department for further information at (425) 820-4669.

**Probationary Period and Employment at Will**

AMEC has a three-month probationary period for newly hired regular, full-time and part-time employees during which time an employee's work performance and/or general suitability for AMEC employment will be evaluated. While we are confident that your employment with us will be a positive and mutually rewarding experience please understand that your employment, both during and after the probationary period, is not guaranteed for any specific length of time and is terminable at will, which means that either you or the Company may end the employment relationship at any time for any reason.

**Confidentiality Agreement Clause**

Under the AMEC Code of Business Conduct and as an employee of AMEC, you hereby agree to keep all of AMEC's business secrets confidential at all times and after the term of your employment. AMEC's business secrets include any information regarding our clients, contractors, subcontractors, employees, finances or any other technical or business information. It is further agreed that you will not make any unauthorized copies of any of AMEC's secrets or information without the consent of AMEC, nor remove any business secrets or information from an AMEC facility.

**Severability**

If any part of the Offer of Employment is held to be invalid, illegal, or unenforceable, the remaining provisions of the agreement will be enforced.

Further information regarding the Company, its policies and programs will be provided during your orientation. Upon acceptance of the above and enclosed, please sign and return the enclosed copy of this letter, a completed application for employment and any other completed documents within seven business days to the Lake Havasu, AZ location. Please feel free to contact me should you have any questions.

We look forward to having you join us and wish you much success in your new position.

Sincerely,
AMEC Infrastructure


Chris Hassert
Unit Manager—Lake Havasu, AZ


I have read and accept the offer of employment contained in this letter, including the referenced attachments.

_____          _____
Date                                                         (Employee)

2

## Exhibit 2 - The Letter Produced by Ms. Ford-Kelly
**Page 1 of the Letter Produced by Stacy Ford-Kelly.**

The PDF reproduced here was likely scanned from paper in low resolution, so its quality is poor.



January 21, 2008

*Private & Confidential*

Stacy Ford
1720 Deerburn St. #6
Caldwell, ID 83606

Dear Ms. Ford,

On behalf of AMEC Infrastructure (AMEC), I am pleased to offer you the position of Design Engineer, reporting to me in the Lake Havasu AZ office, effective January 28, 2008. If you need to change the date, we will be pleased to discuss one that is mutually acceptable.

The following will outline the terms and conditions of employment.

**Compensation Agreement**

- Status – Exempt; Contracted and salaried full-time employee.
- Contract of employment beginning January 28, 2008 and expires December 31, 2013.
- Starting salary is $5,384.62 payable on a bi-weekly basis, which amounts to $85,000.00.
- Salary to increase to $95,000.00 beginning January 1, 2010, ending December 31, 2013 with a 2.25% annual minimum cost of living increase beginning January 1, 2011.
- The balance of monetary compensation of this contract due to you shall be paid in full within three business days if employment with AMEC ceases due to no fault of your own and is initiated by AMEC after the three-month probationary period. Balance of compensation is to include any accrued and future benefits ending December 31, 2013 for both vacation time and sick leave as outlined below. If such action takes place by AMEC you will also receive payment equivalent to 18 months of COBRA costs which will be blended with the balance of this contract compensation due to you. If the remainder of contract is less than 18 months COBRA costs to be paid will be adjusted accordingly.
- You will receive a relocation allowance in the amount of $4,500.00. The terms of this allowance are attached. Please sign and return with this employment agreement.

**Benefits**

Enclosed, please find the Choices Benefits Package that explains the benefits currently offered to AMEC regular, full-time employees. Upon your employment you will be immediately eligible for:

- Health insurance coverage, including medical, vision, dental and prescription drug.
- Participation in AMEC's 401(k) program.
- Flexible Spending Account.
- Employee Assistance Plan.
- Short Term Disability, Long Term Disability, Life Insurance, Accidental Death & Dismemberment insurance.
- You will accrue annual vacation leave at a rate of 15 days per year or 4.62 hours bi-weekly.
- Holidays – AMEC observes 7 holidays per year plus 5 floating holidays throughout the year, the details of which are provided in the Employee Handbook.

**Background Screening and Employment Documentation**

It is AMEC's policy to provide a safe and secure work environment for both our employees and our clients. To that end it is the policy of AMEC that all offers of employment are contingent upon the successful completion of a background screening, drug screening and educational credentials.

AMEC Infrastructure
84 Acoma Blvd East #3 Suite
Lake Havasu City, AZ 86403
Phone: 928-854-8200
Fax: 928-854-6000                          www.amec.com

FORD 00001

**Page 2 of the Letter produced by Stacy Ford-Kelly.**

confirmation (where applicable). If any of the screenings returned are found to be in conflict with AMEC's policy we will discuss the results with you and determine if employment will continue. All screenings will be classified within the guidelines of all state and federal legislation.

Employees are required to complete the Employment Eligibility Verification Form (I-9) attesting to their employment eligibility and must provide documentation to support their statement. Examples of acceptable proof of employment eligibility include a U.S. Passport, or both a valid State Driver's License and Social Security Card. Please bring these documents with you on the first day of your employment. If you do not have the documents mentioned you may contact the Human Resources Department for further information.

**Probationary Period and Employment Termination**

AMEC has a three-month probationary period for all newly hired contracted and non-contracted regular, full-time and part-time employees during which time an employee's work performance and general suitability for AMEC employment will be evaluated. While we are confident that your employment with us will be a positive and mutually rewarding experience please understand that your employment, both during and after the probationary period is not guaranteed for any specific amount of time and is terminable at will, which means that either you or AMEC may end the employment relationship at any time for any reason. Your employment relationship with AMEC is not terminable at will after the three-month probationary period if a contract of employment is outlined within the Compensation Agreement section as the first page of this offer of employment and will be in accordance with the Compensation Agreement.

**Severability**

If any part of this offer of employment is held to be invalid, illegal, or unenforceable, the remaining provisions of this agreement will be enforced.

Further information regarding AMEC, its policies and programs will be provided during your orientation. Upon acceptance of the above and enclosed please sign and return the enclosed copy of this letter, a completed application for employment and any other required documents within seven business days to the Lake Havasu, AZ location. Please feel free to contact me should you have any questions.

We look forward to having you join our staff and wish you much success in your new position.

Sincerely,
AMEC Infrastructure, Inc.

Chris Hansen
Unit Manager – Lake Havasu, AZ

I have read and accept this offer of employment contained in this letter, including the referenced attachments.

Date                              Employee Signature

2

FORD 00002

## Exhibit 3 - The Letter from the Email File of Stacy Lovett
### Page 1 of the Letter from Stacy Lovett Outlook PST File

January 21, 2008

*Private & Confidential*

Stacy Ford
Address Line 1
Address Line 2

Dear Ms. Ford:

On behalf of AMEC Infrastructure (AMEC), I am pleased to offer you the position of Engineer in Training, reporting to me in the Lake Havasu, AZ office, effective January 28, 2008. If you need to change the date, we will be pleased to discuss one that is mutually acceptable.

The following will outline the terms and conditions of employment:

Compensation

- Status – exempt.
- Salary is $2,384.62 payable on a bi-weekly basis which annualizes to $62,000.12. Direct Deposit is available if preferred.
- Extra compensation for additional hours worked *may be available* subject to manager approval. Extra compensation is paid at straight time unless otherwise legislated.
- You will receive a relocation allowance in the amount of $4,500.00 – the terms of this allowance are attached. Please sign and return a copy along with your signed copy of this letter.

Benefits

Enclosed, please find the *Choices Benefits Package* that explains the benefits currently offered to AMEC regular, full- time employees. Upon your employment you will be immediately eligible for:

- Health insurance coverage, including medical, vision, dental and prescription drug.
- Participation in AMEC's 401(k) program.
- Flexible Spending Account.
- Employee Assistance Plan.
- Short Term Disability, Long Term Disability, Life Insurance, Accidental Death & Dismemberment Insurance.
- You will accrue annual vacation leave at a rate of 15 days per year or 4.62 hours bi-weekly.
- Holidays – AMEC observes 7 holidays per year plus 3 floating holidays throughout the year, the details of which are provided in the Employee Handbook.
- Sick day accrual.
- Tuition Reimbursement (with prior management approval).
- Health Club Membership Reimbursement.
- Company provided training including Code of Business Conduct (COBC), Safety Health & Environment (SHE) and more. Your Manager will determine with you what training is appropriate. Please be advised that successful completion of the COBC program is a condition of employment and you will be required to undergo an annual refresher. Please complete the online training (available after hire), within the first week of employment.

Background Screening/Employment Documentation

It is AMEC's policy to provide a safe and secure work environment for both our employees and our clients. To that end it is the policy of AMEC that all offers of employment are contingent upon the successful completion of a background screening, drug screening and educational credentials

AMEC Infrastructure
94 Acoma Blvd South #100
Lake Havasu City, AZ 86403
Phone: 928-854-8030
Fax: 928-854-8035                    www.amec.com

**Page 2 of the Letter from Stacy Lovett Outlook PST File**

confirmation (where applicable). If any of the screenings returned are found to be in conflict with AMEC's policy we will discuss the results with you and determine if employment will continue. All screenings will be conducted within the guidelines of all state and federal legislation.

Employees are required to complete the Employment Eligibility Verification form (I-9) attesting to their employment eligibility and must provide documentation to support their statement. Examples of acceptable proof of employment eligibility include a U.S. Passport, or both a valid State Driver's License and Social Security Card. Please bring these documents with you on the first day of your employment. If you do not have the documents mentioned you may contact the Human Resources department for further information at (425) 820-4669.

**Probationary Period and Employment at Will**

AMEC has a three-month probationary period for newly hired regular, full-time and part-time employees during which time an employee's work performance and/or general suitability for AMEC employment will be evaluated. While we are confident that your employment with us will be a positive and mutually rewarding experience please understand that your employment, both during and after the probationary period, is not guaranteed for any specific length of time and is terminable at will, which means that either you or the Company may end the employment relationship at any time for any reason.

**Confidentiality Agreement Clause**

Under the AMEC Code of Business Conduct and as an employee of AMEC, you hereby agree to keep all of AMEC's business secrets confidential at all times and after the term of your employment. AMEC's business secrets include any information regarding our clients, contractors, subcontractors, employees, finances or any other technical or business information. It is further agreed that you will not make any unauthorized copies of any of AMEC's secrets or information without the consent of AMEC, nor remove any business secrets or information from an AMEC facility.

**Severability**

If any part of the Offer of Employment is held to be invalid, illegal, or unenforceable, the remaining provisions of the agreement will be enforced.

Further information regarding the Company, its policies and programs will be provided during your orientation. Upon acceptance of the above and enclosed, please sign and return the enclosed copy of this letter, a completed application for employment and any other completed documents within seven business days to the Lake Havasu, AZ location. Please feel free to contact me should you have any questions.

We look forward to having you join us and wish you much success in your new position.

Sincerely,
AMEC Infrastructure


Chris Hassert
Unit Manager—Lake Havasu, AZ


I have read and accept the offer of employment contained in this letter, including the referenced attachments.

_____          _____
Date                                 (Employee)

2

# EXHIBIT 7

Peter Strojnik
STROJNIK, P.C.
Arizona Bar No 006464
Direct Dial: 602-524-6602

# STROJNIK, P.C.
## L A W Y E R S

January 12, 2013

Melanie V. Pate, Esq.
Lewis & Roca LLP - Phoenix Office
40 N Central Ave., Ste. 1900
Phoenix, AZ 85004-4429
by email only MPate@LRLaw.com

Robert G. Schaffer, Esq.
Lewis & Roca LLP - Phoenix Office
40 N Central Ave., Ste. 1900
Phoenix, AZ 85004-4429
by email only BSchaffer@LRLaw.com

Alastair James Gamble, Esq.
Lewis & Roca LLP - Phoenix Office
40 N Central Ave., Ste. 1900
Phoenix, AZ 85004-4429
by email only agamble@lrlaw.com

    Re:   Ford-Kelly v. AMEC

Dear Ms. Pate, Mr. Schaffer and Mr. Gamble:

Thank you, Melanie, for providing us with Mr. Cardwell's expert report. In light of the recent court decision dismissing claims, we have reassessed the need to depose Ms. Welch and to require AMEC PLC to file an answer on the now dismissed counts. On the matter of the deposition of Ms. Knott, we are confident that she will testify along the lines of AMEC's defense. Therefore, I propose to cancel the currently scheduled depositions of Ms. Knott and Ms. Welch, subject to later renoticing them. On the matter of AMEC PLC we propose to enter a stipulation withdrawing all claims other than the employment contract and the FMLA claim subject to our retention of the right to appeal.

We still need the documents subpoenaed from Ms. Welch and a supplementation of your responses to Second Request for Production of Documents and Second Set of Interrogatories which you declined to respond in light of the dismissal of claims. I believe that the information regarding Ms. Welch remains salient to the issues in this case, particularly the employment agreement and AMEC's employees' use of personal computers to create important company documents. Her issuance of the 1099 goes directly to the point of AMEC's admission of the existence of the continuing contractual relationship.

Judge Wake's recent dismissal of counts delays, but does not terminate, the dispute over the 1099, civil racketeering and other claims. The issue of the dismissal has been preserved on appeal which we intend to prosecute.

Likewise, Mr. Cardwell's report does nothing to change our view of the contract claim. It merely complicates it. AMEC has admitted that it destroyed the original employment agreement during the pendency of this case. Mr. Cardwell's report admits to AMEC's inability to use a forensic expert to recover the attachments to e-mails purportedly containing the "actual" employment agreement.

Further, we have no assurance by Mr. Cardwell that he reviewed all computers and servers where the information regarding the true employment agreement was kept; all we have is his assurance that he reviewed AMEC's HR server. As we know from the Welch experience, AMEC does not create, record or save company documents only on company servers. Sometime – as in the case of Ms. Welch – AMEC uses (or permits the employees to use) employees' own, personal computers. Since this case involves allegations of fraudulent creation of the AMEC version of the employment agreement and the subsequent destruction of the original agreement, one would expect Mr. Cardwell to examine all servers and all computers from which AMEC could, or did, generate the Employment Agreement. In light of the Welch experience, it is quite foreseeable that another member of the AMEC team would have created the Ford-Kelly Employment Agreement on his/her own personal computer.

Mr. Cardwell admits that he found no controverting data on the Ford-Kelly computer or the attached thumb drive. He concludes:

> In my extensive search of the Ford-Kelly data I found nothing at all related to either version of the Letter. However, I was stymied in my examination of the Acer computer because forensic wiping software had been used on the computer just prior to it being turned over to a courier for delivery to my office. Nearly 46,000 files (of a total of 155,000 files on the hard drive) were

computers. In both data collections I searched for existing copies of the Letter and attempted to find any drafts or variations on the Letter that might illuminate its history.

By innuendo, he suggests that this lack of evidence is based on what he refers to as "significant destruction of data by use of spoliation/wiping tool". He refers to the free software "CCleaner". CC Cleaner is not used to "spoliate" or "wipe" evidence. It is not "forensic" software. It is available free of charge to anyone who wishes to download it. It is used to improve a computer's performance. Mr. Cardwell does not, to the best of my understanding of his report, disclose when this computer enhancement tool was downloaded and whether the computer performance was improved on a prior set schedule. Nor does he disclose who among authorized users of the computer used this tool. If we are put into that position, our rebuttal expert will explore these areas. While the intentional spoliation of evidence on the part of Ms. Ford-Kelly would be troubling, I find nothing in the Report to indicate that this actually occurred. The best possible inference from the report is that someone attempted to improve the computer's performance; as I previously advised, the computer is used by Ms. Ford Kelly's son for online schooling. I will conduct further investigation on this matter on my end; however, I can conclude even now that the circumstances relating to Ford Kelly's computer pale in comparison with the intentional destruction of the original Employment Agreement. Had AMEC's destruction of the original not occurred, we would be in position to determine which version is accurate and which is fraudulent. See Report by Bill Flynn.

REDACTED



REDACTED

REDACTED


Thank you in advance for your continued courtesy and professionalism.

Sincerely,

Peter Strojnik

CC:
  1. *Client by e-mail only*
  2. *PKS by e-mail only*

# EXHIBIT 8

**From:**    strojnik@skplaw.com
**Sent:**    Friday, February 01, 2013 6:18 PM
**To:**      Livingston, May; 'ps@strojnik.com'
**Cc:**      Schaffer, Robert
**Subject:** RE: AMEC adv. Stacy D. Ford-Kelly

Dear Robert,

Threatening me and my counsel will not be tolerated. It is unprofessional and classless. You serve a Rule 11 Motion, we reciprocate due to AMEC's destruction of the original...*the destruction that took place while you were legal counsel*. Shame on you for not instructing your client to preserve the single most relevant evidence in its original format. Especially since Ms. Ford's "version" of the contract was known and visible to you.

We reserve threats for action. Accordingly, you serve, we serve. That would provide us with an opportunity to put AMEC's destruction of the original under your watch back in front of Judge Wake. Do not threaten me again.


Cordially Yours,

Peter Strojnik

Peter Kristofer Strojnik, Esq.
THE STROJNIK FIRM L.L.C.
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Phoenix Tel. 602.510.9409
Phoenix Fax. 602.532.7572

# THE STROJNIK FIRM LLC

http://www.skplaw.com
Commercial Litigation & Employment Law

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.


-------- Original Message --------
Subject: AMEC adv. Stacy D. Ford-Kelly
From: "Livingston, May" <MLivings@lrlaw.com>
Date: Fri, February 01, 2013 5:40 pm
To: "'strojnik@skplaw.com'" <strojnik@skplaw.com>,
"'ps@strojnik.com'" <ps@strojnik.com>
Cc: "Schaffer, Robert" <BSchaffe@lrlaw.com>


May Livingston
Legal Secretary



**Lewis and Roca LLP • 19th Floor**
40 North Central Avenue • Phoenix, Arizona 85004-4429
<u>Directions to Building and Garage</u>
Tel (602) 239-7403 • <u>MLivings@LRLaw.com</u>

 Please consider the environment before printing this e-mail.

---

For more information about **Lewis and Roca LLP**, please go to <u>**www.lewisandroca.com**</u>.

Phoenix (602)262-5311    Reno (775)823-2900
Tucson (520)622-2090    Albuquerque (505)764-5400
Las Vegas (702)949-8200    Silicon Valley (650)391-1380

This message is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this E-Mail by return E-Mail or by telephone.

In accordance with Internal Revenue Service Circular 230, we advise you that if this email contains any tax advice, such tax advice was not intended or written to be used, and it cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer.

3/18/2013